1  LATHAM & WATKINS LLP
   Elizabeth L. Deeley (CA Bar No. 230798)
2      *elizabeth.deeley@lw.com*
   Nicole C. Valco (CA Bar No. 258506)
3      *nicole.valco@lw.com*
   505 Montgomery Street, Suite 2000
4  San Francisco, CA  94111-6538
   Telephone:  +1.415.391.0600
5  Facsimile:  +1.415.395.8095

6  Susan E. Engel (*pro hac vice*)
       *susan.engel@lw.com*
7  555 Eleventh Street, N.W., Suite 1000
   Washington, D.C. 20004
8  Telephone:  +1.202.637.2200
   Facsimile:  +1.202.637.2201

9
   Hilary H. Mattis (CA Bar No. 271498)
10     *hilary.mattis@lw.com*
   140 Scott Drive
11 Menlo Park, CA 94025
   Telephone: +1.650.328.4600
12 Facsimile: +1.650.463.2600

13 *Attorneys for Defendant Facebook, Inc.*

14              **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

16                **SAN FRANCISCO DIVISION**

17

18 DANIELLE A. SPRINGER, PROJECT        | Case No. 3:18-cv-04978 JD
   THERAPY, LLC (d/b/a THERAPY
19 THREADS), HOLLY DEAN, EE DIGITAL,    | **FACEBOOK, INC.'S NOTICE OF**
   LLC and DZ RESERVE, individually and on | **MOTION AND MOTION TO DISMISS**
20 behalf of all others similarly situated, | **THE CONSOLIDATED AMENDED**
                                          | **CLASS ACTION COMPLAINT;**
21              Plaintiffs,               | **MEMORANDUM OF POINTS AND**
                                          | **AUTHORITIES IN SUPPORT**
22        v.

23 FACEBOOK, INC.,

24              Defendant.               | Date:   May 16, 2019
                                          | Time:   10:00 a.m.
25                                        | Court:  Courtroom 11, 19th Floor
                                          | Hon.    James Donato
26

27

28

1

**<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**

2

**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on May 16, 2019, at 10:00 a.m. in Courtroom 11 of the

4    United States District Court for the Northern District of California, located at 450 Golden Gate

5    Avenue, San Francisco, California, Defendant Facebook, Inc. ("Facebook") will and hereby does

6    move for an order dismissing Plaintiffs' Consolidated Amended Class Action Complaint

7    ("Complaint"), Dkt. 55.  This motion is made pursuant to Federal Rules of Civil Procedure 8(a),

8    9(b), 12(b)(1), and 12(b)(6), on the grounds that (1) Plaintiffs lack standing to bring any of their

9    claims, including under Federal Rule of Civil Procedure 12(b)(1); (2) each of the causes of action

10   in the Complaint fails to state a claim as a matter of law under Federal Rule of Civil Procedure

11   12(b)(6); (3) Plaintiffs lack standing to seek injunctive relief under Federal Rule of Civil Procedure

12   12(b)(1); (4) the Unfair Competition Law, breach of contract, breach of the implied duty to perform

13   with reasonable care, and breach of implied covenant of good faith and fair dealing claims are

14   time-barred to the extent based on ad campaigns begun before August 15, 2014; and (5) the quasi-

15   contract claim is time-barred to the extent based on ad campaigns begun before August 15, 2016.

16          This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

17   Authorities, Facebook's Request for Judicial Notice, and the declaration of Nicole C. Valco

18   enclosed therewith, the pleadings and papers on file in this action, the arguments of counsel, and

19   any other matter that the Court may properly consider.

20                        **STATEMENT OF RELIEF SOUGHT**

21          Facebook seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and

22   12(b)(6) dismissing the Complaint with prejudice for lack of standing and failure to state a claim

23   upon which relief can be granted.

24   DATED:  February 7, 2019              LATHAM & WATKINS LLP

25                                   By:    /s/ Elizabeth L. Deeley
                                         Elizabeth L. Deeley (CA Bar No. 230798)
26                                       Nicole C. Valco (CA Bar No. 258506)
                                         505 Montgomery Street, Suite 2000
27                                       San Francisco, CA  94111-6538
                                         Telephone: +1.415.391.0600
28                                       Facsimile: +1.415.395.8095

1   *elizabeth.deeley@lw.com*
    *nicole.valco@lw.com*

2

3   Susan E. Engel (*pro hac vice*)
    555 Eleventh Street, N.W., Suite 1000
    Washington, D.C. 20004

4   Telephone:  +1.202.637.2200
    Facsimile:  +1.202.637.2201

5   *susan.engel@lw.com*

6   Hilary H. Mattis (CA Bar No. 271498)
    140 Scott Drive

7   Menlo Park, CA  94025
    Telephone: +1.650.328.4600

8   Facsimile: +1.650.463.2600
    *hilary.mattis@lw.com*

9
    *Attorneys for Defendant Facebook, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.          INTRODUCTION ................................................................................................. 1

II.         BACKGROUND .................................................................................................. 2

III.        ARGUMENT ...................................................................................................... 3

    A.   Plaintiffs' UCL Claim Should Be Dismissed Because Plaintiffs
         Lack Standing And Fail To State A Claim ................................................. 3

         1.   Plaintiffs Fail To Plead Standing To Bring Their UCL
              Claim ............................................................................................... 4

         2.   Plaintiffs Fail To State A UCL Claim Because They Do
              Not Plausibly Allege A False Or Misleading Statement ............. 6

         3.   Plaintiffs Fail To State A UCL Claim Under The "Unfair"
              Prong ............................................................................................... 9

    B.   Plaintiffs' Contract, Implied Duty, And Implied Covenant Claims
         Should Be Dismissed Because Plaintiffs Lack Standing And Fail
         To State A Claim ......................................................................................... 10

    C.   Plaintiffs' Implied Duty And Implied Covenant Claims Are
         Duplicative .................................................................................................. 13

    D.   The Parties' Express Contract Bars The Quasi-Contract Claim .............. 14

    E.   Plaintiffs Fail To Plead Standing For Injunctive Relief........................... 14

    F.   Claims Based On Ads Outside The Statutes Of Limitations Are
         Time-Barred ................................................................................................ 15

IV.        CONCLUSION .................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*AdTrader, Inc. v. Google LLC,*
No. 17-cv-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13, 2018)....................................13

