Elizabeth L. Deeley
Direct Dial: +1.415.395.8233
elizabeth.deeley@lw.com

505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

**LATHAM & WATKINS LLP**

May 10, 2019   **BY ECF**

The Honorable James Donato
United States District Court
450 Golden Gate Ave.
San Francisco, CA 94102

Re:   *Singer et al. v. Facebook, Inc.*, Case No. 3:18-cv-04978 JD

Your Honor:

Facebook has not refused to preserve relevant documents and information. Instead, Plaintiffs, who are all advertisers, contend that because they have brought a lawsuit alleging that Facebook's Potential Reach estimates are inflated, they are entitled to demand that Facebook preserve and produce private user data for billions of individual Facebook users worldwide, who are neither parties nor putative class members and who have nothing to do with this lawsuit. Plaintiffs' claims do not provide them the right to demand preservation and production of this user data or a detailed roadmap of how Facebook stores it.  This is especially true where user data is not relevant to Plaintiffs' claims and its preservation and production raises serious privacy concerns.  Plaintiffs' request should be denied because user data and a roadmap to how it is stored are (1) not relevant, and (2) not reasonable or proportional to the needs of this case.

1. **Private data for billions of Facebook users and a roadmap to how it is stored are not relevant to Plaintiffs' claims**

Plaintiffs have demanded that Facebook preserve *and produce* private user data (including Facebook profile details marked private) for billions of Facebook users.  But this data will tell Plaintiffs nothing about whether Potential Reach estimates—the advertising estimates at the heart of their claims—were inflated because Potential Reach is not based on this static user data.  *See* FED. R. CIV. P. 26(b); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, No. C-12-03694-DMR, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) (same requirements for preservation).

As Facebook publicly disclosed and repeatedly explained to Plaintiffs during numerous meet and confer discussions, Potential Reach is an "estimation of how many people are in an ad set's target audience," *i.e.*, the size of the group that falls within an advertiser's "targeting and placement choices."  Compl. ¶¶ 3, 37-38 & fig.4 (Dkt. 55).  It is a "unique calculation" that "updates in real time" based on specific ad targeting criteria selected by each individual advertiser (*e.g.*, foodies over 18 years old living in Berkeley). *Id.* ¶¶ 37-38 & fig.4.  User data will not provide Plaintiffs any information as to whether Facebook's method of calculating Potential Reach inflates the estimate.  Instead, what is relevant to Plaintiffs' claims is the methodology that Facebook uses to calculate Potential Reach.  And Facebook has repeatedly confirmed to Plaintiffs that it is preserving information about that methodology (including summary documents, communications, and source code) at both the Company and employee-custodian level.

**LATHAM&WATKINS**LLP

Despite numerous communications explaining these issues—in which Facebook provided Plaintiffs far more detailed information than Plaintiffs now suggest, including explanations of its preservation efforts, highly confidential information about its data systems, and an explanation of the real time nature of Potential Reach calculations—Plaintiffs offered no explanation justifying their demand for preservation and production.  Plaintiffs merely conclude without support that private user data can be used to "measure the level of Potential Reach inflation."  Pls.' Letter at 1 (Dkt. 70) ("Letter").  Not so.  As explained to Plaintiffs, and as they acknowledge in their Complaint, Potential Reach is a ***real-time*** calculation that is continually updating.  Compl. ¶¶ 37-38 & fig.4.  User data from static tables cannot be used to recreate or measure against any specific Potential Reach estimates (even if Plaintiffs provided them, which they have not).  Counting the number of users on any given day in the table would say nothing about any Potential Reach estimate because that estimate, done in real-time, is the product of Facebook's "unique calculation," *id.*, which takes into account the numerous criteria an advertiser can select, such as people who live in Berkeley interested in doughnuts (people who have expressed an interest in or like pages related to doughnuts).  Static user data from 2019 tables or any other snapshot in time cannot be used after the fact as a measure or comparison of Potential Reach estimates allegedly provided to Plaintiffs sometime between 2013 and 2018 (*id.* ¶¶ 67, 74, 80, 88) because the data used to calculate Potential Reach continually changes.  For example, user data from 2019 would not contain data for users who had accounts in 2017 but have since deleted them, and it would not reflect changes to data like residence, employment, preferences, and interests.

Just as the underlying user data is irrelevant, so too is the roadmap Plaintiffs seek about how it is stored.  Far from "basic information," Letter at 2, Interrogatory No. 2 asks Facebook to identify *every* database and repository that contains Facebook user data, and *every* field therein, how to query them, their physical location, and who manages them.  Information about where and how Facebook stores irrelevant data is similarly irrelevant, and the filing of this case does not entitle Plaintiffs to unfettered access to all of Facebook's user data repositories and how they work.

