LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
  elizabeth.deeley@lw.com
Nicole C. Valco (CA Bar No. 258506)
  nicole.valco@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Susan E. Engel (*pro hac vice*)
  susan.engel@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

Hilary H. Mattis (CA Bar No. 271498)
  hilary.mattis@lw.com
140 Scott Drive
Menlo Park, CA  94025-1008
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600

*Attorneys for Defendant Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIELLE A. SINGER, PROJECT THERAPY, LLC (d/b/a THERAPY THREADS), HOLLY DEAN, DZ RESERVE, and CAIN MAXWELL (d/b/a MAX MARTIALIS), individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:18-cv-04978 JD<br><br>**FACEBOOK, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:  October 17, 2019<br>Time: 10:00 a.m.<br>Court: Courtroom 11, 19th Floor<br>Hon.   James Donato |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Plaintiffs Still Fail To State A Claim For Breach Of Contract. ............................ 2

        1. Plaintiffs Fail To Allege A Contractual Obligation. ................................. 2

            a. Reach Estimates Are Not A Contract Term. ................................. 2

            b. Plaintiffs Do Not Identify Their Own Reach Estimates. ............................................................................... 5

        2. Plaintiffs Fail To Allege A Breach. ........................................................... 6

        3. Plaintiffs Fail To Allege Damages. ........................................................... 7

    B. Plaintiffs Still Fail To State An Implied Covenant Claim. .................................... 7

    C. Plaintiffs Still Fail To State A Claim For Quasi-Contract. .................................... 9

    D. Claims Based On Ads Outside The Limitations Period Are Time-Barred. .................................................................................................................. 10

    E. Plaintiffs And Mr. Maxwell Lack Standing To Assert Any New UCL Claims. ........................................................................................................ 10

III. CONCLUSION ............................................................................................................. 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AdTrader, Inc. v. Google LLC*,
    2018 WL 3428525 (N.D. Cal. July 13, 2018) ..................................................................... 8

*Ardente, Inc. v. Shanley*,
    2010 WL 546485 (N.D. Cal. Feb. 10, 2010) ................................................................... 5, 9

*Ball v. Johanns*,
    2008 WL 269069 (E.D. Cal. Jan. 29, 2008) ...................................................................... 9

*Block v. eBay, Inc.*,
    747 F.3d 1135 (9th Cir. 2014) .......................................................................................... 4

*Celador Int'l Ltd. v. Walt Disney Co.*,
    347 F. Supp. 2d 846 (C.D. Cal. 2004) .............................................................................. 8

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
    2013 WL 57861 (N.D. Cal. Jan. 3, 2013) ......................................................................... 9

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) .............................................................................. 4

*Emp'rs Reinsurance Co. v. Superior Court*,
    161 Cal. App. 4th 906 (2008) ........................................................................................... 4

*In re Facebook, Inc., PPC Advert. Litig.*,
    282 F.R.D. 446 (N.D. Cal. 2012), *aff'd sub nom.*, *Fox Test Prep v. Facebook,
    Inc.*, 588 F. App'x 733 (9th Cir. 2014) ......................................................................... 3, 4

*Forster v. Wells Fargo Bank, N.A.*,
    2018 WL 509967 (N.D. Cal. Jan. 23, 2018) ..................................................................... 6

*Guz v. Bechtel Nat. Inc.*,
    24 Cal. 4th 317 (2000) ...................................................................................................... 8

*Haskins v. Symantec Corp.*,
    2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) .................................................................... 6

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................................... 2, 10

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
    44 Cal. App. 4th 194 (1996) ............................................................................................. 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

*Lennar Mare Island, LLC v. Steadfast Insurance Co.*,
   176 F. Supp. 3d 949 (E.D. Cal. 2016) ................................................................................. 4

*Letizia v. Facebook Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) ....................................................................... 5, 8, 9

