LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
　elizabeth.deeley@lw.com
Nicole C. Valco (CA Bar No. 258506)
　nicole.valco@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Susan E. Engel (*pro hac vice*)
　susan.engel@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

Hilary H. Mattis (CA Bar No. 271498)
　hilary.mattis@lw.com
140 Scott Drive
Menlo Park, CA 94025
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DZ RESERVE, and CAIN MAXWELL (d/b/a MAX MARTIALIS), individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>FACEBOOK, INC.,<br><br>　　　　　　Defendant. | Case No. 3:18-cv-04978 JD<br><br>**DECLARATION OF NICOLE C. VALCO IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED COMPLAINT**<br><br>Hon. James Donato |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

VALCO DECL. ISO ADMIN. MOT. TO SEAL
PORTIONS OF PLFS' MTD OPP.
CASE NO. 3:18-cv-04978 JD

I, Nicole C. Valco, declare as follows:

1. I am a partner with the law firm Latham & Watkins LLP and am counsel for Defendant Facebook, Inc. ("Facebook"), in the above referenced litigation. I am licensed to practice law in the State of California and am admitted to practice before this Court. I have personal knowledge of the facts set forth herein or know of such facts from my review of the file in this case, and if called upon to do so could competently testify as follows.

2. I submit this declaration pursuant to Civil Local Rule 79-5(e) in support of Plaintiffs' Administrative Motion to File Under Seal Portions of Plaintiffs' Opposition to Defendant's Motion to Dismiss the Third Amended Class Action Consolidated Complaint (Dkt. 183) (the "Administrative Motion").

3. Pursuant to Civil Local Rule 79-5(e), Plaintiffs redact portions of their Opposition to Defendant's Motion to Dismiss the Third Amended Class Action Consolidated Complaint (Dkts. 182, 183-3, 183-4) ("Motion to Dismiss Opposition"), some of which contain information Facebook produced to Plaintiffs in the course of discovery and designated as Highly Confidential – Attorneys' Eyes Only under the parties' Stipulated Protective Order (Dkts. 81, 85). Facebook requests that the Court maintain under seal certain highly confidential information in Plaintiffs' Motion to Dismiss Opposition, which specifically appears at the following Page and Line numbers:

   a. Page 1, Lines 8–11, 13–14, 15–17, 18–19, 19–20, and 27
   b. Page 2, Lines 1–2, 4–5, and 24–25
   c. Page 3, Lines 11–13, 17–18, 19–20, 20–21, and 21–22
   d. Page 4, Lines 3–4, 5, 6–9, and 10–12
   e. Page 4, Line 14
   f. Page 9, Lines 11–13
   g. Page 10, Lines 23–25 and 26–27
   h. Page 11, Lines 20–22
   i. Page 12, Lines 19–21

4. The standard for sealing materials in a dispositive motion like Plaintiffs' Motion to Dismiss Opposition is the "compelling reasons" standard. *See Kamakana v. City & Cnty. of*

*Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006). The "compelling reasons" standard requires the party to "articulate[] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178–79 (internal quotation marks and citation omitted). "'Compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Further, "while protecting the public's interest in access to the courts, [the court] must remain mindful of the parties' right to access those same courts upon terms which will not unduly harm their competitive interest." *Space Data Corp. v. X*, Case No. 16-cv-03260-BLF, 2017 WL 11503233, at *1 (N.D. Cal. Sept. 25, 2017) (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1228–29 (Fed. Cir. 2013)). Compelling reasons support maintenance of the identified redactions under seal.

5. Facebook respectfully requests that the below-referenced portions of the TACC be maintained under seal:

| Text to be Sealed | Reason for Designation |
|---|---|
| Page 1, Lines: 8–11: Text after "stated:" <br><br> Page 1, Line 27: Text after "documents show" <br><br> Page 2, Lines 24–25: Text between "*Id.* ¶ 61" on Line 24 and "*Id.* ¶ 24" on Line 25 <br><br> Page 6, Line 14: Text between "this is a tool" and "TAC ¶ 61." <br><br> Page 10, Lines 23–24: Text in sentence after "Facebook acknowledges advertisers" | These lines contain selective excerpts from and characterizations of a Facebook internal document that reveal confidential information and discussions about Facebook's assessment of its competitively sensitive Potential Reach estimates for advertisers. *See also* Declaration of Nikki Stitt Sokol in Support of Plaintiffs' Administrative Motion to File Under Seal Portions of Plaintiffs' Third Amended Consolidated Complaint (Dkt. 169-1) ("Sokol Declaration") ¶ 6. |

