Pages 1 - 12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO

```
DZ RESERVE, et al,            )
                              )
          Plaintiffs,         )
                              )
  vs.                         ) No. C 18-4978 JD
                              )
FACEBOOK, INC.                )
                              )  San Francisco, California
          Defendant.          )  Thursday
                              )  September 10, 2020
_____)  10:00 a.m.
```

**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES**:

| | |
|---|---|
| **For Plaintiffs:** | COHEN MILSTEIN SELLERS & TOLL PLLC<br>1100 New York Avenue NW<br>Suite 500, West Tower<br>Washington, DC 20005<br>**BY:  GEOFFREY GRABER, ESQ.** |
| | COHEN MILSTEIN SELLERS & TOLL PLLC<br>88 Pine Street<br>14th Floor<br>New York, New York 10005<br>**BY:  ERIC KAFKA, ESQ.** |
| **For Defendant:** | LATHAM & WATKINS LLP<br>505 Montgomery Street<br>Suite 2000<br>San Francisco, California 94111<br>**BY:  ELIZABETH DEELEY, ESQ.**<br>     **MELANIE BLUNSCHI, ESQ.** |
| **Also Present:** | **NIKKI SOKOL**<br>Associate General Counsel - Facebook |

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
           *Official Reporter - US District Court*
           *Computerized Transcription By Eclipse*

```
 1   Thursday - September 10, 2020                        10:10 a.m.
 2                         P R O C E E D I N G S
 3                              ---oOo---
 4           THE CLERK:  Calling Civil 18-4978, DZ Reserves, et al
 5   versus Facebook, Inc.
 6           THE COURT:  I think there is somebody in the -- who
 7   is that?  Kafka?  Is that who we need to let in?
 8           THE CLERK:  No.  I don't know who it is.  They didn't
 9   register, so...
10           THE COURT:  Who is the --
11           THE CLERK:  Let me talk to them.
12           THE COURT:  Okay.  That's Graber.
13           MR. GRABER:  Good morning, Your Honor.
14           THE COURT:  Oh, there he is.  Okay.  All right.
15           THE CLERK:  Kafka, who are you?  E. Kafka?
16           MR. KAFKA:  I'm also with the plaintiffs, but
17   Mr. Graber is lead counsel.
18           THE COURT:  Okay.
19           THE CLERK:  All right.  But we only need one
20   attorney.  Thank you.
21           THE COURT:  All right.  Okay.  We last spoke -- I'm
22   sorry.  Go ahead.
23           THE CLERK:  Let me call the case.
24       Civil 18-4978, DZ Reserves, et al versus Facebook.
25   Counsel for the plaintiff, please state your appearance.
```

1   **MR. GRABER:** Good morning, Your Honor.  Geoffrey
2   Graber from Cohen Milstein on behalf of plaintiffs.
3   **MS. DEELEY:**
4   **THE CLERK:** Counsel for defense.
5   **MS. DEELEY:** Good morning, Your Honor.  Elizabeth
6   Deeley from Latham and Watkins on behalf of Facebook.
7       And I'm joined in the audience, by Nikko Sokol, Associate
8   General Counsel of Facebook, and Melanie Blunschi, my partner
9   with Latham and Watkins on behalf of Facebook.
10  **THE COURT:** Okay.  Now, when we last visited, which
11  was late or not -- late-ish last year, October or so, I think I
12  had dismissed the contract claim with prejudice, and I had
13  taken the quasi contract and covenant of good faith and fair
14  dealing claims under submission.  I was about to get you an
15  order on that and you all agreed, which is great, to amend.
16  And now we're here on the Third Amended Complaint.
17      So to be entirely candid, Ms. Deeley, I actually thought
18  it was -- the briefing was perfectly fine, but I just wanted to
19  give you a chance.  There are just a couple of things you
20  wanted to emphasize.  I would be happy to hear that.
21  **MS. DEELEY:** Thank you, Judge Donato.  I appreciate
22  it.
23      One thing I think it's important to raise in terms of the
24  context of this case is that we're now two years and five
25  complaints into the case, and plaintiffs now make arguments in

defense of their claims that show what Facebook has said from the start.  Plaintiffs were not misled into purchasing advertisements that they -- that they thought would reach more people than they actually reached, and they don't have a plausible theory of harm here.

And let me explain.  From the start of this case plaintiffs have claimed that the potential reach estimates led them to believe that they could reach more people with their ads than they can actually reach.  In fact, in the Third Amended Complaint they allege just that.

In several paragraphs, I can reference a few, Paragraph 123, they claim that potential reach deceived class members into believing that their advertisements could potentially reach more people than their advertisements could actually reach.

In Paragraph 24, same thing -- excuse me, 124.

But plaintiffs now admit in their opposition that Facebook did not mislead plaintiffs about how many people their ads could actually reach and that Facebook only billed them for ads actually reached.

