**Unredacted Version of Document Refiled Pursuant to Dkt. 221**

COHENMILSTEIN

Geoffrey Graber
(202) 408-4600
ggraber@cohenmilstein.com

February 26, 2020

**Via ECF**

The Honorable James Donato
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

***Re:*** ***Singer, et al. v. Facebook, Inc., Case No. 3:18-cv-04978***
**Unredacted Version of Document Refiled Pursuant to Dkt. 221**

Dear Judge Donato:

At the last hearing, the Court admonished the parties: "You're not going to win or lose on discovery." (October 17, 2019 Hearing at 39.) Yet, this is precisely what Facebook is trying to do — win by withholding key discovery. Specifically, Facebook refuses to provide the following critical data: (1) its records of Potential Reach and (2) its transactional data for putative class members.[1] Both directly relate to anticipated Facebook defenses at class certification. Plaintiffs certify that the parties met and conferred prior to filing this motion.

Facebook's position is that the requested data is too voluminous to produce. But a corporate defendant may not evade civil liability by claiming it is too big to sue, especially when a putative class action concerns billions of dollars in ad purchases. Plaintiffs have offered to limit their data requests *so long as* this is paired with an appropriate stipulation that Facebook will not point to the data limitations to defeat Plaintiffs' case. Facebook rejected Plaintiffs' proposed stipulation and refuses to propose its own. Facebook cannot have it both ways: arguing, on the one hand, that its' data is too voluminous to produce; and, on the other, arguing that Plaintiffs cannot certify a class without Facebook's data. Accordingly, Facebook must either produce the requested data in full, or produce a more limited set in conjunction with an appropriate stipulation, as described below.

## I. Facebook Must Produce Its Records of Potential Reach.

Plaintiffs have requested Facebook's Potential Reach records. (Ex. 1, Plaintiffs' RFP Nos. 1, 37 and Facebook's Responses to RFP Nos. 1 and 37.) Relevancy is not in dispute: Plaintiffs' core allegation is that Facebook's Potential Reach metric is inflated and misleading. Facebook has made clear that it intends to oppose certification for class members whose Potential Reach numbers are not identified. Yet, Facebook refuses to produce its Potential Reach records.

Facebook's position on this issue has evolved. Initially, Facebook told Plaintiffs – and the Court – that it did not have records of its Potential Reach. (*See, e.g.*, Aug. 8, 2019 Hr'ng Trans., at 17: "We don't record the [Potential Reach] numbers. . . We don't have that number.") That

[1] All information sought herein relates to putative class member advertisers – **<u>not</u>** Facebook users.

COHENMILSTEIN

Geoffrey Graber
(202) 408-4600
ggraber@cohenmilstein.com

was false. In fact, Facebook maintains massive records of its Potential Reach. Plaintiffs' expert Dr. Atif Hashmi inspected Facebook's source code and found that Facebook records and stores the Potential Reach numbers, including through instantaneous logging.[2] Facebook has presumably retained those records since at least the inception of this lawsuit. Facebook also tracks the Potential Reach for certain geographic and demographic targeting criteria, including tracking the Potential Reach for "5600 cities that contribute 86% of Facebook's ad revenue" (FB-SINGER-0001037) and for the entire United States. In January 2020, Facebook even produced partial Potential Reach records for the Named Plaintiffs *only*.

In the face of this overwhelming documentary evidence, Facebook now claims the Potential Reach records are too voluminous to produce. However, because Facebook logs and stores Potential Reach data in its ordinary course of business, there should be no need for unusual efforts. Plaintiffs will take on the burden and expense of storing the data. Facebook's "offer" is to produce the Potential Reach records for 1,000 advertisers (out of millions). Considering Facebook's anticipated argument that advertisers whose potential reach numbers cannot be identified should be excluded from the class, this is not a serious offer.

Plaintiffs offered to limit its request to one record of Potential Reach per advertisement set rather than a daily record (described below) along with an appropriate stipulation. (Since many of the advertisement sets run for weeks, this will substantially reduce the volume.) Facebook said no.

While Facebook should produce all its records of Potential Reach, as an alternative, Plaintiffs ask the Court to order the following: (1) Facebook will produce one Potential Reach record for every advertisement set: the earlier of the Potential Reach for the date the advertisement set was created, or the Potential Reach from the first day after the creation date where Facebook possesses the record; (2) Facebook will produce its records of Potential Reach for targeting criteria, such as for large cities and the United States; and (3) Facebook will not contend in this litigation that superior records of Potential Reach exist or challenge Plaintiffs' experts' based on a purported inadequacy in Facebook's Potential Reach records.

