<u>UNREDACTED VERSION OF THE DOCUMENT REFILED</u>
<u>PURSUANT TO DKT. 253</u>

Andrew N. Friedman (*pro hac vice*)
Geoffrey Graber (SBN 211547)
Julia Horwitz (*pro hac vice*)
Karina G. Puttieva (SBN 317702)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
jhorwitz@cohenmilstein.com
kputtieva@cohenmilstein.com

Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
Charles.reichmann@gmail.com

*Counsel for Plaintiffs and Proposed Class*

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DZ Reserve and Cain Maxwell (d/b/a Max Martialis), individually and on behalf of others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>               Defendant. | Case No.: 3:18-cv-04978-JD<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S DECLARATION IN SUPPORT OF FILING UNDER SEAL THE THIRD AMENDED CONSOLIDATED COMPLAINT**<br><br>Hon. James Donato |

## I.     **INTRODUCTION**

When Plaintiffs first filed this lawsuit, Plaintiffs based their allegations on information and research demonstrating that Facebook's key advertising metrics are inflated and misleading.  At the time, Plaintiffs had no reason to believe that Facebook had known about the error in their reach metrics for years and knowingly concealed it from its advertising customers. As such, Plaintiffs had no reason to believe that a claim for fraud or punitive damages was appropriate.

Facebook's recent document productions, however, show that Facebook, in fact, <u>knew</u> for years that its key Potential Reach metric was inflated and misleading. In particular, the documents show that senior Facebook executives acknowledged as early as 2017 (and perhaps even as early as 2015) that Potential Reach – which Facebook understood to be "arguably the single most important number" provided to advertisers – is systematically inflated due to the presence of duplicate and fake accounts, among other reasons.  The documents further show that Facebook executives chose to do nothing to fix the problem, blocked those who tried to tell advertising customers the truth, and even took steps to conceal the issue from advertisers and from the public.  As a result of this discovery, Plaintiffs have amended their complaint to allege that Facebook knew its metrics were and are false and so have recklessly disseminated those metrics without regard to their truth. Now Facebook seeks judicial imprimatur to continue concealing these facts from the public by keeping portions of the Third Amended Consolidated Complaint ("TACC") under seal. ECF No. 166. More specifically, Facebook seeks to conceal two types of information: first, information linking its deliberate decision to conceal the inflated metrics to Facebook's revenues; and second, information linking their senior-most executives to participation in this course of conduct. Facebook should not be permitted to use this Court's sealing procedures to perpetuate this fraud on its customers.

## II.     **ARGUMENT**

### A.  **Facebook Must Overcome the Strong Presumption in Favor of Public Access**

In the Ninth Circuit, for amended complaints which a party seeks to file under seal, like dispositive motions, the historic 'strong presumption of access to judicial records' fully applies, and a party seeking sealing must establish 'compelling reasons' to overcome that presumption." *Milliner v. Bock Evans Fin. Counsel, Ltd.,* 2020 WL 1492692, at *1 (N.D. Cal. Mar. 27, 2020) (Donato, J.)

(citing *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). *See also Space Data Corp. v. Alphabet Inc.*, 2019 WL 1024964, at *2 (N.D. Cal. Mar. 4, 2019) ("Because the sealing motion relates to the filing of an amended complaint…the instant motion is resolved under the compelling reasons standard.")

"To meet the compelling reasons standard, a party seeking to seal material must show specific, individualized reasons for the sealing, without relying on hypothesis or conjecture, such as whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Johnstech Int'l Corp. v. JF Microtech. SDN BHD*, 2016 WL 4091388, at *1 (N.D. Cal. Aug. 2, 2016) (Donato, J.) (internal quotations omitted). "The Ninth Circuit has found the compelling reasons standard met by 'pricing terms, royalty rates, and guaranteed minimum payment terms' in a license agreement, as these are trade secrets used in the party's business, conferring an opportunity to obtain advantage over competitors who do not know or use them." *Id.* (citing *In re Elec. Arts, Inc.*, 298 Fed. Appx. 568, 569 (9th Cir. 2008)). However, "an unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient." *Johnstech*, 2016 WL 4091388, at *1 (internal quotations omitted).

### B.  Facebook Has Presented No Compelling Reasons for Sealing the Allegations

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179. Facebook implies that the information it seeks to seal falls into the general category of "trade secrets," Decl. of Nicole Valco ("Valco Decl.") ¶¶ 6-7, ECF No. 162, and argues publication of this information would cause Facebook harm in three ways: First, Facebook contends that, if published, the information at issue would cause Facebook competitive harm by revealing "sensitive details" to Facebook's competitors, Decl. of Nikki Stitt Sokol ("Sokol Decl.") ¶ 4 (ECF No. 162-1); second, that open and candid discussions at Facebook would be chilled if employees knew that there was a possibility their internal discussions would be published, *id.*; and third, that Plaintiffs have "mischaracterized" the internal

discussions quoted in the TACC, and that publication of these "mischaracterizations" "may mislead advertisers and other stakeholders because they are incomplete snapshots of Facebook's internal discussions and deliberations." *Id.*  These arguments fail.

