

Geoffrey Graber
(202) 408-4600
ggraber@cohenmilstein.com

July 20, 2020

**Via ECF**

The Honorable James Donato
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

     *Re:    DZ Reserve, et al. v. Facebook, Inc., Case No. 3:18-cv-04978*

Dear Judge Donato:

     Plaintiffs seek an order to compel production of targeting criteria data. This data reflects the demographic criteria utilized by putative class member advertisers to target their ads.[1] Facebook does not dispute the relevancy of the targeting data, which is relevant both to identifying class members, and because Facebook intends to use this information at class certification to argue that purported differences in targeting criteria create individualized issues. Facebook admits it possesses the targeting data but refuses to produce it, arguing that the production would be unduly burdensome, as it would take 3 months and the dedication of a Facebook data scientist. But this amount of time is not disproportionate to the needs of the case – and it is *less* time than it has taken for Facebook to produce other data (including data Facebook unilaterally chose to produce). Instead of producing the data, Facebook insists on using a sample of 5,000 advertisers out of millions. This approach, however, <u>would not allow Plaintiffs to identify the class</u>. And, even in Facebook's estimation, a sample would still take 6 weeks to produce, which would not save any meaningful amount of time. Tellingly, Facebook refuses to agree to any limitation on its class certification arguments in the event it is permitted to utilize a sample. Facebook's motive is clear – it seeks to rely on information it refuses to produce. This is clearly improper. Fed. R. Civ. P. 37(c)(1). If Facebook is permitted to utilize a sample, it must be precluded from relying on differences in targeting criteria for its class certification defense. *See Apple Inc. v. Samsung Elecs. Co*., 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013).

     Plaintiffs certify they met and conferred with Facebook regarding this issue. Prior to filing, Plaintiffs shared with Facebook a draft of this motion and the supporting declaration. After reviewing Plaintiffs' motion, Facebook declined to produce the full set of targeting data.

     **Facebook asserts it will take approximately 3 months to produce the targeting data – less time than it has taken Facebook to produce other transactional data**. On September 23, 2019, Plaintiffs requested documents sufficient to show the audience targeting criteria for putative class members' advertisements. (Ex. 1, RFP No. 45; Ex. 2, Facebook's Response.) Facebook admits it "has identified data responsive to Plaintiffs request," but contends it would be unduly burdensome to produce it. On June 23, 2020, Facebook provided a declaration stating the data consists of 12-20 TB decompressed (meaning the currently compressed data is approximately 3-7 TB). According to Facebook, it will take approximately 3 months to produce this data—less time

---

[1] All information sought herein relates to putative class member advertisers, **not** Facebook users.

COHEN MILSTEIN

Geoffrey Graber
(202) 408-4600
ggraber@cohenmilstein.com

than it has taken Facebook to produce other transactional data, including Potential Reach records. (Facebook *still has not* produced Potential Reach records and transactional data that Facebook said it was working to produce in early March 2020, *over 4 months ago*.) Plaintiffs requested the targeting data in September 2019. Had Facebook diligently responded, it could have produced the data months ago.

Curiously, even though it is no more burdensome to produce the targeting data than other data produced in this litigation (including data Facebook unilaterally chose to produce), Facebook refuses to produce this data. After reviewing Facebook's declaration, Plaintiffs' expert noted that Facebook's proposed methodology to transfer the data could easily be scaled by devoting additional servers and/or hard drives to the project. (Facebook maintains approximately 30,000 servers.) Plaintiffs' expert also noted that, depending on the format of the data, he could probably accept the data in its current, compressed state. This would allow Facebook to simply transfer the files – as they are – to a small hard drive, thereby reducing any burden on Facebook considerably. Plaintiffs' expert estimates the process would take **15 hours**. Facebook, however, refuses to identify the format of the data or explain why it will not scale its efforts. (Cowan Decl.)

**Facebook does not dispute the relevancy of the targeting data**. Plaintiffs seek to use the targeting data to identify the class, a permissible and essential use of discovery. *In re Intuit Data Litig.*, 2017 WL 3616592 (N.D. Cal. Aug. 23, 2017), citing *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). Here, advertisers who used certain targeting criteria may need to be excluded from the class definition. For example, because Facebook does not possess Potential Reach records for some ad campaigns, Plaintiffs will require targeting data to determine the Potential Reach for those ad campaigns. Another example: some advertisers may need to be excluded because they targeted ads based on lists of people uploaded by the advertiser rather than being targeted to Facebook users. Identifying advertisers who should be excluded requires production of the full targeting data. The requested information is also necessary to rebut a core Facebook class certification defense: Facebook intends to argue Potential Reach was not distorted for advertisers with certain targeting criteria, thus (according to Facebook) raising individual issues. Plaintiffs' expert will use the targeting data to rebut this defense by showing that all putative class members received a distorted Potential Reach number, regardless of targeting criteria.

