LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
  elizabeth.deeley@lw.com
Melanie M. Blunschi (CA Bar No. 234264)
  melanie.blunschi@lw.com
Nicole C. Valco (CA Bar No. 258506)
  nicole.valco@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel.: +1.415.391.0600/Fax: +1.415.395.8095

Andrew B. Clubok (*pro hac vice*)
  andrew.clubok@lw.com
Susan E. Engel (*pro hac vice*)
  susan.engel@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Tel.: +1.202.637.2200/Fax: +1.202.637.2201

Hilary H. Mattis (CA Bar No. 271498)
  hilary.mattis@lw.com
140 Scott Drive
Menlo Park, CA 94025
Tel.: +1.650.328.4600/Fax: +1.650.463.2600

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DZ RESERVE and CAIN MAXWELL (d/b/a MAX MARTIALIS), individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 3:18-cv-04978 JD<br><br>**FACEBOOK, INC.'S ADMINISTRATIVE MOTION FOR AN EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OR, IN THE ALTERNATIVE, FOR A CONCURRENT EXPERT WITNESS PROCEEDING**<br><br>Hon. James Donato |

Pursuant to Local Rule 7-11, Facebook, Inc. respectfully requests that the Court hold an evidentiary hearing on Plaintiffs' Motion for Class Certification (Dkt. 282).  The hearing on that Motion is currently noticed for June 10, 2021.  Facebook also filed two *Daubert* motions that are noticed for the same date.  Dkts. 285 & 286.

## I.   INTRODUCTION

To decide Plaintiffs' Motion for Class Certification ("Motion"), the Court will need to resolve conflicting expert evidence regarding the predominance requirement of Rule 23.  On the one hand, Plaintiffs' experts offer statistical and representative analyses purporting to show liability and average damages on a classwide basis, and on the other, Facebook's experts explain why those models and averages are fundamentally flawed and ignore important differences between putative class members that render this case unfit for class treatment.  The Ninth Circuit's recent decision in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021), emphasizes that this battle of the experts needs to be resolved in connection with the Motion and cannot be deferred to a later stage of the case.  Facebook respectfully submits that an evidentiary hearing involving testimony from the experts who are key to determining whether Plaintiffs have met their evidentiary burden under Rule 23 would facilitate the Court's consideration of this critical issue.  In addition, if helpful to the Court, Facebook suggests that the Parties present a tutorial on Facebook advertising and the self-service Ads Manager interface.

## II.   THE COURT MUST RESOLVE FACTUAL DISPUTES OVER PREDOMINANCE AND COMMONALITY AT THE CLASS CERTIFICATION STAGE

Rule 23 requires a district court to "find" that common questions of law or fact predominate over individual questions "before allowing the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011).  The Ninth Circuit recently underscored that the Court must conduct a "rigorous analysis" of these factors, including by resolving factual disputes bearing on whether a plaintiffs' "representative evidence" is "reliable in proving or disproving the elements" of Plaintiffs' claims on a classwide basis.  *Olean*, 993 F.3d at 791-92 (holding that "the district court abused its discretion in declining to resolve the competing expert claims").  If the evidence is not sufficiently

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

FACEBOOK'S ADMIN. MOT. FOR
EVIDENTIARY HEARING
CASE NO. 3:18-CV-04978 JD

1  reliable—including, for example, where representative evidence "sweeps in" class members without a claim—then a class cannot be certified because predominance is not satisfied. *See id.*

In *Olean*, the parties offered "competing expert claims on the reliability of Plaintiffs' statistical model" and whether it could show antitrust impact for 94.5% of the class (as plaintiffs' experts opined) or just 72% (as defendants' experts opined). *Id.* at 782-83. The district court certified a class without resolving the competing expert claims, deferring the issue to the jury. *Id.* at 783. The Ninth Circuit reversed, holding, among other things, that (1) plaintiffs' expert evidence must "be consistent with [their] underlying theory of liability," and (2) averaging assumptions must not paper over "individualized differences" as to whether "all class members suffered an injury due to Defendants' alleged wrongdoing." *Id.* at 789-90. The Ninth Circuit explained that the district court must resolve which experts were right about the pervasiveness of antitrust impact, because "[i]f 28% of the class were uninjured, common questions of law or fact would not be shared by substantially all the class members, nor would they prevail in strength or pervasiveness over individual questions." *Id.* at 792. Because it was necessary to determine how much of the putative class may not have been impacted by the alleged misconduct to determine whether the predominance requirement was satisfied, the Court had to make a "finding" regarding the expert theories to rule on class certification. *Id.*; *cf. Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982, 984 (9th Cir. 2011) (vacating class certification for failure to resolve "critical factual disputes" in a "battle of the experts" regarding commonality).

