**Exhibit 121**

HIGHLY CONFIDENTIAL

```
 1            IN THE UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4
 5   DZ RESERVE and CAIN
     MAXWELL(d/b/a MAX MARTIALIS),
 6   individually and on behalf of
     all others similarly
 7   situated,
 8             Plaintiffs,
 9        vs.                         No. 3:18-cv-04978-JD
10   FACEBOOK, INC.,
11             Defendant.
     _____/
12
13
                    -- HIGHLY CONFIDENTIAL --
14
15      VIDEOTAPED DEPOSITION OF CHARLES COWEN, PH.D.
16                   Remote Zoom Proceeding
17                     San Antonio, Texas
18                    Friday, April 2, 2021
19
20
21
22
23   REPORTED BY:
24   LESLIE ROCKWOOD ROSAS, RPR, CSR 3462
25   Pages 1 - 271                         Job No. 4494164
```

Page 1

| | | |
|---|---|---|
| 1 | for some groups that have a lower SUMA, but they have to | |
| 2 | be balanced by some groups that have a higher SUMA, as | |
| 3 | long as all of those possibilities average out to the | |
| 4 | numbers that were produced by Facebook.  So I'm not -- | |
| 5 | Q.  BY MS. VALCO:  So if we're talking about a | 18:10:16 |
| 6 | potential -- | |
| 7 | A.  Sorry, I'm not done. | |
| 8 | What I'm trying to say is, is that:  Yes, I've | |
| 9 | accounted for that.  It's in the calculations.  I pointed | |
| 10 | out the charts in my report that say there are -- rates, | 18:10:28 |
| 11 | there are lower fake rates.  There are lower -- I have | |
| 12 | the full distribution on all of them, and then I combine | |
| 13 | them into a final estimate of inflation. | |
| 14 | So I'm not denying that there are groups that | |
| 15 | have smaller.  The only thing I'm requiring is, is that | 18:10:45 |
| 16 | they -- that there would be groups that have higher SUMA | |
| 17 | rates so that they average to the numbers that were | |
| 18 | produced by Facebook. | |
| 19 | Q.  So if I place an ad that's targeted to a group | |
| 20 | that has a lower SUMA rate than the average that you used | 18:11:01 |
| 21 | for your calculations, then your calculations would be | |
| 22 | overstating the inflation for that particular group or | |
| 23 | audience? | |
| 24 | MS. PUTTIEVA:  Objection.  Form. | |
| 25 | THE WITNESS:  No.  You're still not getting it. | 18:11:19 |

HIGHLY CONFIDENTIAL

```
1    I said that for every group, there are -- I'm sorry.  For
2    all groups, not every group.  For all groups, I've
3    calculated the distribution of SUMA.  So if you come
4    along and tell me that here's a specific group and they
5    have a lower SUMA rate, it's included in my calculations      18:11:39
6    already.
7         Q.   BY MS. VALCO:  So if I target an audience to
8    detail -- using detailed targeting criteria, and it is a
9    group that has a lower SUMA rate than the average that
10   you used, the inflation for that particular group would      18:12:08
11   be lower than the average that you assumed; right?
12            MS. PUTTIEVA:  Objection.  Form.
13            THE WITNESS:  I just answered this question.  I
14   said that it would be lower, and the inflation rate will
15   be whatever it is, and the only requirement is, is that      18:12:31
16   there's some other group that you haven't brought up yet
17   that has a higher inflation, and they all average the one
18   value that I did provide.  I'm only providing an average.
19   I'm not providing a value for any individual group.
20            What I am providing for each individual group is    18:12:50
21   the likelihood that the inflation is less than
22   10 percent.
23            So as you keep bringing up these specific
24   groups, I'm trying to point out that there's another
25   specific group on the other side of the average that has    18:13:03
```

Page 220

| | | |
|---|---|---|
| 1 | to balance that out.  Because otherwise, you're in a | |
| 2 | position of being Mr. Amsallem, with everything being | |
| 3 | below the average. | |
| 4 |     Q.  BY MS. VALCO:  Okay.  Let's move to another one | |
| 5 | of the categories that you discussed, which is the -- | 18:13:32 |
| 6 | sorry.  I'm turning to paragraph 33 again.  Actually, no, | |
| 7 | this one is not in paragraph 33. | |
| 8 |     I want to talk about the overlap with Instagram | |
| 9 | category. | |
| 10 |     Could you please turn to page 23 of your | 18:13:56 |
| 11 | report -- I believe that's where this is discussed -- of | |
| 12 | your December 22nd report. | |
| 13 |     No, sorry.  Wrong -- wrong report.  Give me one | |
| 14 | second here to gather my papers. | |
| 15 |     MS. PUTTIEVA:  Nicole, I just want to flag that | 18:14:18 |
| 16 | I think we've been going to close to an hour.  If you | |
| 17 | wanted to take a break to go through your papers, that | |
| 18 | might be a good time. | |
| 19 |     MS. VALCO:  Has it been close to an hour?  I'm | |
| 20 | sorry, I haven't -- do you know when we got back on the | 18:14:36 |
| 21 | record? | |
| 22 |     MS. PUTTIEVA:  We'd have to check with the | |
| 23 | videographer.  I have here that we started around 6:15. | |
| 24 |     MS. VALCO:  Okay.  Let's pause right here for a | |
| 25 | break and then -- and we can come back in five to ten | 18:14:57 |

```
1   STATE OF CALIFORNIA      ) ss:
2   COUNTY OF MARIN          )
3
4          I, LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462, do
5   hereby certify:
6          That the foregoing deposition testimony was
7   taken before me at the time and place therein set forth
8   and at which time the witness was administered the oath;
9          That testimony of the witness and all objections
10  made by counsel at the time of the examination were
11  recorded stenographically by me, and were thereafter
12  transcribed under my direction and supervision, and that
13  the foregoing pages contain a full, true and accurate
14  record of all proceedings and testimony to the best of my
15  skill and ability.
16         I further certify that I am neither counsel for
17  any party to said action, nor am I related to any party
18  to said action, nor am I in any way interested in the
19  outcome thereof.
20         IN WITNESS WHEREOF, I have subscribed my name
21  this 6th day of April, 2021.
22
23
24
25         LESLIE ROCKWOOD ROSAS, RPR, CSR NO. 3462
```

