Andrew N. Friedman (*pro hac vice*)
Geoffrey Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
Paul Stephan (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com
pstephan@cohenmilstein.com

Eric Kafka *(pro hac vice)*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
Charles.reichmann@gmail.com

*Class Counsel*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| DZ Reserve and Cain Maxwell (d/b/a Max Martialis), individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Meta Platforms, Inc. (f/k/a Facebook, Inc.),<br><br>Defendant. | Case No.: 3:18-cv-04978-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.**<br><br>Date: June 23, 2022<br>Time: 10:00 am<br>Court: Courtroom 11, 19th Floor<br>Hon. James Donato |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION .................................................................................................. | 1 |
| II. | ARGUMENT ......................................................................................................... | 2 |
| | A. Tucker May Not Opine on the Credibility or State of Mind of the Named Plaintiffs ................................................................................................... | 2 |
| | B. Tucker's Opinion on Supposed Post-Purchase "Benefits" Is Foreclosed Under the Ninth Circuit's Decision in *Pulaski & Middleman, LLC v. Google, Inc.* ............................................................................................... | 5 |
| | C. Tucker Is Not Qualified to Opine on Dr. Roughgarden's Auction Simulation ................................................................................................... | 7 |
| | D. Tucker Is Not Qualified to Opine on Allenby's Conjoint Survey ........................ | 8 |
| III. | CONCLUSION ..................................................................................................... | 10 |

ii

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alcantar v. Foulk*,
   2016 WL 3001242 (E.D. Cal. May 25, 2016) ....................................................................4

*Berry v. City of Detroit*,
   25 F.3d 1342 (6th Cir. 1994) ............................................................................................9

*Cortez v. Purolator Air Filtration Prods. Co.*,
   999 P.2d 706 (Cal. 2000) ..................................................................................................6

*Day v. County of Contra Costa*
   2008 WL 4858472 (N.D. Cal. Nov. 10, 2008) ..................................................................9

*In re Google AdWords Litig.*,
   2012 WL 28068 (N.D. Cal. Jan. 5, 2012) ..........................................................................5

*Greenwell v. Boatwright*,
   184 F.3d 492 (6th Cir. 1999) ............................................................................................4

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011) ..................................................................................................6

*Munoz v. PHH Mortg. Corp.*,
   2022 WL 138670 (E.D. Cal. Jan. 14, 2022) ......................................................................4

*In re Myford Touch Consumer Litig.*,
   2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ..................................................................6

*Natural-Immunogenics Corp. v. Newport Trial Grp.*,
   2019 WL 3099725 (C.D. Cal. Apr. 15, 2019) ...................................................................4

*Nguyen v. Nissan North America, Inc.*,
   932 F.3d 811 (9th Cir. 2019) ............................................................................................6

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ..................................................................4

*In re Pacific Fertility Ctr. Litig.*,
   2021 WL 842739 (N.D. Cal. Mar. 5, 2021) ......................................................................8

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) .........................................................................................5, 6

*Ramirez v. Hobart Corp.*,
   2015 WL 1939541 (C.D. Cal. Feb. 18, 2015), *rev'd sub nom. Ramirez v. ITW
   Food Equip. Grp.*, 686 F. App'x 435 (9th Cir. 2017) ........................................................9

iii

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

*Reed v. Lieurance*,
    863 F.3d 1196 (9th Cir. 2017) ............................................................................................4

*SEC v. Daifotis*,
    2012 WL 2051193 (N.D. Cal. June 7, 2012) .......................................................................3

*Shahinian v. Kimberly-Clark Corp.*,
    2017 WL 11595343 (C.D. Cal. Mar. 7, 2017) ................................................................6, 7

*Tucker v. Cnty. of Riverside, Cal.*,
    2018 WL 6017036 (C.D. Cal. May 23, 2018) ....................................................................4

*In re Twitter, Inc. Securities Litigation*,
    2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) .....................................................................2

