Andrew N. Friedman (*pro hac vice*)
Geoffrey Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
Paul Stephan (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com
pstephan@cohenmilstein.com

Eric Kafka *(pro hac vice)*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
Charles.reichmann@gmail.com

*Counsel for Plaintiffs and Proposed Class*

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DZ Reserve and Cain Maxwell (d/b/a Max Martialis), individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Meta Platforms, Inc. (f/k/a Facebook, Inc.), <br><br> Defendant. | Case No.: 3:18-cv-04978-JD <br><br> **PLAINTIFFS' MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.** <br><br> [Declaration of Geoffrey Graber and Proposed Order filed concurrently herewith] <br><br> Date: June 23, 2022 <br> Time: 10:00 am <br> Court: Courtroom 11, 19th Floor <br> Hon. James Donato |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. RELEVANT FACTUAL BACKGROUND ..................................................................... 1

III. LEGAL STANDARD ....................................................................................................... 3

IV. ARGUMENT .................................................................................................................... 4

    A. Tucker May Not Opine on the Credibility or State of Mind of the Named Plaintiffs .................................................................................................................. 4

    B. Tucker's Rebuttal Opinion on the Supposed Post-Purchase "Benefits" Received By Advertisers Is Irrelevant to Damages ................................................. 6

    C. Tucker Is Not Qualified to Opine on Roughgarden's Auction Simulation ............ 7

    D. Tucker Is Not Qualified to Opine on Allenby's Conjoint Survey ......................... 9

V. CONCLUSION ............................................................................................................... 11

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Berry v. City of Detroit*,
   25 F.3d 1342 (6th Cir. 1994) ...........................................................................................8, 9

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
   2012 WL 5194085 (W.D. Wash. Oct. 18, 2012) ..............................................................8, 9

*Colgan v. Leatherman Tool Grp., Inc.*,
   38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) ..............................................................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..............................................................................................v, 1, 4, 7

*Hickman v. Sofamor-Danek Grp., Inc.*,
   1999 WL 606690 (N.D. Cal. Feb. 17, 1999) ........................................................................8

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877, 891 (Cal. 2011) ..............................................................................................6

*Masters v. Safeco Ins. Co. of Am.*,
   2021 WL 4317112 (D. Colo. Sept. 23, 2021) .......................................................................8

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ..................................................................................................5

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ......................................................................6

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) .......................................................................................4, 7, 9

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) .................................................................................................7

*Siring v. Oregon State Bd. of Higher Ed.* ex rel. *Eastern Oregon Univ.*,
   927 F. Supp. 2d 1069 (D. Or. June 11, 2013) .......................................................................6

*In re Twitter, Inc. Sec. Litig.*,
   2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ......................................................................6

*United States v. Filler*,
   210 F.3d 386 (9th Cir. 2000) ............................................................................................4, 5

*United States v. Hendrix*,
   2020 WL 30342 (W.D. Wash. Jan. 2, 2020) ........................................................................8

iii

PLAINTIFFS' MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

*Wolf v. Hewlett Packard Co.*
  2016 WL 7743692 ................................................................................................................9

**Other Authorities**

Anja Lambrecht & Catherine Tucker, *Algorithmic Bias? An Empirical Study into
  Apparent Gender-Based Discrimination in the Display of STEM Career Ads* ........................8

Catherine Tucker et al., *Computer Algorithms Prefer Headless Women* .........................................9

Federal Rule of Evidence 702 ................................................................................v, 3, 4, 9

iv

PLAINTIFFS' MOTION TO EXCLUDE IN PART FACEBOOK'S EXPERT CATHERINE TUCKER, PH.D.
Case No. 3:18-cv-04978-JD

## NOTICE OF MOTION AND MOTION TO EXCLUDE

PLEASE TAKE NOTICE that on June 23, 2022, at 10:00am, or as soon thereafter as counsel may be heard, before the Honorable James Donato, Courtroom 11, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California, Plaintiffs DZ Reserve and Cain Maxwell (d/b/a Max Martialis) will and hereby do move, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), for an order excluding Facebook's expert Catherine Tucker, Ph.D., from testifying on the following subjects:

1. the importance of Potential Reach to the named Plaintiffs;
2. the purported post-purchase "benefits" putative class members received from placing advertisements;
3. the auction simulation conducted by Plaintiffs' expert Timothy Roughgarden, Ph.D.; and
4. the conjoint survey conducted by Plaintiffs' expert Greg Allenby, Ph.D.

