LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
 melanie.blunschi@lw.com
Nicole C. Valco (Bar No. 258506)
 nicole.valco@lw.com
Francis J. Acott (Bar No. 331813)
 francis.acott@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6548
Telephone: +1.415.391.0600

Andrew B. Clubok (pro hac vice)
 andrew.clubok@lw.com
Susan E. Engel (pro hac vice)
 susan.engel@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Counsel for Defendant Meta Platforms, Inc.
(formerly known as Facebook, Inc.)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DZ Reserve and Cain Maxwell (d/b/a Max Martialis), individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:18-cv-04978-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSE TO PLAINTIFFS' FIRST PRETRIAL CONFERENCE STATEMENT**<br><br>Date: August 28, 2025<br>Time: 1:30 pm PT<br>Court: Courtroom 11, 19th Floor<br>Hon. James Donato |

Defendant Meta Platforms, Inc. ("Meta") submits this response to Plaintiffs' unilateral and unauthorized submission of a pretrial statement Friday evening, August 22, 2025, without meeting or conferring with Meta in advance. In short:

1. Plaintiffs are asking for an unduly long trial because they are intending to present testimony on exactly the theory the Ninth Circuit did not allow to proceed on a classwide basis, *i.e.*, "the numerical discrepancy between people and accounts, rather than the fact that Meta substituted people for accounts." 96 F.4th 1223, 1234-35 (9th Cir. 2024). That evidence is entirely irrelevant to the class claims under the Ninth Circuit's decision; without it, this case should proceed in no more than 12.5 to 15 hours per side;

2. Meta is prepared to, and believes this matter should, proceed to trial October 14, 2025— but without the advertisers who expressly agreed to arbitration; and

3. Unnamed class members who previously submitted sworn declarations explaining how they actually used Potential Reach should be permitted to provide testimony necessary to counter the testimony of paid-for experts and Plaintiffs—whom the documentary evidence shows did not rely on Potential Reach but who intend to testify that they did.

Meta also is prepared to discuss any administrative matters at the conference on August 28, 2025, including the process for jury questionnaires and voir dire and bifurcation of Plaintiffs' punitive damages request. In particular, for voir dire, Meta suggests that it may be efficient to include some additional questions in the juror questionnaire. Meta also believes bifurcation of punitive damages would avoid unnecessary trial time and confusing the jury; punitive damages can efficiently be determined by the jury if necessary immediately following any adverse verdict, especially as Meta is prepared to submit a stipulation on financial capacity that could streamline that phase of the proceeding. Meta has also made clear to Plaintiffs that Meta remains willing to engage in negotiations to resolve this dispute.

## I.  Plaintiffs' Proposed Trial Length And Expert Roster Is Excessive

Meta believes this case can be efficiently tried in **under 20 hours per side**. If the Court excludes evidence not relating to the classwide representation of the substitution of the word people for accounts, then the case can be tried with no more than **12.5 to 15 hours per side**.

Plaintiffs' proposal of **24 hours per side** reflects their intent to litigate this case in defiance of the Ninth Circuit's ruling—by relying on expert testimony about the numerical discrepancy between people and accounts—which is not relevant under the Ninth Circuit's decision affirming this Court's class certification order. Plaintiffs nod in the direction of the classwide misrepresentation theory actually upheld by the Ninth Circuit—the fact that Meta substituted the word people for accounts—but here too they intend to rely on documents read into the record by their experts without any fact witness to testify about them.

Plaintiffs have long presented this case as involving two independent misrepresentations—the description of Potential Reach should have said "accounts," not "people," and the number of the Potential Reach estimate was inflated and not of people. But only the former is the classwide representation because the alleged inflation in the number—*i.e.*, the numerical discrepancy between people versus accounts—varied by Potential Reach estimate and was not a common representation. *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1234-35 (9th Cir. 2024) (upholding certification of a class litigating "the fact that Meta substituted people for account," but not "the numerical discrepancy between people and accounts"). Plaintiffs' expert reports track that distinction, offering two wholly separate damages figures from different experts (Mr. McFarlane for the "people" theory and Dr. Levy for the inflated number theory—though a few days ago, Plaintiffs lobbed in a new report from Dr. Levy that *for the first time* purported to calculate damages based on the "people" theory) and different experts to opine about purportedly increased demand based on the different theories (Mr. McFarlane for the "people" theory and Dr. Allenby for the inflated number theory). Yet Plaintiffs intend to litigate this as an "inflated number" case—most likely because this Court excluded their "people" damages expert (McFarlane) and their other expert (Allenby) found advertisers did not change their budgeting when the descriptor "people" was used instead of "accounts." Excluding Plaintiffs' "inflated number" evidence not only is required for this class action but also will substantially streamline the case.

