1
2
3
4
5
6
7
8

Geoffrey Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
Madelyn Petersen (*pro hac vice*)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com
mpetersen@cohenmilstein.com
jwaldman@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
charles.reichmann@gmail.com

Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

9
10
11
12
13
14

Theodore J. Leopold (*pro hac vice*)
Leslie M. Kroeger (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 US Highway One, Ste. N500
Palm Beach Gardens, FL 33408
Telephone: (516) 515-1400
Facsimile: (516) 515-1401
lkroeger@cohenmilstein.com
tleopold@cohenmilstein.com

15

*Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DZ Reserve and Cain Maxwell (d/b/a Max Martialis), *individually and on behalf of others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:18-cv-04978-JD<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>Complaint Filed: August 15, 2018<br>Trial Date: October 14, 2025<br>Court: Courtroom 11, 19th Floor<br>Hon. James Donato |

## I.    INTRODUCTION

Meta Platforms, Inc. ("Meta"), formerly known as Facebook, defrauded its advertisers. As the Court explained in its class certification order, "The gravamen of the lawsuit is that Meta inflated its potential advertising reach to consumers and charged artificially high premiums for ad placements." ECF No. 388 at 1. Meta engaged in this alleged misconduct between August 15, 2015 and October 27, 2021. ECF Nos. 470 at 2, 471.

As internal Meta correspondence shows, Potential Reach was the cornerstone of Facebook's ads platform. The Potential Reach metric told advertisers how many people were in an ad set's target audience and was displayed to every advertiser on Ads Manager. Advertisers used Potential Reach to plan, budget and evaluate the performance of their campaigns. This is why, according to Meta, Potential Reach is "arguably the single most important number in [its] ads creation interface."

Yet Potential Reach was always expressed as a number of individual "people," when it was really accounts—and this discrepancy between people and accounts made the Potential Reach number inaccurate. ECF No. 388 at 10.

Internally senior Meta executives for years acknowledged that Potential Reach was inflated and misleading. Meta executives also knew its misrepresentations about Potential Reach yielded significant revenue. When Meta considered implementing a model to reduce Potential Reach inflation, the successful counterargument was that Meta would suffer a severe negative "revenue impact." This prompted the Potential Reach Product Manager to observe, "it's revenue we should have never made given the fact it's based on wrong data." So Meta continued to hide its fraud. Executives directed subordinates to conceal the impact of fake or duplicate accounts on Potential Reach and blocked employees from reducing the inflation or changing the metric to make it less misleading. When employees suggested changing the disclosures around Potential Reach to make it clear the metric measured accounts and not people, the Chief Revenue Officer pushed back, noting that the "people-based narrative" is key to Meta's value proposition.

Meta knew Potential Reach was inflated across the board. Alex Schultz, VP of Analytics, acknowledged "huge issues. . . with external metrics," and that "we know our overall 'people'

number has >10% fake accounts and SUMA [duplicate accounts] in it so there must be at least that much error in our metrics when we tell people the reach of their campaigns." This is consistent with Plaintiffs' expert analysis showing that Potential Reach is inflated for everyone by at least 10%.

Meta acknowledged Potential Reach inflation caused all advertisers to spend more money on ads: "If we overstated how many actual real people we have in certain demos, there is no question that impacted budget allocations." And Meta admitted increased advertiser spending results in higher prices for all advertisers, because when advertisers increase their budgets, "it's probable that prices across all impressions will go up for everyone."

Plaintiffs will prove at trial that Meta misrepresented Potential Reach, concealed its fraud, and that this fraud caused 11 million advertisers to overpay by billions of dollars.

## II.    PLAINTIFFS' CLAIMS

### A.    Fraudulent Misrepresentation

Under California law, to establish a claim for fraudulent misrepresentation, the Plaintiff Class must prove, by a preponderance of the evidence, that: (1) Meta represented Potential Reach to the Plaintiff Class; (2) that representation was false; (3) Meta knew that the representation was false when Meta made it, or Meta made the representation recklessly and without regard for its truth; (4) Meta intended that the Plaintiff Class rely on the representation in deciding how much to spend on advertisements from Meta; (5) the Plaintiff Class reasonably relied on the representation in deciding how much to spend on advertisements from Meta; (6) the Plaintiff Class was harmed; and (7) the Plaintiff Class's reliance on the Meta's representation was a substantial factor in causing that harm to the Plaintiff Class. *See* CACI 1900; *see, e.g., Graham v. Bank of Am., N.A.,* 226 Cal. App. 4th 594, 605-06 (2014); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997).

The evidence at trial will show that that Potential Reach was significantly inflated for all advertisers because it was not calculated based on people, and that Meta knew that. Statistics expert Dr. Charles Cowan will testify about the analysis he conducted using the Potential Reach rates of inflation from Meta's own documents to determine to a statistical certainty that all Potential Reach

was inflated by an average of approximately 50% globally, and roughly 35-50% in the US. Source code expert Dr. Atif Hashmi will explain that Meta calculated Potential Reach the same way for all class member advertisers, and that it had deployed to the source code (but failed to activate) tools that would have filtered out many of the fake and duplicate accounts. Plaintiffs will show that Meta executives knew for years that Potential Reach was inflated because it counted accounts, not people.

Advertisers were harmed and their reliance on Meta's Potential Reach misrepresentation was a substantial element in causing that harm. Conjoint expert Dr. Greg Allenby will testify that his conjoint survey demonstrated that inflated Potential Reach (due to Potential Reach being calculated based on accounts rather than people) increased the aggregate demand among advertisers. Auction expert Dr. Timothy Roughgarden will testify about how that change in aggregate demand, in turn, increases the price for all advertisers. And economics expert Dr. Armando Levy will explain the increase in price yields aggregate damages for all advertisers in the class, while taking supply and demand into account. In short, Plaintiffs will show that Meta's Potential Reach misrepresentation caused advertisers to overpay for ads in the aggregate, thereby harming them. Plaintiffs will also show that evidence of Meta's fraud is clear and convincing, such that punitive damages are warranted under the law. *See* Cal. Civ. Code § 3294; CACI No. 3940.

