| | |
|---|---|
| Geoffrey Graber (SBN 211547)<br>**COHEN MILSTEIN**<br>**SELLERS & TOLL PLLC**<br>1100 New York Ave. NW, Ste 800<br>Washington, DC 20005<br>Telephone: (202) 408-4600<br>Facsimile: (202) 408-4699<br>ggraber@cohenmilstein.com<br><br>Charles Reichmann (SBN 206699)<br>**LAW OFFICES OF**<br>**CHARLES REICHMANN**<br>16 Yale Circle<br>Kensington, CA 94708-1015<br>Telephone: (415) 373-8849<br>charles.reichmann@gmail.com<br><br>*Class Counsel*<br>*[Additional Counsel on Signature Page]* | **LATHAM & WATKINS LLP**<br>Melanie M. Blunschi (SBN 234264)<br>melanie.blunschi@lw.com<br>Nicole C. Valco (SBN 258506)<br>nicole.valco@lw.com<br>505 Montgomery Street, Suite 200<br>San Francisco, CA 94111-6538<br>Telephone: (415) 391-0600<br><br>Andrew Clubok (*pro hac vice*)<br>andrew.clubok@lw.com<br>Susan E. Engel (*pro hac vice*)<br>susan.engel@lw.com<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004-1304<br>Telephone: (202) 637-2200<br><br>*Counsel for Defendant* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DZ Reserve and Cain Maxwell (d/b/a Max Martialis), individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>        Defendant. | Case No. 3:18-cv-04978-JD<br><br>**JOINT PRETRIAL STATEMENT**<br><br>Date: September 18, 2025<br>Time: 1:30 pm PT<br>Court: Courtroom 11, 19th Floor<br>Hon. James Donato<br><br>Complaint Filed: August 15, 2018<br>Trial Date: October 14, 2025 |

Per this Court's Standing Order for Civil Jury Trials, DZ Reserve, Cain Maxwell, and Class members (collectively, "Plaintiffs"), and Defendant Meta Platforms, Inc. ("Meta," and together with Plaintiffs, the "Parties"), by and through their undersigned counsel, submit this Joint Pretrial Statement in advance of the September 18, 2025 final pretrial conference.

**JOINT STATEMENT**

**I.    Substance of the Action**

A certified class that Plaintiffs allege numbers 11.2 million advertisers brings claims for fraudulent misrepresentation and fraudulent concealment under California law against defendant Meta Platforms, Inc. ("Meta" or "Facebook").  Plaintiffs allege that Meta defrauded advertisers who, from August 15, 2015, to October 27, 2021 ("Class Period"), paid for the placement of at least one advertisement on Facebook's platforms, including the Facebook and Instagram platforms, through Facebook's Ads Manager or Power Editor.[1]

Specifically, Plaintiffs allege Facebook made misrepresentations and omissions when providing its Potential Reach metric to advertisers.  Plaintiffs allege Facebook inflated its potential advertising reach to customers and charged artificially high premiums for ad placements.  Facebook expressed Potential Reach as a number of "people" on its ad platforms.  Plaintiffs allege that Facebook's Potential Reach metric was in reality the number of accounts on the platforms.  Plaintiffs allege that, because the number of unique accounts exceeded the number of unique people, this led to an inflated representation of how many people class members' advertisements could reach.  Plaintiffs allege that the discrepancy between people and accounts made the Potential Reach number inaccurate.

Facebook denies all Plaintiffs' allegations.  Facebook's position is that its Potential Reach estimates were not misleading (and certainly not intentionally so), that Plaintiffs did not rely on Potential Reach estimates to make spending decisions, and that Plaintiffs were not harmed by their

---

[1] The class excludes (1) advertisements purchased pursuant to agreements other than Facebook's Terms of Service or Statement of Rights and Responsibilities; (2) advertisements purchased using only non-lookalike Custom Audiences as the targeting criteria; (3) advertisements purchased using Reach and Frequency buying; (4) advertisements purchased with the objectives of canvas app engagement, canvas app installs, offer claims, event responses, page likes, or external; and (5) advertisements for which Facebook provided a Potential Reach lower than 1000.

