Geoffrey Graber (SBN 211547)
**COHEN MILSTEIN
SELLERS & TOLL PLLC**
1100 New York Ave. NW, Ste 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF
CHARLES REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
charles.reichmann@gmail.com

*Class Counsel*
*[Additional Counsel on Signature Page]*

**LATHAM & WATKINS LLP**
Melanie M. Blunschi (SBN 234264)
melanie.blunschi@lw.com
Nicole C. Valco (SBN 258506)
nicole.valco@lw.com
Francis J. Acott (CA Bar No. 331813)
*francis.acott@lw.com*
505 Montgomery Street, Suite 200
San Francisco, CA 94111-6538
Telephone: (415) 391-0600

Andrew Clubok (*pro hac vice*)
andrew.clubok@lw.com
Susan E. Engel (*pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200

*Counsel for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DZ RESERVE, and CAIN MAXWELL (d/b/a MAX MARTIALIS), individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:18-cv-04978-JD<br><br>**JOINT SUBMISSION OF PROPOSED VERDICT FORMS**<br><br>Trial Date: October 14, 2025<br>Judge: Hon. James Donato<br>Courtroom: 11 – 19th Floor, SF |

1

2

3

4

      Pursuant to the Court's Standing Order for Civil Jury Trials Before Judge James Donato and the Pretrial Order (ECF No. 478), the Parties hereby submit the following set of proposed Verdict Forms, one proposed by Plaintiffs and one proposed by Defendant, as well as the parties' respective position statements as to why their proposed questions should be adopted.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PLAINTIFFS' PROPOSED VERDICT FORM**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

When answering the following questions and filling out this Verdict Form, please follow the instructions provided throughout the form.  Your verdict must be unanimous.

We, the jury, return these answers as our verdict in this case:

## SECTION A:  FRAUDULENT MISREPRESENTATION

**Question No. 1:**

Did Meta make a false representation of fact to Class Members regarding Potential Reach?

Yes _____ No _____

**If your answer to Question 1 is "Yes," then answer Question 2.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to Section B.**

**Question No. 2:**

Did Meta know that the representation was false, or did it make the representation recklessly and without regard for its truth?

Yes _____ No _____

**If your answer to Question 2 is "Yes," then answer Question 3.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to Section B.**

**Question No. 3:**

Did Meta intend that Class Members rely on the representation?

Yes _____ No _____

**If your answer to Question 3 is "Yes," then answer Question 4.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to Section B.**

**Question No. 4:**

Did Class Members reasonably rely on the representation?

Yes _____ No _____

**If your answer to Question 4 is "Yes," then answer Question 5.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section B</u>.**

<u>**Question No. 5:**</u>

Was Class Members' reliance on Meta's representation a substantial factor in causing them harm?

Yes _____ No _____

**If your answer to Question 5 is "Yes," then answer Question 6.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section B</u>.**

<u>**SECTION B:  FRAUDULENT CONCEALMENT**</u>

<u>**Question No. 6:**</u>

Did Meta intentionally fail to disclose a fact— that Potential Reach was inflated because the number of unique accounts exceeded the number of unique people —that Class Members did not know and could not reasonably have discovered?

Yes _____ No _____

**If your answer to Question 6 is "Yes," then answer Question 7.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section C</u>.**

<u>**Question No. 7:**</u>

Did Meta intend to deceive Class Members by concealing the fact?

Yes _____ No _____

**If your answer to Question 7 is "Yes," then answer Question 8.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section C</u>.**

<u>**Question No. 8:**</u>

Had the omitted information been disclosed, would Class Members reasonably have behaved differently?

Yes _____ No _____

**If your answer to Question 8 is "Yes," then answer Question 9.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section C</u>.**

<u>**Question No. 9:**</u>

Was Meta's concealment a substantial factor in causing harm to Class Members?

       Yes _____ No _____

**If you answered "YES" Question 5 and/or Question 9, continue to <u>Section C</u>.**

1

### Section C:   DAMAGES

2

**COMPENSATORY DAMAGES**

3

4    **Question No. 10:**

5    What is the amount of damages that Class Members are entitled to recover?

6

7        $_____

8

9                **PREJUDGMENT INTEREST**

10   **Question No. 11:**

11   For any amount awarded to Class Members in Question 10, do you also award Class Members

12   prejudgment interest?

13        _____YES      _____NO

14   If you answered "yes" to Question 11, please identify the starting date from which Class

15   Members are owed prejudgment interest?

16        Month and year: _____

17                    **PUNITIVE DAMAGES**

18   **Question No. 12:**

19   Did Meta act with malice, fraud, or oppression in the conduct on which you base your finding of

20   liability?

