1  Geoffrey Graber (SBN 211547)
2  **COHEN MILSTEIN**
   **SELLERS & TOLL PLLC**
3  1100 New York Ave. NW, Ste 800
   Washington, DC 20005
4  Telephone: (202) 408-4600
   Facsimile: (202) 408-4699
5  ggraber@cohenmilstein.com

6  Charles Reichmann (SBN 206699)
7  **LAW OFFICES OF**
   **CHARLES REICHMANN**
8  16 Yale Circle
   Kensington, CA 94708-1015
9  Telephone: (415) 373-8849
   charles.reichmann@gmail.com
10
11 *Class Counsel*
   *[Additional Counsel on Signature Page]*
12

**LATHAM & WATKINS LLP**
Melanie M. Blunschi (SBN 234264)
melanie.blunschi@lw.com
Nicole C. Valco (SBN 258506)
nicole.valco@lw.com
Francis J. Acott (CA Bar No. 331813)
*francis.acott@lw.com*
505 Montgomery Street, Suite 200
San Francisco, CA 94111-6538
Telephone: (415) 391-0600

Andrew Clubok (*pro hac vice*)
andrew.clubok@lw.com
Susan E. Engel (*pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200

*Counsel for Defendant*

13
14
15                    **UNITED STATES DISTRICT COURT**
16                    **NORTHERN DISTRICT OF CALIFORNIA**

17 DZ RESERVE and CAIN MAXWELL (d/b/a
   MAX MARTIALIS), individually and on
18 behalf of all others similarly situated,

19            Plaintiffs,

20       v.

21 META PLATFORMS, INC.,

22            Defendant.

Case No. 3:18-cv-04978-JD

**PROPOSED FINAL JURY**
**INSTRUCTIONS**

23
24
25
26
27
28

1

2

3    <u>STIPULATED INSTRUCTION NO. 1</u>:

4    DUTY OF JURY

5    Members of the jury, now that you have heard all the evidence, it is my duty to instruct you
on the law that applies to this case.  You will each be given a copy of these instructions to refer to
during your deliberations.

6    It is your duty to find the facts from all the evidence in the case.  To those facts you will
apply the law as I give it to you.  You must follow the law as I give it to you, whether you agree
with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices or
sympathy.  You should also not be influenced by any person's race, color, religion, national ancestry,
or gender.

7    All of this means that you must decide the case solely on the evidence before you.  Please
keep in mind that you took an oath to do so.

8    Do not read into these instructions or anything I may say or do that I have an opinion
regarding the evidence or what your verdict should be.  That is for you to decide.

9    ***Sources***: Google Play Final Instruction No. 1; Flo Health Final Instruction No. 1.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED INSTRUCTION NO. 2

CLAIMS AND DEFENSES

**OFFERED BY PLAINTIFFS**

I will give you a brief summary of the parties' positions.

The plaintiffs are 11.2 million advertiser class members represented by DZ Reserve and Cain Maxwell (d/b/a/ Max Martialis).  The defendant is Meta Platforms, Inc., referred to as "Meta." During the time period relevant to this case, Meta was known as Facebook.  Documents and witnesses may use the names Meta and Facebook interchangeably.

Meta sells advertising to businesses and business owners, and advertisers use Meta's Ads Manager platform to identify their advertising targets, including the demographic reach they desire. Meta's self-service ad creation interface, known as Ads Manager, displayed a "Potential Reach" for the advertisement, which was expressed as a number of people that the ad may reach. The class members allege that Meta inflated the number shown as "Potential Reach" to advertisers by counting duplicate and fake accounts, and therefore charged artificially high premiums for ad placements.

Meta denies the claims.  Meta contends that the representation of Potential Reach as an estimate of the number of "people" meeting the advertiser's targeting criteria, rather than an estimate of "accounts," was not false or misleading, was made in good faith, and did not substantially or reasonably influence Class members in their decisions about how much to spend on advertisements from Meta.

***Sources***:  Google Play Final Instruction No. 2; Flo Health Final Instruction No. 2 (as modified in blue); *DZ Rsrv. v. Meta Platforms, Inc.,* No. 3:18-CV-04978-JD, 2022 WL 912890, at *1 (N.D. Cal. Mar. 29, 2022), *aff'd in part, vacated in part, remanded*, 96 F.4th 1223 (9th Cir. 2024) ("The gravamen of the lawsuit is that Meta inflated its potential advertising reach to consumers, and charged artificially high premiums for ad placements.")

*Plaintiffs' Position:*

Meta first argues that the number of class members is unknown. Wrong. By Meta's own count there are 11.2 million advertisers in the Class. Class notice has been disseminated, and 90 persons or entities submitted exclusion requests. ECF No. 477-1 at 4:17-19. The remainer are in the Class. Meta's motion to compel arbitration has not changed that fact. Meta's claim that individualized evidence will be required for liability ignores that this Court already certified this as a class action, and the Ninth Circuit affirmed it as such. ECF No. 388; *DZ Rsrv. v. Meta Platforms, Inc.,* 96 F.4th 1223, 1241 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025).

Second, Meta hopes to use this instruction as another opportunity to falsely represent its theory that the inflation between "people" and "accounts" is not part of the misrepresentation at issue in this case. But this Court has stated that "[t]he gravamen of the lawsuit is that Meta *inflated* its potential advertising reach to consumers and charged artificially high premiums for ad placements." ECF No. 388 at 1 (emphasis added). The court of appeals agreed, affirming in its entirety "the district court's certification of the damages class." *DZ Rsrv. v. Meta Platforms, Inc.,* 96 F.4th 1223, 1241 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025). And this Court approved Plaintiffs' Unopposed Class Notice, which stated that "Plaintiffs allege Facebook inflated its potential advertising reach to consumers, and charged artificially high premiums for ad placements." ECF No. 470-1.

Third, the parties disagree about whether Plaintiffs should be referred to as "DZ Reserve and Cain Maxwell" or simply "Class members." Because this case is proceeding as a certified class action, the jury's focus should be on the claims and evidence as they apply to the class as a whole. References to the individual named plaintiffs, however, risk creating confusion regarding common issues certified for class treatment. The jury should determine whether the elements are satisfied as to "Class members," including the individual named plaintiffs. Plaintiffs take the same position with respect to several instructions at issue below.

Fourth, Plaintiffs respectfully disagree that these instructions should refer to the Defendant as "Facebook," and not "Meta." While it is true that Defendant announced its new corporate identity

one day after the close of the class period, at all points of that class period the entity now known as Meta owned and operated Instagram and other platforms. Central to Plaintiffs' allegations is that individuals had multiple accounts on both the Instagram and Facebook platforms ("single user/multiple accounts" or "SUMA" in Meta's parlance.) While the parties should be free at trial to refer to Defendant as Facebook or Meta as circumstances may warrant, the jury's focus should remain squarely on the corporate actor that perpetrated the alleged harms, not on what is now just one of its many product verticals.

Lastly, Plaintiffs separately oppose Meta's description of its "unclean hands" defense for the reasons discussed alongside that jury instruction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED INSTRUCTION NO. 2

CLAIMS AND DEFENSES

**OFFERED BY META**

I will give you a brief summary of the parties' positions.

The plaintiffs are DZ Reserve and Cain Maxwell (d/b/a/ Max Martialis), who represent a class of advertisers ("Class").  The defendant is Meta Platforms, Inc., referred to as "Meta."  During the time period relevant to this case, Meta was known as Facebook.  For consistency, these instructions and your verdict form use "Facebook" throughout to refer to the entity now known as "Meta."  Documents and witnesses may use the names Meta and Facebook interchangeably.

Facebook's self-service ad creation interface, known as Ads Manager, displayed an estimate called "Potential Reach."  DZ Reserve and Cain Maxwell allege that Facebook fraudulently misrepresented Potential Reach estimates by substituting people for accounts in describing those estimates and fraudulently concealed this substitution.  DZ Reserve and Cain Maxwell have the burden of proving each claim by a preponderance of the evidence.

Facebook denies the claims.  Facebook contends that the representation of Potential Reach as an estimate of the number of "people" meeting the advertiser's targeting criteria, rather than an estimate of "accounts," was not false or misleading, was made in good faith, and did not substantially or reasonably influence DZ Reserve and Cain Maxwell in their decisions about how much to spend on advertisements from Facebook.

Facebook alleges as an affirmative defense that DZ Reserve brought claims against Facebook with "unclean hands" because it violated Facebook's Terms of Service by purchasing advertisements through others' accounts.  Facebook has the burden of proving its affirmative defense by a preponderance of the evidence.

***Sources***:  Google Play Final Instruction No. 2; Flo Health Final Instruction No. 2 (as modified in blue); *see also DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024) (identifying the "claimed misrepresentation" as "the substitution of people for accounts"); *id.* at 1234 (rejecting idea "that the misrepresentation is the numerical discrepancy between people and accounts, rather than the fact that Meta substituted people for accounts"); Third Amended Compl.

1    ¶ 150, Dkt. 332 ("Facebook . . . conceals that Potential Reach is calculated using accounts, not
2    people.").

*Meta's Position:*

Plaintiffs' proposed instruction suffers from four flaws.

*First*, the instruction improperly purports to specify the number of members in the class, even though that number has yet to be determined and depends on numerous factors, including Meta's pending motion to compel arbitration.  It is also irrelevant and unhelpful to the jury, as it does not reflect the number of advertisers to whom Meta would be liable after trial, given the need for later proceedings to assess individualized evidence, including regarding reliance. Should Plaintiffs prevail on the common issues, the number of Class Members to whom Meta is actually liable should be determined in a second, bifurcated phase where Meta can present this individualized evidence.  *See* Disputed Instruction No. 25.

*Second*, Plaintiffs' description of the alleged misrepresentation—that "Meta **inflated the number** shown as 'Potential Reach'"—directly conflicts with the Ninth Circuit's decision in this case.  Throughout this case, Plaintiffs have argued that Potential Reach was fraudulent on "two independent grounds": (1) the numerical estimates were inflated because Facebook failed to sufficiently remove duplicate and fake accounts and (2) the description of Potential Reach as an estimate of "people" was wrong because Potential Reach was actually tracking accounts.  Dkt. 281-3 at 12; Dkt. 332 at ¶¶ 143-44, 153.  But the Ninth Circuit affirmed class certification only as to the second alleged misrepresentation: "the fact that Meta substituted people for accounts" in describing Potential Reach.  *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1230, 1234-35 (9th Cir. 2024). In doing so, it made clear that the relevant classwide misrepresentation was **not** "the numerical discrepancy between people and accounts," which indisputably varied across advertisers.  *Id.* Plaintiffs thus cannot proceed on their theory that the specific **numbers** that class members saw were "inflated."  Instead, Plaintiffs are limited to the theory that Facebook "substituted" the **word** "people" in describing a numerical figure that "really measures" the number of "accounts."  *Id.* at 1237. Plaintiffs' proposed instruction seeks to reintroduce the precise theory the Ninth Circuit said was **not** the basis for class certification, contrary to the law of the case and basic principles of Rule 23. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) ("'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent

stages in the same case'" (citation omitted)); *Lambert v. Nutraceutical Corp.*, 2020 WL 12012559, at *2 (C.D. Cal. Jan. 8, 2020) (recognizing law of the case effect of Rule 23(f) ruling).

