1   Geoffrey Graber (SBN 211547)
    Karina G. Puttieva (SBN 317702)
2   Madelyn Petersen (*pro hac vice*)
    Jenna Waldman (SBN 341491)
3   **COHEN MILSTEIN SELLERS &**
    **TOLL PLLC**
4   1100 New York Ave. NW, 8th Floor
    Washington, DC 20005
5   Telephone: (202) 408-4600
    Facsimile: (202) 408-4699
6   ggraber@cohenmilstein.com
    kputtieva@cohenmilstein.com
7   mpetersen@cohenmilstein.com
    jwaldman@cohenmilstein.com
8
    Charles Reichmann (SBN 206699)
9   **LAW OFFICES OF CHARLES**
    **REICHMANN**
10  16 Yale Circle
    Kensington, CA 94708-1015
11  Telephone: (415) 373-8849
    charles.reichmann@gmail.com
12
    *Class Counsel*

    Eric Kafka (*pro hac vice*)
    **COHEN MILSTEIN SELLERS &**
    **TOLL PLLC**
    88 Pine Street, 14th Floor,
    New York, NY 10005
    Telephone: (212) 838-7797
    Facsimile: (212) 838-7745
    ekafka@cohenmilstein.com

13

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

14

15

| | |
|---|---|
| 16  DZ RESERVE and CAIN MAXWELL (d/b/a/ Max Martialis), individually and on behalf of others similarly situated, | Case No. 3:18-cv-04978-JD |
| 17 | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| Plaintiffs, | |
| 18  v. | |
| METATFORMS, INC., | Complaint Filed: August 15, 2018 |
| 19 | Trial Date: October 14, 2025 |
| Defendant. | Courtroom 11, 19th Floor |
| 20 | Hon. James Donato |

21

22

23

24

25

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. ii

Introduction ........................................................................................................ 1

Facts .................................................................................................................... 2

    I.    Pre-Class Certification Litigation, 2018–2022 ...................................... 2

    II.    Class Certification................................................................................. 4

    III.    Post-Class Certification Litigation, 2022–2025.................................... 4

    IV.    Meta now invokes an arbitration provision in the "Commercial Terms"............... 6

Argument ............................................................................................................ 8

    I.    Meta has waived any right to compel arbitration.................................... 8

        A.    Meta had knowledge of its asserted right to arbitrate ................................. 8

        B.    Meta has acted inconsistently with its asserted right to arbitrate............... 9

    II.    Because Meta has waived arbitration, there is no reason to redefine the class .... 14

    III.    Because Meta has waived arbitration, it is not entitled to a stay ......................... 15

Conclusion ......................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Chan v. Panera, LLC,*
    2024 WL 4328827 (C.D. Cal. Aug. 16, 2024)..................................................................... 15

4

*Coinbase, Inc. v. Bielski,*
    599 U.S. 736 (2023)........................................................................................................... 15

5

6

*Hill v. Xerox Business Services, LLC,*
    59 F.4th 457 (9th Cir. 2023) .......................................................................................*passim*

7

*Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.,*
    589 F.3d 917 (8th Cir. 2009) ..................................................................................... 11, 13

8

9

*In re Apple iPod iTunes Antitrust Litigation,*
    2014 WL 6783763 (N.D. Cal. Nov. 25, 2014) .................................................................. 15

10

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation,*
    790 F.3d 1112 (10th Cir. 2015) ......................................................................................... 9

11

*Jones v. Deutsche Bank AG,*
    2007 WL 951811 (N.D. Cal. Mar. 28, 2007)................................................................... 15

12

*Martin v. Yasuda,*
    829 F.3d 1118 (9th Cir. 2016) ......................................................................... 9, 10, 11, 13

13

14

*Morgan v. Sundance, Inc.,*
    596 U.S. 411 (2022)............................................................................................................ 8

15

*Parker v. Kearney School District,*
    130 F.4th 649 (8th Cir. 2025) ......................................................................................... 8, 9

16

17

*Perez v. Discover Bank,*
    2023 WL 1805213 (N.D. Cal. Feb. 7, 2023) ................................................................... 15

18

*Saavedra v. Donovan,*
    700 F.2d 496 (9th Cir. 1983) .............................................................................................. 8

19

*Van Ness Townhouses v. Mar Industrial Corp.,*
    862 F.2d 754 (9th Cir. 1988) ........................................................................................... 11

20

21

22

23

24

25

26

**INTRODUCTION**

This case has been vigorously litigated in federal courts for more than seven years. Way back in December 2018, shortly after filing, Meta told this Court that the case was "not … suitable for reference to binding arbitration." ECF 53 at 7. Since Meta made that representation, it has filed five dispositive motions, answered the claims of "each and every member of the class" without asserting an arbitration defense, taken extensive discovery, engaged in a pitched battle of the experts, pursued an appeal all the way to the U.S. Supreme Court, renewed case-dispositive motions against the entire class, and then told 11 million class members that they can expect a "judgment or settlement … in this lawsuit" in "the United States District Court for the Northern District of California" if they don't opt out. ECF 470-1 at 30, 33. Now, amid final preparations for a three-week jury trial that Meta requested earlier this year, Meta has suddenly decided that it would prefer to arbitrate with nearly the entire class.

