**LATHAM & WATKINS LLP**
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Nicole C. Valco (Bar No. 258506)
*nicole.valco@lw.com*
Francis J. Acott (Bar No. 331813)
*francis.acott@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6548
Telephone: +1.415.391.0600

Andrew B. Clubok (pro hac vice)
*andrew.clubok@lw.com*
Susan E. Engel (pro hac vice)
*susan.engel@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Counsel for Defendant Meta Platforms, Inc.
(formerly known as Facebook, Inc.)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DZ Reserve and Cain Maxwell (d/b/a Max Martialis), individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:18-cv-04978-JD<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**<br><br>Date: September 25, 2025<br>Time: 10:00 a.m.<br>Court: Courtroom 11, 19th Floor<br>Hon. James Donato |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 3

    A. Meta Has A Right To Arbitrate With Class Members Who Bought Ads On Or After May 25, 2018 ................................................................. 3

    B. The Arbitration Agreement Delegates Any Waiver Determination To An Arbitrator ................................................................................................ 3

    C. Meta Did Not Waive Its Arbitration Rights Against Absent Class Members ............................................................................................................. 4

        1. Meta Did Not Waive Its Arbitration Rights Before Class Certification ........................................................................................... 4

        2. Meta Did Not Waive Its Arbitration Rights At Class Certification ........................................................................................... 7

        3. Meta Did Not Waive Its Arbitration Rights After Class Certification ........................................................................................... 8

        4. This Case Is Nothing Like *Hill* ................................................................. 9

    D. The Case Should Be Stayed Until This Motion Is Fully Resolved ..................... 10

III. CONCLUSION ................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abrahamian v. loanDepot.com LLC*,
 2025 WL 317594 (D. Ariz. Jan. 28, 2025) .................................................................................. 6

*Anderson v. Starbucks Corp.*,
 2022 WL 797014 (N.D. Cal. Mar. 16, 2022) ............................................................................. 7

*Coinbase, Inc. v. Bielski*,
 599 U.S. 736 (2023) ................................................................................................................ 10

*Hill v. Xerox Bus. Servs., LLC*,
 59 F.4th 457 (9th Cir. 2023) ............................................................................................. passim

*Kumandan v. Google LLC*,
 2023 WL 8587625 (N.D. Cal. Dec. 11, 2023) ....................................................................... 4, 5

*Martin v. Yasuda*,
 829 F.3d 1118 (9th Cir. 2016) ............................................................................................... 3, 4

*McKellar v. Mithril Cap. Mgmt. LLC*,
 2020 WL 1233855 (N.D. Cal. Mar. 13, 2020) .......................................................................... 4

*Perez v. Discover Bank*,
 2023 WL 1805213 (N.D. Cal. Feb. 7, 2023) ........................................................................... 10

*Speerly v. Gen. Motors, LLC*,
 143 F.4th 306 (6th Cir. 2025) ................................................................................................ 4, 6

*Zamudio v. Aerotek, Inc.*,
 2024 WL 863715 (E.D. Cal. Feb. 28, 2024) ........................................................................... 10

## I.   INTRODUCTION

Plaintiffs' opposition is most notable for what it does not say. Plaintiffs ***do not contest*** that there is a valid, enforceable arbitration contract that millions of class members have voluntarily (and in many cases, repeatedly) agreed to—in most instances, after this case was already pending. Plaintiffs also acknowledge—as they must—that this Court "could not compel" unnamed class members "to arbitrate until after a class had been certified and the notice and opt-out period were complete." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 (9th Cir. 2023). And they concede that, unlike in *Hill*, Meta signaled its intent to "enforce the [arbitration] provision against absent class members" when opposing class certification. Dkt. No. 302-1 at 17 n.13. Plaintiffs nonetheless insist that this Court must make a waiver ruling of breathtaking and unprecedented scope, even though the applicable contract delegates that issue to the arbitrator. Even if waiver were a question for this Court, there is no basis to find that Meta "intentionally relinquished" its contractual rights vis-à-vis millions of ad buyers who only became parties less than a month ago, particularly when Meta expressly flagged the issue at the class certification stage.

