UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DZ RESERVE and CAIN MAXWELL (d/b/a Max Martialis), individually and on behalf of others similarly situated,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 18-cv-04978-JD

**ORDER RE ARBITRATION**

The Court certified a class of United States residents who purchased one or more advertisements on Meta's platforms from August 15, 2014 to the present. Dkt. No. 388 at 3, 17. The class alleges that defendant Meta Platforms, Inc. (Meta) intentionally misrepresented the "Potential Reach" of advertisements on its social media platform when selling ads to the class. Dkt. No. 332. The Ninth Circuit affirmed the certification of the damages class, *see* Dkt. No. 449, and the last stop in this long-running saga is a jury trial on the class's claims.[1]

This case started in 2018, and in the seven years that have since passed, Meta mentioned the possibility of going to arbitration exactly once. Even so, on the eve of a jury trial scheduled to begin on October 14, 2025, Meta sailed in on August 21, 2025, a motion to compel arbitration for the claims of "class members other than Named Plaintiffs (DZ Reserve and Cain Maxwell) who purchased an advertisement through Meta between May 25, 2018, and October 27, 2021,

---

[1] The circuit vacated the certification of an injunction class for claims under California's Unfair Competition Law (UCL), holding that "DZ Reserve does not have standing to seek injunctive relief" and directing the Court to determine if plaintiff Maxwell has standing. Dkt. No. 449 at 25-27. Plaintiffs have confirmed on remand that they will not seek certification of a Rule 23(b)(2) class for injunctive relief, and plaintiff Maxwell is considering whether to pursue injunctive relief under the UCL on an individual basis. Dkt. No. 464. If Maxwell so chooses, the Court will resolve his UCL claim, including his standing to pursue it, after the jury trial. *See id*.

inclusive." Dkt. No. 472.[2]  Meta asks that the Court send these class members to arbitration and redefine the class to exclude them from the trial.  *Id*.  The parties' familiarity with the record is assumed, and arbitration is denied.

## DISCUSSION

### I. LEGAL STANDARDS FOR ARBITRATION MOTIONS AND THE EXISTENCE OF AN APPLICABLE ARBITRATION AGREEMENT HERE

Meta seeks arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq.  Dkt. No. 472.  The FAA's "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  Under Section 4 of the FAA, the Court's role is generally "limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute ate issue."  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  "If the party seeking to compel arbitration establishes both factors, the district court 'must order the parties to proceed to arbitration only in accordance with the terms of their agreement.'"  *McBurnie v. Acceptance Now, LLC*, 643 F. Supp. 3d 1041, 1045 (N.D. Cal. 2022) (quoting *Lifescan*, 363 F.3d at 1012), *aff'd sub nom. in pertinent part*, *McBurnie v. RAC Acceptance East, LLC*, 95 F.4th 1188 (9th Cir. 2024).

Meta says, without disagreement by plaintiffs, that a valid and binding arbitration agreement applies to the class members' claims in this case.  *See* Dkt. Nos. 472, 500.  The arbitration agreement is contained in Facebook's Commercial Terms implemented on May 25, 2018, and states that "these Commercial Terms require the resolution of most disputes between you and [Facebook, now Meta] by binding arbitration on an individual basis."  Dkt. No. 472 at 2-6; *see also* Dkt. Nos. 472-6, 472-7, 472-8.  Plaintiffs do not challenge Meta's contention that "[u]nnamed class members who purchased ads as of May 25, 2018, entered into valid arbitration agreements with Facebook when they affirmatively assented to the Commercial Terms by

---

[2] On October 6, 2025, during the federal government's lapse in appropriations, the Court vacated the trial date based on concerns that a jury trial would not be sustainable.  Dkt. No. 532.

purchasing ads," and that "[t]his dispute falls within the scope of the parties' arbitration agreement." Dkt. No. 472 at 8; *see* Dkt. No. 500.

## II. THE COURT DECIDES WAIVER

This record would seem to present a slam dunk in favor of arbitration, but that is decidedly not the situation. Meta has asked to compel arbitration at the very end of this long-running litigation and just before trial. This raises the question of whether Meta has waived the right to ask for arbitration.

Like any other contractual right, an arbitration agreement can be waived. *See McBurnie*, 643 F. Supp. 3d at 1045. Plaintiffs urge that Meta has waived any right to compel arbitration in the final act of the case. *See* Dkt. No. 500. They do so with good reason. The one and only time Meta previously mentioned the possibility of arbitration was during class certification proceedings that took place in 2021 and 2022. In the March 2022 order granting certification, the Court expressly stated that Meta had sat on its contractual rights, and that "[a] good argument can be made that Meta has waived arbitration on this record." Dkt. No. 388 at 7. Even so, Meta never addressed the obvious question of waiver in its opening brief to compel arbitration that it filed in August 2025, and instead sandbagged plaintiffs by waiting to say in a reply brief that it had not waived arbitration and that an arbitrator, not the Court, should decide the waiver issue. *See* Dkt. No. 501 at 3-4. Fairness and due process demand that Meta's gamesmanship not go unanswered, and so plaintiffs' request to file a sur-reply is granted. Dkt. No. 508.