*In re Arris Cable Modem Consumer Litig.,*
No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ................................4, 14

*Asberry v. Money Store,*
No. 2:18-CV-01291-ODW, 2018 WL 3807806 (C.D. Cal. Aug. 8, 2018)............................15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................................................................................................3, 10

*Bamberger v. Marsh USA, Inc.,*
699 F. App'x 649 (9th Cir. 2017) ......................................................................................13

*Beasley v. Wells Fargo Bank, N.A.,*
235 Cal. App. 3d 1383 (1991) ...........................................................................................15

*Berkla v. Corel Corp.,*
302 F.3d 909 (9th Cir. 2002) .............................................................................................14

*Brod v. Sioux Honey Ass'n, Co-op,*
927 F. Supp. 2d 811 (N.D. Cal. 2013) .................................................................................7

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) .............................................................................................8

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
222 Cal. App. 3d 1371 (1990) ...........................................................................................13

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,*
2 Cal. 4th 342 (1992) ........................................................................................................12

*Chateau Chamberay Homeowners Ass'n. v. Associated Int'l. Ins. Co.,*
90 Cal. App. 4th 335 (2001) ..............................................................................................11

*Daniels v. Select Portfolio Servicing, Inc.,*
246 Cal. App. 4th 1150 (2016) ..........................................................................................11

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018) .....................................................................................3, 14, 15

*Davis v. HSBC Bank Nev., N.A.,*
691 F.3d 1152 (9th Cir. 2012) .............................................................................................7

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...............................................................................................6

*In re Facebook, Inc. PPC Advert.*,
    282 F.R.D. 446 (N.D. Cal. 2012) .......................................................................................11

*In re Facebook Internet Tracking Litig.*,
    290 F. Supp. 3d 916 (N.D. Cal. 2017), *appeal docketed*, No. 17-17486 (9th
    Cir. Dec. 15, 2017).............................................................................................................11

*In re Facebook PPC Advert. Litig.*,
    No. 09-cv-3043-JF, 2010 WL 5174021 (N.D. Cal. Dec. 15, 2010) .....................................7

*Fleck & Assocs., Inc. v. City of Phx.*,
    471 F.3d 1100 (9th Cir. 2006) ............................................................................................10

*FormFactor, Inc. v. MarTek, Inc.*,
    No. 14-CV-01122-JD, 2015 WL 367653 (N.D. Cal. Jan. 28, 2015).....................................12

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ..................................................................................................7

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................3, 6

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ...............................................................................................10

*Holguin v. Dish Network LLC*,
    229 Cal. App. 4th 1310 (2014).......................................................................................11, 13

*Kane v. Chobani, Inc.*,
    No. 5:12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ...........................5

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................................3, 4, 8

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012)............................................................................................14

*Kroetch v. BAC Home Loan Servs.*,
    No. C 11-2860 MEJ, 2011 WL 4502350 (N.D. Cal. Sept. 27, 2011)....................................11

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ...............................................................................................9

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ..........................................................................................................4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

FACEBOOK'S MOT. TO DISMISS CONSOL. AM. COMPL.,
CASE NO. 3:18-cv-04978 JD

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000) ............................................................................14

*Love v. Fire Ins. Exchange*,
   221 Cal. App. 3d 1136 (1990) .........................................................................15

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ...........................................................................10

*Maxwell v. Unilever U.S., Inc.*,
   No. 5:12-cv-01736-EJD, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018)............................5, 7

*MH Pillars Ltd. v. Realini*,
   277 F. Supp. 3d 1077 (N.D. Cal. 2017) ...........................................................11

*Moorer v. Stemgenex Med. Grp., Inc.*,
   No. 3:16-cv-02816-AJB-NLS, 2017 WL 1281882 (S.D. Cal. Apr. 6 2017)....................10

*Norcia v. Samsung Telecomms Am., LLC*,
   No. 14-cv-00582-JD, 2018 WL 4772302 (N.D. Cal. Oct. 1, 2018) .......................10

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*,
   298 F.3d 768 (9th Cir. 2002) ...........................................................................11

*Phillips v. Apple Inc.*,
   No. 15-CV-04879-LHK, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ...............4

*Punian v. Gillette Co.*,
   No. 14-cv-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)..............4, 9

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*,
   55 Cal. 4th 1169 (2013) ..................................................................................12

*Salondaka v. Countrywide Home Loans, Inc.*,
   No. 2:09-cv-01550-JAM-JEM, 2010 WL 529361 (E.D. Cal. Jan. 28, 2010)..............7

*Sharp v. Nationstar Mort., LLC*,
   701 F. App'x 596 (9th Cir. 2017) ....................................................................13

*Singh v. Google LLC*,
   No. 5:16-cv-03734-BLF, 2018 WL 984854 (N.D. Cal. Feb. 20, 2018), *appeal
   docketed*, No. 18-17035 (9th Cir. Oct. 19, 2018) ......................................5, 6

*Smith v. LG Elecs. U.S.A., Inc.*,
   No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) .......................10

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .......................................................................................5

*Von Saher v. Norton Simon Museum of Art*,
    592 F.3d 954 (9th Cir. 2010) ................................................................15

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ..................................................................6

*Woods v. Google Inc.*,
    889 F. Supp. 2d 1182 (N.D. Cal. 2012) ...................................................7

*Woods v. Google Inc.*,
    No. 5:11-cv-1263-JF, 2011 WL 3501403 (N.D. Cal. Aug. 10, 1011) ....................11

*World Health & Educ. Found. v. Carolina Cas. Ins. Co.*,
    612 F. Supp. 2d 1089 (N.D. Cal. 2009) ..................................................12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 5:16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)............................7

## STATUTES & RULES

Cal. Bus. & Prof. Code § 17208 ..............................................................15

Fed. R. Civ. P. 12(b)(1)...........................................................................3

## OTHER AUTHORITIES

Pew Research Ctr., *Social Media Use in 2018* (Mar. 1, 2018),
    http://www.pewinternet.org/2018/03/01/social-media-use-in-2018...................................8

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3

Plaintiffs allege that Facebook misleads advertisers that use its ad campaign planning

4 tool—Ads Manager—because the reach estimates on Ads Manager allegedly inflate the number

5 of people on Facebook eligible to see an ad compared to census data and survey data about

6 Facebook users.  But those allegations are entirely contradicted by Plaintiffs' own allegations:

7 • Facebook discloses that Potential Reach "is a unique calculation" of who is eligible to see

8 an ad and is *not* "intended to align with third party calculations or population census data."