Finally, Plaintiffs' focus on a March 2019 update to Potential Reach is a red herring.  As Facebook makes clear in its disclosures on Ads Manager, Facebook continually updates its tools "because [it's] always working on improving the accuracy of [its] estimates" provided to advertisers.  *See* Valco Decl. Ex. B at 1-2 (Dkt. 66-2).  The use of a different input (the number of people who viewed an ad in the last 30 days) only reinforces that this case is about *how* Facebook estimates Potential Reach, not the underlying user data itself.  The change has nothing to do with (and has not altered) user data, and has not made that data suddenly relevant.

### 2. Preservation and production of billions of users' private data and how it is stored is neither reasonable nor proportionate to the needs of the case

The preservation and production of this massive amount of private data about billions of Facebook users worldwide to advertisers is not only irrelevant, it is disproportionate to the needs of the case, especially considering the serious privacy interests it implicates and sheer breadth of the demand.  Although their letter is carefully couched as a preservation demand, their document requests and the parties' negotiations confirm these advertisers also want Facebook to produce this user data.  This raises serious privacy concerns—an issue Facebook raised and Plaintiffs ignored—that strongly outweigh the data's discovery.  *See, e.g.*, *Loop Ai Labs Inc. v. Gatti*, No. 15-cv-00798-HSG(DMR), 2016 WL 1712131, at *2 (N.D. Cal. Apr. 29, 2016) (production of documents

**LATHAM&WATKINS**LLP

containing non-party information not required based on privacy and lack of "compelling need"); *Campbell v. Facebook, Inc.*, No. 13-CV-05996-PJH, 2016 WL 7888026, at *2 (production of tables containing "millions of cells of proprietary and sensitive information … unrelated to specific practices" at issue not required because it "is not proportional to the needs of the case"). The Stored Communications Act ("SCA"), 18 U.S.C. § 2702(a), also prohibits Facebook from producing certain user data, including, for example, user preferences and interests. *See, e.g.*, *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1114-15 (N.D. Cal. 2018) (Kim, Magis. J.) (SCA precludes disclosure about users' "likes" on Facebook because it sends message about user's approval of something). Plaintiffs' preservation demand also raises serious concerns because it would require Facebook to retain indefinitely private information on billions of people, including that of users who deleted their Facebook accounts with the expectation that their private data will be removed from Facebook's systems within 90 days. *See How Do I Permanently Delete My Facebook Account?*, Facebook, https://www.facebook.com/help/224562897555674 (last visited May 10, 2019); *Terms of Service* § 3.3.1, Facebook (Apr. 19, 2018) https://www.facebook.com/terms.php. Preservation and production of this (irrelevant) data would be unreasonable given these significant privacy issues and the SCA's statutory prohibition.

As for the scope, even a snapshot in time—the only type of "snapshot" Plaintiffs have proposed—would still involve billions of users on any given day. Facebook suggested that instead the parties start by looking at the Potential Reach estimates that Plaintiffs allege they relied upon and basic information related to their alleged ad campaigns, such as the date, targeting criteria, and budget—which Facebook requested through formal discovery and in discussions. But Plaintiffs have not provided this information and have refused to consider it as a starting point.

Plaintiffs do not need details about every database and repository containing Facebook user data for this case about advertising reach estimates. And they have offered no justification for that needlessly broad request, let alone a justification that would overcome the security risks associated with disclosing such detailed information—a risk Plaintiffs' counsel should fully appreciate given their litigation against "corporations [they] believe[] are not doing enough to protect customers' personal information." *MVP: Cohen Milstein's Andrew N. Friedman*, Law360 (Nov. 30, 2018), https://www.cohenmilstein.com/sites/default/files/MVP%20Cohen%20Milstein%27s%20Andrew%20N.%20Friedman.pdf. Contrary to Plaintiffs' assertion otherwise, *see* Letter at 3, Facebook has repeatedly sought to reach a reasonable and proportional resolution on this issue. For example, Facebook proposed that if Plaintiffs have questions about the data sources for documents and information produced, the parties could discuss the appropriate way to provide such information—as opposed to Facebook disclosing details about the storage of user data untethered to any specific documents or information relevant to the case. Plaintiffs rejected Facebook's proposal and refused to narrow their request in any way—further confirming that their demands are unreasonable and disproportionate to the needs of the case.

For these reasons, we respectfully request that the Court deny Plaintiffs' requested relief.

Respectfully submitted,

/s/ Elizabeth L. Deeley
Elizabeth L. Deeley (Counsel for Facebook, Inc.)
of LATHAM & WATKINS LLP