*Marsu, B.V. v. Walt Disney Co.*,
   185 F.3d 932 (9th Cir. 1999) ................................................................................................ 8

*NovelPoster v. Javitch Canfield Grp.*,
   2014 WL 5687344 (N.D. Cal. Nov. 4, 2014) ....................................................................... 5

*Pasadena Live v. City of Pasadena*,
   114 Cal. App. 4th 1089 (2004) ............................................................................................ 8

*R Power Biofuels, LLC v. Chemex LLC*,
   2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ..................................................................... 9

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
   11 Cal. App. 4th 1026 (1992), *reh'g denied and opinion modified* (Jan. 6,
   1993), *as modified on denial of reh'g* (Mar. 25, 1993) .................................................. 7, 8

*Starbucks Corp. v. Amcor Packaging Distribution*,
   2016 WL 3543371 (E.D. Cal. June 24, 2016) ..................................................................... 4

*Young v. Facebook, Inc.*,
   2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ..................................................................... 3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

## I. INTRODUCTION

In its dismissal order, the Court granted Plaintiffs an opportunity to replead their contract claims but instructed Plaintiffs to specify "what the contract terms were, how they were breached, and how plaintiffs were damaged and in what amount." MTD Order at 1. The Second Amended Consolidated Class Action Complaint ("SAC" or "Complaint") ignores that direction.[1] Plaintiffs rehash the same arguments the Court already rejected. Even worse, they now admit that they do not know and have not alleged the particular Potential Reach or Estimated Daily Reach estimates (together, "reach estimates") that appeared on Ads Manager for any of their own ad campaigns and that purportedly form part of each of their contracts. Opp. 2 n.2 (admitting the 240 million estimate is an "example" "not from our clients"). Plaintiffs' contract-based and new UCL claims should be dismissed with prejudice on this ground alone, as well as for the following reasons.

First, Plaintiffs' contract claim fails because they do not identify any contractual obligation that Facebook breached or that caused them any harm. Reach estimates are not a provision in Facebook's integrated Terms of Service ("Terms"), and they cannot be read into the contract because Facebook explicitly "do[es] not guarantee the reach or performance that [an advertiser's] ads will receive." Ex. L ("SSAT") § 8. In the face of this contractual disclaimer, Plaintiffs now admit that reach estimates are not a promise of how many people might actually see an ad. Opp. at. 6. The number of people an ad reaches depends on an advertiser's budget and the quality of an ad, SAC Ex. 1 at 2; Ex. B at 2, and an advertiser is *charged only for the ads actually delivered*, Ex. C at 2. Plaintiffs' admission defeats their claim: without any promise from Facebook of how many people an ad might reach, they do not and cannot explain how they suffered any harm from an estimate that was too high—*e.g.*, 100 million Potential Reach instead of 80 million—when they admit Facebook did not promise delivery of 100 million (or 80 million) ads.

Second, Plaintiffs' implied covenant claim fails because Plaintiffs still have not identified any contractual obligation requiring Facebook to provide reach estimates that was allegedly frustrated, and in any event, it is duplicative of the contract claim.

---

[1] Unless otherwise stated, all defined terms have the same meaning as in Facebook's Motion To Dismiss The Second Amended Consolidated Class Action Complaint ("Mot." or "Motion"), Dkt. 103. Plaintiffs' opposition brief, Dkt. 118, is cited herein as "Opp."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

Third, Plaintiffs' quasi-contract claim fails because it is barred by the parties' express contract, which governs the same subject matter—Facebook's provision of advertising services.

Fourth, Plaintiffs' new UCL claims—which are based solely on Potential Reach estimates—fail because Plaintiffs do not plead with particularity actual reliance, a prerequisite for statutory standing. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009). Plaintiffs have not identified any Potential Reach estimates they read and relied on for any ad campaign whatsoever. Instead, Plaintiffs continue to rely solely on hypothetical Potential Reach estimates generated by Plaintiffs' counsel.