| Text to be Sealed | Reason for Designation |
|---|---|
| Page 12, Lines 19–21: Text between "Facebook recognizes" and "*Id.* ¶ 61." | |
| Page 1, Lines 13–14: Text after "allegations here," except not " – relied upon in Plaintiffs' Complaint –"<br><br>Page 3, Lines 11–13: Text between "Census numbers," and "*Id.* ¶ 65." | These lines contain selective excerpts from and characterizations of Facebook internal documents that reveal confidential information and discussions about Facebook's internal assessment of its competitively sensitive Potential Reach estimates for advertisers, including in response to third-party reports and communications, and the Potential Reach estimate's underlying methodology and results. *See also* Sokol Declaration ¶ 7. |
| Page 1, Lines 15–16: Text in sentence after "was largely due to"<br><br>Page 2, Lines 1–2: Text between "demonstrate it" and comma on Line 2<br><br>Page 4, Line 3–4: Text between "Facebook made" and "*Id.* ¶ 67." | These lines contain selective excerpts from and characterizations of Facebook internal documents that reveal confidential information and discussions about Facebook's internal assessment of its competitively sensitive Potential Reach estimates for advertisers, including in response to third-party reports and communications; the Potential Reach estimate's underlying methodology and results; contemplated product changes and strategies, including potential revisions to the methodology; and sensitive details about modeling related to potential revision to the methodology. *See also* Sokol Declaration ¶¶ 7, 8. |
| Page 1, Lines 16–17: Text in final sentence of paragraph | These lines contain selective excerpts and characterizations of discussions in Facebook internal documents regarding Facebook's internal assessment of its competitively sensitive Potential Reach estimates for advertisers. These paragraphs reveal confidential information about the Potential Reach estimate's underlying methodology, and contemplated product changes and discussions about any potential costs and revenue impact of those contemplated product changes, which also reflects Facebook's assessment of the Potential Reach estimate's uses. *See also* Sokol Declaration ¶¶ 5, 8. |
| Page 1, Lines 18–19: Text between "knew it was wrong." and "Another employee stated"<br><br>Page 2, Lines 4-5: Text in sentence after "even though" | These lines contain selective excerpts and characterizations of discussions in Facebook internal documents regarding Facebook's internal assessment of its competitively sensitive Potential Reach estimates for advertisers. These paragraphs reveal confidential information about contemplated product changes and discussions about any potential costs and revenue impact of those contemplated product changes, which also reflects Facebook's assessment of the Potential Reach estimate's uses. *See also* Sokol Declaration ¶ 5. |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| Text to be Sealed | Reason for Designation |
|---|---|
| Page 9, Lines 11–13: Text between "fix Potential Reach," and "TAC" | |
| Page 1, Lines 19–20: Text between "Another employee stated" and "The only question"<br><br>Page 2, Line 2: Text in sentence after "the company knew this was" | These lines contain selective excerpts from and characterizations of Facebook internal documents that reveal confidential information and discussions about Facebook's assessment of its competitively sensitive Potential Reach estimates for advertisers, the Potential Reach estimate's underlying methodology and results, and contemplated product changes and strategies, including potential revisions to the methodology. The paragraphs also reveal sensitive details about modeling related to potential revisions to the methodology. *See also* Sokol Declaration ¶ 8. |
| Page 3, Lines 17–18, Text between "Sheryl Sandberg" and "*Id.* ¶ 65." | Internal assessment of Potential reach estimates, including in response to third-party reports and communications; the estimate's underlying methodology and results; contemplated product changes and strategies<br>These lines contain selective excerpts from and characterizations of Facebook internal documents that reveal confidential information and discussions about Facebook's internal assessment of its competitively sensitive Potential Reach estimates for advertisers, including in response to third-party reports and communications; the Potential Reach estimate's underlying methodology and results; and contemplated product changes and strategies, including potential revisions to the methodology. *See also* Sokol Declaration ¶¶ 7, 8. |
| Page 3, Lines 19-20: Text between "(Yaron Fidler) and "*Id.* ¶¶ 80-81."<br><br>Page 4, Lines 5–6: Text in sentence after "analysis found" | These lines contain selective excerpts and characterizations of discussions in Facebook internal documents regarding Facebook's internal assessment of its competitively sensitive Potential Reach estimates for advertisers. These paragraphs reveal confidential information about the Potential Reach estimate's underlying methodology, and contemplated product changes. The lines also reveal sensitive details about modeling related to potential revisions to the methodology. *See also* Sokol Declaration ¶¶ 5, 8. |
| Page 3, Lines 20-22: Text between "proposal because" and "*Id.* ¶¶ 80-82," and "Fidler responded," and "*Id.* ¶ 82." | These lines contain selective excerpts and characterizations of discussions in Facebook internal documents regarding Facebook's internal assessment of its competitively sensitive Potential Reach estimates for advertisers, including about their use. These paragraphs reveal confidential information about the Potential Reach estimate's underlying methodology, and contemplated product changes, modeling related to those contemplated product changes, and |