The opposition at page eight says:

> "Plaintiffs never claimed that they were misled about advertisements, ad delivery, i.e., actual reach.  Facebook itself repeatedly stressed the distinction between" --

1      **THE COURT:**  Okay.  Let me just jump in.  Let's have a
2  conversation rather than reading from a script.
3      **MS. DEELEY:**  Sure.  Fair enough.
4      **THE COURT:**  So just give me your highlights.  Let's
5  just talk among friends here.
6      I get all that.  That's all in your briefs.  But is there
7  anything that you wanted to actually emphasize for me?
8      **MS. DEELEY:**  Yeah.  Well, I think what's important --
9      **THE COURT:**  It's okay if you don't, but I just
10 thought I would give you the chance.
11     **MS. DEELEY:**  Fair enough, Your Honor.
12     I think what's important now is the theory shift from
13 potential reach, the potential reach estimates led them to
14 believe something they could actually reach and they couldn't,
15 to now a theory about targeting.  And their targeting theory is
16 nowhere pled in their Third Amended Complaint.
17     We have this shift in focus now to a targeting issue, but
18 plaintiffs never allege anywhere in their Complaint that their
19 targeting was affected in any way.  They never allege how it
20 was affected.  They never allege that they placed a single ad
21 with Facebook or paid for a single ad that was not delivered.
22 They never alleged that they tried to target any particular
23 audience that they didn't actually or were unable to target
24 with their potential reach.  They don't even allege that they
25 tried to reach any particular type of audience, any particular

1  person that they were unable to reach with their ads.
2       I think that's the nub of it, Your Honor.
3       What is it that they are actually alleging here that
4  caused them any harm?  We don't know.  They haven't provided us
5  with the potential reach estimates that they claim they read
6  and relied upon.
7       They haven't told us how those potential reach estimates
8  impacted their ads that they got from Facebook, impacted the
9  price that they paid in any way.
10      They haven't identified a single advertisement that they
11 would not have purchased had the numbers been different.
12      And I think that really -- that's really the nub of it.
13 And it impacts every one of their remaining claims here, Your
14 Honor, and I can march through each one --
15          **THE COURT:**  That's what I was looking to hear.
16      Mr. Graber, what do you think?
17          **MR. GRABER:**  Your Honor, thank you, Your Honor.  I'll
18 try to be brief.
19      This is the same wholesale mischaracterization of
20 plaintiff's allegations that we heard from the beginning, which
21 the Court rejected, in the context of the UCL.
22      You know, this is -- this is a straightforward case about
23 misrepresentations at the point of purchase of the ads and --
24 and as we alleged.  There has been no shift in the allegations,
25 Your Honor.

1      We're alleging the same as we've alleged all along, with
2 the addition of two fraud claims in light of very, very serious
3 evidence that's been uncovered and laid out in full in our
4 papers and, of course, in the Complaint.
5          **THE COURT:**  Let me just jump in.  And just remind
6 me -- I should know, but I don't -- you have been doing
7 discovery during this time; is that right?
8          **MR. GRABER:**  Yes.
9          **THE COURT:**  Okay.  So the Third Amended Complaint
10 should be reflective of all the discovery that you've taken so
11 far?
12         **MR. GRABER:**  Well, Your Honor, we only amended -- and
13 this was pursuant to a prior agreement of the parties.  We only
14 amended to add the fraud claims.
15         **THE COURT:**  Okay.
16         **MR. GRABER:**  We did not have an agreement to add any
17 other allegations to the Complaint.
18         **THE COURT:**  All right.  But the fraud claims then
19 reflect the latest and greatest you have in terms of discovery?
20         **MR. GRABER:**  It reflects some of what we have in
21 discovery.
22      I can state, Your Honor, unequivocally that what we have
23 in there is a -- is a small portion of what has been uncovered
24 with respect to the intentional conduct of Facebook.
25         **THE COURT:**  And how far down the road are you now on

1  discovery?  Have you had depositions?  Has it all been written
2  discovery?
3          **MR. GRABER:**  Yes.  We have completed most
4  depositions.  For fact discovery, we have a fact discovery
5  cut-off, I believe, of October -- I don't have in it front of
6  me.  I believe it's October 20th now.  Yes, October 20th is our
7  fact discovery cut-off.
8      We're into 30(b)(6) depositions now.  And we'll be coming
9  up on expert discovery after the October 20th deadline.  I
10 think expert discovery cut-off -- expert disclosures are due
11 November 24th.
12         **THE COURT:**  Okay.  All right.  I will have a written
13 order out.  I'm not going to rule from the bench this time,
14 like I did last time.  So I will have that out as soon as I
15 can.
16     And in the meantime, I understand you're in the thick of
17 finishing discovery.  Have you had any resolution discussions,
18 Mr. Graber, with your colleagues?
19         **MR. GRABER:**  No.  Pursuant to prior Court order, we
20 have selected a mediator, but no mediation has been held.
21     I just -- if I may, Your Honor, I just wanted to flag one
22 thing, one additional point.  There is a motion to seal, and we
23 have opposed that.  Facebook has asked to seal a large portions
24 of the -- well, significant portions of the Third Amended
25 Complaint.  We've challenged that.