## II. Facebook Must Produce Putative Class Members' Transactional Data.

Facebook also refuses to produce critical transactional data for putative class members' advertisement purchases. In RFP No. 45, Plaintiffs request specific transactional data for all putative class members, including an (anonymized) identifier for each advertiser, dates of purchase, the amount spent on each advertisement, the targeting criteria for the advertisement sets, and pricing data, including data "that Facebook contends affected the price of the advertisement." (Ex. 2, Plaintiffs' RFP No. 45 and Facebook's Response to RFP No. 45.)

Challenging the adequacy of the data relied upon by a plaintiffs' experts is a common defense at class certification, and Facebook has refused to offer any stipulation that would

[2] Plaintiffs will file a motion for leave to submit a declaration from Dr. Atif Hashmi in support of Plaintiffs' discovery letter briefs.

COHENMILSTEIN

Geoffrey Graber
(202) 408-4600
ggraber@cohenmilstein.com

constrain its ability to do so in this case. Here, Plaintiffs allege Facebook violated California's UCL, and UCL damage calculations incorporate the prices paid. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015).[3] Because Facebook utilizes an auction system to price advertisements, Plaintiffs have retained an auction pricing expert, Dr. Timothy Roughgarden, who needs this pricing-related transactional data to assist in calculating damages.[4]

Again, Facebook objects that the transactional data is too voluminous. Facebook claims that its transactional data is 100s of Terabytes and will require multiple months of effort to produce. Facebook's claims of a multi-month project are difficult to reconcile with Facebook's response to Interrogatory No. 2, which states that most of the requested transactional data is centrally stored in a data table called "all_ads_details." And, for the Named Plaintiffs *only*, Facebook has already produced data from its all_ads_details data table for *each day* that their ads ran.

Given the high relevancy of the data requested and the size of this litigation, RFP No. 45 meets the proportionality standard of Rule 26. *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2009 WL 3613511 (N.D. Cal. Oct. 28, 2009) is instructive. There, like here, the class plaintiffs requested transactional data. *Id.* at *1. eBay objected that production of transactional auction data would require massive resources. *Id.* Yet, the Court ordered eBay to produce transactional data, noting that (like here) the Plaintiffs sought to represent millions of advertisers who spent billions of dollars over the class period. *Id.* at *3.

Facebook's "offer" here is the same as its offer in response to Plaintiffs' request for Potential Reach records: to produce (transactional) data for 1,000 advertisers out of the millions that advertise on Facebook – while retaining its ability to challenge the adequacy of this data. This is a bad faith offer, not a compromise. Plaintiffs seek to calculate damages for all class members. Facebook cannot use the discovery process to unilaterally limit the class to its own self-serving sample. Plaintiffs are willing to negotiate a reduction in the size of the data, but *not* by sampling advertisers. Moreover, if Facebook produces a data field for any advertisers, then Plaintiffs ask for the data field be produced for all advertisers where the data exists.

While Facebook should produce all transactional data for each day the advertisements ran, as an alternative compromise, Plaintiffs ask the Court to order the following: (1) Facebook will produce the transactional data requested in RFP No. 45 aggregated on a weekly basis; and (2) Facebook will not contend in this litigation that the weekly aggregation affected any analysis conducted by Plaintiffs' experts, or challenge Plaintiffs' experts' opinions or analyses based on a purported inadequacy in Facebook's transactional data. This weekly aggregation should create a seven-fold reduction in the volume of the data production as compared to producing daily data.

[3] In their initial disclosures and interrogatory responses, Plaintiffs have stated that one of their possible methods of calculating damages is "based on the higher prices that Plaintiffs and Class Members paid due to Facebook's actions…"

[4] Plaintiffs will file a motion for leave to submit a declaration from Dr. Timothy Roughgarden in support of Plaintiffs' discovery letter briefs.

COHENMILSTEIN

Geoffrey Graber
(202) 408-4600
ggraber@cohenmilstein.com

Respectfully submitted,

*/s/ Geoffrey Graber*
Geoffrey Graber (counsel for Plaintiffs)

cc: Counsel for All Parties (via ECF)