### 1. The Information at Issue is Not the Type of "Exceptionally Sensitive" Information Subject to Sealing in this Circuit

None of the information Facebook seeks to seal constitutes the kind of competitively sensitive business information that overcomes the strong presumption in favor of disclosure. While there are sometimes compelling reasons for sealing documents when a party shows it will suffer competitive harm from the disclosure of trade secrets or other proprietary information, "only documents of *exceptionally sensitive information* will be kept from the public." *O'Connor v. Uber Techs., Inc.*, 2015 WL 355496, at *1 (N.D. Cal. Jan. 27, 2015) (emphasis in original) (internal quotation marks omitted). As Facebook concedes, this type of sealable information includes highly detailed technical information, such as specific financial information. *See Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1223 (Fed. Cir. 2013) ("detailed product-specific financial information, including costs, sales, profits, and profit margins" sealable); *Rich v. Shrader*, 2013 WL 6028305, at *3–4 (S.D. Cal. Nov. 13, 2013) (financial projections sealable); *Ojmar US, LLC v. Sec. People, Inc.,* 2016 WL 6091543, at *2 (N.D. Cal. Oct. 19, 2016) (pricing information sealable). Sealing of competitively sensitive information can be appropriate if its publication risks putting a party at a competitive disadvantage. Sealing is not meant to protect disclosure of embarrassing information.  Yet this is precisely what Facebook seeks to do here, by attempting to conceal damning facts that show it countenanced inflated metrics because fixing the problem would hurt its revenues, and that its most executives participated in that decision.

None of the information Facebook seeks to seal includes technical details about any Facebook product or service; nor does it reveal any specific costs, sales, profits, profit margins, financial projections, or pricing information. *C.f.* Valco Decl. ¶ 5 (describing the redacted information). Instead, each piece of information that Facebook seeks to redact comes from internal emails and communications in which Facebook employees discuss, in broad terms, the overall significance and impact of the metrics' inflation. The fact that the metrics' inflation had an effect on revenues, and that

Facebook's executives both acknowledged that fact and sought to conceal it from advertisers and the public, is not competitively sensitive information: it is the fraudulent conduct that forms the basis for Plaintiffs' new allegations.

Furthermore, instead of specifically explaining how publication of this information would threaten Facebook's competitive interests, Facebook's supporting declarations merely repeat the same generic language for nearly every allegation it seeks to seal. *See, e.g.,* Valco Decl. ¶ 5 (describing ***21 out of 24*** redactions as "Internal assessment of Potential Reach estimates"). Facebook fails to explain *how* competitors would be able to use this information to its detriment—Facebook merely asserts— repeatedly and without specificity—that they *could*. *See, e.g.,* Sokol Decl. ¶¶ 6, 7, 8, 11 (for redactions in ***20*** different paragraphs in the TACC, "disclosure would allow Facebook's competitors access to sensitive information…which they could use to gain an unfair advantage against Facebook by exploiting details about its ads products.") This type of conjecture is an inappropriate basis for asking this Court to seal the information at issue. *Compare Johnstech*, 2016 WL 4091388, at *1 ("a party seeking to seal material must show specific, individualized reasons for the sealing, without relying on hypothesis or conjecture") *with Hodges v. Apple*, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) ("[a]n unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient").

### 2. The Possibility That Employees Might Refrain From Making Incriminatory Statements Is Not a Valid Reason to Seal Information

Next, Facebook claims that publication of these facts "may…impair[]" employees' ability to "discuss issues and contemplated product changes openly" if people believe their discussions will be published. Sokol Decl. ¶ 4. But the Ninth Circuit does not recognize a potential chilling effect to be any reason, let alone a compelling reason, to overcome the strong presumption of openness. *Gregory v. City of Vallejo*, 2014 WL 4187365, at *3 (E.D. Cal. Aug. 21, 2014) ("plaintiffs fail to articulate any support for, or point to any authority in support of, their remaining conclusory argument that '[p]ublic filing of these records would … remove the protections for officers to be candid'"). Accordingly, Facebook cites no precedent for sealing documents on that basis, and with good reason: if this were the rule, Facebook would be free to plan fraudulent activity with impunity, since no incriminatory

statement revealed through internal company documents could be published. None of the information at issue here may be sealed to avoid a hypothetical chilling effect. *See California State Foster Parent Ass'n v. Wagner*, 2008 WL 2872775, at *6 (N.D. Cal. July 23, 2008) ("defendants' concerns regarding the frankness of agency discussion does [sic] not weigh strongly against disclosure and can be mitigated").

### 3.    The Possibility that Stakeholders Could Be Confused By Quoted Documents Is Not a Valid Reason for Sealing Information

Finally, Facebook suggests that because Plaintiffs "selectively quoted" from the documents referenced in the complaint, the TACC "could confuse advertisers and other stakeholders and be misused by Facebook's competitors." Sokol Decl. ¶ 12. But again, Facebook is unable to cite any precedent for sealing information on this basis or offer explanation of how these documents *should* be characterized. Like its "chilling" argument, Facebook's "mischaracterization" argument is far too conclusory and speculative to satisfy the compelling reasons standard. *See Kawakama*, 447 F.3d at 1182 (rejecting "conclusory statements" that disclosure would cast defendant's officers "in a false light"). *Accord Medversant Techs., L.L.C. v. Morrisey Assocs., Inc.,* 2010 WL 11459929, at *2 (C.D. Cal. June 29, 2010). Nearly every litigant believes the other side is mischaracterizing the facts. That is often the whole point of litigation: to resolve which party's characterization of the evidence is more compelling. Under Ninth Circuit law, that resolution is supposed to take place in full view of the public. If Facebook is concerned that Plaintiffs are "selectively quoting" documents or taking quotations out of context, Facebook is free to disclose the entire underlying document and present its position publicly.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the TACC should be filed on the public docket in its entirety, and Facebook's request to seal portions of the TACC should be denied.

DATED: April 21, 2020                    Respectfully submitted,

By: */s/ Geoffrey Graber*

Geoffrey Graber (SBN 211547)
Andrew N. Friedman (*pro hac vice*)
Julia Horwitz (*pro hac vice*)
Karina G. Puttieva (SBN 317702)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
afriedman@cohenmilstein.com
jhorwitz@cohenmilstein.com
kputtieva@cohenmilstein.com

Eric Kafka *(pro hac vice)*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
Charles.reichmann@gmail.com