**Facebook has failed to demonstrate that it is unduly burdensome to produce the requested targeting data.** Facebook admits it has identified the requested targeting data. Facebook contends, however, it will be too burdensome to produce the data because it will take approximately three months, and will require the dedication of a Facebook data scientist. If true, this amount of effort would not be disproportionate: this is a class action on behalf of millions of Facebook advertisers, and the information is highly relevant. *See In re eBay Seller Antitrust Litig.*, 2009 WL 2524502 (N.D. Cal. Aug. 17, 2009) & 2009 WL 3613511 (N.D. Cal. Oct. 28, 2009) (ordering eBay to produce data notwithstanding eBay's claim that production would require 6 months and cost as much as $300,000; *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 683 (N.D. Cal. 2006) (ordering production despite the need for Google to create "new code to format and extract

COHENMILSTEIN

Geoffrey Graber
(202) 408-4600
ggraber@cohenmilstein.com

query and URL data from many computer banks").[2] Facebook's burden argument should also be rejected because it can be easily resolved. As Plaintiffs' expert explained, Facebook could scale up its process by simultaneously transferring data to multiple servers, or transferring the data from the single server to multiple hard drives. This would reduce the time to transfer the data from 8 weeks to 1-2 days. Alternatively, Facebook could inform Plaintiffs how the data is currently formatted; depending on the format, Facebook could simply turn the data over to Plaintiffs on a hard drive (or a set of thumb drives). Facebook refuses to tell Plaintiffs how the data is formatted.

**The Court should reject Facebook's self-serving "sampling" proposal.** Instead of producing the targeting criteria data, Facebook demands that Plaintiff accept a "sample" based on 5,000 advertisers, out of millions. But, a sample cannot be used to identify the class. This alone renders the proposal inadequate. *Mervyn v. Atlas Van Lines, Inc.*, 2015 WL 12826474, at *4 (N.D. Ill. Oct. 23, 2015) (rejecting sampling where a "a robust production is necessary to allow Plaintiff an opportunity to accurately define the class in a way that might satisfy the requirements of Rule 23."). Facebook's sampling proposal is self-serving. As Plaintiffs' expert has noted, 5,000 advertisers is insufficient given that Facebook has provided no information regarding the composition of the targeting criteria. The sample risks being nothing more than a set of cherry-picked data curated by Facebook to support its defense. (Cowan Decl.) Moreover, Facebook's sampling proposal will not save any meaningful amount of time. According to Facebook, producing a sample will take up to 6 weeks, not including the time it will take for Plaintiffs to verify that the sample is statistically reliable. Given the importance of the data, there is no reason to allow Facebook to utilize a sample, rather than providing the full data set.

If Facebook is permitted to produce a sample, Facebook must be precluded from using targeting criteria as a defense at class certification, or from using the sample to prevent Plaintiffs from identifying the class. Facebook cannot use information it refuses to produce. *Cf.* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial"). A similar issue arose in *Apple Inc. v. Samsung*. There, Samsung requested data from Apple's systems that pertained to damages, and Apple objected on burden grounds. 2013 WL 4426512, at *3-4. Recognizing that "more granular data" could have been produced, the court precluded Apple from challenging Samsung's experts "in any way that could have been supported by" certain information that Samsung requested, but Apple ultimately did not have to produce. *Id.* The same preclusion is appropriate here.

Respectfully submitted,

_/s/  Geoffrey Graber_

---

[2] In its March 12 brief, Facebook cited to *Robinson v. Chefs' Warehouse*, 2017 WL 836944 (N.D. Cal. Mar. 3, 2017) and *In re Facebook Privacy Litig.*, 2015 WL 3640518 (N.D. Cal. June 11, 2015) to argue for sampling. These cases are inapposite. There plaintiffs sought information to contact potential class members. In *Facebook Privacy*, plaintiffs wanted to "find a proper representative to keep the case alive." 2015 WL 3640518 at *3. And, in *Robinson*, plaintiffs only sought a sample to begin with—which defendant was ordered to produce. *See* Case No.15-cv-05421, ECF No. 58.



Geoffrey Graber
(202) 408-4600
ggraber@cohenmilstein.com

Geoffrey Graber (counsel for Plaintiffs)

cc:     Counsel for All Parties (via ECF)