## III.   AN EVIDENTIARY HEARING WILL FACILITATE RIGOROUS ANALYSIS

In response to Plaintiffs' Motion and expert submissions, Facebook has submitted expert evidence showing that Plaintiffs' representative evidence is not reliable in proving their claims on a classwide basis. An evidentiary hearing or concurrent expert "hot tub" proceeding would assist the Court in resolving the battle of the experts. In addition, given the complexity of the factual background, Facebook suggests a tutorial about Facebook advertising and the Ads Manager interface. Facebook respectfully submits that such presentations will facilitate the Court's analysis of whether Plaintiffs' experts have satisfied Plaintiffs' burden under Rule 23.

In particular, Facebook proposes testimony on the following topics:

*Misstatement.* Plaintiffs rely on statistical evidence to claim a common misstatement in the form of classwide exposure to "inflated" Potential Reach estimates, but Facebook's expert, Dr. Steven Tadelis, demonstrates that Plaintiffs' evidence masks significant variation in the class, and any so-called "inflation" for most advertisers was non-existent or *de minimis*. Because most advertisers were not exposed to inflated estimates, and any hypothetical inflation was specific to the particular targeting criteria an advertiser used, the class was not exposed to a common misstatement. Plaintiffs rely on Dr. Charles Cowan's opinion that, throughout the class period, the "initial, default Potential Reach number" shown to all U.S. advertisers when they first begin creating an ad set on Ads Manager, and all Potential Reach estimates over 1,000, were "inflated" by at least a certain baseline amount. Motion at 3, 13-14. But as Tadelis explains, even if Cowan's methods could be used to establish "inflation" (they cannot), he used an unreliable process that improperly (1) ignores relevant differences in the Potential Reach estimates that different advertisers saw across the countless iterations of different targeting and placement criteria that they selected for their ads, and (2) "sweeps in uninjured class members" who were not likely exposed to any misleading estimates. *Olean*, 993 F.3d at 791; *see, e.g.*, Dkt. 298-1 at Table 64 (p. 64) & Exs. 1-12.

*Reliance/Deception.* Plaintiffs rely on representative evidence from Dr. Greg Allenby to purportedly show classwide reliance on—and therefore a likelihood of deception resulting from—Potential Reach, but Allenby's opinions are inadmissible (Dkt. 285). And, even if the Court considered them, Allenby's findings actually undermine predominance because 21% of advertisers in his surveys *did not rely* on higher Potential Reach estimates to buy more ads (Dkt. 284-12 at ¶¶ 76-79, 126 & Table 6). Facebook's expert, Dr. David Reibstein, shows that (1) Allenby originally found that nearly half of advertisers *increased* their budgets when shown *lower* Potential Reach estimates, and (2) Allenby's later, results-driven analysis *still* found that over 21% of advertisers *spent more* on Facebook ads when they saw *lower* Potential Reach estimates. *Id.* ¶ 126 & Table 6. Both of these points demonstrate that the advertisers in Allenby's survey did not rely on Potential Reach and could not have been deceived by Potential Reach. Opp. at pp. 21-22. In addition, Dr. Catherine Tucker, another of Facebook's experts, further explains (1) how Plaintiffs'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

FACEBOOK'S ADMIN. MOT. FOR
EVIDENTIARY HEARING
CASE NO. 3:18-CV-04978 JD

1  putative class improperly includes numerous advertisers who do not rely on and are not deceived
2  by Potential Reach, and (2) that most advertisers (including Named Plaintiffs) are concerned with
3  driving specific results for their ads (*e.g.*, clicks, conversions), not Potential Reach, when deciding
4  how to set their ad budgets. *Id.* at pp. 11-14.