Page 271

**ERRATA SHEET FOR DEPOSITION TRANSCRIPT OF CHARLES COWAN**

**Case**: *DZ Reserve, et al. v. Facebook, Inc.*
**Witness**: Dr. Charles D. Cowan, Ph. D.
**Deposition Date**: April 2, 2021
**Reporter**: Leslie Rockwood Rosas, CSR No. 3462

| PAGE : LINE | CHANGE | REASON |
| --- | --- | --- |
| Throughout | "Cowen" **to** "Cowan" | Transcription error. |
| 23:20 | "I stand by both of them, yes." **to** "I stand by both of them, yes. My reply just has the more conservative assumptions and is more robust because it takes into account changes over time." | Clarification. |
| 48:4 | "I did not" **to** "I did, but I did not consider or rely on it." | I misspoke. After my testimony I remembered that I received FB-SINGER-00256367 (Max Martialis Ads_Interfaces_Predicted_Outcomes) but the data therein did not fit with the transactional and targeting data so I did not consider or use it in my analysis. |
| 74:7-10 | "And I'd also point out the fact that in my earlier report on the 22nd, I had already conducted a sensitivity analysis that looked at what was the inflation if one eliminated ineligibles." **to** "And I'd also point out the fact that in my earlier report on the 22nd, I had already conducted a sensitivity analysis that looked at what was the inflation if one eliminated ineligibles. I misremembered that I also already addressed the March 2019 change in Paragraph 183 of my opening report." | I misremembered that the March 2019 change is expressly addressed in Paragraph 183 of my December 22, 2020 Report as well is in Appendix 11's sensitivity analysis. As I state in Paragraph 6 of my March 19, 2021 report, to rebut Dr. Tadelis' criticism that inflation would fall below the thresholds I found, I more broadly apply the methodology in my opening report to the post-March 2019 time period to demonstrate that inflation levels still reach the thresholds I found in my report. |
| 118:18 | "yes" **to** "not necessarily" | Clarification. Having given this more thought, I do not know if any deflation would occur because some of the MAU could be ineligible accounts. |
| 136: 5 | "fake accounts on the SEC" **to** "fake accounts in the SEC filings" | I misspoke. |
| 136:10 | "a case" **to** "account" | Transcription error. |

| | | |
|---|---|---|
| 136:12 | "activated" **to** "removed" | I misspoke. Paragraph 11 of my March 19, 2021 Report states that *after* the millions and billions of accounts "that are fake and engaged in abusive behavior" are disabled, the resulting MAU is still comprised of 5% Fake accounts. |
| 136:12-13 | "that would happen after a determination of fake" **to** "that would happen before a determination of fake" | I misspoke. Paragraph 11 of my March 19, 2021 Report states that *after* the millions and billions of accounts "that are fake and engaged in abusive behavior" are disabled, the resulting MAU is still comprised of 5% Fake accounts. |
| 139:2 | "these" **to** "these 5 percent" | Clarification. |
| 139: 4-9 | "Well, if they're active or inactive in dim all user, they made it through the filter for fake and so they're not considered fake" **to** "Well, if they're active or inactive in dim all user, they made it through the first filter for fake and so they're not considered Fake." | Clarification. Per Paragraph 11 of my March 19, 2021 Report the millions and billions of accounts "that are fake and engaged in abusive behavior" that are disabled, are removed before Fake accounts are counted in the resulting MAU. |
| 142:7 | "there" **to** "this" | Transcription error. |
| 153:13 | "is" **to** "has" | Transcription error. |
| 160:8 | "that value" **to** "the actual value" | Clarification. |
| 161:16 | "square" **to** "squared" | Transcription error. |
| 178:19 | "I do" **to** "yes" | Transcription error/Misspoke. |
| 218:7 | "formulas still apply so" **to** "the formulas still apply" | Transcription error. |
| 251:1 | "Analytics" **to** "Analytic" | Transcription error. |

I, CHARLES D. COWAN, Ph.D., do hereby declare under penalty of perjury that I have read the foregoing transcript of my deposition; that I have made such corrections as noted herein, initialed by me, or attached hereto; that my testimony as contained herein, as corrected, is true and correct.

**Executed on this 6th day of May 2021 in San Antonio, Texas.**

_____

**Charles D. Cowan, Ph.D.**                                         **Date:**   May 6, 2021