*Wolf v. Hewlett Packard Co.*,
    2016 WL 7743692 (C.D. Cal. Sept. 1, 2016) ............................................................8, 9, 10

*United States v. Finley*,
    301 F.3d 1000 (9th Cir. 2002) ...........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B)(iv)..........................................................................................................9

iv

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

## I. INTRODUCTION

Dr. Catherine Tucker submitted a 92-page expert report on a host of topics, straying at times beyond her expertise and legal relevance. Plaintiffs challenged her testimony in four of those areas. In its Opposition brief, Meta Platforms, Inc. ("Facebook") largely does not contest what Plaintiffs said about Tucker's qualifications or the relevant law. Instead, Facebook attempts to remold Tucker's testimony to fit the *Daubert* standard, but in doing so it ignores the law and the facts of this case.

Because Facebook recognizes that Tucker cannot opine about the named Plaintiffs' credibility or state of mind, it tries to repackage her testimony as concerning only "advertising behavior." Facebook's revisionist history is unavailing. Tucker's Report directly challenges Plaintiffs' testimony that they relied on Potential Reach; it even includes the heading "The Named Plaintiffs' Advertising Behavior Shows that Potential Reach Was Unimportant to Their Advertising Strategy."

Tucker also attempts to argue that Plaintiffs received post-purchase benefits from the ads they placed, but that testimony is irrelevant to restitution under Ninth Circuit and California law and is calculated to confuse the jury. Facebook cannot escape that fact by rewriting Tucker's opinions or reinterpreting binding precedent.

Plaintiffs' opening brief also explained that Tucker has no background in auction simulations. Facebook makes no attempt to argue that Tucker is qualified in that field, arguing instead that she may critique the assumptions that went into the auction simulation of Plaintiffs' expert Dr. Timothy Roughgarden. But absent relevant qualifications, Tucker may not critique the way that another expert designed his simulation.

Finally, Tucker lacks the qualifications to criticize the conjoint survey of Plaintiffs' expert Dr. Greg Allenby. As Plaintiffs noted in their opening brief, Tucker has never been commissioned to conduct a conjoint survey, has not published any scholarship on conjoint, and scarcely teaches the subject. Facebook cannot point to any evidence disputing those facts.

Tucker's testimony in the four challenged areas must be excluded.

## II.     ARGUMENT

### A.     Tucker May Not Opine on the Credibility or State of Mind of the Named Plaintiffs

Tucker seeks to tell the jury that, "contrary to their testimony," Potential Reach was "unimportant" to the named Plaintiffs. *E.g.*, Tucker Rpt. ¶ 87. In their opening brief, Plaintiffs explained that Tucker's attempt "to undermine the credibility of the named Plaintiffs, and to opine on their mental states" was improper, and this is true "even when such evaluations are rooted in scientific or technical expertise. Mot. at 4:11–6:5 (citing, *inter alia*, *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005)). In response, Facebook now states, "Tucker will not offer an opinion on Plaintiffs' credibility or state of mind," Opp. at 8 n.4, and appears to acknowledge that such testimony is inadmissible, *id.* at 7:8–16 (citations omitted).

Because it cannot defend Tucker's state-of-mind and credibility testimony, Facebook instead aims to recharacterize it. Facebook contends that "Tucker's opinions are about Plaintiffs' advertising behavior," and that any conclusion she reaches about Plaintiffs' credibility or state of mind is indirect. *Id.* at 6:12, 7:2–8. The defendants attempted something similar in *In re Twitter, Inc. Securities Litigation*, 2020 WL 9073168, at *3 (N.D. Cal. Apr. 20, 2020). After the plaintiffs attempted to exclude an expert for testifying as to state of mind, the defendant recast that testimony as "concern[ing], in part, how investors would have understood Twitter's public comments." *Id.* But the Court evaluated the record, found "the opinions in question contain no such qualification," and excluded the expert's state-of-mind opinions. *Id.* The Court should do the same here.