This Motion is based on the following Memorandum of Points and Authorities, the Declaration of Geoffrey Graber, the [Proposed] Order, the entire record in this matter, and such evidence as may be presented at any hearing of this Motion, on a date and time to be determined by the Court.

DATED: June 3, 2022                     Respectfully submitted,

                                        By: /s/ *Geoffrey Graber*
                                        Geoffrey Graber (SBN 211547)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs move to limit the testimony of Facebook's[1] rebuttal expert, Dr. Catherine Tucker. According to Facebook, Potential Reach is "arguably the single most important number in its [ads] creation interface," it was vital to "100% of our ad revenue," and there was "no question" that Potential Reach inflation impacted budget allocations. Despite its past acknowledgements, Facebook now proffers the expert testimony of Tucker, who claims the Potential Reach metric was not important and did not affect advertisers' purchasing decisions.

Four portions of Tucker's testimony fail to meet the *Daubert* standard. First, Tucker invades the province of the jury by attacking the credibility of the named Plaintiffs and opining on their state of mind, claiming that "contrary to their testimony, Potential Reach was unimportant to their advertising decisions." Second, Tucker asserts that advertisers received post-purchase "benefits" from running their ads on Facebook, which is legally irrelevant under California and Ninth Circuit law. Third, she attacks the auction simulation of Plaintiffs' expert Timothy Roughgarden even though she has no background in auction simulations or computer science. Fourth and finally, she critiques the conjoint survey conducted by Plaintiffs' expert Greg Allenby, despite the fact that she has never published an article on conjoint or been commissioned to run one. Accordingly, Tucker's testimony in these four areas should be excluded.

## II.    RELEVANT FACTUAL BACKGROUND

Facebook offers Dr. Tucker as an omnibus expert to rebut the testimony of six of Plaintiffs' experts. Graber Decl. Ex. 1, Tucker Rept. ¶ 5 (ECF No. 328-2 (sealed)). In seeking to rebut Plaintiffs' damages calculations, Tucker opines that Potential Reach is "unimportant" to most advertisers – notwithstanding the substantial documentary evidence to the contrary.[2] Tucker

---

[1] Defendant Meta Platforms is herein referred to as "Facebook."

[2] At her deposition, Tucker equivocated as to whether Potential Reach provides value to advertisers. She agreed that Potential Reach "may help" advertisers and called it a "guideline" and a "useful nudge," and even "a tool which may or may not be used by some advertisers when

devotes several pages of her report to impeaching the testimony of the named Plaintiffs. *Id.* ¶¶ 87–106. She opines that, despite their repeated testimony to the contrary, named Plaintiffs personally did not really care about Potential Reach: "Evidence on the Named Plaintiffs' advertising shows that, contrary to their testimony, Potential Reach was unimportant to their advertising decisions." *Id.* ¶ 87.

Tucker also opines that Plaintiffs' damages experts "ignore the value that advertisers received from their Facebook ads." *Id.* ¶¶ 135–47. In support of this opinion, Tucker summarizes "success stories" from Facebook's website to show that "[a]dvertisers receive a variety of benefits from Facebook advertising." *Id.* ¶ 137. Tucker acknowledges that she cannot "assess this value in aggregate" but nevertheless claims that "the number of impressions and clicks generated by Facebook ads placed by advertisers in the class is notable, and highlights the extent of the results and potential benefits delivered by Facebook ads." *Id.* ¶ 137.