In an effort to prop up their "people' theory, Plaintiffs also intend to manufacture alternative damages evidence flowing from the "people" misrepresentation. Plaintiffs want to rely

1  on their experts reading into evidence an email discussing the revenue impact of a bug that was
2  causing Potential Reach estimates to display as "0" on a different advertising interface (*i.e.,* not
3  Ads Manager)—despite having no fact witness with personal knowledge of the email to testify
4  about it.  This in turn is requiring Meta to call the two witnesses who *do* have personal knowledge
5  of the email to explain that it does not have anything to do with Potential Reach estimates on Ads
6  Manager or describing an estimate as "people" instead of accounts.  All of this is not only
7  impermissible and inconsistent with the rules of evidence, but it also is the reason Plaintiffs are
8  seeking an unduly long trial of 24 hours per side.

9        Plaintiffs' proffered experts confirm all this. Plaintiffs' conjoint analysis expert
10 **Dr. Allenby** found the "people versus account" representation had no impact on advertisers'
11 spending decisions.  Plaintiffs now try to avoid the impact of that finding by circumscribing his
12 assignment to argue that he is only opining about the impact of alleged inflation on the Potential
13 Reach number.  If Dr. Allenby is solely focused on the impact of an inflated number, then he has
14 no place in the as-certified case.  And in any event, Dr. Allenby's conclusion on the inflation theory
15 should be excluded as unreliable.  Notably, his initial analysis—before he threw out half his data—
16 found that the alleged inflation had no statistically significant impact on spending either.  Only
17 after he broke all of his own rules and rejiggered his analysis to fit Plaintiffs' chosen narrative did
18 he come up with an opinion Plaintiffs are willing to allow him to offer at trial.  Plaintiffs should
19 not be presenting his ends-driven testimony at trial.  Meta has a pending *Daubert* motion (Dkt. No
20 374) and also served on Plaintiffs a motion in limine to exclude evidence, including Dr. Allenby's
21 testimony, relating to their inflated number theory.

22       Meta has a pending *Daubert* motion regarding portions of **Dr. Roughgarden**'s testimony
23 (Dkt. No. 385-5) and also served on Plaintiffs a motion to exclude Dr. Roughgarden's testimony
24 about the price premium supposedly attributable to the "people" representation.  That opinion
25 relied on Mr. McFarlane's excluded opinions for an essential input, and Dr. Roughgarden has no
26 independent basis for it.  Separately, Dr. Roughgarden's price premium attributed to inflated
27 numbers should be excluded (and is the subject of the same motion in limine discussed above)
28 because it is irrelevant to the classwide "people" representation.

**Dr. Levy** opines on damages attributable to the inflated number price premium and again should be excluded (and is the subject of the same MIL). Plaintiffs served just days ago a supplemental Levy report that seeks to add for the first time a "people" damages opinion. Meta will be moving to exclude that opinion as, inter alia, untimely.

**Dr. Cowan**'s testimony about various "inflation levels of the plaintiff class based on various distinct sources of inflation" is irrelevant to the class (and the subject of the same motion in limine discussed above). ECF Doc. 474 at 3.

**Dr. Chiagouris** is Plaintiffs' only expert who engages with the "people" statement, but his limited opinions—largely focused on asserting that advertisers understood "Potential Reach" to be an estimate of "people," a point that is not meaningfully disputed—would be a waste of Court and jury time, especially as he acknowledges he has *no* opinion of whether Meta's description of Potential Reach as an estimate of "people" was misleading. Meta is willing to discuss stipulations to obviate or streamline any testimony from him.

The parties are already discussing possible stipulations to avoid **Dr. Hashmi**'s testimony about Meta's source code. But Plaintiffs cannot offer Dr. Hashmi to opine on Meta's "intent" in coding relating to Potential Reach, as their Case Management Statement suggests. ECF Doc. 474 at 3. And any testimony must be relevant to the classwide representation, *i.e.*, that every class member saw a Potential Reach estimate that should have been described as accounts, not people.

## II. Unnamed Class Members Who Agreed To Arbitrate Must Be Excluded From Trial

Plaintiffs' argument against arbitration belongs in their opposition brief to Meta's motion to compel arbitration of unnamed class members, not in a unilaterally filed pretrial conference statement. But regardless, Meta agrees with Plaintiffs that this case can and should proceed to trial—but without the unnamed class members who expressly agreed to arbitrate, most of whom agreed to arbitrate *after* this case was already pending.

This action was originally filed in August 2018—and the original named plaintiffs (not including Plaintiffs here) alleged they purchased ads only through April 2018, *before* the arbitration provision went into effect on May 25, 2018. Dkt. No. 1 at 12, ¶ 57. Those named plaintiffs sought to represent a class going back over five years, from January 1, 2013 to the then-

"present," *i.e.*, August 2018. *Id.* at 14, ¶ 70.  Plaintiffs here were added to subsequent versions of the complaint, alongside other named plaintiffs who had purchased ads only before the effective date of the arbitration provision.  Dkt. Nos. 55 (DZ Reserve added to Am. Cons. Compl., dated Dec. 21, 2018); 89 (Cain Maxwell added to SAC, dated June 17, 2019).  However, the TAC (filed March 19, 2020, Dkt. No. 332), dropped all other named plaintiffs, and in seeking class certification Plaintiffs asked this Court to certify an open-ended class that went through the "present"—well beyond the class period contemplated by the original complaint's August 2018 filing date.  The result was to sweep in advertisers who had since agreed to arbitration—and who had purchased ads after the disclosures that prompted the original lawsuit's filing.  Meta opposed class certification and identified the arbitration provision as one of the reasons Plaintiffs could not represent the proposed class.