### B.    Fraudulent Concealment

Under California law, to establish a claim for fraudulent concealment, Plaintiffs must prove, by a preponderance of the evidence, that: 1) Meta intentionally failed to disclose that because the number of unique accounts exceeded the number of unique people, Potential Reach was inflated, and that this fact was known only to Meta, and Class members could not have discovered it; 2) Class members did not know Potential Reach was inflated; 3) Meta intended to deceive Class members by concealing the fact that Potential Reach was inflated; 4) had Potential Reach inflation been disclosed, Class members reasonably would behaved differently in deciding how much to spend on advertisements from Meta; 5) Class members were harmed; and Meta's concealment was a substantial factor in causing Class members harm. *See* CACI 1901; *see, e.g.,*

1  *Bank of Am. Corp. v. Superior Ct. of L.A. Cnty.*, 198 Cal. App. 4th 862, 870 (2011); *Warner Constr.*

2  *Corp. v. City of L.A.*, 2 Cal. 3d 285, 294 (1970).

3      Plaintiffs will show that Potential Reach was inflated because it counted accounts instead

4  of people, through documentary evidence and expert testimony. The evidence will show that at no

5  point did Meta disclose information from its internal documents that Potential Reach was always

6  inflated because it counted accounts instead of people. Class representatives will also testify that

7  they, like other Class members, did not know that Potential Reach was inflated.

8      The evidence will show that Meta intended, and reasonably expected, that Class members

9  would rely on Meta's false representations about Potential Reach to spend more money on

10  advertisements from Meta than they otherwise would have. As discussed above, Dr. Allenby's

11  testimony will show that had Potential Reach inflation (due to Potential Reach being calculated

12  based on accounts rather than people) been disclosed, Class members would have spent less on

13  advertisements. Similarly, Plaintiffs will also testify that had they known the truth about Potential

14  Reach they would have spent less money, if any at all, on Facebook ads. As discussed above, the

15  evidence will show that Meta's concealment was a substantial factor in causing that harm to the

16  plaintiff Class. And again, Plaintiffs will show that Meta's fraud was so clear, that punitive

17  damages are appropriate.

18  **III.    DEFENDANTS' DEFENSES**

19      Meta argues that Potential Reach was an estimate and that its fine-print disclosures stating

20  it was an estimate were sufficient for the Plaintiff Class to know that Potential Reach was filled

21  with fake and duplicate accounts. The evidence at trial will show otherwise.

22      Relying primarily on the testimony of its marketing professor expert Dr. Catherine Tucker,

23  Meta contends Class representatives and the Class did not rely on Potential Reach to set their

24  budgets. It also points to isolated data points from the class representatives' ad purchases in an

25  attempt to show a lack of reliance. The evidence at trial, including the class representatives'

26  testimony and expert testimony, will prove otherwise.

27      Meta argues that there was no harm to the Plaintiff Class because they only paid for the

28  ads that ran, based on clicks or impressions—not on Potential Reach. Plaintiffs will show that

1  Potential Reach was inflated because it counted accounts instead of people, thus raising the ad

2  prices for all advertisers and harming all Class Members.

3      Finally, Meta seeks a jury instruction on the affirmative defense of unclean hands as to

4  Plaintiff DZ Reserve on the grounds that it allegedly "violated Meta's Terms of Use by purchasing

5  advertisements through others' accounts." This defense is unavailing. "To establish unclean hands,

6  a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's

7  conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's

8  conduct injured the defendant." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.

9  Supp. 2d 1197, 1223 (C.D. Cal. 2007) (internal citation omitted). Meta can satisfy none of these

10  elements. First, DZ Reserve's alleged purchase of advertisements is not conduct courts have held

11  can support a defense of unclean hands. Second, there is no relationship between a customer's

12  purchase of advertisements and the fraudulent misrepresentations for which Meta stands trial.

13  Third, Meta was not injured by the alleged purchase of advertisements on its platforms; to the

14  contrary, Meta profited from it.

15  **IV.    CONCLUSION**

16      The evidence at trial will show that judgment should be entered for Plaintiffs on all their

17  claims and that compensatory and punitive damages are warranted.

18

19  Dated: September 4, 2025          Respectfully Submitted,

20                                    By */s/ Geoffrey Graber*

21                                    Geoffrey Graber (SBN 211547)
                                      Karina G. Puttieva (SBN 317702)

22                                    Madelyn Petersen (*pro hac vice*)
                                      Jenna Waldman (SBN 341491)

23                                    **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                      1100 New York Ave. NW, Ste 800

24                                    Washington, DC 20005
                                      Telephone: (202) 408-4600

25                                    ggraber@cohenmilstein.com
                                      kputtieva@cohenmilstein.com

26                                    mpetersen@cohenmilstein.com
                                      jwaldman@cohenmilstein.com

27
                                      Charles Reichmann (SBN 206699)

28                                    **LAW OFFICES OF CHARLES REICHMANN**

5

16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
charles.reichmann@gmail.com

Theodore J. Leopold (*pro hac vice*)
Leslie M. Kroeger (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 US Highway One
Suite N500
Palm Beach Gardens, FL 33408
Telephone: (516) 515-1400
Facsimile: (516) 515-1401
lkroeger@cohenmilstein.com
tleopold@cohenmilstein.com

Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

*Class Counsel*

**PLAINTIFFS' TRIAL BRIEF**
CASE NO. 3:18-cv-04978-JD