reliance (if any) on Potential Reach estimates. Before advertisers placed ad campaigns, Facebook provided reasonable estimates of the number of people meeting the advertiser's targeting criteria (*i.e.*, Potential Reach) alongside other pre-campaign planning estimates such as Estimated Daily Results, as well as disclosures about the limits of the estimates (*e.g.*, Facebook added a disclosure to highlight that estimates were affected by users with multiple accounts). Once campaigns started running, advertisers were provided with real-time results about how their ads were performing. Against this backdrop, Facebook contends that its Potential Reach estimates were not misleading and that no reasonable advertiser relied on Potential Reach estimates in deciding whether or how much to pay for Facebook ads. Facebook further denies that advertisers were harmed by Potential Reach estimates. In particular, the evidence shows that no Class Member was harmed by the alleged misrepresentation that this Court, affirmed by the Ninth Circuit, certified for class treatment—*i.e.*, the alleged "substitution" of the word "people" in Potential Reach estimates rather than "accounts"—including because Potential Reach is designed and intended to estimate the number of *people* (not accounts) who may potentially be targeted by the advertiser's ad. But even if it was not, Plaintiffs' expert on purported classwide harm (Greg Allenby) found that using the term "people" had *no* statistically significant effect on advertisers' purchasing decisions and therefore could not have led to any "premium" pricing or other purported harm.

## II. Relief Requested

Plaintiffs request the following:

1. Compensatory damages in the form of the price premium paid by the class. Plaintiffs offer two classwide damages models: one that results in a 3.4% price premium and one that results in an 8.9% price premium. Total damages under the 3.4% model are approximately $2.4 billion in damages. The 8.9% model yields approximately $6.2 billion in damages.

2. Pre-judgment and post-judgment interest on amounts due as allowed by California law;

3. Costs of suit, including reasonable attorneys' fees;

4. Punitive damages;

5. Injunctive relief on behalf of Plaintiff Cain Maxwell, if appropriate (to be determined by the Court following the jury's verdict); and

6. Such other and further relief as the Court deems just and proper.

Meta requests that DZ Reserve's claims be barred based on Meta's affirmative defenses of unclean hands. Meta also requests that the claims of all absent class members who purchased advertisements on May 25, 2018, or later, be compelled to arbitration under Meta's Commercial Terms.

## III. Undisputed Facts

The Parties stipulate and agree that the facts listed below were true during the Class Period and may be incorporated into the trial record without the necessity of supporting testimony or exhibits, and without preventing any party from referencing them through argument or testimony.

1. Prior to October 28, 2021, Meta Platforms, Inc. was known as Facebook, Inc.
2. Plaintiff DZ Reserve is a corporation.
3. Daniel Ziernicki purchased ads from Facebook on behalf of Plaintiff DZ Reserve.
4. Plaintiff Cain Maxwell purchased ads from Facebook on behalf of his business Max Martialis.

## IV. Disputed Factual Issues

**Plaintiffs' Summary of Disputed Facts**

1. Whether Potential Reach was a representation of people, not accounts.
2. Whether Potential Reach was a false representation.
3. Whether Meta knew Potential Reach was a false representation when it made it, or whether Meta made the Potential Reach representation recklessly and without regard for its truth.
4. Whether Meta reasonably expected that class members would rely on Potential Reach.

5. Whether a reasonable consumer would find Potential Reach important in deciding how much or whether to spend on purchasing advertisements.

6. Whether class members were harmed as a result of Meta's conduct.

7. Whether Meta intentionally failed to disclose certain facts about Potential Reach that were known only to Meta and that class members could not have discovered.

8. Whether Meta misrepresented or concealed facts about Potential Reach with malice, oppression, or fraud.

9. To the extent the Court deems Meta's unclean hands defense relevant, whether Plaintiffs acted unconscionably in connection with their dealings with Meta resulting in prejudice to Meta.

**Defendant's Summary of Additional Disputed Facts**

1. Whether it was materially misleading to describe Potential Reach estimates as estimates of people rather than accounts;

2. Whether each Plaintiff actually relied to their detriment on the description of Potential Reach as an estimate of "people" in purchasing advertisements through Ads Manager;

3. Whether any reliance by Plaintiffs on the description of Potential Reach as an estimate of "people" was reasonable;

4. Whether Facebook's description of Potential Reach as an estimate of "people" caused each Plaintiff to spend more on ads they purchased through Ads Manager than they otherwise would have;

5. Whether Plaintiffs suffered any actual injury or damages as a result of Facebook's description of Potential Reach as an estimate of "people";

6. Whether Plaintiffs will be able to prove the foregoing on a classwide basis.

7. Whether Ziernicki formed new legal entities that he used to continue to purchase ads from Facebook after DZ Reserve joined this lawsuit; and

8. Whether Ziernicki tried to and did use other people's Facebook accounts, such as his girlfriend's and friend's accounts, to continue purchasing ads on Ads Manager after DZ Reserve joined this lawsuit.