21        _____YES      _____NO

22   If yes, what amount of "punitive damages" if any would you require Meta to pay?

23

24       $_____

25

26

27

28

1

2  You have now reached the end of the verdict form and should review it to ensure it accurately
3  reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict
   form in the spaces below and notify the courtroom deputy that you have reached a verdict. The
4  Presiding Juror should retain possession of the verdict form and bring it when the jury is brought
   back into the courtroom.
5

6

7  DATED:                                          Signed:

8  _____                     _____
9                                                  Presiding Juror

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**META'S PROPOSED VERDICT FORM**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

When answering the following questions and filling out this Verdict Form, please follow the instructions provided throughout the form.  Your verdict must be unanimous.

We, the jury, return these answers as our verdict in this case:

## SECTION A:  FRAUDULENT MISREPRESENTATION

**Question No. 1:**

Did Facebook*[name of defendant]* make a false representation of *[a]* fact*[s]* to DZ Reserve and Cain Maxwell *[name of plaintiff]* by substituting people for accounts in describing Potential Reach estimates?

Yes _____ No _____

**If your answer to Question 1 is "Yes," then answer Question 2.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section B</u>.**

**Question No. 2:**

Did Facebook*[name of defendant]* know that the representation was false, or did it *[he/she/nonbinary pronoun]* make the representation recklessly and without regard for its truth?

Yes _____ No _____

**If your answer to Question 2 is "Yes," then answer Question 3.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section B</u>.**

**Question No. 3:**

Did Facebook*[name of defendant]* intend that DZ Reserve and Cain Maxwell *[name of plaintiff]* rely on the representation?

Yes _____ No _____

**If your answer to Question 3 is "Yes," then answer Question 4.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section B</u>.**

**Question No. 4:**

Did DZ Reserve and Cain Maxwell ~~*[name of plaintiff]*~~ reasonably rely on the representation?

        **DZ Reserve:**        Yes _____ No _____

        **Cain Maxwell:**     Yes _____ No _____

        **If your answer to Question 4 is "Yes" for DZ Reserve or Cain Maxwell, then answer Question 5.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to <u>Section B</u>.**

**Question No. 5:**

Was DZ Reserve's and Cain Maxwell's ~~*[name of plaintiff]'s*~~ reliance on Facebook's ~~*[name of defendant]'s*~~ representation a substantial factor in causing them harm ~~*to [name of plaintiff]*~~?

        **DZ Reserve:**        Yes _____ No _____

        **Cain Maxwell:**     Yes _____ No _____

        **Continue to <u>Section B</u>.**

***Sources***:  CACI VF-1900 (as modified in blue); *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024) (identifying the "claimed misrepresentation" as "the substitution of people for accounts"); *id.* at 1234 (rejecting idea "that the misrepresentation is the numerical discrepancy between people and accounts, rather than the fact that Meta substituted people for accounts").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECTION B:  FRAUDULENT CONCEALMENT

**Question No. 6:**

Did Facebook*[name of defendant]* intentionally fail to disclose *[a]* fact*[s]*—that it substituted people for accounts in describing Potential Reach estimates—that DZ Reserve and Cain Maxwell *[name of plaintiff]* did not know and could not reasonably have discovered?

Yes _____ No _____

**If your answer to Question 6 is "Yes," then answer Question 7.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to Section C.**

**Question No. 7:**

Did Facebook*[name of defendant]* intend to deceive DZ Reserve and Cain Maxwell *[name of plaintiff]* by concealing the fact?

Yes _____ No _____

**If your answer to Question 7 is "Yes," then answer Question 8.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to Section C.**

**Question No. 8:**

Had the omitted information been disclosed, would DZ Reserve and Cain Maxwell *[name of plaintiff]* reasonably have behaved differently?

**DZ Reserve:**    Yes _____ No _____

**Cain Maxwell:**    Yes _____ No _____

**If your answer to Question 8 is "Yes," then answer Question 9.  If you answered "No," stop here, answer no further questions regarding this claim, and continue to Section C.**

**Question No. 9:**

Was Facebook's*[name of defendant]'s* concealment a substantial factor in causing harm to DZ Reserve and Cain Maxwell*[name of plaintiff]*?

1

2          **DZ Reserve:**          Yes _____ No _____

3          **Cain Maxwell:**          Yes _____ No _____

4

5          **If your answer to Question 5 and/or Question 9 is "Yes" for either DZ
           Reserve or Cain Maxwell, continue to <u>Section C</u>.**

6

7    ***Sources***: <u>CACI VF-1901</u> (as modified in blue); *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th
     1223, 1235 (9th Cir. 2024) (identifying the "claimed misrepresentation" as "the substitution of

8    people for accounts"); *id.* at 1234 (rejecting idea "that the misrepresentation is the numerical
     discrepancy between people and accounts, rather than the fact that Meta substituted people for

9    accounts").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Section C:  DAMAGES

**COMPENSATORY DAMAGES**

**Question No. 10:**

What are DZ Reserve's and Cain Maxwell's ~~*[name of plaintiff]'s*~~ damages?