Plaintiffs ignore the Ninth Circuit's decision and misconstrue this Court's class certification order in attempting to support their proposal. Plaintiffs point to this Court's statement that the "gravamen of the lawsuit is that Meta inflated its potential advertising reach to consumers." Dkt. 388 (Class Cert. Order) at 1. But they fail to read that sentence in context of the order as a whole. While that statement describes **one** of Plaintiffs' theories, the Ninth Circuit made clear that the "claimed misrepresentation" for purposes of class certification was the one this Court "described in its certification order: '[T]he ability of Potential Reach to reach "people," namely unique individuals' when the metric was 'actually … an estimate of "accounts" reached.'" *DZ Rsrv.*, 96 F.4th at 1234 (quoting Class Cert. Order at 10). As this Court recognized, it was that representation to which "all class members were exposed." Class Cert. Order at 10. Plaintiffs cannot revive through their jury instructions a theory that was not accepted for, and is not suitable for, class treatment.

*Third*, Plaintiffs refer to "Class members," not the named Plaintiffs, in describing the claims. Doing so will cause confusion and improperly gloss over the fact that DZ Reserve and Cain Maxwell are the named Plaintiffs in this case, whose claims must be tried directly in a representative capacity for those of the class. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (Rule 23's requirements "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" (citation omitted)); *see* Meta's Position Statement re Disputed Instructions No. 16-17.

*Finally*, Plaintiffs' instruction omits reference to Meta's affirmative defense of unclean hands. As described below with respect to that instruction, that defense is properly submitted to the jury and should be described here, as Meta proposes.

1

2

<u>STIPULATED INSTRUCTION NO. 3:</u>

CLASS ACTION

3

4

5

6

7

8

9

10

11

This lawsuit has been brought as a class action.  A class action is a lawsuit that has been brought by one or more persons or businesses called class representatives on behalf of a larger group of people or businesses who have similar legal claims.  All of these people or businesses together are called a class.  A class action lawsuit allows the claims of many persons or businesses to be resolved at the same time instead of requiring each person or business to sue separately.  Not everyone in the Class testified, but you may assume that the evidence admitted during trial applies to all class members, unless I tell you otherwise.  The fact that this case is proceeding as a class action does not mean any decision has been made about the merits of the case, and you must not infer anything about the merits of this case based on the fact that it is a class action.

12

13

14

15

16

17

18

19

20

In this case, the Class consists of the following members:

*All United States residents (including individuals and companies) who, from August 15, 2015, to October 27, 2021, paid for the placement of at least one advertisement on Facebook's platforms, including the Facebook and Instagram platforms, which was purchased through Facebook's Ads Manager or Power Editor.*

*Excluded from the Class are: (1) advertisements purchased pursuant to agreements other than Facebook's Terms of Service or Statement of Rights and Responsibilities; (2) advertisements purchased using only non-lookalike Custom Audiences as the targeting criteria; (3) advertisements purchased using Reach and Frequency buying; (4) advertisements purchased with the objectives of canvas app engagement, canvas app installs, offer claims, event responses, page likes, or external; and (5) advertisements for which Facebook provided Potential Reach lower than 1000.*

The plaintiffs representing the Class in this trial are DZ Reserve and Cain Maxwell.

21

***Sources***: CACI 115; Flo Health Final Instruction No. 3 (as modified in blue).

22

23

24

25

26

27

28

9

1

2

<u>STIPULATED INSTRUCTION NO. 4:</u>

CORPORATIONS -- FAIR TREATMENT

3

4

5

DZ Reserve and Facebook ~~The parties in this case~~ are corporations.  Cain Maxwell is an individual. All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

6

7

8

9

10

11

12

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of their authority.  An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.

13

14

***Sources***:  Google Play Final Instruction No. 3 (as modified in blue); Flo Health Final Instruction No. 4.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>STIPULATED INSTRUCTION NO. 5</u>

BURDEN OF PROOF

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

Plaintiffs also seek punitive damages. ~~Certain facts must be proved by~~As to that request and all findings that pertain to it, as described in Instruction No. 25, the measure of proof is "clear and convincing evidence," which is a higher burden of proof. This means the party must persuade you that it is highly probable that the fact is true. ~~I will tell you specifically which facts must be proved by clear and convincing evidence.~~

You should base your decision on all of the evidence, regardless of which party presented it.

***Sources***: Google Play Final Instruction No. 14; Flo Health Final Instruction No. 5; CACI No. 201.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>STIPULATED INSTRUCTION NO. 6:</u>

WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I may instruct you to accept as proved.

***Sources***:  Google Play Final Instruction No. 4; Flo Health Final Instruction No. 6.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STIPULATED INSTRUCTION NO. 7:

WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence, any facts to which the lawyers have agreed, and any facts that I may instruct you to accept as proved.  Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.

3.    Testimony that was excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4.    Anything you may have seen or heard when the Court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

***Sources***:  Google Play Final Instruction No. 5; Flo Health Final Instruction No. 7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>STIPULATED INSTRUCTION NO. 8:</u>

DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

***Sources***:  Google Play Final Instruction No. 6; Flo Health Final Instruction No. 8.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>STIPULATED INSTRUCTION NO. 9:</u>

RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence.  When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer objected.  If I overruled the objection, the question was answered, or the exhibit received.  If I sustained the objection, the question was not answered, or the exhibit was not received.  If I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that you disregard or ignore that evidence.  That means that when you are deciding the case, you must not consider the stricken evidence for any purpose.

***Sources***:  Google Play Final Instruction No. 7; Flo Health Final Instruction No. 9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STIPULATED INSTRUCTION NO. 10:

DEPOSITION IN LIEU OF LIVE TESTIMONY

During the trial, you heard testimony by witnesses in the form of previously recorded trial and deposition testimony, rather than live here in court.  A deposition is the sworn testimony of a witness taken before trial.  The witness was placed under oath to tell the truth, and lawyers for each side asked questions.  The questions and answers were recorded.

Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony, in the same way as if the witnesses had been present to testify.

***Sources***:  Google Play Final Instruction No. 8; Flo Health Final Instruction No. 10.

STIPULATED INSTRUCTION NO. 11:

CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

***Sources***: Google Play Final Instruction No. 9; Flo Health Final Instruction No. 11.

<u>STIPULATED INSTRUCTION NO. 12:</u>

IMPEACHMENT EVIDENCE -- WITNESS

The evidence that a witness lied under oath or gave different testimony on a prior occasion *[e.g., has been convicted of a crimes on a prior occasion, etc.]* may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

***Sources*:**  Ninth Circuit Manual of Model Jury Instructions 2.9 (as modified in blue); *In re Capacitors Litig.*, Instruction No. 12, Case No. 17-md-02801-JD, Dkt. 1644 (N.D. Cal. Dec. 13, 2021) (verbatim).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>STIPULATED INSTRUCTION NO. 13:</u>

EXPERT OPINION

You have heard testimony from expert witnesses who testified to opinions and the reasons for their opinions.  This opinion testimony was allowed because of the education or experience of the expert witness.

Such opinion testimony should be judged like any other testimony.  You may accept it, reject it, or give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

***Sources***:  Google Play Final Instruction No. 10; Flo Health Final Instruction No. 12.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED INSTRUCTION NO. 14:

CHARTS AND SUMMARIES

During trial, certain charts and summaries were shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Some of those charts or summaries may have been admitted into evidence, while others were not.

Charts and summaries are only as good as the evidence that supports them.  You should, therefore, give them only such weight as you think the evidence supporting them deserves.

***Sources***:  Google Play Final Instruction No. 11; Flo Health Final Instruction No. 13.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>STIPULATED INSTRUCTION NO. 15</u>

STIPULATIONS OF FACT

The parties have agreed to certain facts that I will now read to you.  You must treat these facts as having been proved.

 1. Prior to October 28, 2021, Meta Platforms, Inc. was known as Facebook, Inc.

 2. Plaintiff DZ Reserve is a corporation.

 3. Daniel Ziernicki purchased ads from Facebook on behalf of Plaintiff DZ Reserve.

 4. Plaintiff Cain Maxwell purchased ads from Facebook on behalf of his business Max Martialis.

***Sources***: Google Play Final Instruction No. 12; Flo Health Final Instruction No. 14.

DISPUTED INSTRUCTION NO. 16

ELEMENTS OF PLAINTIFFS' CLAIM FOR FRAUDULENT MISREPRESENTATION

**OFFERED BY PLAINTIFFS**

Plaintiffs~~[Name of plaintiff]~~ claims that Meta~~[name of defendant]~~ made a false representation that harmed Class members~~[him/her/nonbinary pronoun/it]~~.  To establish this claim, Plaintiffs~~[name of plaintiff]~~ must prove all of the following:

1. That Meta~~[name of defendant]~~ ~~represented to~~ represented Potential Reach to Class members~~[name of plaintiff] that a fact was true~~;

2. That Meta's~~[name of defendant]'s~~ representation of Potential Reach was false;

3. That Meta~~[name of defendant]~~ knew that the representation of Potential Reach was false when it~~[him/her/nonbinary pronoun/it]~~ made it, or that it~~[him/her/nonbinary pronoun/it]~~ made the representation recklessly and without regard for its truth;

4. That Meta~~[name of defendant]~~ intended that Class members~~[name of plaintiff]~~ rely on that representation in deciding how much to spend on advertisements from Meta;

5. That Class members~~[name of plaintiff]~~ reasonably relied on Meta's~~[name of defendant]'s~~ representation in deciding how much to spend on advertisements from Meta;

6. That Class members~~[name of plaintiff]~~ were harmed; and

7. That Class members'~~[name of plaintiff]'s~~ reliance on Meta's ~~[name of defendant]'s~~ representation was a substantial factor in causing their~~[his/her/nonbinary pronoun/its]~~ harm.

***Sources***: CACI 1900 (as modified in blue);

1  ***Plaintiffs' Position:***

2          Plaintiffs agree with Meta on the elements of this claim, as set forth by the Judicial Council

3  of California Civil Jury Instructions (CACI), but oppose the language Meta uses to characterize the

4  representation in the first element. The representation at issue in this case is straightforward—it's

5  the representation of Potential Reach on Meta's Ads Manager platform. But Meta again uses this

6  instruction to improperly narrow the representation to the substitution of people for accounts,

7  without any regard for the inflation that caused Meta to "charge[] artificially high premiums for ad

8  placements." ECF No. 388 at 1. Meta's proposal contradicts the Court's class certification order,

9  *id*., and the Court's approval of Plaintiffs' Unopposed Class Notice, which stated that "Plaintiffs

10 allege Facebook inflated its potential advertising reach to consumers, and charged artificially high

11 premiums for ad placements." ECF No. 470-1. Meta's proposed instruction is therefore unduly

12 restrictive, confusing, and overly complicated.