Meta's request is as much of a blindside as you'll ever see. It is founded on a purported arbitration provision in a document that Meta barely mentioned before now—even though Meta repeatedly told this Court that *other* documents were "[t]he [c]ontracts" that "govern this dispute." ECF 67 at 6. And the *one* time Meta mentioned its purported arbitration rights before now was a single sentence in its opposition to class certification, which prompted this Court to respond that "[a] good argument can be made that Meta has waived arbitration on this record." ECF 388 at 7. That warning was delivered three and a half years ago. Meta has continued to vigorously litigate ever since, and it didn't say another word about arbitration until it filed this motion.

The "good argument" for waiver that this Court identified in March 2022 has now become completely indisputable. In fact, since this Court put Meta on notice of its likely waiver, the Ninth Circuit has upheld waiver of a right to compel arbitration with unnamed class members on facts that are materially indistinguishable from these. *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023). If anything, Meta's seven years of near-total silence while it actively litigated makes the waiver here even more clear-cut. This Court should therefore reject Meta's cynical attempt to play "heads I win, tails you lose" on the eve of trial, deny Meta's motion, and proceed with trying this case.

**FACTS**

## I.    Pre-Class Certification Litigation, 2018–2022

This case was first filed on behalf of a class more than seven years ago, on August 15, 2018. ECF 1 ¶ 70. Despite knowing from the start that this was a putative class action, Defendant Meta Platforms, Inc.[1] told this Court in one of its very first filings that it did "not believe that this case is suitable for reference to binding arbitration." ECF 53 at 7 (Dec. 13, 2018 Joint Case Management Statement). Meta made that representation even though from the outset the putative class already included some of the same class members Meta is now seeking to compel into arbitration.[2]

True to its word, Meta spent the next seven years litigating this case in court, filing motion after motion directed to legal and factual issues common to the class. It initially moved to dismiss all the claims asserted against it, on the merits and "with prejudice." ECF 65 at 1. This Court granted Meta's motion in part, dismissing three contract-related claims on the merits and granting leave to amend. ECF 83. But Meta wasn't done trying to secure early dismissal on the merits. Before the pleadings were finalized, Meta moved to dismiss two more times—on July 19, 2019, when Meta again moved to dismiss the contract claims against it, "this time with prejudice," ECF 103 at 1–3, and again in May 2020, when Meta again argued that multiple claims should be dismissed "with prejudice" because "Plaintiffs should not get a sixth bite at the apple nearly two years into this litigation." ECF 177 at 1–3. In response to these motions, this Court dismissed several of the breach-of-contract contract claims with prejudice. *See* ECF 130; ECF 255. These motions necessarily required the court to interpret contractual terms common to the class. *See, e.g.*, ECF 130.

In support of each of these motions, Meta explicitly and repeatedly—including in response to direct questioning from this Court—represented that the relevant terms comprising the contracts were found in Meta's then-current "Terms of Service" and "Self-Service Ad Terms." ECF 66 ¶¶ 9 14 &

---

[1] This case has been pending long enough that Meta was still known as "Facebook, Inc." when it began. Unless otherwise noted, we refer to the company by its current name throughout.

[2] *Compare* Mot. at 8 (motion to compel "class members who purchased ads as of May 25, 2018"), *with* ECF 1 ¶ 70 (August 15, 2018) (putative class period ran from 2013 "to the present").

1  Exs. H, M. When it filed its first motion to dismiss, Meta attached these documents and identified

2  them as "the contracts … between Plaintiffs and [Meta] in effect when Plaintiffs placed ads." ECF 65

3  at 1 n.1. Meta even filed a separate motion asking this Court to take judicial notice of these documents

4  as the "[t]he [c]ontracts" that "govern this dispute." ECF 67 at 6.

5       In its briefing on both the second and third motions to dismiss, Meta again reiterated that the

6  relevant contracts were the "Terms of Service" and "Self Service Ad Terms." ECF 103 at 6; *see also*

7  ECF 177 at 4 (those documents "govern this action"). And, were there any doubt, at the hearing on

8  Meta's motion on October 17, Meta's counsel asserted that "plaintiffs agree that Facebook's terms of

9  service is the contract that governs their dispute." ECF 129 at 4–5. This Court followed up: "That's

10  the only contract; right?" *Id.* Meta's response: "It's the only contract, Your Honor." *Id.*

11       On March 15, 2021, Meta then filed its answer. It identified 28 potential defenses, many

12  asserted against "the purported class"—or, sometimes, "each and every member of the putative class."