Because Plaintiffs agree Meta could not have compelled unnamed class members to arbitrate before now, their opposition turns on the contention that Meta should have "further … flag[ged] the issue for the court." Dkt. No. 500 at 13 (citation omitted). But "flagging" an intention to arbitrate claims against unnamed class members makes no sense until Plaintiffs seek to certify a specific class. The facts of this case underscore why. At the class certification stage, Plaintiffs dramatically altered their class definition, excising advertisers who, for example, purchased outside of Ads Manager (or its predecessor) or who fell into certain enumerated categories. *See* Dkt. No. 281-3 at 15 (listing exclusions). Plaintiffs also repeatedly altered the dates of the purported class period, starting with a purported class extending from January 1, 2013, to "the present" (August 15, 2018), Dkt. No. 1 ¶ 70—*i.e.*, a ***five-plus year period*** that extended ***less than three months*** after the arbitration provision took effect—and landing, in their motion for class certification, on a purported class period extending from August 15, 2014, to "the present" (April 23, 2021). That dramatic shift in dates had profound implications for how many class members might be subject to arbitration. Declining to "flag" arbitration rights as against an

expected class containing some indeterminate and potentially modest number of purchasers subject to an enforceable arbitration agreement cannot waive arbitration rights against millions of purchasers who *later* agreed to arbitrate—particularly because the class as certified swept in members who encountered and accepted the arbitration provision in a different, more conspicuous way that did not even exist until well after this suit was initiated.[1]

When it became clear that the purported class would contain a large number of purchasers subject to arbitration, Meta immediately indicated its intent to move for arbitration against those unnamed class members in its response to Plaintiffs' class certification motion. And, following certification, the case was stayed and administratively closed for the pendency of the related appeal—an appeal that, unlike in *Hill*, did not seek judicial resolution of the merits, but solely addressed class certification. So Plaintiffs' opposition boils down to the idea that Meta should have "flagged" (for a second time) its future intent to move to compel against unnamed class members during the few months of pre-trial proceedings that post-date the conclusion of that appeal—an astonishingly thin reed on which to rest a finding that Meta intentionally relinquished its contractual rights as to millions of advertisers.

Meta believed in good faith that its arbitration rights were sufficiently preserved based on: (1) its stated intent to enforce the arbitration provision against absent class members if a class was certified; (2) the Court's order confirming that "the Court [could] alter or amend" "the class definition … on arbitration grounds" "any time before entry of a final judgment," Dkt. No. 388 at 7; and (3) its prompt motion to enforce its arbitration rights, mere weeks after the Court first gained the ability to compel unnamed class members to arbitrate. That conduct is worlds apart from that in *Hill*, where the defendant selectively invoked one arbitration agreement early in the litigation without signaling that it would also invoke another (less favorable) agreement until after "the provisional class was certified" and the defendant had "pursued a judicial resolution of the merits" for "over five years." 59 F.4th at 465.

---

[1] Facebook's Terms of Service, which incorporated and linked to the Commercial Terms, were linked at the point of ad purchase when the arbitration provision took effect. By July 25, 2019, the Commercial Terms were even more conspicuous to ad purchasers, who encountered a hyperlink to those terms at the point of sale, too. Dkt. No. 472 at 4-6.

1  Plaintiffs try to distract from that reality with an array of misleading excerpts and statements. To take one example, Plaintiffs rely on the parties' December 2018 statement that the case was not "suitable for reference to binding arbitration." But at the time of that joint representation, no named plaintiff alleged ad purchases subject to the arbitration provision. *See* Dkt. No. 1 at 12; Dkt. No. 9 at 12. That statement does not apply to new named plaintiffs—let alone to unnamed putative class members, many of whom were not yet included in the class definition.

Nor is there any merit to Plaintiffs' suggestion that Meta's motion to compel arbitration is a bid to avoid trial. *See* Dkt. No. 474 at 1. As explained in Meta's prior statement (Dkt. No. 476 at 4-6), this case can and should proceed to trial—without the claims of unnamed class members who expressly agreed to arbitrate. Even Plaintiffs agree that this Court could redefine the class and proceed to trial on claims not subject to arbitration. Dkt. No. 474 at 2. The fact that the opt-out period closed not long before trial does not mean that Meta should be stripped of arbitration rights it could not have enforced earlier. The Court should grant Meta's motion and compel class members who agreed to arbitrate their claims to do so.