Meta's delegation suggestion is also poorly taken. The "gateway issues" for arbitration such as "waiver by litigation conduct" are presumptively "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) (quotations and citations omitted). "Every circuit that has addressed this issue -- whether a district court or an arbitrator should decide if a party waived its right to arbitrate through litigation conducted before the district court -- has reached the same conclusion." *Id*. This makes perfect sense, as the arbitrator "does not have expertise regarding whether litigation conduct *in front of the district court* was enough to constitute revocation of the arbitration clause." *Id*. n.3

3

1   (emphasis in original). Consequently, "courts generally decide whether a party has waived his
2   right to arbitration by litigation conduct." *Id*. at 1124.
3         "If the parties intend that an arbitrator decide [the waiver] issue under a particular contract,
4   they must place clear and unmistakable language to that effect in the agreement." *Id*. The
5   arbitration agreement here does the opposite, and expressly states that "only a court may decide
6   issues relating to the scope or enforceability of this arbitration provision." Dkt. No. 472-6 at ECF
7   p. 2; *see also* Dkt. No. 472-7 at ECF p.3 (same); Dkt. No. 472-8 at ECF p.3 (same). This plain
8   language designates the Court to decide gateway arbitrability issues, including waiver. Meta made
9   no honest effort to account for this provision, and instead made the disingenuous suggestion that
10  the agreement reserved issues of "scope, enforceability, and the interpretation of any prohibition
11  on class actions" to the Court but delegated to the arbitrator the issue of waiver by not mentioning
12  it. Dkt. No. 501 at 3-4. Nothing in the contract even remotely supports that notion.
13        So too for the case law, which definitively rejects Meta's theory that the omission of
14  "waiver" in an arbitration clause is tantamount to delegation. In *Martin*, for example, the
15  arbitration clause stated that "all determinations as to the scope, enforceability and effect of this
16  arbitration agreement shall be decided by the arbitrator, and not by a court," which was held to be
17  "insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue and
18  to overcome the presumption to the contrary." *Martin*, 829 F.3d at 1124. In *Cox v. Ocean View
19  Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008), the arbitration agreement stated that "[a]ny
20  controversy . . . involving the construction or application of the terms, provisions, or conditions of
21  this Agreement or otherwise arising out of or related to this Agreement shall likewise be settled by
22  arbitration," which was also not deemed to be a clear and unmistakable delegation of the question
23  of waiver to the arbitrator. *Cox*, 533 F.3d at 1117; *see also Martin*, 829 F.3d at 1124. These
24  holdings foreclose Meta's tortured reading of the arbitration agreement here, particularly given
25  that it plainly assigns gateway issues to the Court.
26        All of this establishes that the question of waiver is for the Court to decide. That the
27  arbitration agreement "incorporates the AAA arbitration rules" is of no moment. *See* Dkt. No. 501
28  at 4. The plain language of the contract -- which Meta acknowledges overrides any delegation

4

implicit in the incorporation of the AAA rules -- clearly reserved gateway issues such as waiver for the Court.

### III. META HAS WAIVED THE RIGHT TO ARBITRATE

The "test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Business Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). There is no longer a requirement to find "prejudice to the person opposing arbitration from such inconsistent acts." *Id.* (quoting *Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 940 (9th Cir. 2019), *abrogated by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)). The party opposing arbitration "bears the burden of showing waiver," but the burden is not a "heavy" one; rather, "the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014-15 (9th Cir. 2023).

Plaintiffs have amply carried their burden of establishing waiver. To start, they demonstrated, without objection by Meta, that Meta had knowledge of its asserted right to arbitrate. Dkt. No. 500 at 8-9; *see* Dkt. No. 501. The first element of waiver has been proved.

For the second element, plaintiffs have demonstrated that Meta acted wholly inconsistently with the contractual right to arbitrate. *See* Dkt. No. 500 at 9-14. As indicated by the 471 filings entered on the ECF docket before Meta asked for arbitration, this case has been hotly litigated in the federal courts from day one in 2018. Among many other substantive events, Meta filed three motions to dismiss, a motion for judgment on the pleadings, an opposition to class certification and a largely unsuccessful appeal of certification to the circuit court, a summary judgment motion, motions to disqualify plaintiffs' expert witnesses, discovery dispute letters, and a jointly agreed motion with respect to class notice of trial, which the Cour approved. *See*, *e.g.*, Dkt. Nos. 23, 65, 70, 75, 76, 95, 97, 103, 109, 110, 121, 122, 124, 125, 133, 134, 177, 180, 270, 285, 286, 294, 372, 373, 374, 398, 449, 470. Plaintiffs state, without objection, that Meta also engaged in "robust"

discovery over the years that the case has been pending.[3] Dkt. No. 500 at 11. All of these substantive events transpired with virtual silence on Meta's part about the possibility of arbitration.

Meta's record of active litigation in court is in telling contrast to cases where waiver has been found. In such cases, the defendant typically has "repeatedly reserved its right to arbitration, did not ask the district court to weigh in on the merits, and did not engage in any meaningful discovery." *Armstrong*, 59 F.4th at 1013; *see also id*. at 1015 ("Michaels pleaded arbitration as an affirmative defense in its answers to both the original complaint and amended complaint, and explicitly and repeatedly stated its intent to move to compel arbitration in both case management statements and in the initial case management conference before the district court").