9 Compl. ¶ 37 fig.4.

10 • Facebook states that reach estimates are "based on many factors," including "self-reported"

11 "[u]ser demographics" and location—i.e., when "people sign up to use [Facebook] they let

12 [Facebook] know how old they are" and where they live, and they represent they are

13 creating only a single account.  Ex. A (Ex. 1 to Am. Compl., Dkt. 9-1, cited at Compl.

14 ¶ 125); Ex. B at 2 (cited at Compl. ¶¶ 3 n.5, 30 n.19); Ex. H § 3(1) (cited at Compl. ¶ 123);[1]

15 • Facebook explains that advertisers should only use Potential Reach to "understand how

16 [their] targeting and placement choices affect the number of people [they] could reach,"

17 Compl. ¶ 37 fig.4, whereas Estimated Daily Reach tells an advertiser how many people it

18 "may be able to reach on a given day," given its budget, *id.* ¶¶ 3, 32 fig.1.

19 • Facebook discloses that advertisers "won't be charged based on [the reach estimates], and

20 the numbers don't affect delivery."  Ex. B at 2.

21 Given these disclosures, the Complaint lacks any allegation to support Plaintiffs' claim that they

22 were deceived by Facebook's reach estimates, which dooms each of Plaintiffs' causes of action.

23 Beyond this fundamental flaw, the Complaint should be dismissed under Rules 12(b)(1)

24 and 12(b)(6) for several reasons.  First, Plaintiffs' Unfair Competition Law ("UCL") claim fails

25

26

27

28

[1] Each exhibit cited herein is attached to the concurrently filed Valco Declaration and is incorporated by reference and/or judicially noticeable, as detailed in the Request for Judicial Notice.  Exhibits A to D are Ads Manager and Advertiser Help Center webpages that are incorporated into the Complaint; Exhibits E to M are the contracts (including the Terms of Service and the Self-Service Ad Terms) between Plaintiffs and Facebook in effect when Plaintiffs placed ads on Facebook and are relied on and incorporated into the Complaint; and Exhibit N is Chicago population data from the same U.S. Census Bureau data sources Plaintiffs rely upon.

because they do not adequately plead (i) that they actually relied on any specific reach estimate or suffered economic injury as a result, or (ii) that reasonable consumers would likely be deceived into believing the reach estimates reflected census data or third party calculations.  Second, the breach of contract, implied duty, and implied covenant claims fail because Plaintiffs do not adequately allege that reach estimates are contractual obligations, that Facebook breached any such obligation, or that Plaintiffs suffered any resulting harm.  Third, the implied duty and implied covenant claims are superfluous.  Fourth, given the express contract, the quasi-contract claim is not cognizable.  Fifth, Plaintiffs' injunctive relief request fails because they do not sufficiently allege the likelihood of any future harm.  Finally, any claims based on conduct occurring outside the statutes of limitations are time-barred.

## II.    BACKGROUND

Ads Manager is a tool that allows advertisers to create, manage, and track ad campaigns that are run on Facebook, Instagram, Messenger, and Audience Network.  *E.g.*, Ex. C at 5 (Ads Manager cited at Compl. ¶¶ 32 fig.1, 40 n.22); *Ads Manager*, https://bit.ly/2DhTxdD (last visited Feb. 7, 2019).  Facebook provides reach estimates called Potential Reach and Estimated Daily Reach to advertisers through Ads Manager.  Compl. ¶ 3 & n.4.  Potential Reach is "an estimation of the potential number of people [an advertiser's] ads could reach," regardless of a campaign's duration or budget.  *Id.* ¶¶ 36-38 & figs.3-4.  It is a "unique calculation" that is "based on a number" of inputs, including "self-reported" "[u]ser demographics."  Ex. A.  "It updates in real time as you create or edit your ad set to help you understand how your targeting and placement choices affect the number of people you could reach."  Compl. ¶ 37 fig.4.  As Plaintiffs acknowledge, Facebook explicitly tells advertisers that Potential Reach estimates are "not designed to match population or census estimates."  *Id.* ¶ 36 fig.3; *see also* Ex. B at 2 ("There are known gaps in census data, especially in younger demographics, user behavior, and technology . . . .").  Estimated Daily Reach "gives [an advertiser] an idea of how many of the people in [the advertiser's] target audience . . . [the advertiser] may be able to reach on a given day."  Compl. ¶ 3.  Unlike Potential Reach, Estimated Daily Reach is "based on factors like past campaign data, the budget [the advertiser] entered and market data," and as a result can be a fraction of the Potential Reach for a broad target

1   audience.[2]  *Id.* ¶ 32 fig.1.

2       Facebook expressly cautions that reach estimates are "only estimates and don't guarantee

3   results," *id.*, and neither figure "represent[s] actual campaign reach or campaign reporting," Ex. B

4   at 2.  Facebook also makes clear advertisers "won't be charged based on either number, and the

5   numbers don't affect delivery."  *Id.*  Instead, advertisers are charged based on specified outcomes

6   such as website conversions, clicks, or impressions an ad receives, and pricing turns on Facebook's

7   "auction system where ads compete for impressions based on bid and performance," or, for some

8   large budget ads, on a fixed price (which is not alleged here).  Ex. D at 1; Ex. C at 6.

9   **III.   ARGUMENT**

10      Plaintiffs' claims should be dismissed under Rule 12(b)(6) because they fail to "plead[]

11  factual content that allows the court to draw the reasonable inference that the defendant is liable

12  for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The claims, including

13  the request for injunctive relief, should also be dismissed for failure to allege standing.  *See* Fed.

14  R. Civ. P. 12(b)(1); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970-72 (9th Cir. 2018).

15      **A.   Plaintiffs' UCL Claim Should Be Dismissed Because Plaintiffs Lack Standing
            And Fail To State A Claim**

16

17      Plaintiffs' UCL claim—which is premised on Facebook's alleged dissemination of "an

18  inflated Potential Reach," Compl. ¶¶ 109 (alleged fraud), 110-12 (alleged unfair practices)—

19  sounds in fraud and is subject to Rule 9(b)'s particularity requirement.  *See Kearns v. Ford Motor*

20  *Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ("[I]f 'the [UCL] claim is said to be grounded in fraud

21  . . . the pleading of that claim as a *whole* must satisfy the particularity requirement of Rule 9(b).'"