## II.   ARGUMENT

### A.   Plaintiffs Still Fail To State A Claim For Breach Of Contract.

The Court should again dismiss Plaintiffs' contract claim because Plaintiffs still do not identify the terms of the contract, how they were breached, or any damage. MTD Order at 1.

#### 1.   Plaintiffs Fail To Allege A Contractual Obligation.

Instead of alleging new facts, the SAC doubles down on the same deficiencies and continues to allege that the relevant contract terms are "Potential Reach and Estimated Daily Results Reach." SAC ¶ 120. Plaintiffs still have not (a) identified a contractual obligation, or (b) identified the content of any reach estimates for their ad campaigns.

##### a.   Reach Estimates Are Not A Contract Term.

**Reach estimates are not part of advertisers' fully integrated contracts.** Plaintiffs admit that courts must apply the "language of the contract," Opp. at 5, but largely ignore that directive. The Terms contain (a) an integration clause, Ex. G ("TOS") § 4.5.1 ("These Terms … make up the entire agreement between you and Facebook, Inc. regarding your use of our Products."), and (b) no obligations relating to reach estimates.[2] That alone should end the inquiry. But the Terms also provide that if an advertiser uses any Facebook product that is "governed by supplemental terms," those terms also "become part of our agreement." *Id.* § 4.5.2. Facebook's "self-serve advertising interfaces"—*i.e.*, Ads Manager—are governed by the Self-Serve Ad Terms, *id.* § 5;

---

[2] Plaintiffs do no dispute that they agreed to the Terms and the incorporated SSAT when they purchased ads, or that the Terms contain an integration clause.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

SSAT § 1.  The SSAT are expressly incorporated into the Terms, TOS §§ 4.5.2, 5, and they include a term expressly *disclaiming* any promise of how many people ads will reach:  Facebook "do[es] not guarantee the reach or performance that your ads will receive, such as the number of people who will see your ads or the number of clicks your ads will get," SSAT § 8.  That too is fatal.[3]

**Plaintiffs' recycled arguments still fail.**  Plaintiffs advance several arguments that the Court has already rejected.  These fail again.

*First*, Plaintiffs claim that reach estimates are part of the contract because they appear on Ads Manager alongside other terms like an advertiser's budget, which is part of the contract.  Opp. at 5.  This is the same argument Plaintiffs already made (largely copied from their prior opposition brief[4]), and it still fails due to the integrated Terms.  If, as Plaintiffs contend, any portion of Ads Manager—which people use *before* making a purchase and forming a contract—is part of the contract, then that would eviscerate the integration clause.  *See In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 457 (N.D. Cal. 2012), *aff'd sub nom.*, *Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014) ("The SRR contains an integration clause, which precludes a finding that the 'click definition' statements outside the SRR can be used to impose additional contractual obligations on Facebook.").[5]

*Second*, Plaintiffs argue that reach estimates can be read into the contract because they are *consistent with* Facebook's disclaimer in the SSAT—which are expressly incorporated into the Terms—that Facebook does *not* guarantee how many people an ad will reach.  SSAT § 8.  That argument makes no sense and begs the question:  what are Plaintiffs complaining about?  If Plaintiffs (a) now admit Facebook did not promise that its ads would reach the number of people

---

[3] Plaintiffs' attempt to distinguish *Young v. Facebook, Inc.*, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) is unavailing.  There, the court applied the predecessor to Facebook's Terms of Service and held that there was no express contractual obligation giving rise to the claim (like here) and that, to the contrary, the contract included an express disclaimer (also like here).

[4] The budget an advertiser selects in Ads Manager is only part of the contract because it is expressly incorporated as a term into the SSAT, SSAT § 1 (incorporating "the amount you want to spend"), not because it appears on the Ads Manager webpage.