| Text to be Sealed | Reason for Designation |
|---|---|
| | discussions about any potential costs and revenue impact of those contemplated product changes. *See also* Sokol Declaration ¶¶ 5, 8. |
| Page 4, Lines 6–9, Text between "Fidler proposed" and "*Id.*" at end of Line 9<br><br>Page 10, Lines 24–25: Full sentence across these lines.<br><br>Page 11, Lines 20–22: Text in sentence after "for Potential Reach" | These lines contain selective excerpts from and characterizations of Facebook internal documents that reveal confidential information and discussions about Facebook's assessment of its competitively sensitive Potential Reach estimates for advertisers, the Potential Reach estimate's underlying methodology and results, and contemplated product changes and strategies, including potential revisions to the methodology and modeling related to the same. The paragraphs also reveal sensitive details about modeling related to potential revisions to the methodology. *See also* Sokol Declaration ¶ 8. |
| Page 4, Lines 10–12, Text in sentence after "Facebook employees"<br><br>Page 10, Lines 26–27: Entire sentence | These lines contain selective excerpts and characterizations of discussions in Facebook internal documents regarding Facebook's internal assessment of its competitively sensitive Potential Reach estimates for advertisers, including about their use. These paragraphs reveal confidential information about the Potential Reach estimate's underlying methodology, and contemplated product changes, modeling related to those contemplated product changes, and discussions about any potential costs and revenue impact of those contemplated product changes. *See also* Sokol Declaration ¶¶ 5, 8. |

6. Facebook treats the details of the information it requests to maintain under seal in Paragraph 5 as confidential and sensitive material, and believes that the public disclosure of this information would cause competitive harm. *See* Sokol Declaration ¶¶ 3, 5–8, 12.

7. There are compelling reasons to seal such "business information that might harm a litigant's competitive strategy." *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 3993147, at *1 (N.D. Cal. June 30, 2015) (quoting *Nixon v. Warner Comm'cns, Inc.*, 435 U.S. 589, 597 (1978)). This recognized protection is broad and extends to "confidential information regarding [a defendant's] products, services, and business practices." *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2016 WL 6091543, at *2 (N.D. Cal. Oct. 19, 2016); *see also Apple Inc. v. Samsung Elecs. Co. Ltd.*, 727 F.3d 114, 1223–24 (Fed. Cir. 2013) (holding under Ninth Circuit's "compelling reasons" standard that district court erred in not

sealing "product-specific information concerning such things as costs, sales, profits, and profit margins"); *Space Data Corp. v. X*, Case No. 16-cv-03260-BLF, 2017 WL 11503233, at *2 (N.D. Cal. Sept. 25, 2017) (granting motion to seal redline comparison of complaints that contained technical proprietary confidential information and business planning and financial information, including trade secrets, and budget and research development plans"); *Algarin v. Maybelline, LLC*, Civil No. 12cv3000 AJB (DHB), 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014) (granting motion to seal information in dispositive motion because disclosure of confidential business material, marketing strategies, and product development plans could result in improper use by competitors); *Rich v. Shrader*, No. 09cv652 AJB (BGS), 2013 WL 6028305, at *3–4 (S.D. Cal. Nov. 13, 2013) (granting application to seal business documents and financial projections, because such information could be utilized by competitors seeking to gain an advantage).

8. Disclosure here also would cause Facebook competitive harm by giving its competitors access to sensitive information associated with the Potential Reach estimates and contemplated changes to those estimates—which Facebook's competitors also provide in some form to advertisers—which they could use to gain an unfair advantage against Facebook by exploiting details about its ad products and contemplated product changes. *See* Sokol Declaration ¶¶ 5–8, 12; *see also Kamakana*, 447 F.3d at 1179 (no right to public access to gratify spite or promote public scandal, or release trade secrets).

9. The likelihood of competitive harm caused by the disclosure of information as described above in Paragraphs 5–8 is even more acute in this case, because Plaintiffs have selectively quoted from and characterized the information in the documents. Such disclosure of incomplete information, preliminary assessments, or misleading characterizations about Facebook's Potential Reach estimates could confuse advertisers and other stakeholders and be misused by Facebook's competitors. In addition, disclosure may chill free and open discussions and analyses of future issues and other contemplated product changes at Facebook, which could cause competitive harm by minimizing the likelihood that such discussions and analyses will take place. *See also* Sokol Declaration ¶ 12.

10. Facebook's proposed redactions, as described in Paragraph 5 and as reflected in the public redacted version of Plaintiffs' Motion to Dismiss Opposition being filed in conjunction with this submission are narrowly tailored to cover only sealable material. *See* N.D. Cal. Civil L.R. 79-5(b).

11. For all the reasons detailed above in Paragraphs 4 through 9, as well as in Paragraphs 5 through 8 and 12 of the Sokol Declaration, compelling reasons exist to shield the information at issue from public disclosure, and Facebook respectfully requests that the redactions described in Paragraph 5 and as reflected in the public redacted version of Plaintiffs' Motion to Dismiss Opposition be maintained under seal.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this Declaration on June 15, 2020, in San Francisco, California.

By: _/s/ Nicole C. Valco_
Nicole C. Valco
*Attorney for Defendant Facebook, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

VALCO DECL. ISO ADMIN. MOT. TO SEAL
PORTIONS OF PLFS' MTD OPP.
CASE NO. 3:18-cv-04978 JD