1          **THE COURT:**  I understand.  But let's get back to the
2  mediator.
3          **MR. GRABER:**  Sure.
4          **THE COURT:**  Who did you pick?
5          **MR. GRABER:**  Mr. Piazza.  Beth, do you know, sorry,
6  his first name?
7          **MS. DEELEY:**  Yes.  It's Tony Piazza, Your Honor.
8          **THE COURT:**  All right.  So you can't get to Maui, is
9  that the problem?
10         **MR. GRABER:**  We have not set a mediation at this
11 point, Your Honor, but we would be happy to do so.
12         **THE COURT:**  Okay.  Well, why are we waiting?  Why not
13 get that going?  Okay?  So get that fired up.
14    This is a 2018 case, as Ms. Deeley points out.  There is a
15 lot of water under the bridge.  I know there is a little bit
16 more coming, but this is a good time to start talking about it
17 because major expenses are looming in terms of experts and
18 undoubtedly summary judgment and *Daubert* motions, and so this
19 is a good time.
20    It has not, I'm sure, been inexpensive so far, but it's
21 about to get tripled or quadrupled.
22    So I want you to get a mediation session going.  I presume
23 it will be virtual because I know Hawaii is closed to visits,
24 and I doubt he's coming out here.
25    So don't get hung up on in-person.  You can do it

1  virtually.  Our magistrate judges have been doing it all day
2  every day and report that it has had now visible or measurable,
3  I should say, impact on settlement negotiations and success
4  rates.  So let's do that.
5      And I will get this out soon.  You know, I'm not going to
6  make any predictions, and I'm not tying my own hands.  Just as
7  I don't tie yours.  But, you know, at this point given the many
8  rounds of Complaints, I'm not sure there will be much room for
9  amendment after this, depending on how things go.  It's just
10 what I'm thinking at the moment.
11     So, okay.  Anything else for today, Ms. Deeley?
12         **MS. DEELEY:**  No, Your Honor.
13     One just -- just clarification in terms of the agreement
14 about the Amended Complaint.  I was provided a copy with it in
15 advance.  There were no other allegations in there that we
16 didn't agree to.  We agreed to it wholesale.
17     So just to clarify for the record, anything that could
18 have been alleged was allowed to be alleged.  Nobody asked to
19 allege anything else.
20         **THE COURT:**  Well, that was sort of my recollection.
21         **MS. DEELEY:**  Yeah.
22         **THE COURT:**  I think there was a little bit of
23 procedural back-and-forth on how to get it filed.  I don't
24 recall seeing anything saying it was limited to, you know, just
25 one or two portions.  But nothing we have to worry about right

1  now.
2      Anything else for today, Mr. Graber?
3          **MR. GRABER:** Yes.  Your Honor, just, once again,
4  there is the outstanding motion to unseal, the request to
5  unseal.  I believe a third party joined in that request.
6      And, also, plaintiffs have a Motion to Compel that was
7  filed back on August 3rd, and the Court has not ordered any
8  response to that.
9          **THE COURT:** Oh, yes.
10         **MR. GRABER:** Just wanted to bring your attention to
11 that.
12         **THE COURT:** One second.
13     (Brief pause.)
14         **MR. GRABER:** That was ECF 205-3.
15         **THE COURT:** Okay.  And, also, somebody just filed a
16 discovery letter a week or two ago, I think.
17         **MS. DEELEY:** Yes, Your Honor.  Facebook filed one,
18 and there has been a response.
19         **THE COURT:** Mr. Graber, who is supposed to be
20 responding to Exhibit 3 in docket 205?
21         **MR. GRABER:** That -- so the motion -- Facebook --
22 that's our Motion to Compel and Facebook should be responding
23 to that.
24         **THE COURT:** All right.  So the SUMA data is Facebook
25 data.

1           **MS. DEELEY:**  Correct.
2           **THE COURT:**  Okay.  All right.
3       Okay.  So, Ms. Deeley, why don't you file a response to
4  205 a week from today.
5       And, Mr. Graber, you file a response to docket No. 208,
6  which is Facebook's letter, a week from today as well.
7       And I'll either have you in for a call or just enter a
8  text order.  Okay.
9           **MR. GRABER:**  Yes.
10          **MS. DEELEY:**  Thank you.
11          **MR. GRABER:**  Your Honor, just for the record, we did
12 respond already to Facebook's --
13          **THE COURT:**  You did?  It already called for a
14 response?
15          **MR. GRABER:**  Yes.
16          **THE COURT:**  Oh, there it is.  All right.  So 208 is
17 done.
18      So we will wait for a response to 205.  And I'll just do
19 both of them at the same time.  All right?
20          **MS. DEELEY:**  Thank you, Your Honor.
21          **THE COURT:**  Do that a week from today that.  That
22 would be great.
23      Okay.  All right.  Thanks very much.
24          (Proceedings adjourned.)
25

**CERTIFICATE OF OFFICIAL REPORTER**


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, September 11, 2020