***Injury.*** Plaintiffs also rely on representative evidence and averages to claim that "inflated" Potential Reach estimates caused the price of every Facebook ad over the seven-year Class Period to be higher; based on a hypothetical auction simulation conducted by their auction pricing expert Dr. Timothy Roughgarden, Plaintiffs claim that all ads purchased by putative class members paid the same average price premium due to "inflated" Potential Reach. But Roughgarden's simulation did not involve real advertisers, real ads, or real auctions, and its results cannot be used to determine the price of actual ads. Dkt. 294 at 22-23. Tadelis demonstrates: (1) how Roughgarden's simulation fails to replicate key features of Facebook's auction and thus cannot be used to reliably predict ad prices on a classwide basis, and (2) why Roughgarden's hypothetical simulation cannot be used to determine a price premium for any particular class members' ads. Dkt. 294 at 22-23 & n.21-22.

***Damages.*** Plaintiffs' experts (Dr. Armando Levy, Bruce McFarlane, and Rougharden) present statistical evidence to calculate classwide damages based on two different models, but Tadelis shows that neither model reliably identifies damages suffered by a particular class member. In addition to being inadmissible because they are based on faulty assumptions and incorrect but-for worlds, Levy and McFarlane's analyses improperly treat all advertisers and ad auctions the same, expressly ignoring advertisers' actual circumstances and resorting to averages and oversimplifications of how ads are priced. Tadelis explains that (1) Roughgarden's auction simulation cannot support Plaintiffs' predominance arguments because whether a specific class member's ad prices increased as a result of any alleged "inflation" turns on the details of the particular auctions in which that class member participated, and (2) Levy and McFarlane rely on averages that improperly sweep in uninjured class members.

***Ads Manager.*** If the Court would like, Facebook can provide a tutorial regarding Ads Manager (the self-serve interface at issue), how it functions, and how it displays Potential Reach

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

FACEBOOK'S ADMIN. MOT. FOR
EVIDENTIARY HEARING
CASE NO. 3:18-CV-04978 JD

1  to advertisers.  A tutorial that demonstrates what advertisers see when purchasing Facebook ads
2  would be useful to evaluating Plaintiffs' allegations about the Ads Manager interface and their
3  resulting liability theories.
4        For the foregoing reasons, Facebook respectfully requests an evidentiary hearing or
5  concurrent expert proceeding in connection with the Court's consideration of class certification.

7  DATED:  May 24, 2021                LATHAM & WATKINS LLP

9                                      By:  /s/ Elizabeth L. Deeley
                                            Elizabeth L. Deeley (CA Bar No. 230798)
                                            Melanie M. Blunschi (CA Bar No. 234264)
10                                          Nicole C. Valco (CA Bar No. 258506)
                                            505 Montgomery Street, Suite 2000
11                                          San Francisco, CA  94111-6538
                                            Telephone:  +1.415.391.0600
12                                          Facsimile:  +1.415.395.8095
                                            *elizabeth.deeley@lw.com*
13                                          *melanie.blunschi@lw.com*
                                            *nicole.valco@lw.com*

15                                          Andrew B. Clubok (*pro hac vice*)
                                            Susan E. Engel (*pro hac vice*)
16                                          555 Eleventh Street, N.W., Suite 1000
                                            Washington, D.C. 20004
17                                          Telephone:  +1.202.637.2200
                                            Facsimile:  +1.202.637.2201
18                                          *andrew.clubok@lw.com*
                                            *susan.engel@lw.com*

                                            Hilary H. Mattis (CA Bar No. 271498)
20                                          140 Scott Drive
                                            Menlo Park, CA  94025
21                                          Telephone: +1.650.328.4600
                                            Facsimile: +1.650.463.2600
22                                          *hilary.mattis@lw.com*

23                                          *Attorneys for Defendant Facebook, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

FACEBOOK'S ADMIN. MOT. FOR
EVIDENTIARY HEARING
CASE NO. 3:18-CV-04978 JD