Despite Facebook's astonishing claim that Tucker "does not 'baldly assert' that Plaintiffs did or did not factor Potential Reach into their decision-making," Opp. at 8:2–3 (citation omitted), that is exactly what she does. The section of her report on this topic begins with the heading: "The Named Plaintiffs' Advertising Behavior Shows that Potential Reach Was Unimportant to Their Advertising Strategy." Tucker Rpt. at 42. Tucker repeats, time and again, her opinion that Plaintiffs' testimony is not credible:

2

Plaintiffs' Reply In Support of Motion to Exclude in Part Facebook's Expert Catherine Tucker, Ph.D.
Case No. 3:18-cv-04978-JD

- "Contrary to his testimony, the evidence suggests that Potential Reach was unimportant to DZ Reserve's advertising strategy." *Id.* ¶ 90.

- "These data contradict Mr. Ziernicki's testimony . . . ." *Id.* ¶ 94.

- "[T]he data suggest that this testimony is implausible." *Id.* ¶ 105.[1]

And Tucker's Report repeatedly states that named Plaintiffs did not care about Potential Reach:

- "This suggests that DZ Reserve was focused on actual results, and that DZ Reserve's budget decisions, including whether to invest more money to scale a particular ad, was driven by actual performance of the ad after it was launched rather than estimates of Potential Reach prior to launch." *Id.* ¶ 96.

- "Mr. Ziernicki's ongoing advertising behavior confirms the limited importance of Potential Reach to his advertising strategy." *Id.* ¶ 98.

- "The evidence suggests that Potential Reach was unimportant to Mr. Maxwell's advertising strategy." *Id.* ¶ 101.

- "This suggests that Mr. Maxwell was interested in achieving a direct response—link clicks—with his ads, rather than achieving broad reach." *Id.* ¶ 102.[2]

Even Facebook's catalogue of supposedly admissible testimony includes Tucker's views of what Plaintiff Maxwell's "objective" was and her opinion regarding Ziernicki's statement that "all I care about is CPP [cost per purchase]." Opp. at 6:22, 6:26.

Tucker's opinion, at its root, is that Plaintiffs never "reasonably relied" on potential reach—an opinion that "squarely invades the province of the jury." *SEC v. Daifotis*, 2012 WL 2051193, at *5 (N.D. Cal. June 7, 2012). Maxwell and Ziernicki may each "testify himself about his reliance and be cross-examined in the presence of the jury." *Id.* That is the appropriate means

---

[1] *See also id.* ¶¶ 87 ("[C]ontrary to their testimony, Potential Reach was unimportant to their advertising decisions."), 95 ("Mr. Ziernicki's claimed method . . . is inconsistent with his advertising decisions." (quoting from deposition testimony)).

[2] *See also id.* ¶¶ 92 ("Mr. Ziernicki agreed that Potential Reach was unimportant for ads where he used Custom Audience targeting[.]"), 94 ("There is no evidence that any alleged inflation in Potential Reach estimates would materially change the inference that DZ Reserve's largest ad sets were not going to actually 'exhaust' the total audience."), 103 ("This suggests that Mr. Maxwell was using actual performance data and his own experience to inform his advertising decision-making, as opposed to relying on audience size estimates such as Potential Reach."), 105 ("There is no evidence that any alleged inflation in Potential Reach estimates would materially change the inference that Mr. Maxwell's largest ad sets were not going to exhaust the potential audience.").

3

to determine whether Plaintiffs viewed Potential Reach as important—not Tucker's speculation regarding their motives and beliefs.