Tucker criticizes Plaintiffs' auction expert, Dr. Timothy Roughgarden. *See* Tucker Rept. ¶¶ 125–29, 170–75. Roughgarden holds a Ph.D. in computer science, is a computer science professor at Columbia University, and is one of the foremost experts in the field of algorithmic game theory, including auction and mechanism design. Roughgarden Rept. ¶¶ 1–6 (ECF No. 325-32). Using that experience, Roughgarden conducted an auction simulation that mimicked Facebook's ad auction system. *Id.* ¶ 38. His auction simulation measured the decrease in prices that advertisers would have paid in the absence of Facebook's misrepresentations about Potential Reach. *Id.* ¶¶ 73–75. Tucker is a marketing professor at MIT with no experience running auction simulations, and she has never published any works on auction theory or design. Tucker Rept. ¶¶ 1; Tucker Dep. 102:21–103:2. Nevertheless, Tucker argues that Roughgarden's auction simulation made inappropriate and "simplifying assumptions" that ignore the "heterogeneity" of Facebook's advertisers. Tucker Rept. ¶¶ 125–29, 170–75; *see also id.* ¶¶ 59, 167, 180.

---

trying to hone their targeting criteria." Graber Decl. Ex. 2, Tucker Dep. 52:15–61:8. She refused to say that it "provides some value to advertisers," while also refusing to say that it "provides absolutely no value to Facebook advertisers." *Id.* 61:9–62:21. She conceded that "plaintiffs do say it is generally important," but testified "I don't believe that potential reach affects how advertisers allocate their budgets." *Id.* 64:12–65:5

Tucker also criticizes Plaintiffs' conjoint expert, Dr. Greg Allenby. *Id.* ¶¶ 109–17, 168–69. Tucker has never been retained to run a conjoint survey. Tucker Dep. 77:22–78:10. In contrast, Allenby is a luminary in the field of conjoint and has been retained ten times to field conjoint surveys in litigation in addition to dozens of engagements outside of litigation. Allenby Rept. at 1, 3 (ECF No. 327-1 (sealed)); Allenby Dep. 97:10–13 (ECF No. 304-17 (sealed); ECF No. 357-2 (redacted)). In this case, Allenby used a conjoint analysis "to determine if Facebook's alleged Audience Size misrepresentations and omissions increased demand for Facebook advertisements, and to measure the increase in demand (if any) caused by Facebook's alleged misrepresentations and omissions." Allenby Rept. at 3. He found that, in fact, the misrepresentations increased consumer demand to a statistically significant degree. *Id.* at 23.

Tucker asserts that Allenby's conjoint fails to "capture the dynamic decision-making process enabled by the digital environment." Tucker Rept. ¶ 109. She also states, "Potential Reach is a poor candidate for inclusion in a conjoint study attempting to understand how advertisers make budget allocation decisions because . . . Potential Reach would be of limited or no importance to many Facebook advertisers for purposes of setting budgets." *Id.* ¶ 112. In other words, according to Tucker, a conjoint survey cannot determine whether Potential Reach is important to advertisers, because Potential Reach isn't important to advertisers. Despite the apparent uselessness of the conjoint survey, Tucker says that the survey showed that Potential Reach does not affect advertisers' budget allocations. *Id.* ¶ 115. Tucker also critiques the design of Allenby's conjoint and the information presented to and omitted from the study participants. *Id.* ¶¶ 112–14.

### III.     LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

3

  (b) the testimony is based on sufficient facts or data;

  (c) the testimony is the product of reliable principles and methods; and

  (d) the expert has reliably applied the principles and methods to the facts of the case.

The court must ensure that (1) the expert is "sufficiently qualified to render the opinion," (2) the testimony "rests on a reliable foundation," and (3) the evidence will "assist the trier of fact either to understand the evidence or to determine a fact in issue." *Primiano v. Cook*, 598 F.3d 558, 563–64 (9th Cir. 2010) (citing Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 597 (1993)).