Meta's recently-filed motion seeking to compel arbitration for certain unnamed class members (not Plaintiffs) is timely.  Plaintiffs offer no response to the Ninth Circuit's holding that a "district court c[an] not compel nonparties to the case to arbitrate until after a class had been certified and the notice and opt-out period were complete." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 (9th Cir. 2023).  The opt-out period ended just weeks ago, Dkt. No. 472-9 ¶ 5, and unnamed class members were not considered parties until that date.  Nor has Meta waived arbitration against any class members except for Plaintiffs themselves.  Meta did not waive its arbitration right against unnamed class members, where, as here, the opt-out period has just passed; Meta identified its arbitration right against unnamed class members in opposing certification of a class that extended years after the filing of the original complaint; and Meta explicitly argued that Plaintiffs could not represent advertisers who purchased ads in the years since the arbitration provision went into effect.  Though the Court appointed Plaintiffs as class representatives over Meta's objection, Plaintiffs were plainly on notice of the arbitration provision and unnamed class members' agreement to it.  Indeed, Class Counsel themselves agreed to the arbitration provision: the Cohen Milstein law firm is a class member and purchased over 500 ads through Ads Manager ***after*** this case was filed, and ***after*** agreeing to arbitration.

Meta has moved to compel arbitration against unnamed class members who purchased any ad on May 25, 2018 or later; Meta has also requested that the Court redefine the class to exclude those class members—including Cohen Milstein. Plaintiffs should not be allowed to take to trial a sprawling six-year fraud class action that extends more than three years after Meta's arbitration provision went into effect—and more than three years after the original complaint put unnamed class members on notice of their claims. To the extent Plaintiffs are suggesting that if the Court denies Meta's motion, the trial should still proceed *with those class members*, Plaintiffs' argument is contrary to law. *Coinbase v. Bielski* held that a district court is "required to stay its proceedings" pending any appeal of a denial of a motion to compel arbitration. 599 U.S. 736, 747 (2023). The *Chuman* decision that Plaintiffs cite (but do not explain) addresses whether a waived or certifiably frivolous appeal of a decision denying qualified immunity automatically stays proceedings below. *See Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). That rule has no application here. Unlike qualified immunity, which is a creature of common law, the FAA (and the automatic stay *Coinbase* says is provided therein) is a creature of statute. And statutes, unlike common law doctrines, cannot be judicially amended. Regardless, as explained, Meta's motion to compel arbitration of a portion of the class is meritorious and should be granted.

### III. Plaintiffs Have No Basis In Law Or Fact For An Order To Show Cause

Had Plaintiffs conferred with Meta before their unilateral filing, Meta would have said: Meta intends to call unnamed class members who submitted declarations to testify, including in response to Plaintiffs' claims (unsupported by the contemporaneous documentary evidence) that they relied on Potential Reach in deciding how much to spend on ads. Unnamed class members' declarations, which were all submitted in opposing class certification, show that advertisers use Potential Reach as a planning tool, that advertisers rely on other metrics, including Estimated Daily Results and actual results to set their advertising budgets, and that advertisers care about results in deciding how much to spend on ads. *See* Dkt. Nos. 296-1–296-10. Meta has not contacted any unnamed class member directly—rather, it has contacted the General Counsel of Carvana (whose employee submitted a declaration). That communication is proper. *See* American Bar Association, Formal Ethics Opinion 06-443 (Aug. 1, 2006) ("Model Rule of Professional Conduct

4.2 generally does not prohibit a lawyer who represents a client in a matter involving an organization from communicating with the organization's inside counsel about the subject of the representation without obtaining the prior consent of the entity's outside counsel.").

Meta intends to contact all of the declarants to request their testimony at trial. To the extent those declarants are class members, or current employees of class members, Meta will do so through Cohen Milstein, which has an obligation to pass on Meta's communications to class members. ABA Model Rules of Professional Conduct 1.2(a), 1.4 & cmt. 3 (discussing obligation to keep clients informed).

Dated: August 26, 2025

LATHAM & WATKINS LLP

By: /s/ Andrew B. Clubok
Andrew B. Clubok (pro hac vice)
andrew.clubok@lw.com
Susan E. Engel (pro hac vice)
susan.engel@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
melanie.blunschi@lw.com
Nicole C. Valco (Bar No. 258506)
nicole.valco@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6548
Telephone: +1.415.391.0600

*Counsel for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*