## V. Disputed Legal Issues

**Plaintiffs' Summary of Disputed Legal Issues**

1. Whether Meta committed intentional fraud under California common law.
2. Whether Meta committed fraudulent concealment under California common law.
3. Whether class members are entitled to damages because of Meta's conduct.
4. Whether class members are entitled to punitive damages because of Meta's conduct.

**Defendant's Summary of Disputed Legal Issues**

1. Whether Facebook made a material misstatement or omission by allegedly substituting the word "people" for "accounts" in describing Potential Reach estimates;
2. Whether Facebook knew that the representation was false when it made it, or that it made that representation recklessly and without regard for its truth;
3. Whether Facebook intended that Plaintiffs DZ Reserve and Maxwell rely on that representation in deciding how much to spend on advertisements from Facebook;
4. Whether Plaintiffs DZ Reserve and Maxwell's reliance on Facebook's representation to determine how much to spend on advertisements was reasonable;
5. Whether Plaintiffs DZ Reserve and Maxwell suffered any legally cognizable harm;
6. Whether any reliance by Plaintiffs DZ Reserve and Maxwell on Facebook's representation was a substantial factor in causing their harm;
7. Whether Facebook intended to deceive Plaintiffs DZ Reserve and Maxwell by concealing that it allegedly substituted the word "people" for "accounts" in describing Potential Reach estimates;

8. Whether, if the allegedly omitted information had been disclosed, Plaintiffs DZ Reserve and Maxwell reasonably would have behaved differently in deciding how much to spend on advertisements from Facebook;

9. Whether Facebook's concealment was a substantial factor in causing Plaintiffs DZ Reserve's and Maxwell's harm;

10. Whether Plaintiffs DZ Reserve and Maxwell can prove any elements of their claims on a classwide basis;

11. Whether total classwide damages can be awarded before individual issues including reliance are resolved;

12. Whether misconduct by DZ Reserve and/or its owner Ziernicki precludes enforcement of its claims;

13. Whether Facebook's description of Potential Reach as an estimate of "people" rather than "accounts" warrants punitive damages, and whether punitive damages can be determined before individual issues and total classwide damages are determined; and

14. Whether Maxwell faces an imminent threat of actual future harm sufficient for Article III standing to pursue injunctive relief on his UCL claim.

## VI. **Stipulations**

The Parties stipulate that:

1. Neither Party will present evidence on or make reference to whether any class representative could receive a service award or other financial benefit in exchange for his participation in this action. This stipulation shall not apply if (a) Plaintiffs explicitly open the door to this issue; and (b) the Court determines, upon good cause shown, that reference to this issue is appropriate before the jury.

2. Neither Party will make disparaging comments about outside or in-house counsel for either Party, including but not limited to presenting evidence on or otherwise referencing past lawsuits brought by counsel, the geographic location of counsel,

the litigation being "lawyer-driven" or lawyers "choosing" Plaintiffs, or lawyers being greedy or otherwise financially incentivized to represent their client. This stipulation shall not apply if (a) either party explicitly opens the door to this issue; and (b) the Court determines, upon good cause shown, that reference to this issue is appropriate before the jury.

3. Neither party will reference the former named plaintiffs in this action. This stipulation shall not apply if (a) either party explicitly opens the door to this issue; and (b) the Court determines, upon good cause shown, that reference to this issue is appropriate before the jury.

4. Neither party will reference unrelated litigation or government investigations against either party; nor will the parties reference teen mental health, or opioids or other addiction crises. This stipulation shall not require any redaction or serve as an independent basis for any objection to the admissibility of documents produced by either party in this litigation. Nor shall this stipulation preclude a party from referencing any prior engagements of an expert testifying in this action. Finally, this stipulation shall also not apply if (a) any party explicitly opens the door to this issue; and (b) the Court determines, upon good cause shown, that reference to this issue is appropriate before the jury.

5. Under Federal Rule of Civil Procedure 32, if Yaron Fidler is unavailable, designated portions of his videotaped deposition will be used at trial, subject to the resolution of any objections to the admissibility of particular testimony or exhibits. The Parties will meet and confer by September 23, 2025, and lodge designations with the Court on or before October 9, 2025, in accordance with this Court's Standing Order for Civil Jury Trials.

## VII. **Bifurcation**

Plaintiffs do not believe that bifurcation or a separate trial of specific issues of any issues is necessary.