  DZ Reserve: $ _____

  Cain Maxwell: $ _____

~~*[a. Past economic loss*~~
  ~~*lost earnings          $_____]*~~
  ~~*lost profits           $_____]*~~
  ~~*medical expenses       $_____]*~~
  ~~*other past economic loss         $_____]*~~
            ~~*Total Past Economic Damages: $ _____]*~~
~~*[b. Future economic loss*~~
  ~~*lost earnings       $_____]*~~
  ~~*lost profits        $_____]*~~
  ~~*medical expenses    $_____]*~~
  ~~*other future economic loss       $_____]*~~
            ~~*Total Future Economic Damages: $ _____]*~~

~~*[c. Past noneconomic loss, including [physical pain/mental suffering:]*~~
                    ~~*$ _____]*~~
~~*[d. Past noneconomic loss, including [physical pain/mental suffering:]*~~
                    ~~*$ _____]*~~
          ~~*TOTAL      $ _____]*~~

**PUNITIVE DAMAGES**

**Question No. 11:**

Did an agent or employee of Facebook ~~*[name of defendant]*~~ engage in the conduct for which you found liability with malice, oppression, or fraud?

  Yes _____ No _____

  **If your answer to Question 11 is "Yes," answer Question 12.  If you answered "No," stop here, answer no further questions regarding damages, and continue to Section D.**

**Question 12:**

1    Did one or more officers, ~~directors, or managing agents~~ of Facebook ~~*[name of defendant]*~~

2    authorize this conduct?

3

4                Yes _____ No _____

5                    **Continue to <u>Section D</u>.**

6    ***Source:*** CACI VF-3904 (as modified in blue)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Section D:  UNCLEAN HANDS – Affirmative Defense to DZ Reserve's Claims

Answer these questions only if you have entered damages for DZ Reserve in response to Question No. 10.

### Question No. 13:

Did DZ Reserve act unconsciably in connection with its dealings with Facebook?

Yes _____  No _____

**If your answer to Question 12 is "Yes," then answer Question 13.  If you answered "No," then go to the end of the form.**

### Question No. 14:

Did DZ Reserve's conduct result in prejudice to Facebook?

Yes _____  No _____

**Go to the end of the form.**

*Sources*:  Matthew Bender, California Forms of Jury Instruction No. 300F.29 (2025) ("To establish this defense, Defendant must prove that Plaintiff's conduct was unconscionable and resulted in prejudice to defendant."); *see GSI Technology, Inc. v. United Memories, Inc.*, Case No. 5:13-cv-01081 (N.D. Cal. Nov. 22, 2015), Dkt. 1044.

1

2    You have now reached the end of the verdict form and should review it to ensure it accurately
3    reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict
     form in the spaces below and notify the courtroom deputy that you have reached a verdict. The
4    Presiding Juror should retain possession of the verdict form and bring it when the jury is brought
     back into the courtroom.
5

6

7    DATED:                                    Signed:
8    _____

9                                              _____
                                                         Presiding Juror
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **Proposed Verdict Form Questions for Fraudulent Misrepresentation**

#### ***Plaintiffs' Position***

Plaintiffs agree with Meta on the elements of this claim, as set forth by the Judicial Council of California Civil Jury Instructions (CACI), but oppose the language Meta uses to characterize the representation in the first element. The representation at issue in this case is straightforward—it's the representation of Potential Reach on Meta's Ads Manager platform. But Meta again uses this verdict form to improperly narrow the representation to the substitution of people for accounts, without any regard for the inflation that caused Meta to "charge[] artificially high premiums for ad placements." ECF No. 388 at 1. Meta's proposal contradicts the Court's class certification order, *id*., and the Court's approval of Plaintiffs' Unopposed Class Notice, which stated that "Plaintiffs allege Facebook inflated its potential advertising reach to consumers, and charged artificially high premiums for ad placements." ECF No. 470-1. Meta's proposed verdict form is therefore unduly restrictive, confusing, and overly complicated.

The parties also continue to disagree about whether Plaintiffs should be referred to as "DZ Reserve and Cain Maxwell" or simply "Class Members." Because this case is proceeding as a certified class action, the jury's focus should be on the claims and evidence as they apply to the class as a whole. Meta's claim that individualized evidence will be required for liability ignores that this Court already certified this as a class action, and the Ninth Circuit affirmed it as such. ECF No. 388; *DZ Rsrv. v. Meta Platforms, Inc.,* 96 F.4th 1223, 1241 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025). References to the individual named plaintiffs risk creating confusion regarding common issues certified for class treatment. The jury should determine whether the elements are satisfied as to "Class Members," including the individual named plaintiffs.