13         The parties also continue to disagree about whether Plaintiffs should be referred to as "DZ

14 Reserve and Cain Maxwell" or simply "Class members." Because this case is proceeding as a

15 certified class action, the jury's focus should be on the claims and evidence as they apply to the class

16 as a whole. Meta's claim that individualized evidence will be required for liability ignores that this

17 Court already certified this as a class action, and the Ninth Circuit affirmed it as such. ECF No. 388;

18 *DZ Rsrv. v. Meta Platforms, Inc.,* 96 F.4th 1223, 1241 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051,

19 220 L. Ed. 2d 381 (2025). Plaintiffs are also entitled to an inference of reliance with respect to their

20 fraud claims and, as such, the jury is indeed capable of "resolv[ing] the issue of the reasonableness"

21 as to all class members. *See DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237 (9th Cir. 2024).

22 Plaintiffs' proposed instruction makes clear that Plaintiffs must prove each of the seven elements of

23 the claims. References to the individual named plaintiffs, however, risk creating confusion regarding

24 common issues certified for class treatment. The jury should determine whether the elements are

25 satisfied as to "Class members," including the individual named plaintiffs.

26

27

28

<u>DISPUTED INSTRUCTION NO. 16</u>

ELEMENTS OF PLAINTIFFS' CLAIM FOR FRAUDULENT MISREPRESENTATION

**OFFERED BY META**

DZ Reserve and Cain Maxwell ~~*[Name of plaintiff]*~~ claims that Facebook ~~*[name of defendant]*~~ made a false representation that harmed them ~~*[him/her/nonbinary pronoun/it]*~~.  To establish this claim, DZ Reserve and Cain Maxwell ~~*[name of plaintiff]*~~ must prove all of the following:

8.  That Facebook ~~*[name of defendant]*~~ ~~represented to~~ substituted people for accounts in describing Potential Reach estimates to DZ Reserve and Cain Maxwell ~~*[name of plaintiff]*~~ ~~*that a fact was true*~~;

9.  That Facebook's ~~*[name of defendant]'s*~~ representation was false;

10. That Facebook ~~*[name of defendant]*~~ knew that the representation was false when it ~~*[him/her/nonbinary pronoun/it]*~~ made it, or that it ~~*[him/her/nonbinary pronoun/it]*~~ made the representation recklessly and without regard for its truth;

11. That Facebook ~~*[name of defendant]*~~ intended that DZ Reserve and Cain Maxwell ~~*[name of plaintiff]*~~ rely on that representation in deciding how much to spend on advertisements from Facebook;

12. That DZ Reserve and Cain Maxwell ~~*[name of plaintiff]*~~ reasonably relied on Facebook's ~~*[name of defendant]'s*~~ representation in deciding how much to spend on advertisements from Facebook;

13. That DZ Reserve and Cain Maxwell ~~*[name of plaintiff]*~~ were ~~was~~ harmed; and

14. That DZ Reserve's and Cain Maxwell's ~~*[name of plaintiff]'s*~~ reliance on Facebook's ~~*[name of defendant]'s*~~ representation was a substantial factor in causing their ~~*[his/her/nonbinary pronoun/its]*~~ harm.

*Sources*: CACI 1900 (as modified in blue); *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024) (identifying the "claimed misrepresentation" as "the substitution of people for accounts"); *id.* at 1234 (rejecting idea "that the misrepresentation is the numerical discrepancy between people and accounts, rather than the fact that Meta substituted people for accounts").

1

***Meta's Position:***

2

    Plaintiffs' proposed instruction includes two errors.

3

    *First*, it fails to refer to DZ Reserve and Cain Maxwell, instead referring to "Class members."

4

DZ Reserve and Cain Maxwell are the named Plaintiffs in this case, and must prove ***their*** claims.

5

*See* CACI 1900 (instructing parties to insert the "name of the plaintiff"). To be sure, they must do

6

so through classwide proof that can prove the claims of all class members. *See Briseno v. ConAgra*

7

*Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) ("[I]f the case proceeds past the certification stage,

8

the plaintiff class must carry the burden of proving every element of its claims to prevail on the

9

merits."). But in doing so, DZ Reserve and Cain Maxwell must actually prove each element as to

10

themselves as well. *Cf. Poulos v. Caesars World, Inc.*, 379 F.3d 654, 658 (9th Cir. 2004)

11

(emphasizing that the class representatives "must prove individualized reliance where that proof is

12

otherwise necessary to establish actual or proximate causation," and denying class certification).

13

Omitting reference to DZ Reserve and Cain Maxwell will confuse the jury as to how and whether it

14

may assess evidence related to the named Plaintiffs, and it will improperly obscure Plaintiffs' burden

15

to prove their claims as to DZ Reserve and Cain Maxwell.

16

    Moreover, references to "Class members" will introduce confusion because the jury cannot

17

definitively resolve key elements—namely, reliance and harm causally linked to reliance—on a

18

classwide basis in this trial. Rather, those issues will require further, individualized proceedings,

19

because, as the Ninth Circuit recognized, Meta retains the right to rebut reliance as to each class

20

member. *DZ Rsrv.*, 96 F.4th at 1237 (acknowledging that rebuttal "has the effect of leaving

21

individualized questions of reliance in the case" (citation omitted)); *see also Engalla v. Permanente*

22

*Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997), *as modified* (July 30, 1997); *Vasquez v. Superior Ct.*,

23

4 Cal. 3d 800, 814 (1971). Meta cannot be deprived of its due process and Seventh Amendment

24

25

26

27

28

1   rights to do so, and any other outcome would improperly abridge Meta's rights contrary to the Rules

2   Enabling Act.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).

3       *Second*, Plaintiffs' instruction as to the relevant alleged misrepresentation is confusing and

4   unclear.  Plaintiffs propose stating that "Meta represented Potential Reach" and that the

5   "representation of Potential Reach was false."  But that language fails to identify what representation

6   is actually at issue.  As discussed in connection with Disputed Instruction No. 2, there is only *one*

7   representation that has been certified for class treatment:  "the fact that Meta substituted people for

8   accounts" in describing Potential Reach.  *DZ Rsrv.*, 96 F.4th at 1234.  Meta's proposed instruction

9   accurately reflects the Ninth Circuit's decision affirming this Court and directs the jury's focus to

10  the alleged misrepresentation it must assess in determining whether Plaintiffs have proved their

11  claims.  This is critically important, where Plaintiffs have attempted to advance two theories of

12  misrepresentation (including with different damages theories flowing from each), but only one forms

13  the basis for class certification.

<u>DISPUTED INSTRUCTION NO. 17</u>

ELEMENTS OF PLAINTIFFS' CLAIM FOR FRAUDULENT CONCEALMENT

**OFFERED BY PLAINTIFFS**

Plaintiffs~~[Name of plaintiff]~~ claims that Class members~~[he/she/nonbinary pronoun]~~ were ~~was~~ harmed because Meta~~[name of defendant]~~ concealed certain information about Potential Reach. To establish this claim, Plaintiffs~~[name of plaintiff]~~ must prove all of the following:

1. That Meta~~[name of defendant]~~ intentionally failed to disclose that that, because the number of unique accounts exceeded the number of unique people, Potential Reach was inflated ~~certain facts~~; that this fact was ~~ere~~ known only to Meta ~~[him/her/nonbinary pronoun/it]~~; and that Class members~~[name of plaintiff]~~ could not have discovered it;
~~[or]~~
~~[1. (a) That [name of defendant] and [name of plaintiff] were [insert type of fiduciary relationship, e.g., "business partners]; and~~
~~(b) That [name of defendant intentionally failed to disclose certain facts to [name of plaintiff];]~~
~~[or]~~
~~[1. That [name of defendant disclosed some facts to [name of plaintiff] but intentionally failed to disclose [other/another] fact[s], making the disclosure deceptive;]~~
~~[or]~~
~~[1. That [name of defendant] prevent [name of plaintiff] from discovering certain facts;]~~

2. That Class members~~[name of plaintiff]~~ did not know of the concealed fact~~s~~;

3. That Meta~~[name of defendant]~~ intended to deceive Class members~~[name of plaintiff]~~ by concealing the fact~~[s]~~;

4. That had the omitted information been disclosed, Class members~~[name of plaintiff]~~ reasonably would have behaved differently in deciding how much to spend on advertisements from Meta;

5. That Class members~~[name of plaintiff]~~ were ~~was~~ harmed; and

6. That Meta's ~~[name of defendant]'s~~ concealment was a substantial factor in causing Class members' ~~[name of plaintiff]'s~~ harm.

***Sources***: <u>CACI 1901</u> (as modified in blue)

---
27
PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

*Plaintiffs' Position:*

As discussed above, Plaintiffs agree with Meta on the elements of this claim, as set forth by the Judicial Council of California Civil Jury Instructions (CACI), but oppose the language Meta uses to characterize the concealment in the first element. The concealment at issue is that Potential Reach was inflated because the number of unique accounts exceeded the number of unique people. But Meta again uses this instruction to improperly narrow the concealment to the substitution of people for accounts, without any regard for the inflation that caused Meta to "charge[] artificially high premiums for ad placements." ECF No. 388 at 1. Meta's proposal contradicts the Court's class certification order, *id.*, and the Court's approval of Plaintiffs' Unopposed Class Notice, which stated that "Plaintiffs allege Facebook inflated its potential advertising reach to consumers, and charged artificially high premiums for ad placements." ECF No. 470-1. Meta's proposed instruction is therefore unduly restrictive, confusing, and overly complicated.

The parties also continue to disagree about whether Plaintiffs should be referred to as "DZ Reserve and Cain Maxwell" or simply "Class members." Because this case is proceeding as a certified class action, the jury's focus should be on the claims and evidence as they apply to the class as a whole. Plaintiffs' proposed instruction makes clear that Plaintiffs must prove each of the seven elements of the claims. References to the individual named plaintiffs, however, risk creating confusion regarding common issues certified for class treatment. The jury should determine whether the elements are satisfied as to "Class members," including the individual named plaintiffs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO. 17</u>

ELEMENTS OF PLAINTIFFS' CLAIM FOR FRAUDULENT CONCEALMENT

**OFFERED BY META**

DZ Reserve and Cain Maxwell~~[Name of plaintiff]~~ claims that they~~[he/she/nonbinary pronoun]~~ were ~~was~~ harmed because Facebook~~[name of defendant]~~ concealed certain information. To establish this claim, DZ Reserve and Cain Maxwell~~[name of plaintiff]~~ must prove all of the following:

1. That Facebook~~[name of defendant]~~ intentionally failed to disclose its substitution of people for accounts in describing Potential Reach estimates ~~certain facts~~; that this fact was~~ere~~ known only to it~~[him/her/nonbinary pronoun/it]~~; and that DZ Reserve and Cain Maxwell ~~[name of plaintiff]~~ could not have discovered it;
~~[or]~~
~~[1. (a) That [name of defendant] and [name of plaintiff] were [insert type of fiduciary relationship, e.g., "business partners]; and~~
~~(b) That [name of defendant intentionally failed to disclose certain facts to [name of plaintiff];]~~
~~[or]~~
~~[1. That [name of defendant disclosed some facts to [name of plaintiff] but intentionally failed to disclose [other/another] fact[s], making the disclosure deceptive;]~~
~~[or]~~
~~[1. That [name of defendant] prevent [name of plaintiff] from discovering certain facts;]~~

2. That DZ Reserve and Cain Maxwell~~[name of plaintiff]~~ did not know of the concealed facts~~;~~

3. That Facebook~~[name of defendant]~~ intended to deceive DZ Reserve and Cain Maxwell ~~[name of plaintiff]~~ by concealing the fact~~[s]~~;

4. That had the omitted information been disclosed, DZ Reserve and Cain Maxwell ~~[name of plaintiff]~~ reasonably would have behaved differently in deciding how much to spend on advertisements from Facebook;

5. That DZ Reserve and Cain Maxwell~~[name of plaintiff]~~ were ~~was~~ harmed; and

6. That Facebook's~~[name of defendant]'s~~ concealment was a substantial factor in causing DZ Reserve's and Cain Maxwell's~~[name of plaintiff]'s~~ harm.