13  ECF 269 at 26–32. Several defenses against "each and every" class member invoked specific "terms

14  of their contracts with Facebook." *Id.* Nowhere, however, did the answer mention arbitration.[3]

15       At the same time, Meta took yet another crack at the merits, filing a motion for judgment on

16  the pleadings on the same day as its answer. ECF 270. This Court granted that motion in part, barring

17  Plaintiffs from seeking an award of restitution on their statutory consumer protection claims. ECF 366.

18  In granting that relief, this Court made clear that its ruling applied to "class members," not just the

19  named plaintiffs. *Id.* at 1. That made this the fourth dispositive motion on which Meta won dismissal

20  on the merits—and the third that yielded dismissal with prejudice.

21       Meanwhile, the parties conducted extensive discovery. At Meta's request, the Court entered a

22  stipulated protective order allowing "special protection from public disclosure" for Meta's confidential

23  information. ECF 81 at 1. Meta then proceeded to build a factual record in support of its arguments

24  against the claims of the class as a whole. For example, Meta submitted declarations from ten putative

25

26  _____
   [3] Meta's answer also says that it "does not dispute venue in this Court." *Id.* at 3. No surprise there—Meta's Terms of Service required Plaintiffs to file "exclusively in" this Court. ECF 166 ¶ 8.

class members in its opposition to class certification, ECF 296 ¶¶ 4–14, and from experts attempting

to refute plaintiffs' classwide damages models, *see, e.g.*, ECF 361-4.

## II.    Class Certification

The parties and the Court proceeded to litigate class certification and several accompanying

*Daubert* motions. In its May 2021 opposition to class certification, Meta mentioned arbitration to this

Court for the first and only time—in a sentence identifying "an arbitration provision in Facebook's

Commercial Terms" as one reason the named plaintiffs were supposedly atypical and inadequate

representatives of the class. ECF 294 at 17. Meta did not say it planned to move to compel arbitration

of any absent class members or to exclude them from the class on that ground, only that it "has not

waived its right to enforce the provision against absent class members." *Id.* at 17 n.13. After nearly

three years and four dispositive motions, that filing was the first—and, until now, the only—time Meta

mentioned any arbitration provision to this Court.

This Court certified a class on March 29, 2022. ECF 388. The Court's order rejected Meta's

passing arbitration-related arguments. The Court noted that Meta had "vigorously litigated this lawsuit

in federal court as if arbitration were not an option" for nearly four years. ECF 388 at 7. And it warned

Meta: "A good argument can be made that Meta has waived arbitration on this record." *Id.*[4] Meta did

not seek reconsideration of that ruling or otherwise tell the Court that it had designs on moving to

compel class members into arbitration in the future. That was nearly three and a half years ago.

## III.    Post-Class Certification Litigation, 2022–2025

Meta continued litigating this case on the merits after class certification was granted.

First, Meta sought judgment on the merits of the class's claims. In March 2022, Meta filed a

motion for summary judgment, accompanied by more *Daubert* motions. ECF 372; ECF 373–84.

Although the motion was filed shortly before class certification, Meta's reply was filed after this Court

certified the class. Both the summary judgment motion and the reply asked the Court to rule on the

---

[4] The Court did, however, express willingness to adjust the class definition if, "for some presently unknown reason," there were "arbitration grounds" to do so. *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
3:18-cv-04978-JD

merits of the entire case, seeking final "judgment on Plaintiffs' remaining claims." ECF 372 at 1; *see* ECF 405 at 15. This Court has since determined that these motions applied to the claims of the entire class, not just the named plaintiffs. *See, e.g.*, ECF 465 at 4–5.

Second, Meta reaffirmed its intent to have a trial on the merits if summary judgment were denied. At a status conference on May 26, 2022, with an October 3, 2022 trial date fast approaching, the parties reported that they "are in agreement that [the trial date] should hold." ECF 425 at 4.

Summary judgment and trial didn't happen in 2022, however. Instead, Meta sought appellate review of this Court's class certification order from the Ninth Circuit and, later, the United States Supreme Court, leading to an approximately three-year pause in the district court proceedings.

At no point during the appellate proceedings did Meta so much as hint that an arbitration motion might be waiting in the wings. To the contrary, it persuaded the Ninth Circuit to grant interlocutory review in part by invoking the massive classwide liability it faced. In its Rule 23(f) petition, for example, Meta warned that interlocutory appellate review was essential because the potential classwide damages would be "$7 billion" if the case were allowed to proceed as a class action. No. 22-80029 (9th Cir.), ECF 1 at 4, 25. Those potential damages, Meta contended, were "sufficiently high to create inexorable settlement pressure" in "litigation of this nature." *Id.* at 25. Meta did not mention that it might seek to compel virtually the entire class into individual arbitrations even if it lost the appeal. And once review was granted, Meta continued to say not a word about potential arbitration to either the Ninth Circuit or the Supreme Court.

With the three-year appellate detour complete, and class certification confirmed, litigation resumed in this Court earlier this year. Still, Meta proceeded with seeking a ruling on the merits.