## II.  ARGUMENT

### A.  Meta Has A Right To Arbitrate With Class Members Who Bought Ads On Or After May 25, 2018

As detailed in Meta's motion, class members who bought Facebook ads on or after May 25, 2018 ("Arbitrable Class Members"), agreed to arbitrate any claim that arises out of or relates to ad purchases—including the fraud claims in this case. Dkt. No. 472 at 8-10. Plaintiffs do not dispute any of that, forfeiting the issue.

### B.  The Arbitration Agreement Delegates Any Waiver Determination To An Arbitrator

Plaintiffs direct their waiver arguments at the wrong decisionmaker. Unless otherwise agreed, the question of waiver by litigation conduct is presumptively for the court to decide. *Martin v. Yasuda*, 829 F.3d 1118, 1123-24 (9th Cir. 2016). But that presumption is overcome by "clear and unmistakable" language delegating waiver to the arbitrator. *Id.* at 1124. Here, the parties'

arbitration agreement incorporates the AAA arbitration rules, except as modified by the agreement, and expressly provides: "All issues are for an arbitrator to decide, except that only a court may decide issues relating to the scope or enforceability of this arbitration provision or the interpretation of the prohibition of class and representative actions." Dkt. No. 472-6 at 1; *see also* Dkt. No. 472-7 at 2; Dkt. No. 472-8 at 2. In other words, the agreement expressly states that there are ***only*** three issues for the Court to decide (scope, enforceability, and the interpretation of any prohibition on class actions). All others (including waiver) are delegated to the arbitrator. *See McKellar v. Mithril Cap. Mgmt. LLC*, 2020 WL 1233855, at *5 (N.D. Cal. Mar. 13, 2020). Plaintiffs do not contest any judicial issue here, and so the case must to go an arbitrator.[2]

In any event, Plaintiffs' waiver argument also fails on the merits.

### C. Meta Did Not Waive Its Arbitration Rights Against Absent Class Members

A party waives the right to compel arbitration when it (1) knows of an existing right to compel arbitration; and (2) intentionally acts inconsistently with that existing right. *Hill*, 59 F.4th at 468. The key inquiry here is whether Meta had knowledge of an arbitration right and intentionally acted inconsistently with that right ***as it relates to the unnamed class members***. "There is no concrete test" for answering that latter question. *Id.* at 471 (citation omitted). Instead, the Court must "consider the totality of the parties' actions." *Id.* (citation omitted). Here, the totality of Meta's actions does not indicate waiver.

#### 1. Meta Did Not Waive Its Arbitration Rights Before Class Certification

A defendant's ***pre-certification*** "waiver … of the right to resolve the named plaintiffs' claims by arbitration[] does not speak for the unnamed class members." *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 336 (6th Cir. 2025) (internal citation omitted); *see also Kumandan v. Google LLC*, 2023 WL 8587625, at *17 (N.D. Cal. Dec. 11, 2023) ("[A] defendant does not waive its right to move to compel arbitration against unnamed class members by declining to assert an arbitration

---

[2] In *Martin*, the Ninth Circuit rejected the argument that waiver was an issue of scope or enforceability. 829 F.3d at 1124.

agreement against a named plaintiff before class certification.").[3] But even if the Court considers Meta's pre-certification litigation conduct as part of a holistic analysis, the answer is the same: Meta's pre-certification conduct was not inconsistent with its arbitration rights against ***unnamed*** class members.

As an initial matter, Meta cannot have had "knowledge" of a right to arbitrate against ad buyers who had not yet signed an arbitration agreement or been incorporated into the class. Because the class period and class definition remained in flux over the early years of this litigation, it was not clear until the class certification stage how many (if any) class members would be bound to arbitrate. When this action began in August 2018, the putative class period ran "from January 1, 2013, to the present." Dkt. No. 1 at 14 ¶ 70. And the then-named plaintiffs had alleged ad purchases "ending in April 2018." *Id.* at 12 ¶ 57. In other words, Plaintiffs' initial complaint included no named plaintiff subject to any arbitration provision and more than five years of purchases made before the arbitration provision took effect, compared with just a few months of post-arbitration-clause purchases—none of which involved the post-2019 process of assenting to the arbitration provision. Even when Plaintiffs moved for class certification in April 2021, their proposed class period stretched back to "August 15, 2014," Dkt. No. 281-4—nearly four years before the arbitration provision took effect and nearly five years before the provision's point-of-sale presentation to ad buyers became even more conspicuous. It makes no sense to say that Meta waived its arbitration rights against an entire class when it did not know who was in the class.