Meta's conduct could not have been more different. It has fought in court without pause, and by its own admission mentioned the possibility of arbitration only once since 2018, which was in its opposition brief to class certification. *See* Dkt. No. 501 at 7; Dkt. No. 472 at 1. Even then, Meta said only:

> Finally, Plaintiffs are atypical and inadequate insofar as they seek to represent advertisers who purchased ads on or after May 28, 2018, the date an arbitration provision in Facebook's Commercial Terms became effective. Exs. 76-77; *see also Avilez v. Pinkerton Gov't Servs. Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015) (holding plaintiff atypical and inadequate where absent class members had defenses to an arbitration provision different from plaintiff).

Dkt. No. 294 at 17. This comment was accompanied by a footnote: "Facebook has not waived its right to enforce the provision against absent class members. *See Rushing v. Williams Sonoma, Inc.*, 2020 WL 6787135, at *3 (N.D. Cal. Oct. 8, 2020)." *Id*. n.13. It bears highlighting that Meta's statement that it had "not waived" the arbitration provision is well short of saying that it

---

[3] "Robust" is an understatement. Even before plaintiffs filed a motion for class certification in April 2021, the ECF docket contained 280 entries, many of which related to discovery disputes. *See* Dkt. Nos. 1-280. The discovery process in this case was so active and contentious that the Court instituted the unusual measure of directing counsel for the parties to have "weekly discovery calls." Dkt. No. 130. Not once in the course of this vigorous and comprehensive discovery did Meta ever note that it would be seeking to resolve the claims of many absent class members through arbitration or seek to exempt them from the scope of discovery.

would actually seek to enforce it. *See Hill*, 59 F.4th at 471 ("A reservation of rights is not an assertion of rights.") (quotations and citation omitted).

       Meta protests that it could not have moved earlier to compel the unnamed class members to arbitrate because the unnamed class members were not actually parties to the lawsuit until class notice was distributed and the opt-out period closed. *See* Dkt. No. 472. The point may be assumed solely for discussion, and it does not do the work Meta asks of it. As our circuit has concluded, "waiver is a unilateral concept," and a determination of waiver "does not depend upon when the law requires or authorizes such a right to be asserted." *Hill*, 59 F. 4th at 469. "[W]hen engaging in an implied waiver analysis, the omission is viewed through the lens of the defendant's other actions rather than from the perspective of when the law demands that an argument be raised." *Id*. at 472 n.18. Even if Meta "could not actively move to compel arbitration until the moment that it did, the inferences drawn from the record all point towards waiver." *Id*. at 473.

       Overall, Meta waged a seven-year campaign of litigating this case in two federal courts,[4] and took full advantage of the procedures available in the court system, while staying silent about the arbitration agreement. Contrast this record to the one in *Armstrong*, where the defendant "was consistently vocal about its intent to move to compel arbitration." *Armstrong*, 59 F.4th at 1015; *see also id*. at 1016 ("Michaels never wavered from the view that it had a right to arbitration, as evidenced by Michaels moving to compel arbitration within a year after Armstrong filed the complaint, never seeking or obtaining a ruling on the merits, and never waffling about whether to arbitrate or stay in district court. Finally, Michaels's limited discovery requests did not evince a decision to take advantage of the judicial forum.").

       Consequently, plaintiffs have demonstrated that the totality of Meta's conduct in court amounts to a clear waiver of the contractual arbitration provision with respect to the absent class members.[5] *See Hill*, 59 F.4th at 471 ("There is no concrete test to determine whether a party has

---

[4] Meta's effort to involve a third federal court was thwarted when the United States Supreme Court denied its petition for a writ of certiorari. Dkt. No. 455.

[5] Meta squarely concedes that it "has waived the right to compel Named Plaintiffs to arbitrate." Dkt. No. 501 at 6 n.4. It has failed to identify any good reason why the result should be different for the absent class members.

7

engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions.") (quotations and citation omitted).  Under prevailing standards, the question of whether this conduct prejudiced plaintiffs is irrelevant, and the Court did not consider or rely upon potential prejudice in this order.  Meta's request to compel arbitration is denied.

## CONCLUSION

As a closing observation, the Court is concerned about the timing of Meta's arbitration request at this late date in the case and just before the start of a jury trial.  A denial of arbitration is immediately appealable, *see* 9 U.S.C. § 16(a), and it seems likely that Meta will file an interlocutory appeal.  It already tried to do that even before the Court decided its request.  *See* Dkt. No. 529.  Plaintiffs have been waiting many years now for their day in court.  A long delay was caused by Meta's unsuccessful appeal of the class certification order, and another delay in connection with this order may be imminent.  If Meta files another appeal, the Court requests that the circuit "proceed with appropriate expedition when considering [Meta's] interlocutory appeal from the denial of the motion to compel arbitration." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 747 (2023).

**IT IS SO ORDERED.**

Dated:  December 2, 2025

JAMES DONATO
United States District Judge

8