22  (citation omitted)); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017)

23  (applying Rule 9(b) to unfair prong).  The entire UCL claim should be dismissed with prejudice

24  because Plaintiffs fail to plead (1) with particularity standing; (2) with particularity how the

25  Potential Reach estimates were likely to deceive a reasonable consumer; and (3) any independent

26  _____

27  [2] For example, Figure 1 in the Complaint is a screenshot from 2018 of the creation of an ad with a
    target audience of people over age 13 in the United States.  The Potential Reach is 240 million,
28  and Facebook informs the advertiser that the audience selected is "broad" and "requires a large
    budget."  Compl. ¶ 32 fig.1  The Estimated Daily Reach number for an undisclosed budget is only
    14,000 to 89,000 people daily—at most 0.037% of the Potential Reach for the broad audience.  *Id.*

1  basis for the unfair prong. *See Punian v. Gillette Co.*, No. 14-cv-05028-LHK, 2016 WL 1029607,

2  at \*17 (N.D. Cal. Mar. 15, 2016) (dismissing all claims with prejudice).

3           **1.**         **Plaintiffs Fail To Plead Standing To Bring Their UCL Claim**

4          Plaintiffs fail to allege with particularity that they "actually relied on the [alleged]

5  misrepresentation[s] and suffered economic injury as a result of that reliance." *In re Arris Cable*

6  *Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at \*6 (N.D. Cal. Jan. 4, 2018)

7  (same standard applies to both fraud and unfair prongs "when the 'unfair competition' underlying

8  a plaintiff's UCL claim consists of a defendant's misrepresentation" (citing *Kwikset Corp. v.*

9  *Super. Ct.*, 51 Cal. 4th 310, 322 (2011)). This failure to allege actual reliance also dooms Article

10  III standing. *See Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at \*6, 7 (N.D.

11  Cal. Apr. 19, 2016) (actual reliance "required to demonstrate causation for purposes of Article III

12  standing when" plaintiffs assert their injury is result of deceptive misrepresentations or omissions).

13          *First*, Plaintiffs "generally identif[y]" examples of Potential Reach estimates but "fail[] to

14  specify which statements [each of them] actually saw and relied upon," including "the particular

15  circumstances surrounding [the] representations." *Arris*, 2018 WL 288085, at \*8 (fourth alteration

16  in original) (quoting *Kearns*, 567 F.3d at 1126, and discussing cases); *see also Phillips*, 2016 WL

17  1579693, at \*7-8 (no Article III or UCL standing where "careful reading of the [complaint] reveals

18  that Plaintiffs do not allege that they saw or heard any statements, advertising, terms of use, or

19  other representations by Apple before downloading iOS 9 or using Wi–Fi Assist"). The only

20  Potential Reach estimates Plaintiffs identify are undated but allegedly appeared on Ads Manager

21  on August 1, 2018, *see, e.g.*, Compl. ¶¶ 42 & n.25, 52 & n.33 (stating Ads Manager last accessed

22  Aug. 1, 2018), and in a September 2017 third-party report, *e.g.*, *id.* ¶¶ 45-46 & n.30, 48 & n.31.

23  But Plaintiffs do not allege that these were the estimates that they saw when designing their ad

24  campaigns, and Plaintiffs never allege the estimates that they actually saw.

25          *Second*, even if they had identified the specific Potential Reach estimates that they actually

26  saw, it is simply not plausible that Plaintiffs would not have placed ads on Facebook if only they

27  had known the Potential Reach estimates did not match census and survey data about Facebook

28  users, given the conspicuous Facebook disclosures Plaintiffs themselves allege in the Complaint.

Facebook clearly explains that Potential Reach estimates are "unique calculation[s]" that are *not* based on census data or third party data, *id.* ¶ 37 fig.4, do not "represent actual campaign reach or campaign reporting," Ex. B at 2, do not "affect delivery," *id.*, and "don't guarantee results," Compl. ¶ 32 fig.1.  And Facebook discloses that Potential Reach estimates can include not just Facebook users but also Instagram users without Facebook accounts.  Ex. C at 5 (placements).  And however large the Potential Reach estimate (which assumes an unlimited duration and budget), Facebook also discloses Estimated Daily Reach estimates—*i.e.*, the number of people an advertiser may "actually end up reaching," which can be a small fraction of Potential Reach.  *Id.* ¶ 37 fig.4.

Plaintiffs have thus not alleged that absent the purportedly inflated Potential Reach estimates, they "'in all reasonable probability' would not have engaged in the injury-producing conduct," *i.e.*, placing ads on Facebook.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (citation omitted); *see also Maxwell v. Unilever U.S., Inc.*, No. 5:12-cv-01736-EJD, 2018 WL 1536761, at *4 (N.D. Cal. Mar. 29, 2018) (rejecting actual reliance allegations where information disclosed on product label, plus context, made theory that products did not contain artificial ingredients "simply . . . not plausible"); *Kane v. Chobani, Inc.*, No. 5:12-CV-02425-LHK, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) (rejecting actual reliance allegations where plaintiffs alleged they would not have purchased yogurts if they had known yogurts contained "unnatural ingredients," because there was no "factual allegation concerning what Plaintiffs believed" and "labels clearly disclosed" the information).  Indeed, Plaintiffs fail to plead necessary facts about their "own experience[s]," *Singh v. Google LLC*, No. 5:16-cv-03734-BLF, 2018 WL 984854, at *4 (N.D. Cal. Feb. 20, 2018), *appeal docketed*, No. 18-17035 (9th Cir. Oct. 19, 2018), including their own campaigns' Potential Reach or Estimated Daily Reach estimates, their budgets or actual payments, their results for each ad, and what they understood the reach estimates to mean when they placed the ads.