[5] Contrary to Plaintiffs' incorrect reading of *In re Facebook PPC Advertising*, Opp. at 6, that court squarely rejected an effort "to add terms" to Facebook's integrated contract where the terms appeared in "industry standards" that were not referenced or linked in the contract and to which advertisers would not even necessarily have been "exposed."  282 F.R.D. at 456-58.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

1  estimated, Opp. at 6, and (b) already admitted they were not charged for a single ad that was not
2  delivered, Dkt. 68 at 7, then Plaintiffs have not alleged any theory of how they suffered any harm
3  from seeing a reach estimate that was too high. *See infra* Section II.3 (discussing inadequate harm
4  allegations).

5  In fact, if, as Plaintiffs allege, reach estimates only "tell advertisers 'how many people are
6  in an ad set's target audience,'" Opp. at 6 (quoting SAC ¶¶ 23-26, 38, 40), then they *do not promise*
7  *anything at all*. *See Block v. eBay, Inc.*, 747 F.3d 1135, 1138-39 (9th Cir. 2014) (holding that
8  description of eBay marketplace was not a promise about what eBay would or would not do);
9  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 931 (N.D. Cal. 2012) (holding that statement in the
10 iPhone User Guide about how the iPhone's signal meter can be used was merely a description that
11 "include[d] no 'promises' which plaintiff could have 'accepted'"). Plaintiffs are alleging only that
12 reach estimates told advertisers "the number of people *eligible* to view the ad based on selected
13 criteria." Opp. at 7 (emphasis added). That is not a promise to deliver an ad to anyone.

14 *Third*, Plaintiffs argue that reach estimates are "supplemental terms," as that phrase is used
15 in the Terms. Opp. at 6. Not so. The Terms explain that when people use products "governed by
16 supplemental terms," those terms "become part of our agreement with you." TOS §§ 4.5.2, 5. As
17 noted, the supplemental terms that govern use of Ads Manager are the Self-Serve Ad Terms (*i.e.*,
18 SSAT), which do not include reach estimates.

19 *Finally,* Plaintiffs fall back on an argument that Facebook's provision of reach estimates is
20 a "course of performance" creating a contractual obligation to provide reach estimates. Opp. at 7-
21 8; *see also* Dkt. 68 at 12. But course of performance is extrinsic evidence of "the parties' actions
22 *in carrying out* the contract at issue," *Starbucks Corp. v. Amcor Packaging Distribution*, 2016 WL
23 3543371, at *7 n.7 (E.D. Cal. June 24, 2016), and is offered to explain or supplement the terms of
24 a contract, *see Lennar Mare Island, LLC v. Steadfast Insurance Co.*, 176 F. Supp. 3d 949, 964
25 (E.D. Cal. 2016). Reach estimates are no such thing. Plaintiffs do not point to any "specific
26 contract language" that reach estimates explain or supplement. *Lennar Mare Island*, 176 F. Supp.
27 3d at 964. Nor can they, since they are "improperly seeking to *add terms* to the [integrated]
28 contract." *In re Facebook, Inc. PPC Advert. Litig.*, 282 F.R.D at 457 (emphasis added). Moreover,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

reach estimates are provided *before* a contract is formed, SAC ¶¶ 3, 35, 37, not "pursuant to the contract to be interpreted," *Emp'rs Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 911 (2008). This stands in contrast to *Letizia v. Facebook Inc.*, which involved metrics showing how "advertisements [were] performing" *after* advertisers entered into ad contracts and Facebook began showing ads. 267 F. Supp. 3d 1235, 1240-41, 1245, 1252 (N.D. Cal. 2017).[6]

          b.    <u>Plaintiffs Do Not Identify Their Own Reach Estimates</u>.