The cases cited by Facebook are inapposite; none of them involve an expert directly testifying about a party's state of mind, as Tucker proposes to do. In these cases, a qualified expert is testifying about industry standards, organizational practices, or forensic evidence. *Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017) (allowing police practices expert to testify as to "the ability or perhaps nonability of others to do their job," even though it "might indirectly impeach the credibility of an opposing party's testimony"); *Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2019 WL 3099725, at *7 (C.D. Cal. Apr. 15, 2019) (admitting in part expert to testify on industry standards without "opin[ing] directly concerning Baker's credibility"); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999) (admitting accident reconstruction expert who did not incorporate eyewitness testimony because different eyewitnesses contradicted each other); *Tucker v. Cnty. of Riverside, Cal.*, 2018 WL 6017036, at *11–12 (C.D. Cal. May 23, 2018) (admitting forensic pathology expert who did not opine on credibility or state of mind but whose opinions might contradict eyewitness testimony); *Munoz v. PHH Mortg. Corp.*, 2022 WL 138670, at *4–5 (E.D. Cal. Jan. 14, 2022) (excluding expert from ascribing an "intent, motivation, agenda, or similar finding to actions taken by Defendants"); *Alcantar v. Foulk*, 2016 WL 3001242, at *12 (E.D. Cal. May 25, 2016) (allowing testimony that a person raising their elbow signified a "gang 'hit up'"); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) ("Cohan will be permitted to testify about the considerations on which persons in the field generally rely, but may not opine about why any person *in this case* took or did not take a particular action or made or did not make a particular decision." (emphasis in original)).

Because Tucker testifies about Plaintiffs' credibility and state of mind – something that Facebook acknowledges is improper – that testimony must be excluded.

4

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

### B. Tucker's Opinion on Supposed Post-Purchase "Benefits" Is Foreclosed Under the Ninth Circuit's Decision in *Pulaski & Middleman, LLC v. Google, Inc.*

Plaintiffs moved to exclude paragraphs 135–47 of Tucker's Report because there she opines on a laundry list of supposed post-purchase benefits, such as increased sales and profits to advertisers, that are irrelevant under *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). Facebook does not dispute these types of post-purchase benefits are irrelevant under *Pulaski*, because under California law restitutionary damages are based on the price consumers would have paid *at the time of purchase*.

Purported revenues, sales, purchases, and return on investment from online advertising are exactly the types of post-purchase benefits that were deemed irrelevant under *Pulaski*. There, the district court agreed with Google in holding that restitution must account for "the benefits received from ads," including that the "advertisers received significant revenues . . . from ads." *In re Google AdWords Litig.*, 2012 WL 28068, at *15 (N.D. Cal. Jan. 5, 2012). The Ninth Circuit reversed because the relevant calculation "*measures what the advertiser would have paid at the outset*, rather than accounting for what occurred after the purchase." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (emphasis added). And those "benefits received from ads" are exactly what Tucker opines on here:

- She repeats anecdotal "success stories" from Facebook's website, stating that companies like AirBnB saw increased purchases after they bought Facebook ads. Tucker Rpt. ¶ 137.

- She calculates that "$1.6 million in sales is linked to DZ Reserve's Facebook advertising activity." *Id.* ¶ 140.

- She claims, "Facebook advertising was a key driver of sales for Mr. Maxwell." *Id.* ¶ 142.

- She opines, "the combined return on investment [for Plaintiff Maxwell's online ads] was approximately 726 percent." *Id.* ¶ 143.

Facebook appears to agree that this testimony on post-purchase benefits is not admissible. Facebook acknowledges, "[t]he question of what advertisers *would have paid* for clicks and impressions at the time of purchase is the core damages issue in the case . . . ." Opp. at 10:11–13

5

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

(emphasis added). Plaintiffs agree, and this is what California law requires. *Pulaski*, 802 F.3d at 989 ("[R]estitution under the UCL and FAL measures what the advertiser would have paid at the outset, rather than accounting for what occurred after the purchase . . . ."); *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 891 (Cal. 2011).

Facebook also contends that "impressions and clicks that ads receive are not 'post-purchase benefits.'" Opp. at 10:7-9. But while Tucker calls the number of impressions and clicks "notable," Tucker Rpt. ¶ 138, she fails to explain how those numbers could or should be used to measure what advertisers would have paid at the time of purchase but-for Facebook's fraud.[3] Tucker's limited discussion of impressions and clicks is nothing more than a springboard to discuss post-purchase benefits.