## IV. ARGUMENT

### A. Tucker May Not Opine on the Credibility or State of Mind of the Named Plaintiffs

Tucker's Report seeks to undermine the credibility of the named Plaintiffs, and to opine on their mental states. *See* Tucker Rept. ¶¶ 87–106. Tucker summarizes this portion of her opinion by stating, "Evidence on the Named Plaintiffs' advertising shows that, contrary to their testimony, Potential Reach was unimportant to their advertising decisions." *Id.* ¶ 87. This is wholly inappropriate. "[E]xperts may not opine on credibility. Credibility is an issue for the Jury." *United States v. Filler*, 210 F.3d 386 (9th Cir. 2000) (citations omitted).

Tucker's attempted impeachment of the named Plaintiffs reads less like an expert report and more like an attorney's cross-examination or closing argument seeking to undermine a witness's credibility. *See, e.g.*, Tucker Rept. ¶¶ 100 ("Mr. Maxwell claims to have relied on Potential Reach . . . ."), 101 ("The evidence suggests that Potential Reach was unimportant to Mr. Maxwell[]."). And Tucker makes no attempt to conceal her goal – refuting the named Plaintiffs' deposition testimony. *Id.* ¶¶ 87 ("contrary to their testimony"), 90 ("Contrary to his testimony"), 94 ("These data contradict Mr. Ziernicki's testimony"), 95 ("Mr. Ziernicki's claimed method . . . is inconsistent with his advertising decisions." (quoting from deposition testimony)), 105 ("the data suggest that this testimony is implausible").

Tucker raises online posts that Plaintiff DZ Reserve's owner Daniel Ziernicki made.

Tucker Rept. ¶ 91. She quotes his deposition testimony, stating, "In his deposition, Mr. Ziernicki agreed that Potential Reach was unimportant for ads where he used Custom Audience targeting," and "during his deposition, Mr. Ziernicki testified that he often experimented with different ad specifications with a lower budget." *Id.* ¶¶ 92, 96. Tucker impugns other portions of his testimony as "inconsistent with his advertising decisions." *Id.* ¶ 95. She discusses the amount and types of ads that Plaintiff DZ Reserve placed, which to her "suggest[] DZ Reserve was focused on performance advertising rather than maximizing reach." I*d.* ¶¶ 90, 93–94, 97–98.

Tucker gives Plaintiff Cain Maxwell the same treatment, concluding, "[t]he evidence suggests that Potential Reach was unimportant to Mr. Maxwell's advertising strategy." *Id.* ¶ 101. She writes that Plaintiff Maxwell "testified that he based his business strategy" on a course offered on Amazing.com, then argues, "There is no evidence that Amazing.com advised advertisers to rely on Potential Reach to make Facebook advertising decisions." *Id.* ¶ 101. Tucker quotes his deposition testimony to show that he purportedly did not rely on Potential Reach representations. *Id.* ¶¶ 102–03. As she did with Plaintiff DZ Reserve, Tucker also scrutinizes Plaintiff Maxwell's advertising purchases to show that "Mr. Maxwell was interested in achieving a direct response – link clicks – with his ads, rather than achieving broad reach." *Id.* ¶ 102; *see also id.* ¶ 104, 105 ("However, the data suggest that this testimony is implausible.").

This is nothing more than an attack on the credibility of the named Plaintiffs. As noted above, "experts may not opine on credibility. Credibility is an issue for the jury." *United States v. Filler*, 210 F.3d 386; *accord Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (collecting cases). Even if this opinion would meet the *Daubert* standard, it is inadmissible: "[E]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." *Nimely*, 414 F.3d at 398 (collecting cases).

In addition to usurping the jury's role in evaluating credibility, Tucker's testimony impermissibly opines on Plaintiffs' states of mind. Experts are "not allowed to testify regarding the state of mind of . . . customers or opine as to why they did or did not take a particular action."

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018); *see also In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *6 (N.D. Cal. Apr. 20, 2020); *Siring v. Oregon State Bd. of Higher Ed.* ex rel. *Eastern Oregon Univ.*, 927 F. Supp. 2d 1069, 1077–78 (D. Or. June 11, 2013). Because Tucker's opinion intrudes on areas uniquely reserved for the jury, it must be excluded.