Meta's position is that the trial should resolve classwide issues and also the claims of DZ Reserve and Maxwell—with the exception that the amount of punitive damages to which DZ Reserve and Maxwell are entitled should be resolved by the same jury if and only if the jury returns a verdict in favor of either of them. Individual issues—including evidence rebutting the presumption of reliance for individual absent Class Members—cannot be resolved in this first phase. Meta must have an opportunity, in the event of an adverse verdict in the first phase, to litigate those issues. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016) (noting right to litigate defenses to individual claims); *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237 (9th Cir. 2024) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014)) (acknowledging that the ability to rebut the presumption of reliance "has the effect of leaving individualized questions of reliance in the case"); *see also Hinesley v. Oakshade Town Ctr.*, 37 Cal. Rptr. 3d 364, 371-72 (Ct. App. 2005) (finding presumption rebutted in individual action).

Additionally, any determination of the amount of punitive damages for the Class would be premature prior to full resolution of individualized liability issues. It is not possible to calculate a total, classwide compensatory damages award until all liability issues have been resolved and the number of Class Members eligible to recover damages has been determined. Because punitive damages must be "tethered to the compensatory damages actually awarded" to ensure they comport with Due Process, it would be inappropriate to decide the scope of punitive damages prior to resolution of these issues. *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 542 (N.D. Cal. 2012) (bifurcating "the aggregate amount and individual distribution of punitive damages" in part "to ensure that any punitive damages award remains . . . consistent with" the Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). Moreover, as the Ninth Circuit has recognized, "[t]he most common reason for bifurcating is to exclude evidence of the defendant's wealth or net worth from the compensatory damages phase." *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 152 (9th Cir. 1992); *see also Rodriguez v. Google LLC*, 2025 WL 2237720, at *1 (N.D. Cal. Aug. 6, 2025) (bifurcating amount of punitive damages in light of the complexity of "damages inquiries already presented to the jury, the inconvenience raised by

burdening them with yet more calculations, and the prejudice risked by introducing evidence of Google's total worth").

In an attempt to simplify these proceedings for the jury, Meta offered to stipulate that it has the ability to pay a punitive damages award consistent with California law. On September 2, 2025, Plaintiffs informed Meta they would not agree to this stipulation and intended instead to introduce evidence of Meta's financial capacity based on its "current balance sheet and market cap." But this sort of deep pocket evidence is wholly irrelevant to the merits of Plaintiffs' claims and would be exceptionally prejudicial if introduced at the same time the jury is asked to decide whether Meta is liable to the Named Plaintiffs.

## VIII. Settlement

The Parties last engaged in mediation on April 29, 2025. Class representatives were personally present as was a representative on behalf of Meta. The Parties are continuing to work in good faith with the mediator to see whether the matter can be resolved by settlement.

## IX. Estimate of Trial Length

Plaintiffs estimate trial will take approximately 24 hours per side.

Meta believes that the trial may be completed in no more than 20 hours per side if the parties can work together to narrow issues that should not be in dispute and streamline the witness list, including the number of experts. If the Court excludes evidence not relating to the classwide representation of the substitution of the word "people" for "accounts," then Meta believes the case can be tried with no more than 12.5 to 15 hours per side.

| | | | |
|---|---|---|---|
| 1 | DATED: September 4, 2025 | | Respectfully submitted, |

By:   */s/ Geoffrey Graber*

By:   */s/ Andrew B. Clubok*

Geoffrey Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
Madelyn Petersen (*pro hac vice*)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN
SELLERS & TOLL PLLC**
1100 New York Ave. NW, Ste 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com
mpetersen@cohenmilstein.com
jwaldman@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
Charles.reichmann@gmail.com

Theodore J. Leopold *(pro hac vice)*
Leslie M. Kroeger *(pro hac vice)*
**COHEN MILSTEIN
SELLERS & TOLL PLLC**
11780 US Highway One
Suite 500
Palm Beach Gardens, FL 33408
Telephone: (516) 515-1400
Facsimile: (516) 515-1401
lkroeger@cohenmilstein.com
tleopold@cohenmilstein.com

Eric Kafka *(pro hac vice)*
**COHEN MILSTEIN
SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797

**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
andrew.clubok@lw.com
Susan E. Engel (*pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200

Melanie M. Blunschi (SBN 234264)
melanie.blunschi@lw.com
Nicole C. Valco (SBN 258506)
nicole.valco@lw.com
505 Montgomery Street, Suite 200
San Francisco, CA 94111-6538
Telephone: (415) 391-0600

*Counsel for Defendant*

Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

*Class Counsel*

**SIGNATURE ATTESTATION**

Pursuant to L.R. 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from all signatories

DATED: September 4, 2025				Respectfully submitted,

						*/s/ Geoffrey Graber*
						Geoffrey Graber