Lastly, Plaintiffs respectfully disagree that the verdict form should refer to the Defendant as "Facebook," and not "Meta." While it is true that Defendant announced its new corporate name one day after the close of the class period, at all points of that class period the entity now known as Meta owned and operated Instagram and other platforms. Central to Plaintiffs' allegations is

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that individuals had multiple accounts on both the Instagram and Facebook platforms ("single user/multiple accounts or SUMA" in Meta's parlance.) While the parties should be free at trial to refer to Defendant as Facebook or Meta as circumstances may warrant, the jury's focus should remain squarely on the corporate actor that perpetrated the alleged harms, not on what is now just one of its many product verticals.

### *Meta's Position*

Meta objects to two aspects of Plaintiffs' proposed Fraudulent Misrepresentation questions.

*First*, Plaintiffs' proposal does not identify the relevant alleged misrepresentation, asking only whether Meta made a "false representation of fact … regarding Potential Reach."  As explained with respect to Disputed Instructions No. 2 and 16, there is only ***one*** representation that has been certified for class treatment: "the fact that Meta substituted people for accounts" in describing Potential Reach.  *DZ Rsrv.*, 96 F.4th at 1234.  The verdict form must identify that alleged misrepresentation to avoid jury confusion and direct the jury's focus to the only representation accepted for class treatment, especially given that Plaintiffs continue to press an "inflation" theory—*i.e.*, a "numerical discrepancy" theory—independent of the substitution-of-people-for-accounts theory that was certified for class treatment.

*Second*, Plaintiffs' proposed questions reference "Class Members" instead of Plaintiffs DZ Reserve and Cain Maxwell.  As explained with respect to Disputed Instruction No. 16, DZ Reserve and Maxwell must—in their representative capacities—actually prove each element of the claims as to themselves, in addition to providing classwide proof as to all class members.  Referencing "Class Members," rather than DZ Reserve and Maxwell, will confuse the jury as to whether it must assess the elements of the claim with respect to the named Plaintiffs or only some or all of the Class.  This is especially important with respect to the elements of reliance and resulting harm (*i.e.*, harm causally linked to reliance), because a jury could easily find that DZ Reserve and/or Cain Maxwell did *not* rely on any alleged misrepresentation.  Accordingly, Meta's proposed questions properly reflect that the jury must assess reliance and resulting harm as to each named Plaintiff's claim.

1    Moreover, the jury cannot reach a definitive liability finding for all class members in this

2    trial, because key elements—namely, reliance and harm causally linked to reliance—will require

3    further, individualized proceedings.  As the Ninth Circuit recognized, Meta retains the right to

4    rebut reliance as to each class member.  *DZ Rsrv.*, 96 F.4th at 1237 (acknowledging that rebuttal

5    "has the effect of leaving individualized questions of reliance in the case" (citation omitted)); *see*

6    *also Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997), as modified (July 30,

7    1997); *Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 814 (1971).  Meta cannot be deprived of its due

8    process and Seventh Amendment rights to do so, and any other outcome would improperly abridge

9    Meta's rights contrary to the Rules Enabling Act.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

10   367 (2011).

11       *Third*, Plaintiffs admit that Meta's corporate name was Facebook throughout the entire

12   class period, so unsurprisingly, documents and witnesses all discuss Facebook.  Referring to

13   Facebook as the corporate actor on the verdict form is not only accurate but will also avoid

14   confusion.

1

## **Proposed Verdict Form Questions for Fraudulent Concealment**

2

### ***Plaintiffs' Position***

3

   As discussed above, Plaintiffs agree with Meta on the elements of this claim, as set forth

4

by the Judicial Council of California Civil Jury Instructions (CACI) but oppose the language

5

Meta uses to characterize the concealment in the first element. The concealment at issue is that

6

Potential Reach was inflated because the number of unique accounts exceeded the number of

7

unique people. But Meta again uses this verdict form to improperly narrow the concealment to

8

the substitution of people for accounts, without any regard for the inflation that caused Meta to

9

"charge[] artificially high premiums for ad placements." ECF No. 388 at 1. Meta's proposal

10

contradicts the Court's class certification order, *id*., and the Court's approval of Plaintiffs'

11

Unopposed Class Notice, which stated that "Plaintiffs allege Facebook inflated its potential

12

advertising reach to consumers, and charged artificially high premiums for ad placements."

13

ECF No. 470-1. Meta's proposed verdict form is therefore unduly restrictive, confusing, and

14

overly complicated.