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

**Sources:** CACI 1901 (as modified in blue); *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024) (identifying the "claimed misrepresentation" as "the substitution of people for accounts"); *id.* at 1234 (rejecting idea "that the misrepresentation is the numerical discrepancy between people and accounts, rather than the fact that Meta substituted people for accounts").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***Meta's Position:***

Plaintiffs' proposed instruction suffers from the same flaws as their proposed Disputed Instruction No. 16.

*First*, it fails to name the named plaintiffs and refers instead to "Class Members." For the reasons explained above with respect to Disputed Instruction No. 16, this will cause confusion and mislead the jury as it assesses Plaintiffs' case.

*Second*, Plaintiffs' proposed instruction mischaracterizes the alleged misrepresentation/concealment accepted for class treatment. Plaintiffs' proposed language focuses on the purported failure "to disclose that because the number of unique accounts exceeded the number of unique people, Potential Reach was inflated." But that language invokes a theory the Ninth Circuit expressly did ***not*** certify for class treatment. As the Ninth Circuit explained in affirming this Court, the "common" alleged misrepresentation is not "the numerical discrepancy between people and accounts," which undisputedly varied across advertisers. *DZ Rsrv.*, 96 F.4th at 1234-35; *id.* at 1231. Rather, it is the alleged "substitution of people for accounts," *id.* at 1235—in other words, for the concealment claim, the failure to disclose that Potential Reach "really measure[d]" accounts, *id.* at 1237. This Court likewise recognized that the representation to which "all class members were exposed," Dkt. 388 at 10, was the description of Potential Reach in terms of "people." *See DZ Rsrv.*, 96 F.4th at 1234 (quoting Dkt. 388 at 10). Yet Plaintiffs' instruction improperly invites the jury to find liability based on the theory that Meta committed fraud because the "numerical value" of Potential Reach estimates was too high. *Id.* at 1235. That invitation cannot be squared with the Ninth Circuit's decision affirming this Court. By contrast, Meta's proposal properly restates the only "common" basis for Plaintiffs' fraud claims—the "substitution of people for accounts." *Id.*

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED INSTRUCTION NO. 18

INTENT TO DEFRAUD

**OFFERED BY PLAINTIFFS**

You have been instructed that Class members ~~*Plaintiff*~~ must prove that any false representations made by Meta ~~*Defendant*~~ were made with the intent to deceive them ~~*Plaintiff*~~ and that they ~~*Plaintiff*~~ relied on them. This means that any false representations ~~made~~ by Meta ~~*Defendant*~~ must have been made to cause Class members ~~*Plaintiff*~~ to spend more on advertisements from Meta than they otherwise would have~~*[describe transaction, e.g., purchase the property]*~~, or that it was reasonably expected that Class members would rely on Meta's false representations to spend more on advertisements from Meta than they otherwise would have.

**Source**:  Matthew Bender, California Forms of Jury Instruction No. MB1900A.20 (as modified in blue); *Lovejoy v. AT & T Corp.,* 92 Cal. App. 4th 85, 93, (2001) ("[T]he only intent by a defendant necessary to prove a case of fraud is the intent to induce reliance. Moreover, liability is affixed not only where the plaintiff's reliance is intended by the defendant but also where it is reasonably expected to occur."); *Susilo v. Wells Fargo Bank, N.A.,* 2012 WL 5878201, at *5 (C.D. Cal. Nov. 19, 2012) ("California law recognizes the principle that liability for fraud is appropriate either when reliance is intended by defendant or when it should be reasonably expected to occur").

1

***Plaintiffs' Position:***

2   Plaintiffs include additional language in this instruction to clarify that intent for fraudulent

3   misrepresentation can be established where reliance is "reasonably expected to occur." *See Howard*

4   *v. Tanium*, Inc., 2024 WL 4003041, at *2 (9th Cir. Aug. 30, 2024) (citing *Lovejoy v. AT&T Corp.*,

5   92 Cal. App. 4th 85, 93 (2001)) ("[T]he only intent by a defendant necessary to prove a case of fraud

6   is the intent to induce reliance. Moreover, liability is affixed not only where the plaintiff's reliance

7   is intended by the defendant but also where it is reasonably expected to occur."). This instruction is

8   important to avoid juror confusion because fraud is "rarely susceptible of direct proof," *Connolly v.*

9   *Gishwiller*, 162 F.2d 428, 433 (7th Cir. 1947), and "[i]t is settled law that circumstantial evidence is

10  competent to show intent to defraud," *Embotelladora Electropura S.A. de C.V. v. Accutek Packaging*

11  *Equip. Co., Inc.*, 2020 WL 730921, at *8 (S.D. Cal. Feb. 13, 2020) (citing *United States v. Sullivan*,

12  522 F.3d 967, 974 (9th Cir. 2008)).

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

*Meta's Position:*

3    Because CACI includes model instructions for fraudulent misrepresentation and fraudulent

4    concealment claims, Disputed Instruction No. 18—which is a non-CACI instruction—is

5    unnecessary and should not be given.  The Judicial Council of California urges parties to use CACI

6    instructions wherever possible:  "Use of the Judicial Council instructions is strongly encouraged,"

7    for they are designed to "accurately state the law in a way that is understandable to the average

8    juror."  Cal. Rules of Court, rule 2.1050(a), (f).  Here, the intent element is sufficiently set out in

9    Disputed Instruction Nos. 16-17.  Further instruction on the element of intent that is not

10    recommended by CACI is unnecessary and potentially confusing.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED INSTRUCTION NO. 19

RELIANCE

**OFFERED BY PLAINTIFFS**

Class members *[Name of plaintiff]* relied on Meta's *[name of defendant]'s* misrepresentation or concealment *[misrepresentation/concealment/false promise]* if:

1.  The *[*misrepresentation*/* or concealment*[false promise]* substantially influenced Class members *[him/her/nonbinary pronoun/it] to* in deciding how much to spend on advertisements from Meta *[insert brief description of the action, e.g., "buy the house"]*; and

2.  Class members *[He/She/Nonbinary pronoun/It]* would probably not have spent as much on advertisements from Meta *[e.g., bought the house]* without the *[*misrepresentation*/* or concealment*[false promise]*.

It is not necessary for a *[*misrepresentation*/* or concealment*[false promise]* to be the only reason for Class members' *[name of plaintiff]'s* conduct.

***Source***: CACI 1907 (as modified in blue).

35

1    ***Plaintiffs' Position:***

2         Plaintiffs agree with Meta on the substantive elements of this instruction, as set forth by the

3    Judicial Council of California Civil Jury Instructions (CACI). The parties continue to disagree,

4    however, about whether Plaintiffs should be referred to as "DZ Reserve and Cain Maxwell" or

5    simply "Class members." Because this case is proceeding as a certified class action, the jury's focus

6    should be on the claims and evidence as they apply to the class as a whole. References to the

7    individual named plaintiffs risk creating confusion regarding common issues certified for class

8    treatment.

9         Moreover, Plaintiffs are entitled to an inference of reliance with respect to their fraud claims.

10   It is therefore illogical that DZ Reserve and Cain Maxwell "should be named" so that the jury can

11   determine whether they did not rely on the misrepresentation. The Ninth Circuit has already held

12   that "Meta communicated the same misrepresentation to all class members," which include the

13   named plaintiffs, and therefore "the class is entitled to an inference of reliance." *See DZ Rsrv. v.*

14   *Meta Platforms, Inc.*, 96 F.4th 1223, 1237 (9th Cir. 2024). The jury should determine whether

15   reliance is satisfied as to "Class members," including the individual named plaintiffs.

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

1

DISPUTED INSTRUCTION NO. 19

2

RELIANCE

3

**OFFERED BY META**

4

DZ Reserve and Cain Maxwell*[Name of plaintiff]* relied on Facebook's*[name of*

5

*defendant]'s* substitution of people for accounts*[misrepresentation/concealment/false promise]* if:

6

   1.  The *[*misrepresentation*]* or concealment*[false promise]* substantially influenced DZ Reserve

7

and Cain Maxwell*[him/her/nonbinary pronoun/it] to* in deciding how much to spend on

8

advertisements from Facebook*[insert brief description of the action, e.g., "buy the house"]*;

9

and

10

   2.  DZ Reserve and Cain Maxwell*[He/She/Nonbinary pronoun/It]* would probably not have

11

spent as much on advertisements from Facebook*[e.g., bought the house]* without the

12

*[*misrepresentation*]* or concealment*[false promise]*.

13

It is not necessary for a *[*misrepresentation*]* or concealment*[false promise]* to be the only

14

reason for DZ Reserve's and Cain Maxwell's*[name of plaintiff]'s* conduct.

15

16

***Source***:  CACI 1907 (as modified in blue).

17
18
19
20
21
22
23
24
25
26
27
28

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

1    ***Meta's Position:***

2        Plaintiffs' proposed reliance instruction repeats the same errors identified above with respect

3    to Disputed Instruction Nos. 16 and 17.

4        *First*, Plaintiffs fail to include the names of the named Plaintiffs in this case—DZ Reserve

5    and Cain Maxwell—and instead refer to "Class Members."  This formulation is particularly

6    problematic in the context of reliance because the jury could easily find not only that the Class as a

7    whole did not rely on any alleged misrepresentation in making their purchasing decisions, but also

8    that either or both of DZ Reserve and Cain Maxwell did not rely on any alleged misrepresentation.