On February 6, the Court held a status conference at which the parties presented a joint proposal to hold a three-week jury trial beginning on October 14, 2025. ECF 465 at 12–14; ECF 461 at 5–6. The Court advised the parties that it would "do everything I can" to fit the trial into a busy fall calendar because this was the Court's "oldest case by far." ECF 465 at 20. Meta did not say a word about potentially seeking arbitration once the class membership was finalized.

At that hearing, Meta also sought a ruling on the merits by renewing its summary judgment motion. Meta asked for a ruling on summary judgment and its *Daubert* motions, telling the Court that those motions teed up a "key critical issue" that was "the heart of the case" and "will be a main focus of the trial." ECF 465 at 20–22. A decision on those motions, Meta emphasized, would "dispose[] of the whole case." *Id.* The Court therefore confirmed at the February hearing that that Meta's summary judgment and *Daubert* motions "are renewed," and advised the parties that the Court "will decide them." ECF 464. Meta let more than six months pass with those motions ripe for resolution, without mentioning even the possibility of arbitration.

In March, the parties agreed on a plan for providing notice to millions of certified class members, which the Court approved on April 10. ECF 470, 471. The agreed-upon notice materials don't mention that Meta might move to compel arbitration. Instead, they tell absent class members that "a lawsuit is pending in the United States District Court for the Northern District of California," and that this Court decided the case "can move forward in a class action." ECF 470-1 at 30, 32. The notice materials also warn class members that if they do not opt out, they "will be bound by any judgment entered or settlement reached in the lawsuit." ECF 470-1 at 27, 32, 34. None of the notice materials mention possible "arbitration" anywhere. *See* ECF 470-1, Exs. 2–5.

Even as the class's opt-out window was drawing to a close, Meta continued to tell Plaintiffs that trial preparation was full steam ahead. On July 17, counsel for Meta e-mailed a proposed "schedule for the exchange of pretrial materials," which Meta's counsel prefaced: "Exciting to be getting this to trial soon!" Graber Decl. Ex. 1. Between then and August 21—the day Meta would eventually file this motion—Meta's proposal called for the parties to meet and confer twice, exchange drafts of a joint pretrial statement, exchange draft jury instructions and verdict forms, and serve a complete set of pretrial motions in limine on one another. *Id*. Not once did Meta mention arbitration.

## IV. Meta now invokes an arbitration provision in the "Commercial Terms"

On August 21, one week before a scheduled pretrial conference date, Meta filed this motion to compel arbitration. It relies on no provision contained in the contractual terms that it previously

represented to the Court "govern this dispute." ECF 67 at 6. Instead, it identifies arbitration-related provisions in a separate document that Meta calls its "Commercial Terms." According to Meta (at 2), that document "required commercial users (including all advertisers) to arbitrate any commercial dispute with Facebook." Meta now says (at 4) that the Commercial Terms were hyperlinked in the Terms of Service all along, so any member of the class who purchased an ad after May 2018 agreed to be bound by them.

In fact, Meta now says (at 4) that during the class period it altered its ad purchasing page to feature the Commercial Terms more conspicuously, "add[ing] a hyperlink to the Commercial Terms … at the point of purchase." That change was made in 2019, before Meta told this Court that the Terms of the Service were "the only contract" at issue. ECF 129 at 4–5.

If the Court is unfamiliar with the "Commercial Terms," that's understandable. In the course of briefing five dispositive motions—even as Meta attached other contracts and sought judicial notice of them—none of its briefs mentioned the Commercial Terms, much less any arbitration provision therein. *See* ECF 65–67, 71–72, 103–05, 120, 177–79, 186, 270, 372, 375, 405, 408.

The first time Meta mentioned the Commercial Terms in discovery was in an October 23, 2019, interrogatory response. There, Meta said that the relevant contract was "Facebook's Terms of Service," which "expressly incorporated a set of additional contractual terms including Facebook's Self-Serve Ad Terms, Advertising Policies, Advertising Guidelines, Community Payment Terms, and *Commercial Terms*." Graber Decl. Ex. 2 (emphasis added). That document did not mention any arbitration provision.

And the only time Meta mentioned the Commercial Terms to this Court before filing this motion was in its opposition to class certification. See *supra*, Part II. The Court responded in its March 2022 class certification order that any reliance on that provision was likely waived even then. Yet Meta didn't say another word about it until August 2025, mere weeks before trial.

1    **ARGUMENT**

2    **I.    Meta has waived any right to compel arbitration.**

3    "A party waives its right to compel arbitration when (1) it has knowledge of the right and (2)

4    it acts inconsistently with that right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460, 468 (9th Cir.

5    2023).[5] Meta's conduct—litigating this case for more than seven years, through class certification and

6    five dispositive motions, only to invoke a purported arbitration right that it has known about all along

7    in the thick of trial preparation—readily meets both requirements for a finding of waiver.