In arguing otherwise, Plaintiffs mischaracterize Meta's early litigation conduct and elide important details about how this litigation unfolded.

Plaintiffs first point to the parties' December 2018 representation that they "d[id] not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation." Dkt. No. 53 at 7. That statement was correct when made: At that time, the only named plaintiffs in the case alleged ad purchases "ending in April 2018"—before the arbitration provision in Facebook's Commercial Terms took effect. Dkt. No. 1 at 12

---

[3] That is particularly true here because, as Meta explained, DZ Reserve and Cain Maxwell ("Named Plaintiffs") are not typical or adequate representatives of class members who bought ads after July 25, 2019. Dkt. No. 472 at 11-12.

¶ 57 (original complaint); Dkt. No. 9 at 12 ¶ 57 (amended complaint). In other words, the case was not "suitable for reference to binding arbitration" at the time because there was no named plaintiff whom Meta could have compelled to arbitrate. But Meta did not represent that the claims in this case could ***never*** be suitable for binding arbitration, no matter how the named plaintiffs or the class evolved at some future point.

Nor did Meta disclaim the Commercial Terms and their arbitration clause early in this litigation. At the October 17, 2019 hearing, in discussing contract claims that are no longer in the case, Meta told the Court that it understood Plaintiffs to allege that Facebook had violated the Terms of Service. Dkt. No. 129 at 4-5. That is hardly a representation that no other terms between Facebook and putative class members might be relevant to the case—not least because the Commercial Terms are incorporated into the Terms of Service. *E.g.*, Dkt. No. 472 at 4-5.

Plaintiffs are also wrong to argue (at 9-10) that Meta relinquished its arbitration rights by successfully moving to dismiss various **named plaintiffs'** contract claims simply because the claims were asserted on behalf of a putative class. If that were right, courts would be constrained to find waiver against the entire class any time a defendant chose not to compel a named plaintiff to arbitrate and a class was later certified.[4] *But see Speerly*, 143 F.4th at 336. That is a far cry from the case-specific, totality-of-the-circumstances rule that *Hill* announced. For the same reason, Plaintiffs are also wrong to argue that the fact that Meta's pre-certification answer did not raise arbitration as an affirmative defense means that Meta waived its right to arbitrate against unnamed class members. In any event, Meta did not intend to invoke its arbitration rights against DZ Reserve and Cain Maxwell ("Named Plaintiffs"), and did not have an arbitration right against the entire "purported class" or "each and every member" (Dkt. No. 500 at 3 (citation omitted)), because the class period as alleged stretched back five years before the arbitration provision took effect, Dkt. No. 166 at 22 ¶ 110. It would have made little sense for Meta to have included in its answer a speculative reference to invoking arbitration against some unknown portion of a yet-to-be-defined putative class. Failure to include such a reference cannot qualify as an "intentional relinquishment" of a known right. *Abrahamian v. loanDepot.com LLC*, 2025 WL 317594, at *3 (D. Ariz. Jan. 28,

---

[4] Again, Meta does not contest that it has waived the right to compel Named Plaintiffs to arbitrate.

2025) ("[F]ailure to raise the right to assert arbitration as an affirmative defense is not inconsistent with the right to arbitrate a case.").

Finally, Meta did not waive its arbitration right by moving for summary judgment. As Meta explained earlier this year, it moved for summary judgment before a class was certified, and its motion was "directed only at *individual* claims rather than the then-uncertified *class* claims." Dkt. No. 461 at 2-3. The situation in *Hill* was far different. There, the defendant tried "to end the litigation in one fell swoop judicially" by "obtaining a judicial resolution of the legal merits underlying all class members' claims beyond those that were personal to Hill." 59 F.4th at 462-63, 476 & n.22. Moreover, the defendant in *Hill* did not seek to compel arbitration until after its bid for summary judgment failed, and the court declined to give it "a second bite from the apple." 465-66 & n.11. Here, Meta's summary judgment arguments remain undecided. This is no "cynical attempt to play 'heads I win, tails you lose' on the eve of trial." *Contra* Dkt. No. 500 at 1.