***Third***, beyond this fundamental pleading failure, Plaintiffs have not alleged the requisite causal link between the alleged misrepresentations and the economic injury of "money paid for Facebook advertisements," Compl. ¶ 113.  This is not a consumer products case where a plaintiff alleges that a misleading label immediately induced it to hand over money for a product.  *See*

*Singh*, 2018 WL 984854, at *4 (distinguishing consumer product cases from advertising arrangement where advertiser agreed to pay an amount based on subsequent events).  *Singh* is illustrative of the distinction.  There, the plaintiff alleged Google made misstatements about "the extent of invalid or fraudulent clicks on the AdWords platform" when advertisers entered into ad arrangements, and that Google charged advertisers for those clicks.  *Id.* at *1.  The court held that the alleged economic injury (money paid for ads) had no connection to the alleged misstatements, because plaintiff did not suffer any harm merely from entering into the ad arrangement; any harm arose only from the later "contingency" of who clicked on ads.  *Id.* at *4 (citation omitted).

As in *Singh*, Plaintiffs do not allege any economic harm merely from viewing Potential Reach estimates and entering into ad arrangements.  Facebook expressly discloses that advertisers "won't be charged based on [Potential Reach] number[s]." Ex. B at 2.  Indeed, Facebook makes clear through Estimated Daily Reach that the people who actually see an ad can be a fraction of the Potential Reach, especially for a campaign with a low budget and broad target audience. Compl. ¶¶ 32 fig.1, 37 fig.4.  And Facebook only charges advertisers if and when, e.g., people are shown or click on an ad—and it does so based on contingencies that occur when Facebook delivers an ad.[3]  Any economic harm could arise only from those subsequent contingencies, not from Potential Reach estimates.  *See Singh*, 2018 WL 845854, at *4-5.  Plaintiffs do not account for the chain of causation leading to any purported injury and thus fail to and cannot establish standing.

### 2.        Plaintiffs Fail To State A UCL Claim Because They Do Not Plausibly Allege A False Or Misleading Statement

To state a UCL claim based on a false or misleading statement, a plaintiff must plead specific misrepresentations that are false or "likely to deceive" a "reasonable consumer." *Hadley*, 243 F. Supp. 3d at 1089 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).  Plaintiffs have not done so here, both because of the conspicuous Facebook disclosures Plaintiffs acknowledge and because

---

[3] Ad pricing typically is based on an auction system that occurs each time Facebook delivers an ad, and Facebook never spends more on a campaign than an advertiser approves. Ex. D at 2 ("The pricing of Facebook ads is based on an auction system where ads compete for impressions based on bid and performance. . . .  [Y]ou'll only be charged for the number of clicks or the number of impressions your ad received.").

they allege no specific facts showing that Facebook's estimates are inflated.

As noted *supra* Section III.A.1, it is not plausible that any reasonable advertiser would have been deceived into believing the Potential Reach estimates would match census or survey data, or would have any effect on how much they paid for ads, given the Estimated Daily Reach and Facebook's explicit disclosures that Potential Reach estimates "are not expected to match census data" and advertisers "won't be charged based on either number," Ex. B at 2. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (dismissing UCL claim because there was no likelihood a reasonable consumer would be deceived where disclosure dispelled any deceptive interpretation).[4]  Nor is there any plausible inference reasonable advertisers would likely be deceived into relying on Potential Reach as anything more than an "estimation of how many people are in an ad set's target audience," Compl. ¶ 37 fig.4, given Facebook's disclosure that Potential Reach estimates are just that—estimates, not guarantees. *Cf. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-MD-02752-LHK, 2017 WL 3727318, at *25 (N.D. Cal. Aug. 30, 2017) (distinguishing between "statement[s] of fact" actionable under UCL and generalized assertions).  A UCL claim requires "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citation omitted).

Moreover, Plaintiffs allege no facts from which to infer that the Potential Reach estimates are wrong, much less false or misleading, in light of what Facebook says they are, and what is self-evident from the nature of the Facebook ad service—an estimate of the people who might be in a particular location that are eligible to view an ad, based on self-reported user data and the ad's placement choices. *See supra* Section II (citing Exs. A-C).  There is nothing surprising—let alone misleading—about the fact that Potential Reach estimates include more people in a given city than census or survey data shows live there and use Facebook.  Thus, for example, people in Chicago

---

[4] *See also Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (same); *Maxwell*, 2018 WL 1536761, at *5-6 (same); *Woods v. Google Inc.*, 889 F. Supp. 2d 1182, 1196 (N.D. Cal. 2012) (same); *In re Facebook PPC Advert. Litig.*, No. 09-cv-3043-JF, 2010 WL 5174021, at *6, *9 (N.D. Cal. Dec. 15, 2010) (same); *cf. Salondaka v. Countrywide Home Loans, Inc.*, No. 2:09-cv-01550-JAM-JEM, 2010 WL 529361, at *3 (E.D. Cal. Jan. 28, 2010) ("Everything that [plaintiff] claims was fraudulently misrepresented or concealed was right there in his [materials].  A person who knows the true facts cannot be said to have reasonably relied on a misstatement of those facts.").

1   may include not just "non-resident travelers" but also, for example, suburbanites who self-report

2   that they live in "Chicago."   Regardless of whether census data shows that 800,000 18-34 year

3   olds live in the City of Chicago, if suburban 18-34 year olds report on their Facebook accounts

4   that they live in Chicago, then the reach estimate is going to be higher than the census data for

5   Chicago proper upon which Plaintiffs rely.  Compl. ¶ 50.  And notably, census data shows roughly

6   two million 18-34 year olds live in the Chicago Metropolitan Statistical Area, which includes

7   Chicago's suburbs.  Ex. N at 1.  Likewise, however many people a Pew survey finds use Facebook

8   in a particular area, there is nothing surprising about the fact that Potential Reach estimates may

9   include more people than a survey shows use Facebook, because Facebook places ads not just *on*

10   *Facebook* but *also on platforms like Instagram*.  Ex. C at 5.

11       Further, even putting aside that Facebook discloses its Potential Reach estimates are not

12   based on census or survey data, Plaintiffs plead no specific facts about either census data or the

13   surveys from which to infer that either dataset is a more accurate basis for the number of people

14   who can see an ad.  Plaintiffs allege nothing at all about their own surveys' methodologies.  Compl.