Even if reach estimates were contractual obligations (they are not), the SAC should still be dismissed because no Plaintiff identifies any reach estimate that was generated for any of their own ad campaigns. Plaintiffs now admit that—contrary to their representation to the Court at the prior motion to dismiss hearing—the alleged 240 million Potential Reach estimate is not a term in any of their contracts. Rather, like every other reach estimate alleged in the SAC, it is just "an example" of a reach estimate *someone else* (a lawyer) generated in designing a different ad campaign. Opp. at 2 n.2; *see also* SAC ¶ 33 fig.1 (showing reach estimates generated by Plaintiffs' lawyer).[7] Plaintiffs have also admitted that they do not know any of their own estimates.[8] If so, then Plaintiffs had no basis alleging that the reach estimates in **their own contracts** were too high or inconsistent with the purportedly correct reach estimates. It is well settled that there is no standing to sue for breach of someone else's contract (let alone a hypothetical contract). *See NovelPoster v. Javitch Canfield Grp.*, 2014 WL 5687344, at *4-5 (N.D. Cal. Nov. 4, 2014).

Plaintiffs attempt to dispute that they misled the Court at the motion to dismiss hearing, but the record is clear: when the Court asked whether Plaintiffs' counsel was "saying your client would have seen 240 million in potential reach and then an estimated daily results of 14- to 89,000. And they would have said, Great, count me in. I'm going to sign up," Plaintiffs' counsel responded, "Well, it's one of the factors, a significant factor in their purchasing decision." May 16, 2019 Hr'g

---

[6] Plaintiffs make no argument about "course of dealing" or "usage of trade," Mot. at 8, and have thus waived it. *See Ardente, Inc. v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010).

[7] Plaintiffs also assert that "the relevant contract terms are also attached as Exhibit 1 to the SAC." Opp. at 1. But Exhibit 1 is a screenshot of an Ads Manager webpage that the Court already considered. SAC ¶ 37 n.22. Plaintiffs do not dispute that Exhibit 1, like the other Ads Manager screenshots in the SAC, is merely an exemplar containing reach estimates generated by lawyers.

[8] Aug. 8, 2019 Hr'g Tr., Dkt. 116 at 14 ("MR. KAFKA: They want the specific historical number on each day they saw it. And what we've said is we don't currently know that information.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

Tr., Dkt. 79 at 11. Plaintiffs now acknowledge in a footnote that the accurate answer to the Court's question is "no," that none of them saw the hypothetical 240 million estimate. Opp. at 2 n.2.

Nor can Plaintiffs avoid identifying their own reach estimates by purporting to plead the "legal effect" of a contract with hypothetical reach estimates. Pleading the legal effect of a contract requires that a plaintiff allege "the substance of its relevant terms." *Forster v. Wells Fargo Bank, N.A.*, 2018 WL 509967, at *4 (N.D. Cal. Jan. 23, 2018) (dismissing contract claim for failure to plead legal effect where plaintiff failed to allege "which of the many loan modification applications referenced in the complaint was the subject of the written contract"). Plaintiffs do nothing of the sort. They do not allege the reach estimates they claim were too high, nor do they offer a "careful analysis" of the Ads Manager webpages that allegedly form part of each of their contracts. *Id.* (pleading legal effect "requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions"). They also do not describe the targeting criteria they each selected on Ads Manager or the budget each of them entered. Plaintiffs' allegations, which are nearly identical to those already rejected, do not give Facebook "fair notice" because they do not identify the "substance of the relevant terms," and Facebook has no way of defending against a claim that unidentified estimates overstated some unidentified purportedly correct estimates. *Haskins v. Symantec Corp.*, 2013 WL 6234610, at *10 (N.D. Cal. Dec. 2, 2013) (dismissing contract claim for failure to plead legal effect where plaintiff attempted to "cobble together the terms of an implied contract" by alleging *inter alia* the terms of an ad campaign and language on website).