Notwithstanding its apparent agreement on the proper scope of damages articulated in *Pulaski*, Facebook nevertheless attempts to brush *Pulaski* aside by claiming it applies only to restitution and not to damages. Opp. at 10:20–11:6. Facebook ignores controlling authority: In *Nguyen v. Nissan North America, Inc.*, 932 F.3d 811, 820–21 (9th Cir. 2019), the Ninth Circuit applied *Pulaski* to find that post-purchase benefits are irrelevant to damages under the CLRA. The court specifically noted that restitution and damages are "treated similarly," and that the California Supreme Court has held that restitution is merely a species of damages. *Id.* at 820 n.6 (9th Cir. 2019) (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 713 (Cal. 2000)); *see also Cortez*, 999 P.2d at 713 ("[T]he award of damages literally includes restitution.").

The two (unpublished) district court cases Facebook cites, which confined *Pulaski* to restitution under the UCL and FAL, predate *Nguyen*. *See* Opp. at 10:25–11:6 (citing *In re Myford Touch Consumer Litig.*, 2016 WL 7734558, at *18 (N.D. Cal. Sept. 14, 2016); *Shahinian v. Kimberly-Clark Corp.*, 2017 WL 11595343, at *13 (C.D. Cal. Mar. 7, 2017)). Those cases are also inapposite. In *Myford Touch*, the defendant "took subsequent remedial action to repair" the defective product, which is not the case in *Pulaski* or this case. 2016 WL 7734558, at *19. In

---

[3] Throughout her discussion of post-purchase benefits, Tucker's opinions are more anecdote than analysis. *See* Mot. at 6 n.3 ("Tucker never provides a methodology for calculating how the post-purchase benefits should supposedly impact the damages calculation.").

6

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

*Shahinian*, the plaintiffs sought a full refund, and the court's analysis was focused on the permissibility of a full refund damages request; here, Plaintiffs seek the return of a 3.4% to 8.9% price premium. 2017 WL 11595343, at *13.

Tucker's opinions regarding purported post-purchase "benefits" set forth in Paragraphs 135-147 should accordingly be excluded.

### C. Tucker Is Not Qualified to Opine on Dr. Roughgarden's Auction Simulation

Because she lacks experience in auction simulations or auction theory, Tucker is not qualified to critique Dr. Roughgarden's auction simulation. Mot. at 7:20–9:10. Facebook asserts that Tucker is "not opining on how Meta's auction system actually works," but is instead opining "that Roughgarden's auction simulation is based on unsupported assumptions about Meta advertising." Opp. at 11:8–12:6; *see also id.* at 12:12–14, 12:17–25. To be clear, Tucker is opining—although lacking any qualifications in the design of auction simulations—on *how Roughgarden designed his auction simulation*:

- Tucker criticizes an "assumption" that she says "is a critical input to the Roughgarden Auction Simulations." Tucker Rpt. ¶ 125.

- She critiques how "[t]he Roughgarden Report derives the share of advertisers whose budgets would be affected if Potential Reach estimates were removed." *Id.* ¶ 126.

- She says that the auction simulations "ignore heterogeneity," *id.* ¶¶ 170, 173, "assume that all advertisers are identical except for their daily budgets" and make other "simplifying assumptions" and "simplified design choices," *id.* ¶¶ 170–72.

- She asserts that the auction "lead[s] (unsurprisingly, given its structure) to a tight range of average CPMs [clicks per thousand] across advertisers that is inconsistent with real-world data." *Id.* ¶ 172.

Facebook also argues that its other expert, Dr. Steven Tadelis, will "opine on the mechanics of Meta's ad auction." Opp. at 12:9–10.[4] As Plaintiffs previously argued, Tucker should not be permitted to offer additional opinions about a topic already covered by a different expert. *See* Mot. at 10:17–27 (noting Tucker's overlap with Dr. David Reibstein).