### B. Tucker's Rebuttal Opinion on the Supposed Post-Purchase "Benefits" Received By Advertisers Is Irrelevant to Damages

Tucker criticizes two of Plaintiffs' damages experts – Bruce McFarlane and Dr. Armando Levy – for ignoring the purported post-purchase "benefits delivered by Facebook ads" in their damages analysis. Tucker Rept. ¶¶ 135–47. Tucker opines that "[a]dvertisers receive a variety of benefits from Facebook advertising," and attempts to analyze the post-purchase benefits from Facebook advertising by pointing to various anecdotal evidence. *Id.* ¶¶ 137–47.[3]

This portion of Tucker's opinion is legally irrelevant to damages. Under California law, "the measure of recovery . . . is the value of the property *at the time of its improper acquisition*, retention or disposition, or a higher value if this is required to avoid injustice." *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 62 (Cal. Ct. App. 2006) (emphasis added). Similarly, in *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 891 (Cal. 2011), the defendant-seller argued that plaintiffs-buyers were not damaged from purchasing locksets incorrectly labelled as "Made in U.S.A." because they nevertheless obtained working locksets. The California Supreme Court squarely rejected that contention, observing that the consumer is injured by overpaying for a misrepresented product – regardless of whether the product would be "functionally equivalent" without the misrepresentation. *Id.* at 891–94.

In a highly analogous case concerning online advertisements placed on Google, the Ninth Circuit followed *Colgan*, *Kwikset*, and other California law, to hold that damages for fraud are "based on what a purchaser would have paid at the time of purchase had the purchaser received

---

[3] Tucker never provides a methodology for calculating how the post-purchase benefits should supposedly impact the damages calculation. Instead, Tucker offers anecdotal stories with little substantive analysis.

all the information." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). It elaborated, "The calculation [of damages] need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase." *Id.* Tucker's testimony on the post-purchase benefits is thus irrelevant.

Tucker's testimony on "benefits" is yet another attempt by Facebook to make this case about something it is not – the clicks and impressions for ads. In Facebook's first Motion to Dismiss, it argued that "Plaintiffs do not allege any economic harm" because "Facebook only charges advertisers if and when, e.g., people are shown or click on an ad," that is, based on "the number of clicks or the number of impressions [an] ad received." Mot. to Dismiss at 14:9–16 & n.3 (citation omitted) (ECF No. 65.) It made the same argument in subsequent motions. Mot. to Dismiss 2d Am. Compl. 10:27–11:6 (ECF No. 103); Mot. to Dismiss 3d Am. Compl. 11:3–10 (ECF No. 177). But Plaintiffs are not alleging misbilling from the number of clicks or impressions an ad receives. The Court therefore rightly rejected Facebook's argument at the motion to dismiss, Civil Minutes (ECF No. 83), and Tucker's evidence on this point is as irrelevant now as it was then.

Expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. . . . Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation omitted). This portion of Tucker's opinion should be excluded because it is irrelevant.

### C. Tucker Is Not Qualified to Opine on Roughgarden's Auction Simulation

Tucker's credentials and academic affiliations may qualify her to be an expert on some topics, but she is not "sufficiently qualified to render [an] opinion" on auction simulations or to critique Roughgarden's auction simulation. *Primiano v. Cook*, 598 F.3d 558, 563–64 (9th Cir. 2010). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific

question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).[4]

Tucker has no experience, theoretical or practical, with designing, manipulating, or analyzing auction systems like the one Facebook uses to sell ads.[5] While Roughgarden holds a Ph.D. in computer science, Tucker does not have any degree in computer science. Roughgarden Rept. ¶ 3; Tucker Rept. App. A. Tucker has never taught a class on auction theory. Tucker Dep. 109:6–14. At her deposition, she could not recall any time when she wrote code to design an auction simulation. *Id.* 108:6–109:5.