15

   The parties also continue to disagree about whether Plaintiffs should be referred to as

16

"DZ Reserve and Cain Maxwell" or simply "Class Members." Because this case is proceeding as

17

a certified class action, the jury's focus should be on the claims and evidence as they apply to the

18

class as a whole. Meta's claim that individualized evidence will be required for liability ignores

19

that this Court already certified this as a class action, and the Ninth Circuit affirmed it as such.

20

ECF No. 388; *DZ Rsrv. v. Meta Platforms, Inc.,* 96 F.4th 1223, 1241 (9th Cir. 2024), *cert.*

21

*denied*, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025). References to the individual named plaintiffs

22

risk creating confusion regarding common issues certified for class treatment. The jury should

23

determine whether the elements are satisfied as to "Class Members," including the individual

24

named plaintiffs.

25

26

27

28

1

***Meta's Position***

2          Meta objects to two aspects of Plaintiffs' proposed Fraudulent Concealment questions.

3          *First*, Plaintiffs' proposal mischaracterizes the alleged concealment certified for class

4  treatment.  Plaintiffs' proposed language focuses on the purported failure to disclose "that Potential

5  Reach was inflated because the number of unique accounts exceeded the number of unique

6  people."  But that language refers to a theory the Ninth Circuit expressly did ***not*** accept for class

7  treatment.  As the Ninth Circuit explained, the "common" alleged misrepresentation is ***not*** "the

8  numerical discrepancy between people and accounts," which indisputably varied across

9  advertisers.  *DZ Rsrv.*, 96 F.4th at 1234-35; *id.* at 1231.  Rather, it is the alleged "substitution of

10 people for accounts."  *Id.*  at 1235.  Plaintiffs' proposal thus improperly invites the jury to find

11 liability based on the theory that Meta committed fraud because the "numerical value" of Potential

12 Reach estimates was too high.  *Id.*  That invitation conflicts with the Ninth Circuit's decision

13 affirming this Court.

14

15          *Second*, as discussed above, the questions reference "Class Members," not named Plaintiffs

16 DZ Reserve and Cain Maxwell.  But DZ Reserve and Maxwell must—in their representative

17 capacities—actually prove each element of the claims as to themselves, in addition to presenting

18 classwide proof as to all class members.  Referencing "Class Members," rather than DZ Reserve

19 and Maxwell, will confuse the jury as to whether it must assess the elements of the claim with

20 respect to the named Plaintiffs or only some or all of the Class.  Again, this is especially important

21 with respect to the elements of reliance and resulting harm, because a jury could easily find that

22 DZ Reserve and/or Cain Maxwell did *not* rely on any alleged concealment.  Accordingly, Meta's

23 proposed questions properly reflect that the jury must assess reliance and resulting harm as to each

24 named Plaintiff's claim.

25

26

27

28

1   Moreover, the jury cannot reach a definitive liability finding for all class members in this

2   trial, because key elements—namely, reliance and harm causally linked to reliance—will require

3   further, individualized proceedings.  As the Ninth Circuit recognized, Meta retains the right to

4   rebut reliance as to each class member.  *DZ Rsrv.*, 96 F.4th at 1237 (acknowledging that rebuttal

5   "has the effect of leaving individualized questions of reliance in the case" (citation omitted)); *see*

6   *also Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997), as modified (July 30,

7   1997); *Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 814 (1971).  Meta cannot be deprived of its due

8   process and Seventh Amendment rights to do so, and any other outcome would improperly abridge

9   Meta's rights contrary to the Rules Enabling Act.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

10  367 (2011).

1

## Proposed Verdict Form Questions for Damages

2

### *Plaintiffs' Position*

3

       This is a class action trial. *See DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890 (N.D.

4

Cal. Mar. 29, 2022), *aff'd*, 96 F.4th 1223 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051, 220 L.

5

Ed. 2d 381 (2025). The verdict form should give the jury a straightforward task: to determine one

6

number for compensatory damages and, if so instructed, one number for punitive damages.

7

Meta's proposed form has no grounding in law or practice. It instead invents a framework

8

requiring the jury to return separate damages awards for each named plaintiff on two distinct

9

claims. And it eliminates the jury's ability to award classwide damages, which is completely

10

antithetical to the jury's task in a class action trial. *See, e.g., In re Pharm. Indus. Average*

11

*Wholesale Price Litig.*, 582 F.3d 156, 197 (1st Cir. 2009) ("The use of aggregate damages

12

calculations is well established in federal court and implied by the very existence of the class

13

action mechanism itself."); *In re Disk Drive Suspension Assemblies Antitrust Litig.*, 2025 WL

14

71988, at *22 (N.D. Cal. Jan. 10, 2025) (same). Meta's proposed form overcomplicates this task,

15

risks confusing the jury, and is inconsistent with the law. The jury is not charged with

16

determining compensation for the named plaintiffs. The jury's role is to return a single aggregate

17

damages award, and any service awards are left to the sole discretion of the Court.