9    For example, Dan Ziernicki (the owner of DZ Reserve) said during the pendency of this litigation

10   that advertisers should not be deterred by this lawsuit from engaging in e-commerce with Meta, and

11   Maxwell relied on a tutorial that did not mention Potential Reach at all in deciding how much to pay

12   for ads.  DZ Reserve and Maxwell should be identified so that it is clear to the jury that it must

13   determine whether they relied on any alleged misrepresentation and take into account all relevant

14   evidence related to them.  Plaintiffs are wrong to suggest that the Ninth Circuit's affirmance of this

15   Court's class certification order excuses the named Plaintiffs from proving reliance, and

16   unsurprisingly, Plaintiffs cite no authority for that proposition.  DZ Reserve and Cain Maxwell must

17   prove their reliance.

18       Moreover, the jury cannot definitively resolve the issue of reliance for all Class Members in

19   this first phase of the trial because, as the Ninth Circuit recognized, Meta retains its right to rebut

20   reliance as to each class member. *DZ Rsrv.*, 96 F.4th at 1237 (acknowledging that rebuttal "has the

21   effect of leaving individualized questions of reliance in the case" (citation omitted)); *see also*

22   *Engalla*, 15 Cal. 4th at 977; *Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 814 (1971).  Meta cannot be

23   deprived of its due process and Seventh Amendment rights to do so.  *Tyson Foods, Inc. v.*

24   *Bouaphakeo*, 577 U.S. 442, 458 (2016) (noting right to litigate defenses to individual claims). The

1    need to do so is particularly clear in this case where Plaintiffs' own expert's analysis shows that

2    many (if not most) Class Members did ***not*** rely on Potential Reach, and several advertisers—

3    including some members of the Class—have declared under oath that they did not rely on Potential

4    Reach.  Dkts. 296-1–10.

5        *Second*, Plaintiffs strike out the specification of the alleged misrepresentation and

6    concealment and instead refer generically to "Meta's Potential Reach misrepresentation."  But as

7    discussed in connection with Disputed Instruction Nos. 2, 16, and 17, specifying the

8    misrepresentation—"the substitution of people for accounts"—is critically important in this case to

9    ensure the case proceeds only on the alleged misrepresentation accepted for class treatment, and to

10   prevent juror confusion.  Meta's proposal should therefore be used.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

<u>DISPUTED INSTRUCTION NO. 20</u>

REASONABLE RELIANCE

**OFFERED BY PLAINTIFFS**

In determining whether Class members'~~[name of plaintiff]'s~~ reliance on the misrepresentation or concealment was reasonable, they~~[he/she/nonbinary pronouns/it]~~ must first prove that the matter was material. A matter is material if a reasonable person would find it important in deciding what to do in the transaction in question—here, in deciding how much to spend on advertisements from Meta.

If you decide the matter is material, you must then decide whether it was reasonable for Class members~~[name of plaintiff]~~ to rely on the ~~[~~misrepresentation~~]~~ or concealment~~[false promise]~~. In making this decision, take into consideration Class members'~~[name of plaintiff]'s~~ intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a ~~[~~misrepresentation~~]~~ or concealment~~[false promise]~~ that is preposterous. It also is not reasonable for anyone to rely on a ~~[~~misrepresentation~~]~~ or concealment~~[false promise]~~ if facts that are within their~~[his/her/nonbinary pronoun]~~ observation show that it is obviously false.

**Sources**: CACI 1908 (as modified in blue); *Engalla*, 15 Cal. 4th at 977 ("A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action *in the transaction in question*." (emphasis added)); *Andrade v. Am. First Fin.*, Dkt. 441 at 25-26, Case No. 18-cv-06743 (N.D. Cal. 2023) (Kim, M.J.) ("A fact is material if a reasonable consumer would consider it important in deciding *whether to buy the [product]*." (emphasis added)).

1

***Plaintiffs' Position:***

2      Plaintiffs agree with Meta on the substantive elements of this instruction, as set forth by the

3   Judicial Council of California Civil Jury Instructions (CACI). The parties continue to disagree,

4   however, about whether Plaintiffs should be referred to as "DZ Reserve and Cain Maxwell" or

5   simply "Class members." Because this case is proceeding as a certified class action, the jury's focus

6   should be on the claims and evidence as they apply to the class as a whole. References to the

7   individual named plaintiffs risk creating confusion regarding common issues certified for class

8   treatment. The jury should determine whether the elements are satisfied as to "Class members,"

9   including the individual named plaintiffs.

10      Meta again ignores the fact that Plaintiffs are entitled to an inference of reliance with respect

11  to their fraud claims. As such, the jury is indeed capable of "resolv[ing] the issue of the

12  reasonableness" as to all class members. *See DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237

13  (9th Cir. 2024) ("Under California law, '*when the same material misrepresentations have actually*

14  *been communicated to each member of a class*, an inference of reliance arises as to the entire class.'

15  (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993)).

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

DISPUTED INSTRUCTION NO. 20

REASONABLE RELIANCE

**OFFERED BY META**

In determining whether DZ Reserve's and Cain Maxwell's *[name of plaintiff]'s* reliance on the misrepresentation or concealment was reasonable, they *[he/she/nonbinary pronouns/it]* must first prove that the matter was material.  A matter is material if a reasonable person would find it important in deciding what to do in the transaction in question—here, in deciding how much to spend on advertisements from Facebook.

If you decide the matter is material, you must then decide whether it was reasonable for DZ Reserve and Cain Maxwell *[name of plaintiff]* to rely on the *[*misrepresentation*]* or concealment *[false promise]*.  In making this decision, take into consideration DZ Reserve's and Cain Maxwell's *[name of plaintiff]'s* intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a *[*misrepresentation*]* or concealment *[false promise]* that is preposterous.  It also is not reasonable for anyone to rely on a *[*misrepresentation*]* or concealment *[false promise]* if facts that are within their *[his/her/nonbinary pronoun]* observation show that it is obviously false.

**Sources**:  CACI 1908 (as modified in blue); *Engalla*, 15 Cal.4th at p. 977 ("A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action *in the transaction in question*." (emphasis added)); *Andrade v. Am. First Finance*, Dkt. 441 at 24-25, Case No. 18-cv-06743 (N.D. Cal. 2023) (Kim, M.J.) ("A fact is material if a reasonable consumer would consider it important in deciding *whether to buy the furniture*." (emphasis added)).

1

***Meta's Position:***

2

 As discussed with respect to Disputed Instruction Nos. 2, 16, 17, and 19, Plaintiffs' proposed

3

instruction incorrectly omits the names of the named Plaintiffs and instead refers to "Class

4

Members." As with Disputed Instruction No. 19, nothing in the Ninth Circuit's certification decision

5

excuses the named Plaintiffs themselves from proving the element of reliance to the jury.  And

6

Plaintiffs' proposal is particularly problematic with respect to the reasonableness of any reliance,

7

because, as the CACI instruction recognizes, that inquiry must take into consideration the particular

8

plaintiff's "intelligence, knowledge, education, and experience." *See also Hoffman v. 162 N. Wolfe*

9

*LLC*, 228 Cal. App. 4th 1178, 1194 (2014) (explaining that reasonableness of reliance turns on

10

plaintiff's "particular knowledge and experience"). Accordingly, the jury may not definitively

11

resolve the issue of the reasonableness of any absent class member's reliance in this trial.

12

 The parties otherwise agree on the substance of the instruction.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO. 21</u>

<u>INFERENCE OF RELIANCE</u>

**OFFERED BY PLAINTIFFS**

If you find Meta misrepresented an important fact to Class Members, you may infer they reasonably relied on Meta's misrepresentation.

***Sources***: *DZ Rsrv. v. Meta Platforms, Inc.,* 96 F.4th 1223, 1237 (9th Cir. 2024); *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976–977 (1997).

***Plaintiffs' Position:***

This Court has already determined that Plaintiffs are entitled to an inference of reliance with respect to their fraud claims. *See DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *7 (N.D. Cal. Mar. 29, 2022). The Ninth Circuit affirmed. *See DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237 (9th Cir. 2024) ("Because Meta communicated the same misrepresentation to all class members—that Potential Reach measures people when it really measures accounts—the class is entitled to an inference of reliance."). This instruction is therefore important to convey blackletter law and provide the jury clarity on the role of reliance in a class action trial. *See DZ Rsrv.*, 96 F.4th at 1237 ("Under California law, '*when the same material misrepresentations have actually been communicated to each member of a class*, an inference of reliance arises as to the entire class.'" (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993)).

Whether the CACI form instruction includes or excludes specific inference language is beside the point. This is a certified class trial, and the classwide posture of the case presents issues not necessarily contemplated in the pattern civil jury instructions.

1   *Meta's Position:*

2          Plaintiffs' proposed instruction regarding an inference of reliance should not be given.  CACI

3   includes instructions with respect to reliance and reasonable reliance (*see* Disputed Instruction Nos.

4   19 & 20), but does not include any reference to an inference of reliance.  Indeed, CACI 1900

5   recognizes in its "Sources and Authority" the reference in *Engalla v. Permanent Medical Group,*

6   *Inc.*, 15 Cal.4th 951 (1997), to an inference.  The Judicial Council's choice ***not*** to mention that

7   inference in the model instruction itself likely reflects the Judicial Council's judgment that such an

8   instruction is unnecessary and potentially confusing.  *See* Cal. Rules of Court, rule 2.1050(a)

9   (explaining that CACI instructions are designed to "accurately state the law in a way that is

10  understandable to the average juror").  After all, the inference of reliance reflects a commonsense

11  idea:  that when a representation is important to a reasonable person deciding to engage in particular

12  transaction, *Engalla*, 15 Cal.4th at 977, that is circumstantial evidence that a jury may rely upon in

13  finding reliance, *see Vasquez*, 4 Cal. 3d at 814 (explaining that reliance need not be proved "by

14  direct evidence").  Jurors need no particular instruction to draw that type of inference, and including

15  an express instruction not included in CACI risks placing undue weight on the inference in the minds

16  of the jurors and hindering their ability to consider the entirety of the evidence related to reliance

17  that will be presented at trial.

18         If this Court nevertheless determines that such an instruction should be given, the instruction

19  must be modified in two important ways.  *First*, the instruction must make clear that it is not

20  sufficient that the fact be "important" in the abstract—rather, as Plaintiffs' own cited authority

21  indicates, it must be important to a reasonable person "in determining his choice of action in ***the***

22  ***transaction in question***," that is, advertisers' decisions about how much to spend on ads from Meta.

23  *Engalla*, 15 Cal.4th at 977 (quoting Restatement (Second) of Torts § 538 (1977) (emphasis added)).

24  *Second*, the instruction must also make clear that Meta can rebut the inference by showing that

named Plaintiffs (or any member of the Class) did **not** actually or reasonably rely on the alleged misrepresentation.  *See id.*; *see Vasquez.*, 4 Cal. 3d at 814.  Without a clear instruction to that effect, Plaintiffs' proposal risks abridging Meta's right to contest reliance and obscuring the jury's duty to consider the totality of the evidence in assessing reliance.  In other words, it risks transforming an inference that is "rebut[table]," *Engalla*, 15 Cal. 4th at 977, into one that is **irrebuttable**.  (Meta notes, however, that it will also need to be afforded—in later proceedings—an opportunity to rebut reliance on an individualized basis as to absent class members, including those who have declared under oath that they did not rely on Potential Reach, Dkts. 296-1–10.)