8    **A.    Meta had knowledge of its asserted right to arbitrate.**

9    There can be no question that Meta knew about its claimed right to arbitrate. As courts have

10    consistently recognized, it is the "rule" that a party who "possess[es] the arbitration agreement" is

11    charged with knowledge of "its existing right to arbitration." *Parker v. Kearney Sch. Dist.*, 130 F.4th

12    649, 654 (8th Cir. 2025); *see, e.g.*, *Saavedra v. Donovan*, 700 F.2d 496, 500 (9th Cir. 1983) (a party

13    is presumed to know the terms of their own contract). That rule applies here. Because the provision

14    Meta now invokes is contained in its own sets of contractual terms, Meta's awareness of it is presumed.

15    Moreover, Meta mentioned its purported arbitration rights in its opposition to class certification. *See*

16    ECF 294 at 17 & n.13. In fact, not only did Meta know about the arbitration provision, Meta even

17    admits (at 4–5, 9) that it took steps internally to strengthen its "case for enforcing the provision against"

18    class members in 2019, after this litigation began. It is clear that Meta slept on its rights knowingly.

19    It doesn't matter, as Meta says (at 10), that Meta may not have had a formal right to compel

20    arbitration of absent class members until after class certification and notice and opt-out were complete.

21    *Hill*—on which Meta relies—held that a company had the required knowledge and affirmed a finding

22    of waiver on materially identical facts. 59 F.4th at 469–70. In fact, *Hill* expressly rejected the position

23    that Meta seems to be taking: that "knowledge of an existing right to arbitrate requires a present ability

24

25    _____

26    [5] In the past, circuit precedent imposed an additional criterion of prejudice to the nonmoving party, but the Supreme Court recently did away with that requirement. *See Hill*, 59 F.4th at 468 (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–17 (2022)).

to move to enforce an arbitration agreement." *Id.*[6] Other courts are in accord. *See, e.g.*, *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015) (declining to adopt a rule that would deem the "right to arbitrate against [ ] class members" as known only after "the class was certified"); *Parker*, 130 F.4th at 654 (rejecting an argument that knowledge doesn't exist until a party "knew for certain that the arbitration clause would apply").

**B.    Meta has acted inconsistently with its asserted right to arbitrate.**

That leaves the question whether Meta has "acted inconsistently with" its arbitration rights, given the "totality of [its] actions" in this litigation. *Hill*, 59 F.4th at 460, 471. That criterion is met when a party "actively litigat[es] his case to take advantage of being in federal court." *Id.*; *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Here, Meta has done exactly that.

**1.** Meta long ago made a "strategic choice to engage the judiciary for resolution of the class claims," and has been actively seeking "a favorable *judicial* ruling" on the merits that would "foreclose all class claims" ever since. *Hill*, 59 F.4th at 476–77. Seeking a merits determination in court is among the conduct that "most clearly" demonstrates waiver; it shows a "preference for judicial resolution" that is fundamentally "inconsistent with" the arbitration right. *Id.* Meta's conduct over the last seven years has evinced that preference for judicial merits resolution over and over again.

Filing even one dispositive motion is evidence that a party sought resolution on the merits. *See Hill*, 59 F.4th at 471; *Martin*, 829 F.3d at 1125. Here, Meta has filed five. ECF 65, 103, 177, 270, 372.

That includes three motions to dismiss that each sought—and obtained—dismissal of contractual claims that were based on agreements common to the class. *See* ECF 65, 103, 177. Those motions enabled Meta to secure favorable interpretations of its contracts with the putative class from this Court, and to secure dismissals with prejudice on the merits of those claims. So even before class certification, Meta "exerted a significant amount of energy challenging the merits of the legal theor[ies] underlying the claims that [the named plaintiffs] raised personally and on behalf of the class

---

[6] To the extent Meta may be arguing that its waiver is excused because filing a motion earlier would have been futile, that argument is also foreclosed by *Hill*. *See* 59 F.4th at 479–83.

1    members." *Hill*, 59 F.4th at 473. And Meta did so "with full knowledge that [the class members']

2    claims were implicated … to the same extent as" the named plaintiffs' were. *Id.*

3         Meanwhile, Meta answered the complaint, asserting a barrage of merits defenses, including

4    several defenses asserted against "each and every member" of the class. ECF 269. Its answer said

5    nothing about arbitrating the surviving claims; instead, it conceded venue in this Court. *Id.* at 3. At the

6    same time, Meta filed a motion for judgment on the pleadings that succeeded in limiting the remedies

7    that would be available to the class if the plaintiffs prevailed at trial. ECF 270; *see* ECF 366 at 1.