### 2. Meta Did Not Waive Its Arbitration Rights At Class Certification

Plaintiffs do not seriously argue that Meta waived its arbitration rights at the class certification stage. Nor could they: In opposing class certification, Meta argued that Named Plaintiffs were "atypical and inadequate insofar as they seek to represent advertisers who purchased ads on or after May [25], 2018, the date an arbitration provision in Facebook's Commercial Terms became effective." Dkt. No. 302-1 at 17. In that same filing, Meta noted "its right to enforce the provision against absent class members." *Id*. at 17 n.17. In other words, Meta clearly signaled that, if a class was certified, it would seek to compel unnamed class members to arbitrate down the line.

Plaintiffs next point to this Court's observation that a "good argument can be made that Meta has waived arbitration on this record." Dkt. No. 388 at 7. But that statement could not have been referring to the question of arbitration against *unnamed* class members, which was not before the Court. Rather, it referred to waiver of Meta's arbitration rights against Named Plaintiffs— coming in a discussion of their adequacy and typicality, and citing a case that found waiver as to a subset of named plaintiffs, not absent class members. *Id.*; *see Anderson v. Starbucks Corp.*, 2022 WL 797014, at *4 (N.D. Cal. Mar. 16, 2022). Moreover, the Court went on to assure the parties

that it could "alter or amend" "the class definition … on arbitration grounds" "any time before entry of a final judgment"—making clear that the door remained open to later, arbitration-based adjustments of the class. Dkt. No. 388 at 7. That statement would make no sense if, as Plaintiffs posit, Meta had somehow already waived its arbitration right as to the entire class.

### 3. Meta Did Not Waive Its Arbitration Rights After Class Certification

Following certification, Meta sought and obtained Rule 23(f) review of the certification order. To the extent Plaintiffs suggest (at 13) that, during the resulting appeals, Meta should have told the Ninth Circuit or the Supreme Court about its right to compel unnamed class members to arbitrate, that makes no sense. On appeal, Meta argued that no class should have been certified in the first place. It would have been wholly irrelevant to alert the appellate courts that, if Meta lost on appeal, it intended to move to compel unnamed class members to arbitrate. Notwithstanding Plaintiffs' spurious comparison (at 13), Meta's appeals were nothing like those in *Hill*, where the defendant's "six-year appellate journey" was "aimed at judicially resolving the ***merits***—the legal heart—of the class members' … claims," 59 F.4th at 473.

And, setting aside that nonsensical appeal-based argument, it is unclear just exactly what Plaintiffs would have had Meta do to "further … flag the issue for" this Court during the two and a half years that this case was stayed or administratively closed in this Court. Dkt. No. 500 at 13 (citation omitted); *see* Dkt. No. 436 (June 21, 2022 order staying the case pending appeal); Dkt. No. 445 (February 27, 2023 order "administratively clos[ing]" the case "until further order"); Dkt. No. 457 (January 17, 2025 order "reopen[ing]" the case). Plaintiffs also suggest that Meta did not "flag" the arbitration issue soon enough once proceedings in this Court resumed. But not reiterating its (previously announced) right to arbitrate against unnamed class members during this short period—when class membership was not yet ascertained and the Court could not compel arbitration—cannot bear the weight Plaintiffs place on it.

Plaintiffs point to the lack of an explicit reference to Meta's yet-to-be-adjudicated arbitration rights in the class notice. But any such reference could be seen as impermissibly discouraging opting into the class. And such a caveat would have made little sense, because it is always implicit in a class notice that there may be subsequent modifications to the class definition,

as demonstrated by the Court's own recognition that the contours of the class remained malleable up until "entry of a final judgment." Dkt. No. 388 at 7. The sensible choice to omit a confusing reference to arbitration in the class notice plainly does not rise to the level of "a knowing relinquishment" of a known right. *Hill*, 59 F.4th at 470 (citation omitted).