15   ¶¶ 50-53.  The Pew survey was based on telephone interviews of a sample of adults nationwide

16   regarding their use of social media websites like Facebook or Twitter.  Pew Research Ctr., *Social*

17   *Media Use in 2018* (Mar. 1, 2018), http://www.pewinternet.org/2018/03/01/social-media-use-in-

18   2018.  There is no factual basis from which to infer that Pew's 68% *nationwide adult* figure applies

19   across the board to any demographic and any location.  Likewise, Plaintiffs plead no basis for

20   inferring that census data, which has "known gaps," Ex. B at 2, is a more accurate measure of users

21   of Facebook services who are eligible to see an ad in a particular location.  Without such factual

22   bases, Plaintiffs have not satisfied Rule 9(b)'s requirement that they allege "what is false or

23   misleading about [the Potential Reach estimate], and why it is false."  *Cafasso, U.S. ex rel v. Gen.*

24   *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted).

25       Finally, Plaintiffs also rely on vague and speculative opinions by three confidential

26   witnesses ("CW"), *see* Compl. ¶¶ 55-57, without any sufficiently particularized allegations about

27   their personal knowledge of Facebook's reach estimates and how they are generated.  These

28   allegations do not satisfy Rule 9(b) and should be given no weight.  *See, e.g.*, *Kearns*, 567 F.3d at

1125-27 (detailing standard). For example, the first witness, CW1, refers to "those who were responsible" for reach estimates, indicating that CW1 had no role in the estimates. Compl. ¶ 55. Plaintiffs allege that CW1 said Potential Reach "sounds 'like a made-up PR number,'" demonstrating that CW1 may have never even heard of Potential Reach before discussing with Plaintiffs. *Id.* CW2 speaks only to what he or she "believed" about the accuracy of Facebook's user numbers. *Id.* ¶ 56. And while Plaintiffs allege that CW3, a former Operations Contractor who is not alleged to have worked on Potential Reach, stated that Facebook "was not concerned with stopping duplicate or fake accounts in calculating Potential Reach," *id.* ¶ 5, and "primarily relied on ad hoc written complaints from Facebook users and ineffective algorithms to assure accuracy," *id.* ¶ 57, Plaintiffs provide no facts, much less ones that satisfy Rule 9(b), to support the oblique allegation that this somehow resulted in inflated Potential Reach estimates. Indeed, they plead no details regarding *how* Facebook reaches its estimates at all.

### 3. Plaintiffs Fail To State A UCL Claim Under The "Unfair" Prong

Plaintiffs allege that Potential Reach estimates were inflated because Facebook did not properly audit and verify their accuracy before disseminating them. Compl. ¶¶ 110-12 (alleging unfair practices). The unfair prong cannot survive for three reasons.

First, it relies on the same alleged misrepresentation as the fraudulent prong claim—that Facebook disseminated "an inflated Potential Reach statistic," *id.* ¶¶ 109 (fraud), 110-13 (unfair)— and thus fails for the same reasons as above. *See Punian*, 2016 WL 1029607, at *17 (unfair prong claim does not survive where it "overlaps entirely" with meritless fraudulent prong and California False Advertising Law claims).

Second, to the extent Plaintiffs attempt to base their unfair prong on the allegation that the reach estimates lack verification, rather than the allegation that the estimates are false, they cannot do so, because the Ninth Circuit has held that such a "substantiation claim" is not cognizable in UCL actions brought by private plaintiffs. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096-97 (9th Cir. 2017) (rejecting allegations that "clinically tested" representation "falsely implied that the marketing claims of [the product's] health benefits were clinically proven by credible scientific proof," because they were "simply an allegation that defendant's marketing claims lack scientific

substantiation," and private plaintiffs cannot bring cause of action to enforce substantiation provisions of UCL); *Moorer v. Stemgenex Med. Grp., Inc.*, No. 3:16-cv-02816-AJB-NLS, 2017 WL 1281882, at \*6-7 (S.D. Cal. Apr. 6 2017) (plaintiffs' allegations that defendants misrepresented and omitted material facts regarding their services, including "the lack of data supporting their efficacy" amounted to improper lack of substantiation claim (citation omitted)).

Third, even on their own terms, Plaintiffs' boilerplate recitations of the unfair prong tests[5] are insufficient to state a claim. *See Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at \*10-11 (N.D. Cal. Mar. 11, 2014) (rejecting conclusory balancing and tethering test allegations); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" state a claim.).

### B.   Plaintiffs' Contract, Implied Duty, And Implied Covenant Claims Should Be Dismissed Because Plaintiffs Lack Standing And Fail To State A Claim

Plaintiffs' contract, implied duty, and implied covenant claims are all based on the premise that Facebook provided inflated Potential Reach and Estimated Daily Reach estimates, Compl. ¶¶ 129-30, 137, 143—but as noted *supra* Section III.A.1, Plaintiffs fail to identify the specific estimates applicable to their campaigns. They point to no Estimated Daily Reach estimates at all, and they allege only example Potential Reach estimates that are untethered to their own campaigns and that provide no basis for inferring that those examples caused them any injury. Thus, just as they lack Article III standing to bring their UCL claim, *supra* Section III.A.1, Plaintiffs also lack standing to bring their contract-based claims. *See Fleck & Assocs., Inc. v. City of Phx.*, 471 F.3d 1100, 1104 (9th Cir. 2006) ("[The Article] III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*." (citation omitted)). Beyond this lack of standing, Plaintiffs fail to allege (1) a specific contractual obligation, (2) a failure to perform that obligation

---

[5] The "proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts," which have considered two tests to determine if a business practice is unfair. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (citation omitted). But this Court has recognized that "*Hodsdon* expressly observed that '[the] *Cel-Tech* [or "tethering"] test did not apply to actions by consumers,' even though some California courts have extended the *Cel-Tech* definition of unfairness to consumer actions anyway." *Norcia v. Samsung Telecomms Am., LLC*, No. 14-cv-00582-JD, 2018 WL 4772302, at \*2 (N.D. Cal. Oct. 1, 2018) (citation omitted). A third test (the FTC test) also is not applicable in consumer actions, but in any event is not adequately pleaded here. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

sufficiently, or (3) resulting harm, as required for each of the three claims.[6]

*First*, Plaintiffs do not identify any "specific provisions in the contract" relating to reach estimates. *In re Facebook Internet Tracking Litig.*, 290 F. Supp. 3d 916, 918-19 (N.D. Cal. 2017) (contract claim dismissed with prejudice where plaintiffs did not identify a contractual provision "creating the obligation the defendant [was] said to have breached" (citation omitted)), *appeal docketed*, No. 17-17486 (9th Cir. Dec. 15, 2017); *see also Holguin v. Dish Network LLC*, 229 Cal. App. 4th 1310, 1324 (2014) ("express contractual terms give rise to implied duties" which apply to performance of "the thing agreed to be done"); *Kroetch v. BAC Home Loan Servs.*, No. C 11-2860 MEJ, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011) (plaintiff must allege the "specific contractual obligation from which the implied covenant" arose (citation omitted)). Because no contractual provision imposes any obligation relating to reach estimates, the pleading cannot be cured and the contract-based claims should be dismissed with prejudice. *See Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 776-78 (9th Cir. 2002) (affirming dismissal of RICO claim with prejudice where plaintiff could not allege its essential elements).