**2.   Plaintiffs Fail To Allege A Breach.**

The Court dismissed the CAC for failure to provide "fair notice" of how Facebook breached any obligation to provide them accurate reach estimates. MTD Order at 1. A plaintiff cannot complain that a defendant breached a provision of the contract by providing a number that was too high without identifying either the "inflated" number or Plaintiffs' theory of what the number should have been. The SAC offers no new facts, and for good reason: Plaintiffs do not know the reach estimates that they claim were breached. *See* Aug. 8, 2019 Hr'g Tr. at 14. And Plaintiffs long ago abandoned their allegation that the reach estimates should have matched census

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

1    data, which they had to do given Facebook's disclosures to advertisers. Dkt. 68 at 13 (admitting
2    that "Plaintiffs do not allege Facebook's reach metrics should have matched the Census").
3    Plaintiffs cannot plausibly allege that Facebook breached their reach estimates when they have not
4    even identified those estimates, *see supra* Section II.A.1.b, or the estimates they claim they should
5    have received.

### 3. Plaintiffs Fail To Allege Damages.

Plaintiffs do not even try to cure their failure to allege "how plaintiffs were damaged and in what amount." MTD Order at 1. The SAC includes the same conclusory allegation that Plaintiffs "did not receive the full benefit of their bargain, and instead received advertising services that were less valuable tha[n] what they paid for." SAC ¶ 124. Worse still, Plaintiffs now admit that they do not interpret the reach estimates as promising that a certain number of people might see their ads. Opp. at 6. Over one year into this case, Plaintiffs still have not explained how they were damaged—and their admission precludes them from doing so: (a) Facebook does not charge advertisers "based on" reach numbers (only for ads delivered), Ex. B at 2; Ex. C at 2; (b) Plaintiffs do not allege that Facebook charged them for more ads than it delivered; and (c) reach estimates do not promise delivery of any number of ads, Opp. at 6. Plaintiffs insist that reach estimates are "valuable promises [] regardless of the number of people who end up viewing an advertisement," Opp. at 6, but Plaintiffs do not allege any facts to substantiate the purported "value" from those reach estimates, much less the purported harm resulting from any breach.[9]

### B. Plaintiffs Still Fail To State An Implied Covenant Claim.

The Court did not specifically address the implied covenant claim in its dismissal order, but the order is reasonably read as dismissing it because it is black letter law an implied covenant

---

[9] Plaintiffs argue that the requirement in Facebook's Community Payment Terms ("Payment Terms")—which are also expressly incorporated into the Terms, *see* TOS §§ 4.5.2, 5—that advertisers dispute any "unauthorized or otherwise problematic transaction" within 30 days does not apply because Plaintiffs are not challenging "unauthorized or otherwise problematic *transactions*." Opp. at 11 n.8. But that only highlights the lack of harm. Even assuming Plaintiffs "did not receive the full benefit of their bargain, and instead received advertising services that were less valuable tha[n] what they paid for," SAC ¶ 124, that—by Plaintiffs' own admission—had no impact on any *transaction* or payment. Plaintiffs' assertion that the Payment Terms do not govern advertisement purchases, Opp. at 11 n.8, is simply wrong. The SSAT, which apply to all orders placed on Ads Manager, expressly require advertisers to "comply with [Facebook's] Payment Terms." SSAT §§ 1, 4.a.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

claim "rests upon the existence of some specific contractual obligation," *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992), *reh'g denied and opinion modified* (Jan. 6, 1993), *as modified on denial of reh'g* (Mar. 25, 1993), and the Court found no such provision. Plaintiffs' implied covenant claim fails for multiple reasons.

*First*, Plaintiffs have not identified a specific contract term that was allegedly frustrated. Plaintiffs argue that they need not identify a specific contract provision that was *breached*, Opp. at 12, but that is beside the point. An implied covenant claim does not require the *breach* of a specific contract provision, but it does require the *existence* of a specific contract provision that was frustrated. *See Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) (finding sufficient evidence that the defendant "breached the implied covenant of good faith and fair dealing *with respect to its [contractual] obligation to merchandise Marsupilami*." (emphasis added)); *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *3 (N.D. Cal. July 13, 2018) (citations omitted) (implied covenant "is limited to assuring compliance with the express terms of the contract"). Plaintiffs have not identified any contractual obligation to provide reach estimates for all the reasons discussed *supra* Section II.A.1.a, and therefore cannot state an implied covenant claim. *See also Racine & Laramie*, 11 Cal. App. 4th at 1032 (implied covenant "cannot be extended to create obligations not contemplated in the contract").[10]