Facebook deflects by alleging Dr. Roughgarden "never reviewed Meta's auction source

---

[4] Facebook writes that "Plaintiffs ignore th[is] fact." Opp. at 12:9–10. Not so. Mot. at 8 n.5.

7

code (or even auction bid data)." Opp. at 12:11–12. But Facebook never challenged Roughgarden's qualifications or the admissibility of his auction simulation. Nor could it. Roughgarden is an expert in the type of auction that Facebook uses (a Vickrey-Clarke-Groves or "VCG" auction). Roughgarden Rpt. ¶¶ 6, 29. He has written papers on VCG auctions, taught courses covering them, and written a textbook discussing them. *Id.* ¶ 6. On top of that experience, Roughgarden reviewed Facebook's internal documents regarding its auction pricing system and attended the deposition of Facebook's corporate designee regarding its auction. *Id.* ¶¶ 22-23.

Finally, Facebook claims that this critique goes to weight rather than admissibility. Opp. at 12:25–28 (citing *In re Pacific Fertility Ctr. Litig.*, 2021 WL 842739, at *3 (N.D. Cal. Mar. 5, 2021)). In *Pacific Fertility Center*, a forensic engineer was qualified to evaluate why a cryopreservation tank failed because he had experience with such tanks and had previously examined a failed tank, even though the expert "may not be a cryogenic engineer." 2021 WL 842739, at *2–3. Here, by contrast, Tucker has no relevant experience whatsoever in auction design, auction theory, or any related field.

Tucker's proposed testimony regarding the auction simulation, which is duplicative of Facebook's other rebuttal expert, Dr. Tadelis, should therefore be excluded.

**D.   Tucker Is Not Qualified to Opine on Allenby's Conjoint Survey**

Dr. Tucker is duplicative of another Facebook expert – Dr. David Reibstein – who also critiques Dr. Allenby's conjoint analysis. Mot. at 10:17–27. Unlike Reibstein, whose qualifications Plaintiffs do not challenge, Tucker has never published scholarship on conjoint surveys, made a professional presentation about them, or been hired to conduct one. Mot. at 9:11–10:27.[5]

Facebook argues that "Plaintiffs' failure to challenge Tucker's qualifications as a digital advertising economist is alone reason to deny their Motion." Opp. at 13:7–16. But the issue is

---

[5] Facebook writes in a footnote, "Tucker also disputed Allenby's justification for rejecting his original analysis . . . but Plaintiffs do not appear to challenge that opinion." Opp. at 5 n.2 (citation omitted). Tucker lacks the qualifications to testify on conjoint, so Plaintiffs challenged *all* of Tucker's opinions regarding Allenby's conjoint survey, including her critique of Allenby's opinion that a mixed logit model was inappropriate for his conjoint survey. *See* Notice of Mot. at v (challenging testimony on "the conjoint survey conducted by Plaintiffs' expert Greg Allenby, Ph.D.").

8

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

whether Dr. Tucker is qualified as a conjoint survey expert, not an expert in a different area like digital advertising economics. *Wolf v. Hewlett Packard Co.*, 2016 WL 7743692, at *6 (C.D. Cal. Sept. 1, 2016) (excluding generally qualified expert who lacked experience in conjoint); *see also Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.").

According to Facebook, Tucker is qualified because "[s]he has conducted hundreds of conjoint surveys and taught conjoint survey technique and methodology at MIT for years." Opp. at 13:19–20 (citing Tucker Rpt. ¶ 109; Tucker Dep. at 77:7–88:24). The record to which Facebook cites does not support that Tucker has "conducted hundreds of conjoint surveys." As an initial matter, Tucker was required to list her qualifications in her expert report, *see* Fed. R. Civ. P. 26(a)(2)(B)(iv), and Tucker never states in her expert report that she has run any conjoint surveys, let alone hundreds. During her deposition, Tucker said she had "run[] many conjoint surveys myself." Tucker Dep. at 77:11–21. Tucker does not provide any details regarding these conjoint surveys that were never memorialized in her expert report, never published in an article, and no third party ever paid for. Such activity obviously lacks validation of peer review or external recognition. And Facebook does not dispute Tucker has never published an article on conjoint, given a conference presentation on it, or been hired to conduct a conjoint survey. Mot. at 9:20–23.