Tucker also has not published any research on auction theory or auction simulations. Tucker Dep. 102:21–103:2. This stands in contrast to Roughgarden, who "co-edited and authored two chapters in one of the seminal books on algorithmic game theory," "wrote the primary textbook in the field," and has published many articles on the subject. Roughgarden Rept. ¶¶ 5–6. At her deposition, Tucker pointed to two articles to demonstrate her familiarity with Facebook's auction system, but neither explored how Facebook's, or any other platform's, ad auctions work. *Id.* 102:21–103:22, 104:21–105:17. In the first article,[6] Tucker and her co-author simply ran different ad campaigns, as any advertiser would, and analyzed how successful those campaigns were. Lambrecht & Tucker at 9–13, 24–25; Tucker Dep. 104:21–105:5. The article studied the inputs and outputs of the auction system but never investigated how the auction system actually works. Lambrecht & Tucker at 12–14. Tucker and her co-author conceded in the paper that the recommended bid data "has the disadvantage that researchers have no information about the

---

[4] *See, e.g.*, *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2012 WL 5194085, at *8 (W.D. Wash. Oct. 18, 2012) (expert in animal hair fibers not qualified to testify on a semi-synthetic fiber). Academic credentials in a given field do not give an expert carte blanche to testify on any specialized subject within that field. *United States v. Hendrix*, 2020 WL 30342, at *5 (W.D. Wash. Jan. 2, 2020); *cf. Masters v. Safeco Ins. Co. of Am.*, 2021 WL 4317112, at *16 (D. Colo. Sept. 23, 2021) ("[M]erely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue."); *see also Hickman v. Sofamor-Danek Grp., Inc.*, 1999 WL 606690, at *8 (N.D. Cal. Feb. 17, 1999) (experts in pain management but without experience in spinal fixation systems could not testify as to whether those systems caused spinal pain).

[5] In addition to Tucker, Facebook offers the testimony of Dr. Tadelis to rebut Roughgarden's auction analysis.

[6] Anja Lambrecht & Catherine Tucker, *Algorithmic Bias? An Empirical Study into Apparent Gender-Based Discrimination in the Display of STEM Career Ads*, at 12–13, 24–25 (Mar. 9, 2018), https://tinyurl.com/29ex6mje.

precise 'black box' that is used to calculate the values." *Id.* at 25. What Tucker described as a "black box" is actually the inner workings on Facebook's auction system. Tucker cannot claim to have expertise on how Facebook's auction system operates when she writes papers in which she admits that she has no knowledge on the topic. The second paper studied the inputs and outputs (again, not the actual workings) of Snapchat's ad distribution algorithm.[7] But again Tucker's paper failed to discuss the functioning of Snapchat's ad algorithm.

Tucker simply does not have the "knowledge, skill, experience, training, or education" to render an expert opinion on Roughgarden's auction simulation. Fed. R. Evid. 702; *see also Primiano*, 596 F. 3d at 563–64; *Berry*, 25 F.3d at 1351; *Cascade Yarns*, 2012 WL 5194085, at *8; *Wolf v. Hewlett Packard Co.* 2016 WL 7743692, at *6. That opinion must be excluded.

### D. Tucker Is Not Qualified to Opine on Allenby's Conjoint Survey

Tucker is also not qualified to testify on the specific and highly technical topic of conjoint surveys. In *Wolf v. Hewlett Packard Co.,* 2016 WL 7743692, at *6 (C.D. Cal. Sept. 1, 2016), the proffered expert had an MBA and extensive litigation experience, which the court agreed were "impressive credentials.". Nevertheless, the expert "must have expertise in the matters on which he will opine in this case – specifically, . . . conjoint analyses." *Id.* Because the expert had "no educational or professional background in survey design or sampling," had not conducted a conjoint study, and had not published a peer-reviewed article on conjoint, he was not qualified to testify on conjoint analysis. *Id.*

Similarly, here Tucker lacks the requisite expertise to opine on conjoint analysis. Tucker has never published an article on conjoint surveys Tucker Dep. 77:7–10. She has never given any presentations at conferences on the subject. *Id.* 78:11–20. No one has ever paid her to conduct a conjoint survey. *Id.* 77:22–78:10. She claims expertise on conjoint surveys based on two things: She teaches conjoint, and she has "helped implement conjoints" for senior executives taking classes at MIT. *Id.* 79:12–80:1. But Tucker has never taught a class dedicated to conjoint analysis.