18

19

20

21

22

23

24

25

26

27

28

1

### Meta's Position

2

Plaintiffs' proposed question for compensatory damages is not permissible. Plaintiffs

3

propose asking the jury to award a lump sum of "damages that Class Members are entitled to

4

recover." But that is not possible in this trial, because liability cannot be definitively resolved for

5

the Class given individualized issues like reliance that will need to be resolved in later

6

proceedings—as explained above and with respect to Disputed Instructions No. 16-17. There is

7

thus no way for the jury to know the total number of advertisers for whom they would purportedly

8

be calculating damages. Accordingly, while aggregate damages may be appropriate in *some* class

9

actions, they are not appropriate here. Meta's proposal thus properly limits the damages awarded

10

to DZ Reserve and Cain Maxwell, until remaining individualized issues are resolved in later

11

proceedings.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Proposed Verdict Form Questions for Unclean Hands

### *Plaintiffs' Position*

Plaintiffs oppose any mention of this affirmative defense on the verdict form.

To shift focus away from its own fraudulent conduct, Meta now raises an affirmative defense of "unclean hands" against class representative DZ Reserve on the grounds that it allegedly "violated Meta's Terms of Use by purchasing advertisements through others' accounts." Meta can satisfy *none* of the elements of an unclean hands defense as to the fraudulent misrepresentation and fraudulent concealment claims, and, even if it could, Plaintiff DZ Reserve did not violate Meta's Terms of Use. Accordingly, the Court should decline to give this instruction.

"To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (internal citation omitted). Meta can demonstrate none of these elements.

First, DZ Reserve's alleged purchase of advertising through the accounts of others is not conduct courts have held can support a defense of unclean hands. "We have stated that only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982). "Traditionally, the doctrine of unclean hands is invoked when one seeking relief in equity has violated conscience, good faith or other equitable principles in his prior conduct. [Citations omitted.]" *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists* 227 Cal.App.2d 675, 727 (1964) (citations omitted). Meta's fulminations notwithstanding, paying it to place advertisements through other people's accounts is far from the kind of egregious conduct that could support such an instruction.

Second, "It is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made." *Arthur v. Davis,* 126 Cal.App.3d 684, 693–94, (1981) (quotation omitted). There is no relationship between

a customer's use of another's account to purchase advertisements and the fraudulent misrepresentations for which Meta stands trial. The alleged violations of Facebook's Terms of Use are, at very worst, mere "extraneous transgressions" or "misconduct in the abstract, unrelated to the claim to which it is asserted as a defense." *Republic Molding Corp. v. B. W. Photo Utils.* 319 F.2d 347, 349-50 (9th Cir. 1963); *see also Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989) (finding alleged failure to perform under a franchise agreement unrelated to party's right to rescind that agreement).

Third, Meta was uninjured by the alleged purchase of advertising on its platforms. The unclean hands defense requires proof that plaintiff "has injured the party attempting to invoke the doctrine." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004); *Infineon Techs. AG v. Volterra Semiconductor Corp.*, 2013 WL 1832558, at *4 (N.D. Cal. May 1, 2013). Meta cannot plausibly argue that it was injured by the money it accepted to run advertisements. To the contrary, as in *Broderbund Software Inc. v. Unison World, Inc.* "[f]ar from being injured [by the alleged inequitable conduct] . . . defendant may have profited from it." 648 F. Supp. 1127, 1138 (N.D. Cal. 1986).

Meta will have an opportunity at trial (as it did at his deposition) to question DZ Reserve owner Dan Ziernicki about all of the purchases he allegedly made on their platforms. But because the alleged conduct is far from inequitable, substantively unrelated to the allegations at issue, and caused no injury to defendant, DZ Reserve's hands are clean. Accordingly, the Court should exercise its discretion and decline to give this jury instruction.

1    ***Meta's Position***

2        For the same reasons set forth with respect to the jury instructions, the unclean hands

3    defense must be submitted to the jury.  The unclean hands doctrine "demands that a plaintiff act

4    fairly in the matter for which he seeks a remedy.  He must come into court with clean hands, and

5    keep them clean, or he will be denied relief, regardless of the merits of his claim."  *DD Hair*

6    *Lounge, LLC v. State Farm Gen. Ins. Co.*, 20 Cal. App. 5th 1238, 1246 (2018).  Unclean hands is

7    a question for the jury where, as here, it is "so intertwined with legal claims that [the issue] cannot

8    be separately tried to the judge."  *Unilogic v. Burroughs Corp.*, 10 Cal. App. 4th 612, 622-23

9    (1992); *e.g.*, *Consumer Direct, Inc. v. Pentius, LLC*, No. 8:21-cv-01968, Dkt. 519 at 6 (C.D. Cal.