Accordingly, while Meta believes the most straightforward and appropriate path is to omit this instruction in its entirety, if the Court disagrees, the instruction should be modified to read as follows:

## INFERENCE OF RELIANCE

If you find that Facebook misrepresented a fact that would be important to a reasonable advertiser in deciding how much to spend on advertisements from Facebook, you may infer that DZ Reserve and Cain Maxwell reasonably relied on Facebook's misrepresentation, unless Meta shows that DZ Reserve and/or Cain Maxwell did not rely on Facebook's substitution of people for accounts.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO. 22</u>

<u>CAUSATION: SUBSTANTIAL FACTOR</u>

**OFFERED BY PLAINTIFFS**

You will be asked to evaluate whether Class members' reliance or Meta's concealment was a substantial factor in causing Class members' alleged harm. A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of harm.

***Source***: CACI No. 430 (as modified in blue)

1    *Plaintiffs' Position:*

2        CACI No. 430 provides the standard definition of "substantial factor" and should be given

3    here because the causation element of both fraudulent misrepresentation and fraudulent concealment

4    require a *substantial factor* in causing harm. The Judicial Council of California has adopted No. 430

5    as the form instruction to ensure consistency and clarity for jurors in applying this element. CACI

6    clarifies that although the "instruction that defines 'substantial factor' is located in the Negligence

7    series[,] [t]he use of the instruction is not intended to be limited to cases involving negligence."

8    Judicial Council of California Civil Jury Instructions at 2 (2025 edition). Using the form instruction

9    both avoids confusion and ensures the jury applies the correct legal standard.

1

2    ***Meta's Position:***

3         Disputed Instruction No. 22 should be omitted.  The CACI fraudulent misrepresentation and

4    fraudulent concealment sections include no separate instruction related to causation, as that

5    requirement is adequately captured in the list of elements for those claims (Disputed Instruction Nos.

6    16-17).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED INSTRUCTION NO. 23

AFFIRMATIVE DEFENSE -- UNCLEAN HANDS

**OFFERED BY META**

Facebook ~~Defendant~~ claims as a defense that DZ Reserve's ~~Plaintiff's~~ misconduct precludes enforcement of its ~~Plaintiff's~~ claims.  To establish this defense, Facebook ~~Defendant~~ must prove that DZ Reserve's ~~Plaintiff's~~ conduct was unconscionable and resulted in prejudice to Facebook ~~Defendant~~.

DZ Reserve's ~~Plaintiff's~~ misconduct must be intimately connected with its ~~Plaintiff's~~ claims of fraudulent misrepresentation and fraudulent concealment ~~[describe plaintiff's claim]~~ and of such a prejudicial nature that it would be unfair to allow DZ Reserve ~~Plaintiff~~ to rely on the rights it now asserts ~~[describe plaintiff's claim]~~.  If that is established by Facebook ~~Defendant~~, then DZ Reserve ~~Plaintiff~~ is barred from claiming fraudulent misrepresentation and fraudulent concealment ~~[describe claim]~~.

***Source***:  Matthew Bender, California Forms of Jury Instruction No. 300F.29 (2025) (as modified in blue).

***Plaintiffs' Position:***

Plaintiffs oppose any mention of this affirmative defense in the jury instructions.

To shift focus away from its own fraudulent conduct, Meta now raises an affirmative defense of "unclean hands" against class representative DZ Reserve on the grounds that it allegedly "violated Meta's Terms of Use by purchasing advertisements through others' accounts." Meta can satisfy *none* of the elements of an unclean hands defense as to the fraudulent misrepresentation and fraudulent concealment claims and, even if it could, Plaintiff DZ Reserve did not violate Meta's Terms of Use. Accordingly, the Court should decline to give this instruction.

"To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (internal citation omitted). Meta can demonstrate none of these elements.

First, DZ Reserve's alleged purchase of advertising through the accounts of others is not conduct courts have held can support a defense of unclean hands. "We have stated that only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982). "Traditionally, the doctrine of unclean hands is invoked when one seeking relief in equity has violated conscience, good faith or other equitable principles in his prior conduct." *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists* 227 Cal. App. 2d 675, 727 (1964) (citations omitted). Notwithstanding Meta's fulminations, paying it to place advertisements through other people's accounts is far from the kind of egregious conduct that could support such an instruction. *Cf. Padideh v. Moradi*, 89 Cal. App. 5th 418 (2023) (upholding a jury's finding that a plaintiff bringing a malicious prosecution defense engaged in misconduct by lying in her deposition in the underlying action.)

Second, "It is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made." *Arthur v. Davis,* 126 Cal. App. 3d 684, 693–94, (1981) (quotation omitted). There is no relationship between

1  a customer's use of another's account to purchase advertisements and the fraudulent
2  misrepresentations for which Meta stands trial. The alleged violations of Facebook's Terms of Use
3  are, at very worst, mere "extraneous transgressions" or "misconduct in the abstract, unrelated to the
4  claim to which it is asserted as a defense." *Republic Molding Corp. v. B. W. Photo Utils.* 319 F.2d
5  347, 349-50 (9th Cir. 1963); *see also Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173
6  (9th Cir. 1989) (finding alleged failure to perform under a franchise agreement unrelated to party's
7  right to rescind that agreement).

8          Third, Meta was uninjured by the alleged purchase of advertising on its platforms. The
9  unclean hands defense requires proof that plaintiff "has injured the party attempting to invoke the
10 doctrine." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004); *Infineon*
11 *Techs. AG v. Volterra Semiconductor Corp.*, 2013 WL 1832558, at *4 (N.D. Cal. May 1, 2013).
12 Meta cannot plausibly argue that it was injured by the money it accepted to run advertisements. To
13 the contrary, as in *Broderbund Software Inc. v. Unison World, Inc.* "[f]ar from being injured by the
14 alleged [inequitable conduct], defendant may have profited from it." 648 F. Supp. 1127, 1138 (N.D.
15 Cal. 1986).

16         Meta will have an opportunity at trial (as it did at his deposition) to question DZ Reserve
17 owner Dan Ziernicki about all the purchases he allegedly made on their platforms. In fact, Meta
18 already pointed to this same conduct when it challenged Mr. Ziernicki's adequacy to serve as a class
19 representative. ECF No. 362 at 13. The Court disagreed. Because the alleged conduct is far from
20 inequitable, substantively unrelated to the allegations at issue, and caused no injury to defendant,
21 DZ Reserve's hands are clean. Accordingly, the Court should exercise its discretion and decline to
22 give this jury instruction.

23
24
25
26
27
28

1

***Meta's Position:***

2

The jury should be instructed on Meta's affirmative defense of unclean hands. That doctrine

3

"demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into

4

court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of

5

his claim." *DD Hair Lounge, LLC v. State Farm Gen. Ins. Co.*, 20 Cal. App. 5th 1238, 1246 (2018).

6

Unclean hands is a question for the jury where, as here, it is "so intertwined with legal claims that

7

[the issue] cannot be separately tried to the judge." *Unilogic v. Burroughs Corp.*, 10 Cal. App. 4th

8

612, 622-23 (1992); *e.g.*, *Consumer Direct, Inc. v. Pentius, LLC*, No. 8:21-cv-01968, Dkt. 519 at 6

9

(C.D. Cal. July 19, 2024) (unclean hands properly submitted to the jury because "adjudication of

10

[the] legal claim" "necessarily required the jury to determine" issues of "fact and credibility"

11

relevant to unclean hands defense). Plaintiffs do not dispute that unclean hands is a jury question in

12

this case. Rather, they attempt to pre-try the issue to eliminate it altogether. Those efforts fail.

13

"*Any conduct* that violates conscience, or good faith, or other equitable standards of conduct

14

is sufficient cause to invoke the doctrine." *Padideh v. Moradi*, 89 Cal. App. 5th 418, 444 (2023)

15

(emphasis added). Plaintiffs' case, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.

16

Supp. 2d 1197, 1223 (C.D. Cal. 2007), does not purport to apply California law and instead involves

17

a federal copyright claim. But under any standard, the conduct here suffices. DZ Reserve owner

18

Dan Ziernicki violated Meta's Terms of Service and Community Standards, which allow people to

19

create only one account and prohibit impersonating another person on Facebook. Mr. Ziernicki

20

repeatedly purchased ads through other people's accounts and tried to do so through covert means—

21

including buying a Facebook account through a forum selling accounts, using his girlfriend's

22

Facebook account, and using a friend's account to buy ads. Mr. Ziernicki attempted to conceal

23

those accounts and additional ad purchases during discovery—all while simultaneously alleging that

24

DZ Reserve "would have purchased fewer (if any) Facebook advertisements" had it known Potential

25

Reach estimates could be impacted by fake or duplicate accounts. Third Am. Compl. ¶¶ 147, 159;

26

*see also* Opp. to Class Cert., Dkt. 362 at 18; Mot. for Summ. J., Dkt. 372 at 18. That is precisely

27

the kind of "bad faith[] or inequitable conduct" that can support an unclean-hands defense. *Piping*

28

1    *Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 974 (N.D. Cal. 2013)

2    (citation omitted); *see, e.g.*, *Padideh*, 89 Cal. App. 5th at 445 ("lack of candor or falsity in [a]

3    deposition" supported unclean hands).

4        Plaintiffs are also wrong to argue that DZ Reserve's inequitable conduct is unconnected to

5    its claims against Meta and did not harm Meta.  Whether DZ Reserve's owner continued to covertly

6    buy Facebook ads even as DZ Reserve told this Court that it would have purchased fewer (or no)

7    Facebook ads had it known Potential Reach was allegedly misleading goes to the heart of DZ

8    Reserve's fraud claims.  What is more, DZ Reserve's owner's "lack of candor or lying" about

9    subsequent ad purchases "affect[ed] [Meta's] litigation decisions" and conduct, because of the

10   additional effort for Meta to uncover the truth—including securing an order from this Court for

11   documents revealing his covert purchases.  *Padideh*, 89 Cal. App. 5th at 447.  That kind of litigation-

12   related harm supports an unclean-hands defense under California law.  *See id.* at 447-50; *DD Hair*

13   *Lounge*, 20 Cal. App. 5th at 1246 (applying unclean hands to bar relief where litigant "conceal[ed]"

14   a relevant fact and "then engag[ed] in [a] time-consuming charade").  It is enough to show that "the

15   misconduct … occurred in a transaction or matter directly related to and infecting the one presently

16   before the court, and that it has affected the equitable relationship between the litigants."  *Padideh*,

17   89 Cal. App. 5th at 450.  "No further prejudice or harm is required."  *Id.*

18       The Court should instruct the jury on unclean hands using Meta's proposed jury instruction,

19   which is consistent with Mathew Bender's California Forms of Jury Instruction No. 300F.29 and

20   the formulations adopted by other courts.  *See, e.g.*, *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*,  No.