8         And if that weren't enough, Meta continued seeking to dispose of the remaining claims on the

9    merits after discovery was complete and class certification was granted, pursuing a summary judgment

10   motion (and related *Daubert* motions) directed at the claims of the entire class. ECF 372; ECF 415 at

11   2; ECF 465 at 4–5, 21. After its Rule 23(f) appeal didn't pan out, Meta explicitly renewed those

12   motions, asking to file yet more briefing in support of them. ECF 464. And along the way, Meta said

13   at multiple status conferences that it wanted summary judgment.[7] Most recently, at a hearing seven

14   months ago, Meta asked this Court to rule on pending motions directed at what it called "the only

15   misrepresentation that's left in the case on a class-wide basis," asking the Court to "laser focus on that

16   one issue" because it "disposes of the whole case." ECF 465 at 21; *see Hill*, 59 F.4th at 465 & n.9

17   (finding waiver where a company sought resolution of "a 'threshold legal issue' that affected all class

18   members"). After that hearing, Meta's renewed motions remained pending for 196 days before Meta

19   filed this motion to compel arbitration; this Court could have granted the case-ending relief that Meta

20   sought on any one of them. *See Martin*, 829 F.3d at 1126 n.4 (filing a dispositive motion established

21   waiver because, "whatever the judge may have done, the defendants *sought* a ruling on the merits").

22        This "go-for-broke strategy to end the litigation in one fell swoop *judicially*—without any

23   suggestion that [Meta] intended on retaining its right to arbitrate against the [class members]—could

24   not be more inconsistent with [Meta]'s arbitration right." *Hill*, 59 F.4th at 476 n.22. To allow Meta to

25

26        [7] *See* ECF 425 at 10 (noting Meta's readiness to proceed with a June 2022 hearing on its
     pending motions); ECF 465 at 12–13 (obtaining leave to renew the summary judgment motion).

1  "belatedly seek[] refuge in arbitration" now that those strategic choices haven't "pan[ned] out" would

2  make this entire litigation "a game of 'heads I win, tails you lose.'" *Id.* at 477. That is the "worst

3  possible reason" to delay seeking arbitration, so enforcing Meta's waiver is the only appropriate

4  response. *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009).

5      **2.** The case for waiver doesn't end with Meta's dispositive motions practice. For seven years,

6  Meta has "take[n] advantage of litigating in federal court" in other ways, too. *Hill*, 59 F.4th at 474.

7      Thanks to a protective order this Court entered, Meta pursued discovery while shielding its

8  confidential information from the public eye. ECF 81; *see Martin*, 829 F.3d at 1126 ("entering into a

9  protective order" evinced waiver). The record it developed in discovery—including declarations from

10  class members and attempts to rebut classwide damages models—was both directed at and taken from

11  putative class members. ECF 296 ¶¶ 4–14; ECF 361-4; *see Hill*, 59 F.4th at 474–75 ("extensive

12  discovery on unnamed parties" showed waiver of right to arbitrate against class members).

13      Both parties developed robust expert witness testimony—at least ten experts in total—

14  addressing issues foundational to the class's claims. *See* ECF 465 at 15. Meta then filed not one but

15  two rounds of *Daubert* motions, seeking to undermine that classwide evidence. *See* ECF 285–89, 373–

16  384. In fact, Meta recently told this Court that its *Daubert* motions carried the potential to "dispose[]

17  of the whole case," and that the criticisms they raised would "be a main focus of trial." ECF 465 at

18  20–21. In *Hill*, a party's engagement of just a single rebuttal expert and related discovery directed to

19  class-wide issues contributed to a finding of waiver. *See* 59 F. 4th at 467 & n.14, 475 & n.21. Here,

20  the parties engaged a small army of experts and "actively litigated" the qualifications of those class-

21  wide experts in federal court. *Id.* at 476. That even more clearly shows waiver. *See id.* at 475 (decision

22  to "explicitly [seek] extensive discovery" "weighs in favor of" waiver).

23      **3.** Third, Meta did all of this without ever alerting the court that this motion might be

24  forthcoming. When an "extended silence" precedes a "much-delayed demand for arbitration," the

25  inference of waiver is stronger still. *Hill*, 59 F.4th at 472 (quoting *Van Ness Townhouses v. Mar Indus.*

26  *Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)); *accord Martin*, 829 F.3d at 1125.

1   At the very start of this litigation, Meta represented to this Court that it did "not believe that
2   this case is suitable for reference to binding arbitration." ECF 53 at 7. More than mere silence, that
3   was "an express disdain of the right to arbitrate" that is "direct evidence of waiver." *See Hill*, 59 F.4th
4   at 471 n.17. Similarly, shortly before filing this motion, Meta represented that it would be "getting this
5   to trial soon" while proposing a flurry of pretrial activity in July and August. Graber Decl. Ex. 1.

6   In the intervening seven years between those statements, Meta mentioned a theoretical right to
7   arbitration to this Court exactly *once*, in its 2021 opposition to class certification. That out-of-the-blue
8   reference prompted this Court to warn Meta—way back in 2022—that "[a] good argument can be
9   made that Meta has waived arbitration on this record." ECF 388 at 7. At that time, surely, if not sooner,
10  "notice was needed to correct the impression of waiver that [Meta] itself created." *Hill*, 59 F.4th at
11  481. But Meta gave none. In the *three and a half years* that has elapsed since that order, Meta has
12  proposed two different trial dates, pressed its case in three different federal courts, attended multiple
13  status conferences, pursued the above-mentioned case-dispositive motions, and plunged the parties
14  into trial preparation—all without so much as mentioning the word "arbitration" to this Court.