### 4. This Case Is Nothing Like *Hill*

Plaintiffs repeatedly invoke *Hill* as if it resolves this case. But the analogy to *Hill* does not withstand scrutiny. Consider the significant differences between that case and this one:

- In opposing class certification, the defendant in *Hill* invoked a 2012 arbitration agreement while failing to mention a less favorable agreement from 2002. That decision supported an inference that the defendant had made a strategic choice to forgo arbitration under the older agreement in favor of a decision on the merits. 59 F.4th at 473. Nothing about Meta's across-the-board invocation of its arbitration rights reflects a similar calculus.
- The defendant in *Hill* expressly sought judicial resolution of the entire class's claims on the merits, while here, Meta moved for summary judgment only against Named Plaintiffs—whose claims Meta does not now seek to arbitrate.
- The defendant in *Hill* did not move to compel arbitration until its bid to win on the merits failed. Meta moved to compel arbitration before this Court resolved its summary judgment motion.

Finding a class-wide waiver here would stretch *Hill* beyond its breaking point. *Hill*'s conclusion (over a vigorous dissent) that a party can waive arbitration against unnamed class members even when it moves to compel at its earliest opportunity was grounded in unique circumstances demonstrating waiver. That decision should be treated as an outer bound for waiver—yet Plaintiffs seek to apply it here, even where many of the key bases for the decision are missing—and as to a class purportedly ***two thousand times*** the size of that in *Hill*. Finding waiver on that extraordinary scale is not warranted by the facts here.

In short, Meta (1) timely signaled its intent to enforce its arbitration rights against the Arbitrable Class Members and (2) moved to compel arbitration against those class members

promptly after the Court gained the ability to do so. There was no intentional relinquishment of the right to arbitrate against unnamed class members. Accordingly, when this case goes to trial, it must do so without the Arbitrable Class Members' claims. At the very least, the Court should redefine or partially decertify the class to exclude those who bought ads after July 25, 2019, for whom Named Plaintiffs are not typical or adequate representatives. Dkt. No. 472 at 11-12.

### D. The Case Should Be Stayed Until This Motion Is Fully Resolved

Meta believes this motion can be resolved without any delay to the upcoming trial. Indeed, Meta voluntarily agreed to shorten its reply time so that the motion could be noticed for hearing prior to trial. Dkt. No. 479. Meta wants to expeditiously bring this case to trial, but a trial with the claims of class members who signed binding arbitration agreements cannot proceed until Meta's motion to compel is resolved. If it did, Meta's arbitration rights would be permanently lost—a result the Supreme Court has already cautioned against. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023). For that reason, *if* Meta's motion to compel cannot be resolved prior to the start of trial, the case must be stayed until it can be resolved.[5]

## III. CONCLUSION

The parties apparently agree that millions of class members entered into valid arbitration agreements that encompass the claims in this case. For the reasons above, Meta respectfully requests that the Court (1) compel the Arbitrable Class Members to arbitrate their claims on an individual basis in accordance with the parties' agreement, (2) exercise its long-acknowledged ability to "alter or amend" the class definition by redefining the class to exclude the Arbitrable Class Members, and (3) stay this action pending resolution of the motion to compel arbitration.

---

[5] Plaintiffs identify no "particularized concerns … to warrant denial of a stay." *Zamudio v. Aerotek, Inc.*, 2024 WL 863715, at *2-4 (E.D. Cal. Feb. 28, 2024). The single factor Plaintiffs mention—a "fast-approaching trial date" (Dkt. No. 500 at 15)—counsels in **Meta's** favor, not Plaintiffs', because if the claims of class members subject to binding arbitration are tried, the "advantages [Meta] gained by agreeing to arbitration [would be] lost forever." *Perez v. Discover Bank*, 2023 WL 1805213, at *4 (N.D. Cal. Feb. 7, 2023) (citation omitted).

Dated: September 11, 2025

LATHAM & WATKINS LLP

By: /s/ Andrew B. Clubok

Andrew B. Clubok (pro hac vice)
andrew.clubok@lw.com
Susan E. Engel (pro hac vice)
susan.engel@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
melanie.blunschi@lw.com
Nicole C. Valco (Bar No. 258506)
nicole.valco@lw.com
Francis J. Acott (Bar No. 331813)
francis.acott@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6548
Telephone: +1.415.391.0600

*Counsel for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*