Plaintiffs allege in conclusory fashion that the reach estimates are purported contractual promises. But the estimates appear *in Ads Manager* and are not part of advertisers' contract with Facebook. *See, e.g.*, *Woods v. Google Inc.*, No. 5:11-cv-1263-JF, 2011 WL 3501403, at *3-6 (N.D. Cal. Aug. 10, 1011) (statements made across AdWords Help Center pages not sufficiently alleged to be contractual promises).[7] When advertisers place an order on Ads Manager, they agree to the

---

[6] Elements of a contract claim include "the contract," "defendant's breach," and "resulting damages." *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (2016) (citation omitted). Elements of an implied duty to perform with reasonable care claim include that the parties "entered into a contract," defendant "failed to use reasonable care in [performance of the contract]," and plaintiff was "harmed by" defendant's conduct. Judicial Council of Cal. Civ. Jury Instruction No. 328 (2018 ed.). Elements of an implied covenant claim include that the "parties entered into a contract," "defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract," and "plaintiff was harmed by the defendant's conduct." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1088 (N.D. Cal. 2017). For an implied covenant claim, a plaintiff also must show the defendant "demonstrate[d] a failure or refusal to discharge contractual responsibilities . . . by a conscious and deliberate act." *Chateau Chamberay Homeowners Ass'n. v. Associated Int'l. Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001) (citation omitted).

[7] *See also In re Facebook, Inc. PPC Advert.*, 282 F.R.D. 446, 457 (N.D. Cal. 2012) ("click definition" not in the Terms of Service (formerly "SRR") was not "part of the contract" and could not "be used to impose additional contractual obligations on Facebook"); *In re Facebook Internet*

1   Terms of Service, *e.g.*, Ex. H, an express and fully integrated contract that does not include,

2   reference, or incorporate any provision at all relating to reach estimates.  *Id.* §§ 4.5 (Terms of

3   Service "make up the entire agreement" between advertiser and Facebook), 5 (incorporating by

4   reference specific policies and terms, including Self-Serve Ad Terms ("SSAT"), but *not* Ads

5   Manager); *see also Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal.

6   4th 1169, 1174 (2013) (extrinsic evidence cannot be used to "add to" terms of integrated writing).

7         Nor can the reach estimates be read into the Terms of Service.  That contract, through its

8   incorporated SSAT, provides that Facebook "do[es] not guarantee the reach or performance that

9   [the advertiser's] ads will receive, such as the number of people who will see [its] ads or the

10  number of clicks [its] ads will get."  Ex. M § 8 (2018 SSAT, cited Compl. ¶ 123); *see* Ex. J § 6

11  (2015) ("We do not guarantee the activity that your ads will receive, such as the number of clicks

12  your ads will get.").  Interpreting the estimates as a contractual guarantee would impermissibly

13  "vary" this no guarantee clause.  *World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F.

14  Supp. 2d 1089, 1097 (N.D. Cal. 2009) (extrinsic evidence cannot be used to "vary" or "alter" terms

15  of integrated written instrument); *see also FormFactor, Inc. v. MarTek, Inc.*, No. 14-CV-01122-

16  JD, 2015 WL 367653, at *6 (N.D. Cal. Jan. 28, 2015) (implied covenant "cannot 'be endowed

17  with an existence independent of its contractual underpinnings'" and "cannot impose substantive

18  duties or limits on the contracting parties beyond those incorporated in the specific terms of their

19  agreement" (citation omitted)); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.

20  4th 342, 374 (1992) ("[I]mplied terms should never be read to vary express terms.").

21        Even if reach estimates were part of Plaintiffs' contracts (they are not), Plaintiffs still have

22  not adequately alleged any specific contractual provision because, as noted *supra* Section III.A.1,

23  they never identify the particular reach estimates applicable to their ad campaigns.[8]  At any rate,

24  Plaintiffs' attempt to read reach estimates as contractual promises that the estimates will match

25  census data, *see* Compl. ¶¶ 125, 128, is not colorable in light of Facebook's disclosures that the

26

27  *Tracking*, 290 F. Supp. 3d at 920-22 (Help Center pages not referenced or linked to by Terms of
    Service were not incorporated by reference into Terms of Service).

28  [8] Plaintiffs also do not allege whether Singer, Therapy Threads, or both were parties to a contract
    with Facebook.  Compl. ¶¶ 65-72.

1    estimates do not match census data and do not guarantee results, *see supra* Section II.

2        ***Second***, Plaintiffs fail to plead a breach or failure to perform any alleged express or implied

3    contractual obligation because they have not plausibly alleged Facebook's reach estimates were

4    inflated.  *See supra* Section III.A.2; Compl. ¶¶ 130, 137, 143 (identifying purported breaches, each

5    premised on allegedly inflated reach estimates).  At best, Plaintiffs' allegations identify instances

6    in which reach estimates differ from census or third-party data, but nothing about the reach

7    estimates implies they would align with census or third-party data.  And in any event, Plaintiffs

8    acknowledge that Facebook expressly disclosed that they did not.  Merely alleging differing results

9    does not suggest Facebook was wrong, nor do threadbare and conclusory assertions about

10   "auditing," "verification," and "process[es]," Compl. ¶¶ 138, 143, suggest that Facebook failed to

11   "exercise . . . care, skill and knowledge," *Holguin*, 229 Cal. App. 4th at 1324 (citation omitted),

12   much less that it failed to act in good faith or with fair dealing, *see Bamberger v. Marsh USA, Inc.*,

13   699 F. App'x 649, 651 (9th Cir. 2017) (implied covenant claim requires "'a conscious and

14   deliberate act' rather than 'an honest mistake, bad judgment or negligence'" (citation omitted)).