*Second*, the implied covenant claim is duplicative of Plaintiffs' contract claim. Plaintiffs purport to rely on a so-called bad faith exception, Opp. at 12, but the SAC does not plead bad faith.[11] And Plaintiffs' authority recognizes that if the two claims "cannot be distinguished, then

---

[10] Plaintiffs belatedly try to latch the implied covenant claim onto "course of performance," which fails for the reasons stated *supra* Section II.A.1.a, and also because an implied covenant claim "is limited to assuring compliance with the *express terms* of the contract," *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (emphasis in original). *Letizia* did not involve an implied covenant claim and is therefore inapt; in any event, *Letizia* found that the contract *did* contemplate a particular duty, 267 F. Supp. 3d at 1252-53, whereas here, the Terms and the SSAT contemplate *no* duty related to reach estimates. Plaintiffs also try to latch the claim onto a totally different, unalleged SSAT term that purportedly "promised advertisers they could 'target your desired audience by buying ads…' SSAT, at 1." Opp. at 12. This new claim is not alleged in the SAC and lacks any supporting theory or allegations.

[11] Nor would the bad-faith exception apply here. The California Supreme Court explained in *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 353 (2000), that an implied covenant claim cannot stand (even with bad faith) where an employment contract allows an employer to terminate an employee at

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

1  the natural conclusion is that they are duplicative." *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F.
2  Supp. 2d 846, 853 (C.D. Cal. 2004). That is exactly the case here. The basis for Plaintiffs' contract
3  claim is that Facebook provided them with inflated reach estimates, SAC ¶ 123, and the basis for
4  the implied covenant claim is that Facebook failed to ensure the accuracy of those estimates, *id.* ¶
5  135. The implied covenant claim raises only potential "errors causing the" purported breach of
6  contract, *i.e.*, reach estimate inflation. *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002,
7  at *18 (N.D. Cal. Nov. 11, 2016). These allegations "are part of the facts underpinning the
8  [alleged] breach of contract," and do not raise claims independent of it. *Id.*

   **C.  Plaintiffs Still Fail To State A Claim For Quasi-Contract.**

   Plaintiffs re-allege the same quasi-contract allegations, which again fail.

   *First*, Plaintiffs cannot plead their quasi-contract claim in the alternative, Opp. at 1, because an express contract bars a quasi-contract claim if it governs "the same *subject matter*." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996) (emphasis added). Here, the subject matter of the parties' contract is not the reach estimates (which are presented *before* a contract is even formed); it is the parties' advertising relationship. SSAT § 1 (applying to an advertiser's use of Ads Manager to create and purchase ads); *see also Letizia*, 267 F. Supp. 3d at 1253-54 ("The mere fact that Facebook's contracts do not expressly mention the two advertising metrics at issue here does not mean the contract does not govern the subject matter at issue here—i.e., Facebook's advertising services.") (dismissing quasi-contract claim).[12]

   *Second*, Plaintiffs offer no response to Facebook's argument, "and therefore concede[] it through silence," *Ardente*, 2010 WL 546485, at *6, that "Plaintiffs do not and cannot allege a 'receipt of a benefit and unjust retention of the benefit at the expense of' Plaintiffs, because reach estimates do *not* affect pricing, payments or delivery," Mot. at 13 (citation omitted).

---

will. In a footnote, the Supreme Court clarified that the "covenant prevents a party from acting in bad faith to frustrate the contract's *actual* benefits," and therefore the covenant could be violated "if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned." *Id.* n. 18.