The cases cited by Facebook are inapposite. Opp. at 13:23–14:6. In *Ramirez,* there was "no dispute that [the expert] is a credentialed electrical engineer. *Ramirez v. Hobart Corp.,* 2015 WL 10939541, at *7 (C.D. Cal. Feb. 18, 2015), *rev'd sub nom. Ramirez v. ITW Food Equip. Grp.,* 686 F. App'x 435 (9th Cir. 2017). Those credentials qualified him to opine that "an employee's splicing of wires in [a meat] grinder did not affect the operation of the stop button," even though he lacked specific "experience with commercial food equipment." 686 F. App'x at 440–41. This Motion does not concern Tucker's experience with a specific device or technology, but rather her lack of experience with conjoint in any context. Similarly, in *Day v. County of Contra Costa*, the expert was "generally qualified" even though he had not published books or other materials on the subject

matter. 2008 WL 4858472, at *20 (N.D. Cal. Nov. 10, 2008). Unlike in *Day*, Tucker is not generally qualified on conjoint.

Facebook's attempts to distinguish *Wolf v. Hewlett Packard* are unavailing. Opp. at 14:6–12. Just as in this case, the expert in *Wolf* had "impressive credentials" on some topics but lacked expertise on conjoint. *Wolf*, 2016 WL 7743692, at *6. Facebook argues that *Wolf* is distinguishable because "Tucker did not conduct her own conjoint survey – she identifies flaws in Allenby's survey." Opp. at 14:9–10. That argument must fail, for it would allow an expert who is not qualified to conduct their own conjoint survey to wait for a qualified expert to conduct one and then argue in hindsight it should have been done differently – exactly what Tucker attempts here.

Dr. Tucker does not teach any class focused on conjoint, and conjoint is briefly mentioned in at most two class meetings in one of her courses. Mot. at 9:25–10:11. Facebook responds that these facts are "based on long-outdated lecture notes Plaintiffs dug up from 2010 and 2014," though it does not dispute their accuracy. Opp. at 14:16–18. Facebook also argues, "the question is whether Tucker, not her students, is qualified to opine on conjoint analysis." *Id.* That is true, and the fact that Tucker has never taught conjoint in any depth helps to demonstrate her lack of qualifications. Finally, Facebook cites *United States v. Finley* to argue that "the robustness of her syllabi for classes taught a decade ago 'can be properly addressed by [Plaintiffs] on cross-examination.'" Opp. at 14:18–22 (quoting *Finley*, 301 F.3d 1000, 1014 (9th Cir. 2002)). But in *Finley* there was no dispute that the expert "possesse[d] the qualifications to testify as an expert under Rule 702." 301 F.3d at 1008.

Tucker's proposed testimony regarding Dr. Allenby's conjoint, which is duplicative of Facebook's other rebuttal expert, Dr. Reibstein, should therefore be excluded.

### III.   CONCLUSION

Parts of Dr. Tucker's testimony, specified above, invade the province of the jury, delve into legally irrelevant areas, and exceed her qualifications. They should be excluded.

DATED: April 29, 2022                     Respectfully submitted,

By: /s/ *Geoffrey Graber*

10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

Geoffrey Graber (SBN 211547)
Andrew N. Friedman (*pro hac vice*)
Karina G. Puttieva (SBN 317702)
Paul Stephan (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com
pstephan@cohenmilstein.com

Eric Kafka *(pro hac vice)*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
Charles.reichmann@gmail.com

*Counsel for Plaintiffs and Proposed Class*