---

[7] Catherine Tucker et al., *Computer Algorithms Prefer Headless Women*, at 6–8 (Jan. 5, 2019), https://www.aeaweb.org/conference/2019/preliminary/paper/5Zh7fTrY.

Rather, conjoint is discussed in three of her courses: a class on pricing, an executive pricing class, and a general management class. *Id.* 80:24–81:3. In the pricing classes, where she "expect[s] students to spend more time on conjoint," *id.* 84:25–87:2, conjoint is discussed in a single class session, and in that session it takes up only one out of nine pages of her 2010 lecture notes. Graber Decl. Ex. 3, Tucker Dep. Ex. 346 at 4–5. Tucker testified that the lecture notes do not reflect the actual lecture and come from an older version of the class which in more recent years she has dedicated more to conjoint. Tucker Dep. 91:12–93:22, 94:9–98:16. However, the 2014 version of the syllabus for the same class shows that conjoint is taught in, at most, two sessions. Graber Decl. Ex. 4, Tucker Dep. Ex. 347; Tucker Dep. 99:19–100:23. Tucker stated that the 2014 version of the class is also different from her current version of the course, although in the current version conjoint is still discussed in two class sessions at most. *Id.* 100:24–101:22.

Despite her lack of experience, Tucker testifies here that a conjoint survey is "the wrong tool" to measure a shift in consumer demand for Facebook advertising caused by Potential Reach representations. Tucker Rept. ¶ 111. And even though Tucker has never designed a conjoint study for a paying client, she makes very particular critiques of how Allenby designed the conjoint study and the variables he chose to include and not include. *Id.* ¶¶ 112–14.

Tucker's lack of conjoint expertise stands in marked contrast to Plaintiffs' expert – Greg Allenby – and one of Facebook's other experts – Dr. David Reibstein. Reibstein Dep., at 25:18-19; 24:14-25:21 (ECF No. 335-6); Allenby Dep. at 140:9-20. Unlike Tucker, Allenby and Reibstein have both written papers on conjoint. Allenby Rpt. at 1 nn. 1-2; Allenby CV-2-12; Reibstein Dep Ex. 298 (ECF No. 335-7). In fact, because Reibstein is an actual conjoint expert, he has written papers that endorse Allenby's conjoint design in this litigation. Reibstein Dep. Ex. 298 at 45 n.140. Facebook never cites to Tucker's Report in its motion to exclude Allenby's opinion, instead relying on Reibstein's Report and (mischaracterizations of) Allenby's testimony. ECF No. 285. Facebook hopes to use Tucker to amplify Reibstein (Facebook's real conjoint expert) but Tucker lacks Reibstein's expertise. Facebook is free to call Reibstein at trial, but the Court should not permit Facebook to call a backup witness who has no relevant expertise in conjoint.

## V. CONCLUSION

Tucker's opinions on the credibility and state of mind of the named Plaintiffs are impermissible as a matter of law, and her opinions on the "benefits" derived from Facebook's ads are irrelevant to damages. She is also not qualified to testify on auction simulations or conjoint analysis. Therefore, Tucker's opinions on these four subjects should be excluded.

DATED: June 3, 2022   Respectfully submitted,

By: /s/ *Geoffrey Graber*

Geoffrey Graber (SBN 211547)
Andrew N. Friedman (*pro hac vice*)
Karina G. Puttieva (SBN 317702)
Paul Stephan (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com
pstephan@cohenmilstein.com

Eric Kafka *(pro hac vice)*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
Charles.reichmann@gmail.com

*Counsel for Plaintiffs and Proposed Class*