10   July 19, 2024) (unclean hands properly submitted to the jury because "adjudication of [the] legal

11   claim" "necessarily required the jury to determine" issues of "fact and credibility" relevant to

12   unclean hands defense).  Plaintiffs do not dispute that unclean hands is a jury question in this case.

13   Rather, they attempt to pre-try the issue to eliminate it altogether.  Those efforts fail.

14        "*Any conduct* that violates conscience, or good faith, or other equitable standards of

15   conduct is sufficient cause to invoke the doctrine."  *Padideh v. Moradi*, 89 Cal. App. 5th 418, 444

16   (2023) (emphasis added).  Plaintiffs' case, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,

17   518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007), does not purport to apply California law and instead

18   involves a federal copyright claim.  But under any standard, the conduct here suffices.  DZ Reserve

19   owner Dan Ziernicki violated Meta's Terms of Service and Community Standards, which allow

20   people to create only one account and prohibit impersonating another person on Facebook.  Mr.

21   Ziernicki repeatedly purchased ads through other people's accounts, and he tried to do so through

22   covert means—including buying a Facebook account through a forum selling accounts, using his

23   girlfriend's Facebook account, and using a friend's account to buy ads.  Mr. Ziernicki attempted

24   to conceal those accounts and additional ad purchases during discovery—all while simultaneously

25   alleging that DZ Reserve "would have purchased fewer (if any) Facebook advertisements" had it

26   known Potential Reach estimates could be impacted by fake or duplicate accounts.  Third Am.

27   Compl. ¶¶ 147, 159; *see also* Opp. to Class Cert., Dkt. 362 at 18; Mot. for Summ. J., Dkt. 372 at

28

18. That is precisely the kind of "bad faith[] or inequitable conduct" that can support an unclean-hands defense. *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 974 (N.D. Cal. 2013) (citation omitted); *see, e.g.*, *Padideh*, 89 Cal. App. 5th at 445 ("lack of candor or falsity in [a] deposition" supported unclean hands).

Plaintiffs are also wrong to argue that DZ Reserve's inequitable conduct is unconnected to its claims against Meta and did not harm Meta. Whether DZ Reserve's owner continued to covertly buy Facebook ads even as DZ Reserve told this Court that it would have purchased fewer (or no) Facebook ads had it known Potential Reach was allegedly misleading goes to the heart of DZ Reserve's fraud claims. What is more, DZ Reserve's owner's "lack of candor or lying" about subsequent ad purchases "affect[ed] [Meta's] litigation decisions" and conduct, because of the additional effort for Meta to uncover the truth—including securing an order from this Court for documents revealing his covert purchases. *Padideh*, 89 Cal. App. 5th at 447. That kind of litigation-related harm supports an unclean-hands defense under California law. *See id.* at 447-50; *DD Hair Lounge*, 20 Cal. App. 5th at 1246 (applying unclean hands to bar relief where litigant "conceal[ed]" a relevant fact and "then engag[ed] in [a] time-consuming charade"). It is enough to show that "the misconduct … occurred in a transaction or matter directly related to and infecting the one presently before the court, and that it has affected the equitable relationship between the litigants." *Padideh*, 89 Cal. App. 5th at 450. "No further prejudice or harm is required." *Id.* That standard is met here, and Meta's unclean hands defense should therefore be submitted to the jury.

1

## Proposed Verdict Form Questions for Prejudgment Interest

2

***Plaintiffs' Position***:

3

4    The jury has discretion to award prejudgment interest under California law. *See* Cal. Civ.

5    Code § 3288; *Garrison v. Ringgold*, 2020 WL 13189480, at \*7 (S.D. Cal. Nov. 9, 2020) ("In a

6    case of fraud, an award of prejudgment interest is necessary to put the plaintiff in a position that

7    she would have been in, had the fraud not occurred."). Plaintiffs' proposed verdict form presents

    the jury with this choice.