21   1:15-cv-00321-SKO, Dkt. 495 at 42 (E.D. Cal. Dec. 2, 2021); *GSI Tech., Inc. v. United Memories,*

22   *Inc.*, No. 5:13-cv-01081-PSG, Dkt. 1042 at 54 (N.D. Cal. Nov. 22, 2015).

23

24

25

26

27

28

1

2

3

DISPUTED INSTRUCTION NO. 24

INTRODUCTION TO TORT DAMAGES -- LIABILITY CONTESTED

**OFFERED BY PLAINTIFFS**

4

5

6

7

If you decide that Class members~~[name of plaintiff]~~ ha~~ve~~s proved their~~[his/her/nonbinary pronoun]~~ claims against Meta~~[name of defendant]~~, you also must decide how much money will reasonably compensate the Class members~~[name of plaintiff]~~ for the harm.  This compensation is called "damages."

8

9

10

The amount of damages must include an award for each item of harm that was caused by Meta's~~[name of defendant]'s~~ wrongful conduct, even if the particular harm could not have been anticipated.

11

12

13

Class members~~[Name of plaintiff]~~ do~~es~~ not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

14

15

16

17

~~The following are~~ The specific item~~s~~ of damages claimed by Class members ~~[name of plaintiff]:~~ is the amount of alleged overcharge paid for the advertisements they purchased.~~[Insert applicable instructions on items of damage.]~~

18

19

**Sources**:  CACI 3900; Third Amended Compl. ¶ 159, Dkt. 332 ("Plaintiffs and Class members purchased more advertising than they otherwise would have and paid a higher price than they would otherwise have.").

20

21

22

23

24

25

26

27

28

56

1

***Plaintiffs' Position:***

2          Plaintiffs agree with Meta on the substantive elements of this instruction, as set forth by the

3    Judicial Council of California Civil Jury Instructions (CACI). The parties continue to disagree,

4    however, about whether Plaintiffs should be referred to as "DZ Reserve and Cain Maxwell" or

5    simply "Class members." Meta's claim that individualized evidence will be required to prove

6    liability at trial ignores that this Court already certified this as a class action, and the Ninth Circuit

7    affirmed it as such. ECF No. 388; *DZ Rsrv. v. Meta Platforms, Inc.,* 96 F.4th 1223, 1241 (9th Cir.

8    2024), *cert. denied*, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025). Because this case is proceeding as a

9    certified class action, the jury's focus should be on the claims and evidence as they apply to the class

10   as a whole. References to the individual named plaintiffs risk creating confusion regarding common

11   issues certified for class treatment. The jury should determine whether the elements are satisfied as

12   to "Class members," including the individual named plaintiffs.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO. 24</u>

INTRODUCTION TO TORT DAMAGES -- LIABILITY CONTESTED

**OFFERED BY META**

If you decide that DZ Reserve and Cain Maxwell *[name of plaintiff]* have~~s~~ proved their*[his/her/nonbinary pronoun]* claims against Facebook*[name of defendant]*, you also must decide how much money will reasonably compensate them*[name of plaintiff]* for the harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Facebook's*[name of defendant]'s* wrongful conduct, even if the particular harm could not have been anticipated.

DZ Reserve and Cain Maxwell*[Name of plaintiff]* do~~es~~ not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

~~The following are~~ The specific item~~s~~ of damages claimed by DZ Reserve and Cain Maxwell~~ *[name of plaintiff]:*~~ is the amount of alleged overcharge paid for the advertisements they purchased.*[Insert applicable instructions on items of damage.]*

***Sources***:   CACI 3900; Third Amended Compl. ¶¶ 48, 148, 159, Dkt. 332 ("Plaintiffs and Class members purchased more advertising than they otherwise would have and paid a higher price than they would otherwise have.")

1

***Meta's Position:***

2

   Meta objects to Plaintiffs' Disputed Instruction No. 24 insofar as it fails to identify the named

3

Plaintiffs, and refers to "Class Members," for the reasons set forth above with respect to Disputed

4

Instruction Nos. 2, 16, 17, 19, and 20.  Furthermore, liability as to the absent class members cannot

5

6

be definitively resolved in this trial, because individualized issues, including reliance, will require

7

subsequent proceedings.  Accordingly, the jury cannot award any total damages award as to the

8

Class, since the number of class members with valid claims will remain unresolved until the parties

9

have had an opportunity to litigate outstanding, individualized liability issues, including reliance,

10

and any defenses.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED INSTRUCTION NO. 25

PUNITIVE DAMAGES

**OFFERED BY PLAINTIFFS**

If you decide that Meta's conduct caused Class Members harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Class Members and to discourage similar conduct in the future.

You may award punitive damages against Meta only if Plaintiffs prove that Meta engaged in that conduct with malice, oppression, or fraud. To do this, Plaintiffs must prove one of the following by clear and convincing evidence:

1.  That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Meta, who acted on behalf of Meta; or

2.  That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Meta; or

3.  That one or more officers, directors, or managing agents of Meta knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Meta acted with intent to cause injury or that Meta's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Meta's conduct was despicable and subjected Class Members to cruel and unjust hardship in knowing disregard of their rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Meta intentionally misrepresented or concealed a material fact and did so intending to harm Class Members.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decisionmaking such that the employee's decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Meta's conduct? In deciding how reprehensible Meta's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether Meta disregarded the health or safety of others;

3. Whether Class Members were financially weak or vulnerable and Meta knew Class Members were financially weak or vulnerable and took advantage of them;

4. Whether Meta's conduct involved a pattern or practice; and

5. Whether Meta acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Class Members' harm or between the amount of punitive damages and potential harm to Class Members that Meta knew was likely to occur because of its conduct?

(c) In view of Meta's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Meta has substantial financial resources. Any award you impose may not exceed Meta's ability to pay.

Punitive damages may not be used to punish Meta for the impact of its alleged misconduct on persons other than Class Members.

*Source*: CACI No. 3945 (as modified in blue).

1

***Plaintiffs' Position:***

2

     CACI No. 3945 is the standard jury instruction on punitive damages, as modified to reflect

3

the issues and evidence in this case. The instruction provides the proper framework for the jury's

4

consideration of punitive damages. If the Court determines that a punitive damages instruction is

5

warranted, CACI No. 3945 should be given to ensure the jury applies the correct legal standard.

6

     Plaintiffs further maintain that bifurcation of the trial for punitive damages is unwarranted.

7

The Court will make a determination about whether Plaintiffs have presented sufficient evidence

8

before allowing the issue of punitive damages to go before the jury. Bifurcation would serve no

9

legitimate purpose—it would waste time, risk confusing the jury, and inject unnecessary complexity

10

into what should be a straightforward determination of damages.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO. 25</u>

PUNITIVE DAMAGES

**OFFERED BY META**

If you decide that Facebook's[*name of defendant*]'s conduct caused DZ Reserve and Cain Maxwell[*name of plaintiff*] harm, you must decide whether that conduct justifies an award of punitive damages. The amount, if any, of punitive damages will be an issue decided later.

At this time, you must decide whether DZ Reserve and Cain Maxwell[*name of plaintiff*] hashave proved that Facebook[*name of defendant*] engaged in that conduct with malice, oppression, or fraud. To do this, DZ Reserve and Cain Maxwell[*name of plaintiff*] must prove [one of] the following by clear and convincing evidence, as explained in Instruction No. 5:

1. [That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Facebook[*name of defendant*] who acted on behalf of Facebook[*name of defendant*]; [or]]

2. [That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Facebook[*name of defendant*]; [or]]

3. [That one or more officers, directors, or managing agents of Facebook[*name of defendant*] knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.]

"Malice" means that Facebook[*name of defendant*] acted with intent to cause injury or that Facebook[*name of defendant*]'s conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of the defendant's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Facebook[*name of defendant*]'s conduct was despicable and subjected DZ Reserve and Cain Maxwell[*name of plaintiff*] to cruel and unjust hardship in knowing disregard of their[his/her/*nonbinary pronoun*] rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be

looked down on and despised by reasonable people.

"Fraud" means that Facebook[*name of defendant*] intentionally misrepresented or concealed a material fact and did so intending to harm DZ Reserve and Cain Maxwell[*name of plaintiff*].

~~An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decisionmaking such that the employee's decisions ultimately determine corporate policy.~~

*Source*: CACI No. 3946 (as modified).

*Meta's Position:*

Meta has proposed the CACI model instruction for punitive damages in bifurcated proceedings, modified (as the model anticipates) to reflect the fact that Plaintiffs' Complaint alleges only that Meta's officers "authorized or ratified," Third Amend. Compl. (Dkt. 332) ¶¶ 148, 160, the challenged conduct. *See* CACI No. 3946. As explained in Meta's pretrial statement, Meta believes the issue of punitive damages should be bifurcated such that the jury can consider whether Plaintiffs have established an entitlement to punitive damages as part of the trial of common issues and Plaintiffs' own claims, and only if needed, the same jury can then resolve the amount of punitive damages to which Plaintiffs are entitled. Moreover, the amount of damages to which the Class is entitled cannot be resolved until all liability issues have been resolved and the number of class members eligible to recover compensatory damages has been determined.

Bifurcation is thus necessary here for several reasons. As numerous courts in this District have recognized, there is substantial unfair prejudice in allowing a jury to hear otherwise irrelevant evidence of a defendant's wealth when the jury is considering whether the defendant is liable in the first instance. *See Phanpradith v. Griego*, 850 F. App'x 497, 500 (9th Cir. 2021) (affirming bifurcation of the amount of punitive damages in part because "financial evidence could be confusing to the jury without establishing entitlement to punitive damages in the first instance"); *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 152 (9th Cir. 1992) (noting that "[t]he most common reason for bifurcating is to exclude evidence of the defendant's wealth or net worth from the compensatory damages phase"). Although Meta offered to stipulate that it has ability to pay a punitive damages award consistent with California law, Plaintiffs have made clear they intend to introduce evidence of Meta's current finances in order to show that Meta has the ability to pay a punitive damages award. This evidence is relevant *only* to the amount of punitive damages the jury can award—an issue the jury may not need to consider at all if it decides either that Meta is not liable or that Plaintiffs have not demonstrated an entitlement to punitive damages. But absent bifurcation, the jury will be forced to hear this highly prejudicial evidence before it determines liability for the claims.

1
2
3
4
5
6
7
8
9
10
11
12

Courts commonly bifurcate punitive damage calculations for exactly these reasons. *See, e.g.*, *Rodriguez v. Google LLC*, 2025 WL 2237720, at *1 (N.D. Cal. Aug. 6, 2025) (bifurcating amount of punitive damages in light of the complexity of "damages inquiries already presented to the jury, the inconvenience raised by burdening them with yet more calculations, and the prejudice risked by introducing evidence of Google's total worth"); *Lopez v. San Saba Vineyards, Inc.*, 2023 WL 4410507, at *3 (N.D. Cal. July 7, 2023) ("If, in the first phase of trial, the jury finds in favor of [Plaintiffs] on liability issues and finds that [they are] entitled to punitive damages, trial will immediately proceed to a second phase in which the same jury will consider the amount of punitive damages to award."); *Kanellakopoulos v. Unimerica Life Ins. Co.*, 2018 WL 984826, at *6 (N.D. Cal. Feb. 20, 2018) (granting motion to bifurcate trial "such that all issues other than the amount of punitive damages will be addressed in Phase I, and the amount of punitive damages (if any) will be addressed in Phase II").