15  That utter silence about even the possibility of this motion dooms any hope Meta might
16  otherwise have of avoiding waiver. In *Hill*, the Ninth Circuit found waiver of a right to arbitrate against
17  unnamed class members where the party seeking arbitration didn't "ask the district court to remove"
18  those class members and didn't make any other "effort to flag the issue for the court." *Hill*, 59 F.4th
19  at 478. But in *Hill*, the company at least told the Court that it "anticipate[d] bringing motions to compel
20  individual arbitration once the class is finalized" once before it later went silent on the issue. *Id.* at
21  466, 485. Here, Meta's decision to litigate this case—for seven years, all the way until final
22  preparations for a looming jury trial—speaks for itself.[8]

23

24  ────────────

25  [8] Meta seeks to distinguish *Hill* by proclaiming that it moved "within weeks of the opt-out deadline." Mot. at 10 n.5. But those extra weeks of delay are not a helpful fact for Meta, because Meta actually waited *even longer* than the company did in *Hill*. In *Hill*, the company filed its motion to
26  compel arbitration "[t]he day after the notice administrator gave his report on the final class size." *Hill* at 468. In contrast, Meta admits that it waited nearly two weeks after receiving that report. Mot. at 7.

1    Meta's only response (at 10) is that it mentioned the arbitration provision once as a ground for

2    opposing class certification, and then dropped a footnote that attempted to reserve its rights under that

3    provision. But that is no help. "A reservation of rights is not an assertion of rights." *Hooper*, 589 F.3d

4    at 923. So, without more, "[a] statement by a party that it has a right to arbitration in pleadings or

5    motions is not enough to defeat a claim of waiver." *Hill*, 59 F.4th at 471 (quoting *Martin*, 829 F.3d at

6    1125). And that's all Meta can point to here: one solitary statement that it *possessed* a right to compel

7    arbitration. ECF 294 at 17 & n.3. Meta cannot point to any notice that it intended to *exercise* that right

8    at some point in the future, because it never said that. Some affirmative statement to that effect is the

9    bare minimum that would have been needed even to attempt to counteract the obvious inference that

10   Meta was litigating because it wanted these claims resolved in court. *See Hill*, 59 F.4th at 466, 478.

11   And even if Meta had once disclosed its intentions like the company in *Hill*, Meta still made

12   no "further effort to flag the issue for the court." *Id.* at 478. And that remained true for more than three

13   years even after this Court warned Meta that there was a "good argument" arbitration had been waived.

14   ECF 388 at 7. In fact, Meta did the opposite: After this Court granted class certification, Meta relied

15   on the aggregated claims of the class—"$7 billion" at stake "in litigation of this nature"—to seek a

16   discretionary appeal. *See* No. 22-80029 (9th Cir.), ECF 1 at 4, 25. After the Ninth Circuit affirmed,

17   Meta then sought review from the Supreme Court. It thus availed itself of two layers of review without

18   ever mentioning arbitration again. *See Hill*, 59 F.4th at 473 (litigation in "three different

19   courtrooms … without even attempting to reserve its arbitration right" also "point[s] toward waiver").

20   That conspicuous silence speaks volumes. If Meta still "wanted to preserve its arbitration

21   rights" at that point, it "had a choice to set the record straight by dispelling the notion that it was

22   waiving its rights." *Id.* at 481. But Meta made a different choice. It must now be held to it.

23   **4.** Finally, Meta sandbagged millions of members of the certified class by sending out a class

24   notice representing that their claims would be resolved by this Court, without any mention of potential

25   arbitration. The class notice materials told recipients that if they did not opt out they "will be bound

26   by any judgment entered or settlement reached in the lawsuit," which "is pending in [a] United States

1  District Court," and which "can move forward in a class action." ECF 470-1 at 27, 30, 32, 34. The

2  notice materials do not mention "arbitration" anywhere. ECF 470-1, Exs. 2–5. So a class member who

3  didn't opt out would have thought they were entrusting this Court, not an arbitrator, with their claims.

4          That makes Meta's waiver even clearer than the waiver in *Hill*. In *Hill*, class members got a

5  notice that informed them that "Defendants have also raised other defenses including … that other

6  Class Members are required to pursue their claims through individual arbitration." 59 F.4th at 478.

7  That language wasn't enough to "insulate" the company from the effects of its conduct. *Id*. But it at

8  least gave class members a fighting chance to weigh the pros and cons. Here, by contrast, excusing

9  Meta's waiver would transform the class notice into a bait-and-switch, forcing millions of class

10  members to arbitrate after they were told without reservation to expect a binding "judgment entered

11  or settlement reached in this lawsuit" in this "United States District Court." ECF 470-1 at 30, 32.