15       ***Third***, Plaintiffs fail to explain how they were harmed by any allegedly inflated reach

16   estimates.  Their conclusory allegations that they did not "receive the full benefit of their bargain"

17   and overpaid for ads, Compl. ¶¶ 131, 139, 145, are insufficient because they do not allege that

18   their payments to Facebook were at all connected to reach estimates, that Facebook ever suggested

19   their ads would actually reach that many people, that their charges somehow did not reflect actual

20   results, or that the cost of those results was inflated because of the reach estimates.

21       **C.    Plaintiffs' Implied Duty And Implied Covenant Claims Are Duplicative**

22       Plaintiffs' implied duty and covenant claims also should be dismissed because they are

23   both based on the same underlying alleged breach as their contract claim—that Facebook provided

24   inflated reach estimates—and thus "may be disregarded as superfluous."  *Careau & Co. v. Sec.*

25   *Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *see also AdTrader, Inc. v. Google*

26   *LLC*, No. 17-cv-07082-BLF, 2018 WL 3428525, at *4 (N.D. Cal. July 13, 2018) (implied duty

27   claim "subsumed in [plaintiff's] breach of contract claim"); *Sharp v. Nationstar Mort., LLC*, 701

28   F. App'x 596, 598 (9th Cir. 2017) (implied covenant claim "superfluous" where allegations

"materially identical" to contract claim (citation omitted)).

### D.     The Parties' Express Contract Bars The Quasi-Contract Claim

Plaintiffs' quasi-contract claim fails for three reasons.  First, "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (citation omitted).  Plaintiffs do not and cannot "deny the existence or enforceability" of their agreement with Facebook which governs the parties' advertising relationship.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012); *see, e.g.*, Compl. ¶¶ 9, 122-23, p. 21 n.35 (acknowledging express agreement).  Second, even if their claim were cognizable, Plaintiffs do not allege with particularity a false or misleading statement.  *See supra* Section III.A.2; *Arris*, 2018 WL 288085, at *10 (quasi-contract claim subject to Rule 9(b) where it is based on same allegedly misleading statements as UCL claims).  Third, Plaintiffs do not allege the requisite "receipt of a benefit and unjust retention of the benefit at the expense of" Plaintiffs, because they do not allege (nor could they) that reach estimates affect pricing or payments or that Facebook did not deliver the ads Plaintiffs purchased. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).

### E.     Plaintiffs Fail To Plead Standing For Injunctive Relief

To possess standing to seek injunctive relief, "a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way," *Davidson*, 889 F.3d at 967.  Some Plaintiffs (but not Dean) claim they "wish and intend to purchase additional advertisements from Facebook in the future" but "it will be difficult for [them] to trust" reach estimates going forward.  Compl. ¶¶ 72, 85, 93.  These allegations are insufficient.  To be sure, the Ninth Circuit has recognized standing to pursue injunctive relief where a plaintiff "faces a threat of imminent or actual harm by not being able to rely on [defendant's representations] in the future." *Davidson*, 889 F.3d at 967. This is not such a case, because Plaintiffs' claim is that Facebook's reach estimates do not match *readily available* census and third-party data.  Plaintiffs' own allegations are thus inconsistent with any inference that they have "no way of determining whether the representation" of estimates is in fact true.  *Id.* at 971 (citation omitted).  They also do not allege any facts to support their conclusory allegations that they intend to purchase ads again.  For example, they do not allege they "regularly"

1    create ad campaigns and are "continually presented" with purportedly unreliable estimates. *Id.* at

2    970-71 (finding plaintiffs' allegations sufficient because she claimed she has "no way of

3    determining whether the representation 'flushable' is in fact true" and she "regularly visit stores"

4    where the product at issue was sold and is "continually presented" with the products' packaging").

5         **F.    Claims Based On Ads Outside The Statutes Of Limitations Are Time-Barred**

6         Plaintiffs filed this action on August 15, 2018, and purport to bring claims on behalf of a

7    putative class that purchased ad campaigns beginning January 1, 2013.  Compl. ¶ 95.  Plaintiffs'

8    claims should be dismissed in their entirety, but also because "the running of the statute [of

9    limitations] is apparent on the face of the complaint."  *Von Saher v. Norton Simon Museum of Art*,

10   592 F.3d 954, 969 (9th Cir. 2010) (citation omitted).  The UCL, contract, implied duty, and implied

11   covenant claims should be dismissed to the extent based on ad campaigns begun before August

12   15, 2014.  *See* Cal. Bus. & Prof. Code § 17208 (four-year statute of limitations for UCL); *Beasley*

13   *v. Wells Fargo Bank, N.A.*, 235 Cal. App. 3d 1383, 1401 (1991) (four-year statute of limitations in

14   Cal. Code Civ. P. § 337 applies to contract and implied duty claims); *Love v. Fire Ins. Exchange*,

15   221 Cal. App. 3d 1136, 1144 n.4 (1990) (four-year statute of limitations for implied covenant

16   claim).  The quasi-contract claim should be dismissed to the extent based on campaigns begun

17   before August 15, 2016.  *See Asberry v. Money Store*, No. 2:18-CV-01291-ODW (PLAx), 2018

18   WL 3807806, at *7 (C.D. Cal. Aug. 8, 2018) (two-year statute of limitations for quasi-contract).

19   **IV.    CONCLUSION**

20        For these reasons, the Court should grant Facebook's motion to dismiss the Complaint with

21   prejudice pursuant to Rules 12(b)(6) and 12(b)(1).

22   Dated: February 7, 2019                LATHAM & WATKINS LLP

23                                          By:    /s/ Elizabeth L. Deeley

24                                          Elizabeth L. Deeley (CA Bar No. 230798)
                                            Nicole C. Valco (CA Bar No. 258506)
25                                          505 Montgomery Street, Suite 2000
                                            San Francisco, CA  94111-6538
26                                          Telephone:  +1.415.391.0600
                                            Facsimile:  +1.415.395.8095
27                                          *elizabeth.deeley@lw.com*
                                            *nicole.valco@lw.com*
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Susan E. Engel (*pro hac vice*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201
*susan.engel@lw.com*

Hilary H. Mattis (CA Bar No. 271498)
140 Scott Drive
Menlo Park, CA  94025
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600
*hilary.mattis@lw.com*

*Attorneys for Defendant Facebook, Inc.*