[12] Neither *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2013 WL 57861 (N.D. Cal. Jan. 3, 2013) nor *Ball v. Johanns*, 2008 WL 269069 (E.D. Cal. Jan. 29, 2008), commands a different result. Not only did *Circle Click* involve New York law, but both cases acknowledged ambiguity in terms of whether the dispute was governed by an express contract.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

**D.     Claims Based On Ads Outside The Limitations Period Are Time-Barred.**

Plaintiffs admit their claims are partially time-barred, Opp. 14, and thus at the very least, the Court should dismiss their claims to the extent based on ad campaigns that began prior to (i) August 15, 2014 for UCL and contract-based claims, and (ii) August 15, 2016 for quasi-contract claims to the extent these claims survive.  SAC ¶¶ 71, 78, 98.

**E.     Plaintiffs And Mr. Maxwell Lack Standing To Assert Any New UCL Claims.**

Plaintiffs defend their standing to bring new UCL claims, SAC ¶¶ 14, 71, 84, 98, on the ground that the Court sustained their prior UCL claims.  Opp. at 14-15.  But to the extent that the Court's decision to allow four of the named Plaintiffs' UCL claims to proceed was premised on Plaintiffs' counsel's suggestion that Plaintiffs *had relied on* the 240 million Potential Reach estimate alleged in the CAC, *see* May 16, 2019 Hr'g Tr. at 11 (suggesting that the estimates were "a significant factor in their purchasing decision"), Facebook identified that misrepresentation in its opening motion, and Plaintiffs now admit—in a footnote—that the estimates are from their lawyers, Opp. at 2 n.2, and further admitted that they *do not know* the Potential Reach estimates they purportedly read and relied upon, *see* Aug. 8, 2019 Hr'g Tr. at 14.  Plaintiffs' allegations that they read and relied upon Potential Reach estimates (CAC ¶¶ 69, 76, 82, 90) are thus entirely without foundation.

This is not a factual issue for further discovery or summary judgment.  The Ninth Circuit has made clear it is a pleading requirement:  Plaintiffs cannot litigate their claims without alleging with particularity that they "read and relied upon" an alleged misrepresentation.  *Kearns*, 567 F.3d at 1125-26 (affirming dismissal for failure to identify specific statements plaintiff saw and relied upon, or circumstances surrounding them).  Plaintiffs' allegations of hypothetical reliance do not plead actual reliance.  At the very least, Plaintiffs' new UCL claims should be dismissed.[13]

**III.     CONCLUSION**

For these reasons, the Court should grant Facebook's motion to dismiss the SAC with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

---

[13] To the extent the Court has any concern about the representation made by Plaintiffs' counsel and the effect of that misrepresentation on the Court's order on Facebook's prior motion to dismiss, Facebook would seek leave of the Court to reconsider that order.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD

| | |
|---|---|
| Dated: September 6, 2019 | LATHAM & WATKINS LLP<br><br>By:  /s/ Elizabeth L. Deeley<br>Elizabeth L. Deeley (CA Bar No. 230798)<br>Nicole C. Valco (CA Bar No. 258506)<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA  94111-6538<br>Telephone: +1.415.391.0600<br>Facsimile: +1.415.395.8095<br>*elizabeth.deeley@lw.com*<br>*nicole.valco@lw.com*<br><br>Susan E. Engel (*pro hac vice*)<br>555 Eleventh Street, N.W., Suite 1000<br>Washington, D.C. 20004-1304<br>Telephone: +1.202.637.2200<br>Facsimile: +1.202.637.2201<br>*susan.engel@lw.com*<br><br>Hilary H. Mattis (CA Bar No. 271498)<br>140 Scott Drive<br>Menlo Park, CA 94025-1008<br>Telephone: +1.650.328.4600<br>Facsimile: +1.650.463.2600<br>*hilary.mattis@lw.com*<br><br>*Attorneys for Defendant Facebook, Inc.* |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

FACEBOOK'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:18-cv-04978-JD