8    Meta makes the baseless argument that "it is not feasible for the jury to adjudicate on a

9    classwide basis the underlying facts required to award prejudgment interest." But this overlooks

10   the fundamental reality that this is a class action trial. *See DZ Rsrv. v. Meta Platforms, Inc.*, 2022

11   WL 912890 (N.D. Cal. Mar. 29, 2022), *aff'd*, 96 F.4th 1223 (9th Cir. 2024), *cert. denied*, 145 S.

12   Ct. 1051, 220 L. Ed. 2d 381 (2025). Indeed, Rule 23 is designed to permit class actions where

13   "the questions of law or fact common to class members predominate over any questions affecting

14   only individual members" and where a class action is "superior to other available methods for

15   fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). And at its core,

16   Rule 23 is a mechanism for exactly these types of issues.

17

18

19

20

21

22

23

24

25

26

27

28

1

### *Meta's Position*

2

3       As explained with respect to Plaintiffs' proposed jury instruction, prejudgment interest

should not be submitted to the jury because Plaintiffs failed to request such relief in their

4

complaint.  But at minimum, prejudgment interest cannot be submitted as to the Class and must

5

be limited to DZ Reserve and Cain Maxwell because it is not feasible for the jury to adjudicate on

6

a classwide basis the underlying facts required to award prejudgment interest.  Plaintiffs' proposal

7

would ask the jury to "identify the starting date from which Class Members are owed prejudgment

8

interest."  But prejudgment interest "is computed from the date on which **each loss** was incurred."

9

CACI 3935 (emphasis added).  The jury may not select an arbitrary date from which to run

10

prejudgment interest for **all class members**, who purchased ads over the course of more than six

11

years.  Plaintiffs' verdict form is modeled after the form in *Monahan Pacific Corp. v. Travelers*

12

*Property Casualty Co.*, No. 22-cv-03593-JD (N.D. Cal.).  But that case was not a class action and

13

thus implicated none of the problems here.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **Proposed Verdict Form Questions for Punitive Damages**

2

### ***Plaintiffs' Position***

3

4
        If the Court permits the issue of punitive damages to go before the jury, the verdict form

5
should include a simple yes/no question on whether punitive damages are warranted, followed by

6
a single line for the jury to state the amount of punitive damages awarded.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

***Meta's Position***

2

3    Meta's proposal follows CACI VF-3904, the applicable verdict form for punitive damages

4    involving an entity defendant like Meta, for all questions pertinent to entitlement to punitive

5    damages.  As explained with respect to Plaintiffs' proposed punitive damages instruction, Meta

6    believes that the amount of punitive damages to which DZ Reserve and Maxwell are entitled

7    should be bifurcated and resolved in a separate proceeding by the same jury, if the jury returns a

8    liability verdict in favor of either of them.  In addition, the amount of punitive damages to which

9    the Class is entitled cannot be resolved until all liability issues have been resolved and the number

10   of Class Members eligible to recover compensatory damages has been determined. Accordingly,

11   only the question of whether punitive damages should be awarded should be submitted in this

12   phase.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: September 4, 2025                    Respectfully submitted,


                                           */s/ Geoffrey Graber*
                                           Geoffrey Graber (SBN 211547)
                                           Karina G. Puttieva (SBN 317702)
                                           Madelyn Petersen (*pro hac vice*)
                                           Jenna Waldman (SBN 341491)
                                           **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                           1100 New York Ave. NW, Ste 800
                                           Washington, DC 20005
                                           Telephone: (202) 408-4600
                                           ggraber@cohenmilstein.com
                                           kputtieva@cohenmilstein.com
                                           mpetersen@cohenmilstein.com
                                           jwaldman@cohenmilstein.com


                                           Charles Reichmann (SBN 206699)
                                           **LAW OFFICES OF CHARLES REICHMANN**
                                           16 Yale Circle
                                           Kensington, CA 94708-1015
                                           Telephone: (415) 373-8849
                                           charles.reichmann@gmail.com


                                           Theodore J. Leopold (*pro hac vice*)
                                           Leslie M. Kroeger (*pro hac vice*)
                                           **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                           11780 US Highway One Suite 500 Palm Beach
                                           Gardens, FL 33408
                                           Telephone: (516) 515-1400
                                           Facsimile: (516) 515-1401
                                           lkroeger@cohenmilstein.com
                                           tleopold@cohenmilstein.com


                                           Eric Kafka (*pro hac vice*)
                                           **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                           88 Pine Street, 14th Floor,
                                           New York, NY 10005
                                           Telephone: (212) 838-7797
                                           Facsimile: (212) 838-7745
                                           ekafka@cohenmilstein.com

                                           *Class Counsel*


                                           By: */s/ Andrew B. Clubok*
                                           **LATHAM & WATKINS LLP**
                                           Melanie M. Blunschi (SBN 234264)
                                           melanie.blunschi@lw.com

Nicole C. Valco (SBN 258506)
nicole.valco@lw.com
Francis J. Acott (SBN 331813)
francis.acott@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.395.5942

Andrew B. Clubok (*pro hac vice*)
andrew.clubok@lw.com
Susan E. Engel (*pro hac vice*)
susan.engel@lw.com
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

*Counsel for Defendant Meta Platforms, Inc.*