13
14
15
16
17
18
19
20
21
22
23
24

Additionally, bifurcation of the punitive damage calculation is especially appropriate here because the first phase of this proceeding will not resolve individual issues—including whether Meta can rebut any inference of reliance as to individual absent Class Members. As the Supreme Court has made clear, punitive damages ***must*** be "tethered to the compensatory damages actually awarded" to ensure they comport with Due Process. *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 542 (N.D. Cal. 2012) (bifurcating "the aggregate amount and individual distribution of punitive damages" in part "to ensure that any punitive damages award remains . . . consistent with" the Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). The jury cannot award a figure that comports with Due Process guarantees without knowing the overall compensatory damages number (if any) awarded to the Class. And it is not even possible to calculate a total, classwide compensatory damages award until all liability issues have been resolved and the number of Class Members eligible to recover damages has been determined.

25
26

In short, bifurcation will streamline the case, prevent prejudice, minimize the burdens on the jury, and ensure protection of Meta's constitutional rights.

27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED INSTRUCTION NO. 26

PREJUDGMENT INTEREST

**OFFERED BY PLAINTIFFS**

If you decide that Class members are entitled to recover damages for past economic loss in one or more of the categories of damages that they claim, then you must decide whether Class members should also receive prejudgment interest on each item of loss in those categories. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict.

Whether Class members should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion.

*Source*: CACI No. 3935 (as modified in blue)

1

***Plaintiffs' Position:***

2
            CACI No. 3935 is the standard jury instruction for prejudgment interest, which the jury has

3
discretion to award under California law. *See* Cal. Civ. Code § 3288; *Garrison v. Ringgold*, 2020

4
WL 13189480, at *7 (S.D. Cal. Nov. 9, 2020) ("In a case of fraud, an award of prejudgment interest

5
is necessary to put the plaintiff in a position that she would have been in, had the fraud not

6
occurred."). Providing this instruction ensures that the jury has the proper legal framework to

7
consider whether to award prejudgment interest.Meta also makes the baseless argument that "it is

8
not feasible for the jury to adjudicate on a classwide basis the underlying facts required to award

9
prejudgment interest." But this overlooks the fundamental reality that <u>this is a class action trial. *See*</u>

10
<u>*DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022), *aff'd*, 96 F.4th 1223</u>

11
<u>(9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025). Indeed, Rule 23</u> is designed

12
to permit class actions where "the questions of law or fact common to class members predominate

13
over any questions affecting only individual members" and where a class action is "superior to other

14
available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

15
And at its core, Rule 23 is a mechanism for exactly these types of issues.

16

17

18

19

20

21

22

23

24

25

26

27

28

*Meta's Position:*

Plaintiffs' prejudgment interest instruction should not be given for two reasons.

*First*, Plaintiffs are not entitled to prejudgment interest at all, because they did not ask for that relief in their complaint, Third Amend. Compl., Dkt. 332 (Prayer for Relief), or raise it at any other point until their proposed jury instructions just months before trial. *Cf. Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (rejecting argument that "generic request for 'such other and further relief which this Court deems just and proper'" sufficed to provide notice of demand for pre-judgment interest for purposes of default judgment).

*Second*, even if Plaintiffs had alleged any such request, they cannot seek prejudgment interest for the Class because it is not feasible for the jury to adjudicate on a classwide basis the underlying facts required to award prejudgment interest. California Civil Code Section 3288 provides that in cases of fraud "interest may be given, in the discretion ***of the jury***." Cal. Civ. Code § 3288 (emphasis added). Prejudgment interest under Section 3288 "runs from the date that property was lost." *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1248 (9th Cir. 2021). The CACI instruction recognizes this, stating: "If prejudgment interest is awarded, it is computed from the date on which **each loss** was incurred until the date on which you sign your verdict." CACI 3935 (emphasis added). And the "Directions for Use" to the CACI instruction further recognize that "[t]he special verdict form may need to be augmented for the jury to make any ***factual findings that are required in order to calculate the amount of prejudgment interest***." *Id.* (emphasis added). In other words, CACI contemplates that the jury will decide the date of each plaintiff's loss(es), as those dates are "required in order to calculate the amount of prejudgment interest." *Id.*

In this case, asking the jury to determine the dates of injury for each member of the Class would be completely infeasible. And Plaintiffs identify no authority for the proposition that, absent party consent, someone other than the jury can determine the date of injury. Indeed, at least one court has concluded that California law does not permit a judge to decide issues of prejudgment interest after a jury trial ***even if the parties consent*** (which Meta does not). *Softketeers, Inc. v. Regal W. Corp.*, 2023 WL 2024701, at *3-5 & n. 25 (C.D. Cal. Feb. 7, 2023), *amended*, 2023 WL 2016926

(C.D. Cal. Feb. 10, 2023), and *amended on denial of reconsideration*, 2023 WL 9227018 (C.D. Cal. Mar. 14, 2023), and *appeal dismissed*, 2023 WL 3475440 (9th Cir. Apr. 6, 2023), and *aff'd*, 2025 WL 636708 (9th Cir. Feb. 27, 2025).  Because the jury cannot adjudicate on a classwide basis the underlying facts required to award prejudgment interest, it is not appropriate to submit this instruction to the jury.

Plaintiffs appear to realize that the date from which prejudgment interest runs is a jury question, as their proposed verdict form asks the jury to "identify the starting date from which Class Members are owed prejudgment interest."  But prejudgment interest "is computed from the date on which *each loss* was incurred."  CACI 3935 (emphasis added).  The jury may not select an arbitrary date from which to run prejudgment interest for *all class members*, who purchased ads over the course of more than six years.  Plaintiffs' verdict form is modeled after the form in *Monahan Pacific Corp. v. Travelers Property Casualty Co.*, No. 22-cv-03593-JD (N.D. Cal.).  But that case was not a class action and thus implicated none of the problems here.  Further, the verdict form in that case asked jurors to select a date for assessing prejudgment interest on damages on *attorney's fees*, *Monahan* Dkt. 85 at 3, and this Court instructed the jury that if it awarded "prejudgment interest on the damages in the form of attorney's fees … the starting date from which plaintiffs are owed prejudgment interest is within your discretion," *Monahan* Dkt. 74 at 20.  The jury has no such discretion here, as the law is clear that the relevant date is the date each advertiser's property was lost.  *See, e.g.*, *BladeRoom*, 20 F.4th at 1248.

STIPULATED INSTRUCTION NO. 27

DUTY TO DELIBERATE

When you begin your deliberations, elect one member of the jury as your presiding juror who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict, whether liable or not liable, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, gender, sexual orientation, profession, occupation, economic circumstances, or position in life or in the community.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

***Sources***: Google Play Final Instruction No. 41; Flo Health Final Instruction No. 18.

1

2

<u>STIPULATED INSTRUCTION NO. 28</u>

CONSIDERATION OF THE EVIDENCE -- CONDUCT OF THE JURY

3

4

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

5

6

7

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet social media site, blog, website or other feature.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the Court.

8

9

10

11

12

13

14

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

15

16

17

18

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the Court immediately.

19

20

21

22

23

24

***Sources***: Google Play Final Instruction No. 42; Flo Health Final Instruction No. 19.

25

26

27

28

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED INSTRUCTION NO. 29

USE OF NOTES

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

**Sources**: Google Play Final Instruction No. 43; Flo Health Final Instruction No. 20.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED INSTRUCTION NO. 30

COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through Ms. Clark, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me or Ms. Clark – how the jury stands, numerically or otherwise, on any question submitted to you, including the questions of Meta's liability, until after you have reached a unanimous verdict or have been discharged.

***Sources***: Google Play Final Instruction No. 44; Flo Health Final Instruction No. 21.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>STIPULATED INSTRUCTION NO. 31</u>

RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise Ms. Clark that you are ready to return to the courtroom.

***Sources***: Google Play Final Instruction No. 45; Flo Health Final Instruction No. 22.

1

2

STIPULATED INSTRUCTION NO. 32

POLLING THE JURY

3

4

5

After your verdict is read in open court, you may be asked individually to indicate whether the verdict expresses your personal vote.  This is referred to as "polling" the jury ~~and is done to ensure that at least nine jurors have agreed to each decision~~.

6

7

8

9

10

The verdict form~~[s]~~ that you will receive asks you to answer several questions.  You must vote separately on each question.  ~~Although nine or more jurors must agree on each answer, it does not have to be the same nine for each answer.  Therefore, I~~t is important for each of you to remember how you have voted on each question so that if the jury is polled, each of you will be able to answer accurately about how you voted.

11

12

13

~~[~~Each of you will be provided a draft copy of the verdict form~~[s]~~ for your use in keeping track of your votes.~~]~~

14

15

***Source***:  CACI 5017 (as modified in blue).

16

17

18

19

20

21

22

23

24

25

26

27

28

76

DATED: September 4, 2025

Respectfully submitted,

By:  /s/ Geoffrey Graber

By:  /s/ Andrew B. Clubok

Geoffrey Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
Madelyn Petersen (*pro hac vice*)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
1100 New York Ave. NW, Ste 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com
mpetersen@cohenmilstein.com
jwaldman@cohenmilstein.com

Charles Reichmann (SBN 206699)
**LAW OFFICES OF CHARLES**
**REICHMANN**
16 Yale Circle
Kensington, CA 94708-1015
Telephone: (415) 373-8849
Charles.reichmann@gmail.com

Theodore J. Leopold (*pro hac vice*)
Leslie M. Kroeger (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
11780 US Highway One
Suite N500
Palm Beach Gardens, FL 33408
Telephone: (516) 515-1400
Facsimile: (516) 515-1401
lkroeger@cohenmilstein.com
tleopold@cohenmilstein.com

Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
andrew.clubok@lw.com
Susan E. Engel (*pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200

Melanie M. Blunschi (SBN 234264)
melanie.blunschi@lw.com
Nicole C. Valco (SBN 258506)
nicole.valco@lw.com
Francis J. Acott (SBN 331813)
francis.acott@lw.com
505 Montgomery Street, Suite 200
San Francisco, CA 94111-6538
Telephone: (415) 391-0600

*Counsel for Defendant Meta Platforms, Inc.*

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

ekafka@cohenmilstein.com

*Class Counsel*

PROPOSED FINAL JURY INSTRUCTIONS
Case No. 3:18-cv-04978-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIGNATURE ATTESTATION**

      Pursuant to L.R. 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from all signatories

  DATED: September 4, 2025                  Respectfully submitted,

                                      */s/ Geoffrey Graber*
                                      Geoffrey Graber