12          Of course, the class notice just confirmed what was already apparent. Even an enterprising

13  class member who thoroughly scoured the docket before the opt-out deadline would have felt assured

14  that no arbitration motion was forthcoming. Had they consulted Meta's answer, class members would

15  have seen a laundry list of defenses applicable to class members, but no arbitration defense. Had they

16  consulted Meta's filings, they would have seen five dispositive motions, including a pending motion

17  for summary judgment against the entire class. And had they consulted this Court's class certification

18  order, they would have seen that Meta had likely "waived arbitration on this record," ECF 388 at 7—

19  followed by *three and a half years* of silence. So this Court must reach the same conclusion a class

20  member would have: that Meta waived arbitration. It cannot change course now.

21  **II.     Because Meta has waived arbitration, there is no reason to redefine the class.**

22          Meta says (at 11–12) that its belated arbitration request is a reason to "redefine or partially

23  decertify" the class on the eve of trial. It's not. As just explained, Meta has waived its purported

24  arbitration rights as to all members of the class. And modifying the class at this late stage would be

25  particularly inappropriate here, because this Court's class certification order put Meta on notice three

26  and a half years ago that it should promptly raise any "arbitration grounds" for modifying the class

1  definition. ECF 388 at 7. The only thing that has changed about Meta's purported arbitration defense

2  is Meta's last-minute tactical decision to assert it. That is reason enough to deny Meta's request. *See,*

3  *e.g.*, *In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 6783763, at *6 (N.D. Cal. Nov. 25, 2014)

4  (declining to revisit class certification on the eve of trial based on "new arguments" about "agreements

5  including a mediation clause" "where no intervening events have led to changed circumstances").

6  **III.    Because Meta has waived arbitration, it is not entitled to a stay.**

7          Meta also says (at 12) that its belated attempt to compel arbitration justifies a stay "pending

8  resolution of the motion to compel arbitration." It doesn't. [9] When a defendant's "active litigation in

9  federal court, and lengthy delay in finally filing a motion to compel arbitration, constitute a waiver of

10  the right to compel arbitration," a stay pending a decision on a motion to compel arbitration "is

11  inappropriate." *Chan v. Panera, LLC*, 2024 WL 4328827, at *6, *9 (C.D. Cal. Aug. 16, 2024). Because

12  Meta has waived its purported arbitration rights, its motion has no likelihood of succeeding. And a

13  stay when the parties are in the midst of final preparation for a fast-approaching trial date would cause

14  significant disruption. In these circumstances, "any harm" from continuing to litigate during the

15  pendency of this motion "is the result of [Meta]'s own lack of diligence," and cannot justify a stay.

16  *Id.*; *see  Jones v. Deutsche Bank AG*, 2007 WL 951811, at *1 (N.D. Cal. Mar. 28, 2007) (denying stay

17  pending a ruling on a motion to compel arbitration that was "brought comparatively late in [the]

18  litigation process, and long after the parties (and the Court) have expended considerable resources").

19                                    **CONCLUSION**

20          For the foregoing reasons, Meta's motion should be denied.

21

22

23

24

---

25          [9] Meta cites (at 12) cases in which a stay *pending appeal* was granted *after denial of* a motion
to compel arbitration. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 747 (2023); *Perez v. Discover Bank*,
26  2023 WL 1805213, at *3 (N.D. Cal. Feb. 7, 2023). But Meta—correctly—doesn't seek that relief,
because any such request would be premature. So those cases do not support the relief Meta is seeking.

Respectfully submitted,

Dated: September 6, 2025                        /s/Geoffrey Graber
                                                Geoffrey Graber (SBN 211547)
                                                Karina G. Puttieva (SBN 317702)
                                                Madelyn Petersen (*pro hac vice*)
                                                Jenna Waldman (SBN 341491)
                                                **COHEN MILSTEIN SELLERS &**
                                                **TOLL PLLC**
                                                1100 New York Ave. NW, Ste. 800
                                                Washington, DC 20005
                                                Telephone: (202) 408-4600
                                                Facsimile: (202) 408-4699
                                                ggraber@cohenmilstein.com
                                                kputtieva@cohenmilstein.com
                                                mpetersen@cohenmilstein.com
                                                jwaldman@cohenmilstein.com

                                                Eric Kafka (*pro hac vice*)
                                                **COHEN MILSTEIN SELLERS &**
                                                **TOLL PLLC**
                                                88 Pine Street, 14th Floor,
                                                New York, NY 10005
                                                Telephone: (212) 838-7797
                                                Facsimile: (212) 838-7745
                                                ekafka@cohenmilstein.com

                                                Charles Reichmann (SBN 206699)
                                                **LAW OFFICES OF CHARLES**
                                                **REICHMANN**
                                                16 Yale Circle
                                                Kensington, CA 94708-1015
                                                Telephone: (415) 373-8849
                                                charles.reichmann@gmail.com

                                                *Class Counsel*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
3:18-cv-04978-JD